No. 90-162C
(Judge Bush)

IN THE UNITED STATES COURT OF THE FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING
PLAINTIFFS EMPLOYED BY THE OFFICE OF INSPECTOR GENERAL IN THE
DEPARTMENT OF HEALTH AND HUMAN SERVICES

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:                          SHALOM BRILLIANT
Michael J. Dierberg                  Senior Trial Counsel
William P. Rayel                     Commercial Litigation Branch
Trial Attorneys                      Civil Division
Commercial Litigation Branch         Department of Justice
Civil Division                       Attn: Classification Unit
Department of Justice                       8th Floor
                                     1100 L Street N.W.
                                     Washington, DC 20530
                                     Tele: (202) 305-7561

December 22, 2006                    Attorneys for Defendant

# TABLE OF CONTENTS

DEFENDANT'S BRIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATUTORY AND REGULATORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      I.    The Primary Duty Of Investigators Employed By HHS's OIG During The Time
           Period At Issue Was To Support The Management Of HHS By Protecting HHS's
           Integrity By Ensuring That HHS's Programs Run Effectively And Efficiently  . . 9

      II.   GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HHS's OIG
           Performed Predominantly Nonmanual Work That Was Intellectual And Varied In
           Nature And/Or Of A Specialized Or Technical Nature That Required
           Considerable Special Training, Experience, And Knowledge  . . . . . . . . . . . . . . 18

      III.  GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HHS's OIG
           Frequently Exercised Independence Judgment And Discretion Under Only
           General Supervision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## CASES

Adam v. United States,
    26 Cl. Ct. 782 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Adams v. United States,
    27 Fed. Cl. 5 (1992), rev'd in part, 178 F.3d 1306 (Fed. Cir. 1998) . . . . . . . . . . . passim

Adams v. United States,
    44 Fed. Cl. 772 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Adams v. United States,
    65 Fed. Cl. 195 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 19, 23

Auer v. Robbins,
    65 F.3d 702 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Baker v. California Shipbuilding Corp.,
    73 F. Supp. 322 (S.D. Cal. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Covert v. Harrington,
    876 F.2d 751 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hickman v. United States,
    10 Cl. Ct. 550 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ivey v. Snow,
    Civil Action No. 04-0214 (EGS), 2005 U.S. Dist. LEXIS 18872 (D.D.C. August
    31, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jastremski v. Safeco Insurance Cos.,
    243 F. Supp. 2d 743 (N.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Marcotte v. Secretary of Defense,
    618 F. Supp. 756 (D. Kan. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

National Aeronautics and Space Administration v. FLRA,
    527 U.S. 229 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nebblett v. Office Of Personnel Management,
    237 F.3d 1353 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ii

O'Dell v. Alyeska Pipeline Service Co.,
    856 F.2d 1452 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Palacio v. Progressive Insurance Co.,
    244 F. Supp. 2d 1040 (C.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Raper v. Iowa,
    688 N.W.2d 29 (Iowa 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sprague v. United States,
    230 Cl. Ct. 492 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

United States Department of Justice v. FLRA,
    266 F.3d 1228 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES

5 U.S.C. § 213(a)(16) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 5541 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5 U.S.C. 5545a(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

5 U.S.C. § 7114(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. App. 3 §§ 2, 11(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5 U.S.C. App. 3 §§ 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 201 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

29 U.S.C. § 204(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 207 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 U.S.C. § 213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 8

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

29 U.S.C. § 255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## REGULATIONS

5 C.F.R. § 551.101, et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 C.F.R. §§ 551.204-551.206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.205 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 21

5 C.F.R. §§ 551.205-551.207 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.206 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5 C.F.R. § 551.513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## OTHER ADMINISTRATIVE MATERIALS

Inspector General Authority to Conduct Regulatory Investigations,
        13 Op. O.L.C. 54, 1989 OLC LEXIS 70 (March 9, 1989) . . . . . . . . . . . . . . . . . . . 12, 13

Office of Inspector General; Statement of Organization, Functions and Delegations of Authority,
        54 Fed. Reg. 46775 (Nov. 7, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pay Administration; Premium Pay,
        64 Fed. Reg. 4517 (Jan. 29, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Organization, Functions and Delegations of Authority; Office of Inspector General,
        50 Fed. Reg. 45488 (Oct. 31, 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## LEGISLATIVE HISTORY

Pub. L. No. 101-509, § 210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 93-259, 88 Stat. 55, 29 U.S.C. § 203 (e)(2)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. No. 103-329, § 633(e),
108 Stat. 2382, 2428 (Sept. 30, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,      )
                              )
        Plaintiffs,        )
                              )
        v.                )     No. 90-162C
                              )     and consolidated cases
THE UNITED STATES,       )     (Judge Bush)
                              )
        Defendant.       )

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
CONCERNING PLAINTIFFS EMPLOYED BY THE OFFICE OF INSPECTOR
GENERAL IN THE DEPARTMENT OF HEALTH AND HUMAN SERVICES

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant respectfully requests the Court to grant the United States partial summary judgment, dismissing plaintiffs' claims for overtime pay pursuant to the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 et seq., arising from employment as criminal investigators at the Department of Health and Human Services' ("HHS") Office of Inspector General ("OIG"), GS-12 and GS-13, upon the grounds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law.  In support of our motion, we rely upon the pleadings, the following brief, the attached appendix, and the separately filed proposed findings of uncontroverted fact.[1]

DEFENDANT'S BRIEF

Question Presented

Whether plaintiffs, while employed by HHS's OIG, in the position of Criminal Investigator, GS-1811, pay grades GS-12 and GS-13, have been employed in a capacity that is exempt from the overtime provisions of the FLSA.

---

[1] "Def. App. ___" refers to the appendix to this motion.

<u>Statement of the Case</u>

In these consolidated actions, more than 14,000 criminal investigators and employees in related positions at various federal agencies have sued to recover FLSA overtime pay and various forms of overtime and premium pay.  This motion concerns plaintiffs' claims for FLSA overtime arising from employment as criminal investigators in grades GS-12 and GS-13 at HHS's OIG.  These plaintiffs, like other plaintiffs in these grades at other agencies, were classified as exempt from the FLSA based upon the administrative exemption created by 29 U.S.C. § 213(a)(1).  The applicability of the administrative exemption to many of these other plaintiffs has already been adjudicated.  <u>See</u> <u>Adams v. United States</u>, 27 Fed. Cl. 5 (1992) ("<u>Adams I</u>"), <u>rev'd in part</u>, 178 F.3d 1306 (Fed. Cir. 1998) ("<u>Adams II</u>"), <u>on remand</u>, 65 Fed. Cl. 195 (2005) ("<u>Adams III</u>").  However, in at least one very significant respect, investigators at HHS's OIG are situated very differently from the those whose FLSA claims have previously been adjudicated.

The previously adjudicated claims involved investigators employed by law enforcement agencies whose mission, the Court found, included the performance of criminal investigations. The Court held that, under these circumstances, conducting criminal investigations did not in itself meet the applicable criteria for the administrative exemption, because it constituted a "production" function rather than a "support" function.  However, HHS is not a law enforcement agency and its mission does not include the performance of criminal investigations.  Rather, the mission of HHS is to "enhance the health and well-being of Americans..."  HHS Performance and Accountability Report FY 2005, *available at* http://www.hhs.gov/of/reports/account/acct05 /sect1/managdiscuss.html.

2

Because GS-1811 criminal investigators in HHS's OIG are not performing the mission of the agency, but rather, are performing an important support service to the agency, by promoting the efficiency of HHS's programs by preventing waste, fraud and abuse in such programs, the criminal investigators meet the primary duty test of the administrative exemption. Furthermore, because the GS-1811-12 and GS-1811-13 criminal investigators perform nonmanual work that is intellectual in nature or of a specialized or technical nature and they frequently exercise discretion and independent judgment in performing day-to-day work, they are exempt from the FLSA as administrative employees.

Statement of Facts

The material facts have been set forth in Defendant's Proposed Findings of Uncontroverted Fact filed concurrently with this motion. The facts are not set forth in this brief except where helpful to an understanding of our argument.

Statutory and Regulatory Background

In 1974, Congress amended the FLSA to extend the Act's overtime provisions, 29 U.S.C. § 207, to Federal employees and State and local government employees. See Pub. L. No. 93-259, 88 Stat. 55, 29 U.S.C. § 203 (e)(2)(a).[2] These overtime provisions are subject to the exemptions contained in 29 U.S.C. § 213. Section 213(a)(1) provides, in pertinent part: "The

---

[2] Pay administration for most Federal employees, including the plaintiffs, is generally governed by title 5 of the United States Code. Title 5 provides, among other things, for rates of overtime and premium pay. 5 U.S.C. § 5541 et seq. If a Federal employee is eligible to receive overtime benefits pursuant to both Title 5 and the FLSA, then, pursuant to the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), Pub. L. No. 101-509, § 210, that employee is entitled to receive overtime compensation in accordance with the FLSA. Prior to FEPCA, employees eligible under both systems were entitled to be paid pursuant to whichever system provided the greater amount. 5 C.F.R. § 551.513.

provisions of section 206 and 207 of this title shall not apply with respect to – (1) any employee employed in a bona fide executive, administrative, or professional capacity . . . ."

When Congress enacted the 1974 amendments to the FLSA to extend the coverage of the FLSA to Federal employees, it made the Civil Service Commission ("CSC") responsible for administering the FLSA in the Federal sector.  This responsibility now lies with the CSC's successor, the Office of Personnel Management ("OPM").  29 U.S.C. § 204(f).  Pursuant to the authority conferred by section 204(f), the CSC and OPM have promulgated regulations for the implementation of the FLSA in the Federal sector.  5 C.F.R. § 551.101, et seq.  Among these regulations are criteria for the application of the executive, administrative, and professional exemptions contained in 29 U.S.C. § 213(a)(1).   These criteria presently appear at 5 C.F.R. §§ 551.205-551.207 (2001).  Prior to 1998, they appeared, in substantially the same form, at 5 C.F.R. §§ 551.204-551.206.  The criteria governing the administrative exemption are as follows:

> An administrative employee is an advisor, assistan[t], or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:
>
> (a)      The employee's primary duty consists of work that –
>
> > (1) Significantly affects the formulation or execution of management policy or programs; or
> >
> > (2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or
> >
> > (3) Involves substantial participation in the executive or administrative functions of a management official.

      (b)      The employee performs office or other predominantly nonmanual work which is –

            (1) Intellectual and varied in nature; or

            (2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.

      (c)      The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

      (d)  . . . .[3]

5 C.F.R. § 551.205 (1990) (currently codified at 5 C.F.R. § 551.206 (2006)).

More detailed guidance, elaborating upon the criteria contained in 5 C.F.R. Part 551, was provided in Federal Personnel Manual System ("FPM") letters that were issued by CSC and OPM over the years.   The first such FPM letter, issued several weeks after Congress extended the FLSA to the Government and prior to the promulgation of the above-cited regulations, was FPM Letter No. 551-1 (May 15, 1974).  Def. App. 1-16.  This FPM Letter, entitled "Interim Instructions for Implementing the Fair Labor Standards Act," included general guidance concerning the application of FLSA exemptions, and also listed various specific positions which were identified as typically meeting administrative exemption criteria at or above specified grade levels, and as typically being non-exempt below those grade levels.  Id.  The occupational code at issue here – Series GS-1811 –  was identified in this list as typically exempt at and above the GS-9 grade level.  Id. at 12.  The exemption instructions contained in FPM Letter No. 551-1 were cancelled and superseded by those contained in FPM Letter No. 551-7 (July 1, 1975).  Id.

---

[3] Subsection (d), which contains additional criteria for "General Schedule employees classified at GS-5 or GS-6," is not applicable here, because the positions in question are classified at GS-12 and GS-13.

at 17-40.  The latter provided far more detailed guidance than was contained in FPM Letter No.

551-1, but did not list or otherwise identify specific positions as typically exempt or non-exempt.

FPM Letter No. 551-7 was further modified by FPM Letter No. 551-13 (February 21, 1978).  <u>Id.</u>

at 41-45.  The FPM was abolished pursuant to the FPM Sunset Document, OPM Document No.

157-53-8 (Dec. 31, 1993).  <u>See</u> <u>Nebblett v. Office Of Personnel Management</u>, 237 F.3d 1353,

1358 (Fed. Cir. 2001); <u>Adams v. United States</u>, 44 Fed. Cl. 772, 777 (1999).  However, the

FLSA exemption guidelines that were contained in FPM Letter No. 551-7 (as modified by FPM

Letter No. 551-13) have largely been incorporated into a definitions section in the current

regulations.  <u>See</u> 5 C.F.R. § 551.104.

The principal provisions of the FPM letters and of 5 C.F.R. § 551.104 that are relevant to

the exemption issues in this case are substantially similar.  As set forth in the current section

551.104, these provisions are as follows:

> Discretion and independent judgment means work that involves
> comparing and evaluating possible courses of conduct, interpreting results
> or implications, and independently taking action or making a decision
> after considering the various possibilities.  However, firm commitments or
> final decisions are not necessary to support exemption. The "decisions"
> made as a result of the exercise of independent judgment may consist of
> recommendations for action rather than the actual taking of action. . . .
>
> * * *
>
> Management or general business function or supporting service, as
> distinguished from production functions, means the work of employees
> who provide support to line managers.
>
> (1) These employees furnish such support by--
>
> (i) Providing expert advice in specialized subject matter fields, such as
> that provided by management consultants or systems analysts;

(ii) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;

(iii) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(iv) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.

* * *

Primary duty typically means the duty that constitutes the major part (over 50 percent) of an employee's work. A duty constituting less than 50 percent of the work may be credited as the primary duty for exemption purposes provided that duty--

(1) Constitutes a substantial, regular part of a position;

(2) Governs the classification and qualification requirements of the position; and

(3) Is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment, and the significance of the decisions made.

* * *

Work of an intellectual nature means work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work requiring mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. . . .

5 C.F.R. § 551.104.

The FLSA provides, in effect, for double damages, by stating that an employer in violation of FLSA obligations "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . , and in an additional equal amount as liquidated

damages." 29 U.S.C. § 216(b).  The applicable statute of limitations in this action is two years or,

where a "willful violation" of the FLSA has been established, three years.  29 U.S.C. § 255(a).

In 1994, Congress provided for premium pay for criminal investigators working

unscheduled overtime, in lieu of both FLSA pay and Administratively Uncontrollable Overtime

("AUO") premium pay, pursuant to the Law Enforcement Availability Pay Act of 1994 ("LEAP

Act"), Pub. L. No. 103-329, § 633(e), 108 Stat. 2382, 2428 (Sept. 30, 1994); 5 U.S.C. 5545a(g);

29 U.S.C. § 213(a)(16).  Regardless of whether they fall within the executive, administrative, or

professional exemptions contained in 29 U.S.C. § 213(a)(1), criminal investigators receiving

LEAP pay are expressly exempted from the FLSA pursuant to 29 U.S.C. § 213(a)(16).  By

September 1995, all GS-1811 criminal investigators in HHS's OIG received LEAP pay.  See Pay

Administration; Premium Pay, 64 Fed. Reg. 4517, 4517 (Jan. 29, 1999) ("Availability pay became

effective on the first day of the first pay period beginning on or after October 30, 1994, except that

implementation was delayed until September 1995 for certain criminal investigators employed by

Inspectors General").   Since the earliest of these consolidated cases was filed on February 16,

1990, the largest possible relevant time period for purposes of this motion is February 16, 1987

through September 30, 1995.

ARGUMENT

Investigators employed by HHS's OIG during the time period at issue were exempt from

the overtime provisions of the FLSA because: 1) their primary duty was a support service to

management, rather than a production function; 2) they performed predominantly nonmanual work

that was intellectual and varied in nature and/or of a specialized or technical nature that required

8

considerable special training, experience, and knowledge; and 3) they frequently exercised

discretion and independent judgment, under only general supervision.

I.      The Primary Duty Of Investigators Employed by HHS's OIG During The Time Period At
        Issue Was To Support The Management Of HHS By Protecting HHS's Integrity By
        <u>Ensuring That HHS's Programs Ran Effectively and Efficiently</u>

        Both the statutory and regulatory framework of HHS's OIG and evidence of plaintiffs'

day-to-day activities make clear that HHS's OIG investigators were performing a support function,

rather than a production function.  In determining whether an employee meets the primary duty

test of the administrative exemption, courts, including this Court, often distinguish between

whether the employee is performing exempt "support" functions or nonexempt "production"

functions.  <u>See, e.g.</u>, <u>Adams I</u>, 27 Fed. Cl. 5; <u>Adam v. United States</u>, 26 Cl. Ct. 782 (1992);

<u>Hickman v. United States</u>, 10 Cl. Ct. 550 (1986).  Employees that engage in support services are

those who "provide a service which permits the agency to pursue its basic task, while not directly

engaging in that task."  <u>Adams I</u>, 27 Fed. Cl. at 15.  For example, in <u>Hickman</u>, 10 Cl. Ct. at 558,

the Claims Court held that data processing was a support service, rather than a production function

of the Department of the Navy.  In contrast, in <u>Adam</u>, the Claims Court held that border patrol

agents employed by the Immigration and Naturalization Service, who enforced the immigration

laws of the United States, were performing a production function because "[p]rosecuting violators

of the immigration laws directly involves performance of an INS mission and thus is a line

function of the INS."  26 Cl. Ct. at 788.  However, the <u>Adam</u> Court made clear that law

enforcement personnel who were employed by agencies that did not have a law enforcement

mission would be considered support, rather than production workers.  In distinguishing <u>Sprague</u>

<u>v. United States</u>, 230 Cl. Ct. 492 (1982), a case involving whether postal inspectors were exempt,

the Adam Court noted, "the business of the Post Office is delivering mail. An employee who

works for the Post Office in an investigatory role would not appear to be performing a line

function of the organization." 26 Cl. Ct. at 791.

Outside of the Federal employment context, courts have also held that employees that

perform services similar to OIG investigators are exempt. In Auer v. Robbins, 65 F.3d 702, 720-

21 (8th Cir. 1995), the Eighth Circuit held that internal affairs officers in a police department

performed a support service, rather than a production function of the police department. In so

holding, the Eighth Circuit noted that the officers "do not perform typical law enforcement

activities; they perform internal investigations to ensure that the officers within the department are

complying with its policies." Id. at 721. Therefore, although the internal affairs officers were

performing investigatory work, their investigatory work was not the business of the police force,

but rather, a support service that helped maintain the integrity of the police department by ensuring

that it remained "free of criminal conduct or other types of legal or ethical violations." Id. at 720.;

see also Raper v. Iowa, 688 N.W.2d 29 (Iowa 2004) (holding that internal affairs officers were

administratively exempt from the overtime provisions of the FLSA).

In Jastremski v. Safeco Insurance Cos., 243 F. Supp. 2d 743 (N.D. Ohio 2003), and Palacio

v. Progressive Insurance Co., 244 F. Supp. 2d 1040 (C.D. Cal. 2002), courts held that insurance

claims adjusters, who investigated and settled insurance claims for their employer insurance

companies, performed support functions to the insurance companies, not production functions. In

both cases, the courts held that the business of the insurance companies was to produce insurance

policies, not investigate and settle claims.  Jastremski, 243 F. Supp. 2d at 753; Palacio, 244 F.

Supp. 2d at 1047.[4]

The duties of criminal investigators at HHS's OIG consist of performing a support function

to HHS, similar to an internal affairs officer or insurance claim adjuster, rather than a criminal

investigator in an agency whose mission is to investigate crimes.

The mission of HHS is to "enhance the health and well-being of Americans by providing

for effective health and human services and by fostering strong, sustained advances in the

sciences, underlying medicine, public health and social services."  HHS Performance and

Accountability Report FY 2005, *available at* http://www.hhs.gov/of/reports/account/acct05/sect1

/managdiscuss.html.[5]  As such, the mission of HHS is not enforcing the nations laws and, as

demonstrated below, the law enforcement purpose of HHS's OIG is to protect the integrity and

efficiency of the agency, much like an internal affairs office of a police department or claims

investigation and settlement department of an insurance company.

The Inspector General Act of 1978 ("OIG Act") established OIGs in various agencies,

including HHS.  5 U.S.C. App. 3 §§ 2, 11(a).  The OIG is a component of the agency to which it is

---

[4]  Other employees with investigatory duties have often been held to be performing
support functions to management.  See, e.g., O'Dell v. Alyeska Pipeline Service Co., 856 F.2d
1452 (9th Cir. 1988) (oil company's field inspector, who observed oil field work and assured
compliance with pertinent regulations and industry standards was exempt from the FLSA's
overtime provisions as an administrative employee); Baker v. California Shipbuilding Corp., 73
F. Supp. 322, 327 (S.D. Cal. 1947) (Safety inspectors in a shipbuilding yard were held to be
administratively exempt).

[5]  HHS's mission during the period 1987-1995 was not materially different than its current
mission.  United States Government Manuals from the relevant time period state, "[t]he
Secretary of HHS advises the President on health, welfare, and income security plans, policies
and programs of the Federal Government.  The Secretary directs [HHS] staff in carrying out the
approved programs and activities of [HHS]. . ."  See, e.g., Def. App. 72-76.

assigned.  In <u>National Aeronautics and Space Administration v. FLRA</u>, 527 U.S. 229 (1999), the

United States Supreme Court held that an OIG employee is a "representative of the agency" within

the meaning of 5 U.S.C. § 7114(a)(2)(B), which provides a right to union representation when an

employee is investigated by a representative of the agency.  <u>See</u> <u>also</u> <u>United States Department of</u>

<u>Justice v. FLRA</u>, 266 F.3d 1228 (D.C. Cir. 2001).  In so holding, the United States Supreme Court

noted that, other than certain Congressional committees and the President, "each Inspector General

has no supervisory authority – except the head of the agency of which the OIG is a part."  <u>NASA</u>

<u>v. FLRA</u>, 527 U.S. at 240.  The Supreme Court also noted that OIG investigative offices perform

their duties "with regard to, and on behalf of, the particular agency in which it is stationed."  <u>Id.</u>

Therefore, the Supreme Court made clear that the OIG is a part of the agency to which it is

assigned, and thus, HHS's OIG is a part of HHS.[6]

 The OIG of each agency is charged with the duty to "conduct, supervise, and coordinate

audits and investigations relating to the programs and operations" of that agency.  5 U.S.C. App. 3

§ 4(a).  A March 9, 1989 opinion of the Office of Legal Counsel, Department of Justice, explains

that the scope of an OIG's authority does not extend to "regulatory investigations," <u>i.e.,</u>

investigations that have the objective of "regulatory compliance by private parties," but rather,

"investigations properly within the ambit of the Inspector General generally have as their objective

the elimination of waste and fraud in governmental departments, including waste and fraud among

its employees, contractors, grantees and other recipients of federal funds."  <u>Inspector General</u>

---

 [6] Additionally, several courts have held that the OIG is a part of its agency for which it
performs investigations for purposes of the intra-agency "need to know" exception to the Privacy
Act.  <u>Covert v. Harrington</u>, 876 F.2d 751, 756 n.3 (9th Cir. 1989); <u>Ivey v. Snow</u>, Civil Action
No. 04-0214 (EGS), 2005 U.S. Dist. LEXIS 18872, at *8-9 (D.D.C. August 31, 2005); <u>Marcotte</u>
<u>v. Secretary of Defense</u>, 618 F. Supp. 756, 763 (D. Kan. 1985).

Authority to Conduct Regulatory Investigations, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70, at *2 n.1 (March 9, 1989).  Therefore, OIGs do not have the authority to investigate violations of law unless they relate to the efficiency of the agency of which the OIG is a part.

During the relevant time, the mission of HHS's OIG included promoting the efficiency and effectiveness of HHS programs by preventing and detecting fraud and abuse.  See Office of Inspector General; Statement of Organization, Functions and Delegations of Authority, 54 Fed. Reg. 46775 (Nov. 7, 1989); Statement of Organization, Functions and Delegations of Authority; Office of Inspector General, 50 Fed. Reg. 45488 (Oct. 31, 1985).  The statutory and regulatory mandate and mission of HHS's OIG make clear that the employees of their offices perform support functions for their respective agencies, not production functions.  Put simply, the business of HHS is health and social services, not law enforcement.  Therefore, criminal investigators in HHS's OIG are performing a support service rather than a production function for HHS.  See Adam, 26 Cl. Ct. at 791 ("the business of the Post Office is delivering mail.  An employee who works for the Post Office in an investigatory role would not appear to be performing a line function of the organization.").

Besides the general statutory and regulatory mandate and missions of HHS's OIG, the position descriptions of criminal investigators in HHS's OIG that were in effect during the vast majority of the relevant time period,[7] Semiannual Reports of HHS's OIG and the annexed

---

[7]  The position descriptions we have relied upon throughout the motion, the SPD-804 and SPD-805, were in effect from approximately December 18, 1987 through April 16, 2001.  Def. App. 46.  In his annexed declaration, Michael Little stated that, during the period from February 16, 1987 through September 30, 1995, the duties of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG did not vary significantly in the aggregate from year to year and that the SPD-804 and SPD-805 position descriptions are an accurate reflection of the duties and skills necessary for a GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG during the entire

declaration of the Deputy Inspector General for Investigations of HHS's OIG, Michael Little,

further demonstrate that the GS-1811-12 and GS-1811-13 criminal investigators were performing

a support service rather than a production function for HHS.

The SPD-804 and SPD-805 position descriptions for GS-1811-12 and GS-1811-13 criminal

investigators, respectively, in the Office of Investigations of HHS's OIG describes the

investigative activities of HHS's OIG as involving "allegations of criminal activities perpetrated

by providers of services, program participants, contractors, grantees, and private individuals as

well as [HHS] employees and others involving programs funded by [HHS] and [HHS] operations."

Def. App. 50, 58.  Furthermore, the "primary functions of the [Criminal Investigations Division]

are to conduct and direct criminal investigations of alleged or suspected violations of the criminal

laws of the United States relating to the programs and operations of [HHS]."  Id.  The position

descriptions indicate that the primary function of a GS-1811-12 and GS-1811-13 criminal

investigator was to investigate crimes against HHS programs.

Mr. Little estimates that, during the period February 16, 1987 through March 30, 1995,

approximately 40-45 percent of the time of a typical GS-1811-12 or GS-1811-13 criminal

investigator in HHS's OIG was spent investigating Medicare and Medicaid fraud.  Id. at 66.  One

common type of Medicare and Medicaid fraud was the investigation of false statements by health

care providers in the filing of claims or statements.  See, e.g., id. at 84, 107-110.  For example, as a

result of one investigation, a state-owned hospital in Iowa agreed to repay Medicare $521,170 for

overbilling for services.  Id. at 107.  Clearly, the purpose of these types of investigations is to

---

period of February 16, 1987 through September 30, 1995.  Id. at 66, 70.  Therefore, the SPD-804
and SPD-805 accurately reflect the duties and skills necessary for GS-1811-12 and GS-1811-13
criminal investigators throughout the entire relevant period.

protect the integrity and efficiency of the Medicare and Medicaid programs.  Investigators also investigated illegal "kickbacks," or payments in exchange for Medicare or Medicaid referrals. See, e.g., id. at 85, 111-12.  Kickbacks may directly or indirectly increase Medicare and Medicaid costs.  Id. at 111.  Thus, these investigations are designed to protect the integrity and efficiency of the Medicare and Medicaid programs.  Another common type of Medicare or Medicaid fraud HHS's OIG investigated was fraudulent schemes in which Medicare or Medicaid was billed for durable medical equipment that was never delivered, higher cost equipment than was actually delivered, totally unnecessary equipment or supplies or equipment delivered in a different state than billed in order to obtain higher reimbursement.  See, e.g., id. at 91-92, 113-15.  Again, this type of fraud resulted in losses to the Medicare and Medicaid programs.  See, e.g., id.  Thus, the investigations into durable medical equipment fraud were designed to protect the integrity and efficiency of Medicare and Medicaid programs.

Mr. Little estimates that, during the period from February 16, 1987 through March 30, 1995, another approximately 40-45 percent of the time of a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG was spent investigating Social Security fraud.  Id. at 67.  Mr. Little estimates that about half that time, or 20-22.5 percent of an investigator's overall time, was spent investigating people fraudulently obtaining Social Security and Supplemental Security Income benefits.  Id. at 67; see also Def. App. 80-83, 116-21.  Investigations into fraudulently obtaining Social Security and Supplemental Security Income benefits are clearly designed to protect the integrity and efficiency of the existing Social Security program, rather than any independent law enforcement mission.  The other half of a typical investigator's Social Security fraud time was spent investigating people fraudulently obtaining Social Security Numbers

15

("SSNs") and utilizing fraudulent SSNs to commit other crimes.  Id. at 67; see also Def. App. 79-

80, 122-23.  Although this type of investigation is not designed to detect people who have

fraudulently obtained or misused HHS funds, like Medicare, Medicaid and other types of Social

Security fraud, this type of investigation is also a support service to HHS because it promotes the

integrity of HHS's SSN system.  Additionally, in the Social Security Administration's ("SSA")

OIG's May 1999 Management Advisory Report, entitled "Using Social Security Numbers to

Commit Fraud," the Social Security Administration OIG stated that its "audits and investigations

have clearly identified that the integrity of [SSA's] enumeration process materially impacts on

fraud, waste, and abuse at SSA."[8]  Id. at 129.  For example, when people fraudulently obtain and

misuse SSNs and these SSNs are reported to employers, the SSA must expend additional effort in

administering its "suspense file," which keeps track of the earnings for employees whose SSN's do

not match SSA's records.[9]  Id. at 134.  In addition, the May 1999 report by SSA's OIG recognized

that "[i]n addressing the issue of SSN fraud, SSA expends significant resources . . . to hire, train,

and retain personnel who must spend a portion of every day working on issues related to SSN

fraud."  Id. at 135.  Furthermore, in this report, SSA's OIG also noted that "SSA recognized that

the public's confidence in its stewardship of [SSA] programs is undermined when individuals

succeed in abusing [SSA] systems."  Id. at 131.

     Mr. Little estimates that, during the period from February 16, 1987 through March 30,

1995, another approximately 5-15 percent of the time of a typical GS-1811-12 or GS-1811-13

---

[8]  SSA was a part of HHS during the period February 16, 1987 through March 30, 1995,
but became a separate agency, with its own OIG, on March 31, 1995.  See id. at 67, 106.

[9]  The "suspense file" has been in place since approximately 1937.  Id. at 137-38.

criminal investigator in HHS's OIG was spent investigating other types of crimes involving HHS programs.  Id. at 67.  Examples of these types of crimes are embezzlement of Public Health Service grants, See, e.g., id. at 93, 124, and fraudulently obtaining welfare benefits.  See, e.g., id. at 86-87, 125-26.  Also, Mr. Little estimates that, during the period from February 16, 1987 through March 30, 1995, the other 5 percent of the time of a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG was spent investigating employee misconduct.  Id. at 67; see also Def. App. 78, 127.

On or about March 31, 1995, SSA became an independent agency with its own OIG.  Id. at 104.  Therefore, with limited exceptions for certain cases in progress, after March 30, 1995, criminal investigators in HHS's OIG did not investigate Social Security fraud.  Id. at 67-68.  As such, during the period from March 31, 1995 through September 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 80-85 percent of his or her time investigating Medicare and Medicaid fraud, approximately 10-15 percent of his or her time investigating other types of crimes involving HHS programs and approximately 3-5 percent of his or her time investigating employee misconduct.  Id. at 67-68.

Thus, at all times during the period from February 16, 1987 and September 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG spent the vast majority of his or her time investigating fraud upon HHS's programs.

Additionally, it cannot reasonably be disputed that the supporting services performed by GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG are of substantial importance to HHS.  From April 1, 1987 through March 31, 1988, investigations by HHS's OIG resulted in $68 million in fines, savings, restitutions, settlements and recoveries for the Treasury of the United

17

States, the Social Security and Medicare trust funds, HHS programs and other entities victimized by fraud and abuse.  <u>Id.</u> at 88-89, 94-95.  From April 1, 1988 through March 31, 1989, investigations by HHS's OIG resulted in $74.4 million in fines, savings, restitutions, settlements and recoveries for the Treasury of the United States, the Social Security and Medicare trust funds and HHS programs victimized by fraud and abuse.  <u>Id.</u> at 97-99, 101-02.  In fact, investigations by HHS's OIG resulted in millions of dollars each year in fines, savings, restitutions, settlements and recoveries for the Treasury of the United States, the Social Security and Medicare trust funds and HHS programs victimized by fraud and abuse during the period 1987 through 1995.  <u>Id.</u> at 70. This was highlighted by a record settlement of $379 million against a health care corporation in 1994.  <u>Id.</u> at 104.

Therefore, because GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG perform a support service that is of substantial importance to HHS, the GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG meet the primary duty test of the administrative exemption.

II.     GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HHS's OIG Performed Predominantly Nonmanual Work That Was Intellectual and Varied In Nature And/Or Of A Specialized Or Technical Nature That Required Considerable Special Training, Experience, And Knowledge

The position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG and Mr. Little's declaration show that GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG during the relevant time period performed predominantly nonmanual work that was intellectual and varied in nature and/or of a "specialized or technical nature that requires considerable special training, experience, and knowledge."  In <u>Adams I</u>, 27 Fed. Cl. at 19-24, this Court held that GS-1811-9, GS-1811-11, GS-1811-12 and GS-1811-13 criminal investigators in

the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the Drug Enforcement Administration

("DEA"), the Internal Revenue Service ("IRS") and Secret Service all perform nonmanual work

that is intellectual and varied in nature.  The Federal Circuit did not disturb this conclusion or the

Court's analysis in Adams I.  Adams II, 178 F.3d 1306; Adams III, 65 Fed. Cl. at 205.

The duties performed by GS-1811-12 and GS-1811-13 criminal investigators in HHS's

OIG are similar to duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the

agencies at issue in Adams I, except that criminal investigators in HHS's OIG are focused only

upon crimes related to HHS's programs and employees.  Both GS-1811-12 and GS-1811-13

criminal investigators in HHS's OIG plan, conduct and lead complex criminal investigations.  Def.

App. 51, 59.  The major duties of GS-1811-12 and GS-1811-13 criminal investigators during the

relevant time period were to: 1) plan investigative activity; 2) initiate contact with Federal, state

and local officials; 3) examine records, books and other data of consequence; 4) verify the

accuracy and authenticity of evidence; 5) conduct interviews with suspects, witnesses and

informants; 6) serve subpoenas and assist in executing warrants and arrests; 7) plan and conduct

surveillance; 8) prepare interim and comprehensive final investigative reports; 9) provide advice

and assistance to the Department of Justice and United States Attorneys in preparing cases to

present before grand juries and at trial; and 10) testify before grand juries and at trial.  Id. at 51-53,

59-62.  Mr. Little confirmed that these are the duties upon which GS-1811-12 and GS-1811-13

criminal investigators in HHS's OIG spent the vast majority of their time.  Id. at 68.

None of the duties listed above could be considered manual work.  In Adams I, 27 Fed. Cl.

at 16, this Court determined that manual work is work where employees spend most of their time

"using tools, instruments, machinery, or other equipment, or in performing repetitive operations

with their hands."  None of the above duties involve repetitive operations or using tools,

instruments or machinery.  Also, while executing warrants and arrests by participating in raids,

searches or seizures can be physically active work, such work is not considered to be manual

labor, Id. at 19, and, regardless, such work took up a minimal portion of a typical GS-1811-12 or

GS-1811-13 criminal investigator's time.  Def. App. 68.

Additionally, the performance of all of these duties is intellectual and varied in nature.

"Work of an intellectual nature means work requiring general intellectual abilities, such as

perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject

matter fields, or work requiring mental processes which involve substantial judgment based upon

considering, selecting, adapting, and applying principles to numerous variables. . ."  5 C.F.R.

§ 551.104.  Each of the duties described above requires the criminal investigator to use

perceptiveness, analytical reasoning, perspective and judgment.  For example, in interviewing

witnesses and subjects, the criminal investigator must assess the credibility of each interviewee.

Def. App. 69.  In examining evidence, the criminal investigator must determine which evidence is

reliable and relevant to prove the case.  Id.  Also, in planning and conducting surveillance,

investigators must determine when the necessary evidence has been obtained or when it is unlikely

that such evidence will be obtained in that surveillance.  Id. at 70.  Additionally, it is clear from the

number and variety of different tasks that the criminal investigators performed that their work was

varied in nature.

GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG also performed

nonmanual work of a "specialized or technical nature that requires considerable special training,

20

experience, and knowledge."  5 C.F.R. § 551.205(b)(2) (1990).  The position description for

GS-1811-12 criminal investigators in HHS's OIG states:

> The incumbent of this position must possess an extensive knowledge of generally
> accepted investigative principles, techniques, methods and procedures and a
> knowledge of the laws of evidence, the rules of criminal procedure, and precedent
> court decisions concerning admissibility of evidence, constitutional rights, search
> and seizure and related issues; the ability to recognize, develop and present
> evidence that reconstructs events, sequences, and time elements and establishes
> relationships, responsibilities, legal liabilities, conflicts of interest, in a manner
> that meets requirements for presentation in various legal hearings and court
> proceedings; and skill in applying the techniques required in performing such
> duties as maintaining surveillance, performing undercover work, and advising and
> assisting the U.S. Attorney in and out of court.

> He/she must be thoroughly familiar with the many varied and complex [HHS]
> programs and operations; and have a comprehensive knowledge of laws, policies,
> regulations, directives, procedures, and instructions governing, affecting and
> pertaining to [HHS's] activities.

Def. App. 54.  Similarly, the position description for GS-1811-13 criminal investigators in HHS's

OIG states:

> The incumbent of this position must possess an expert knowledge of generally
> accepted investigative principles, techniques, methods and procedures and a high
> degree of knowledge and expertise with respect to the laws of evidence, the rules
> of criminal procedure, and expertise with respect to precedent court decisions
> concerning admissibility of evidence, constitutional rights, search and seizure and
> related issues; the ability to recognize, develop and present evidence that
> reconstructs events, sequences, and time elements and establishes relationships,
> responsibilities, legal liabilities, conflicts of interest, in a manner that meets
> requirements for presentation in various legal hearings and court proceedings; and
> skill in applying the techniques required in performing such duties as maintaining
> surveillance, performing undercover work, and advising and assisting the U.S.
> Attorney in and out of court.

> He/she must be thoroughly familiar with the many varied and complex [HHS]
> programs and operations; and have a comprehensive knowledge of laws, policies,
> regulations, directives, procedures, and instructions governing, affecting and
> pertaining to [HHS's] activities.

Id. at 63.  GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG obtained this

knowledge and skill through training at the Federal Law Enforcement Training Center and years of

on the job experience.  Id. at 70.

Therefore, during the relevant time period, the work of GS-1811-12 and GS-1811-13

criminal investigators in HHS's OIG was predominantly nonmanual work that was intellectual and

varied in nature and/or of a specialized or technical nature that required considerable special

training, experience, and knowledge.

III.    GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HHS's OIG Frequently
        Exercised Independent Judgment And Discretion Under Only General Supervision

The position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HHS's

OIG and Mr. Little's declaration demonstrate that GS-1811-12 and GS-1811-13 criminal

investigators in HHS's OIG frequently exercised independent judgment and discretion under only

general supervision.  As noted above, "[d]iscretion and independent judgment means work that

involves comparing and evaluating possible courses of conduct, interpreting results or

implications, and independently taking action or making a decision after considering the various

possibilities."  5 C.F.R. § 551.104.  The work must also meet the following criteria: 1) "[t]he work

must be sufficiently complex and varied so as to customarily and regularly require discretion and

independent judgment in determining the approaches and techniques to be used, and in evaluating

results"; 2) "[t]he employee must have the authority to make such determinations during the course

of assignments"; and 3) "[t]he decisions made independently must be significant."  Id.

In Adams I, 27 Fed. Cl. at 19-24, this Court held that GS-1811-12 and GS-1811-13

criminal investigators in the ATF, DEA, IRS and Secret Service all frequently exercised

independent judgment and discretion under only general supervision.  The Federal Circuit did not

disturb this conclusion or the Court's analysis in <u>Adams I</u>.  <u>Adams II</u>, 178 F.3d 1306; <u>Adams III</u>, 65 Fed. Cl. at 205.  Similarly, GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG during the relevant time period frequently exercised independent judgment and discretion under only general supervision.

The position description for GS-1811-12s in HHS's OIG notes that the investigator must perform duties "with a high degree of personal responsibility for sound judgment and decisions." Def. App. 53-54.  The position description for GS-1811-13s in HHS's OIG notes that the job requires an "extremely high degree of ingenuity and initiative and expertise." <u>Id.</u> at 62.

Mr. Little also confirmed the discretion and independent judgment exercised by GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG.  GS-1811-13 criminal investigators in HHS's OIG were responsible for generating their own cases through various contacts.  <u>Id.</u> at 68.  GS-1811-12 criminal investigators in HHS's OIG generated about half of their cases on their own.  <u>Id.</u>  Both GS-1811-12 and GS-1811-13 investigators in HHS's OIG were expected to handle nearly every aspect of the case without the help of a supervisor.  <u>Id.</u> at 69. Only in special situations would a GS-1811-12 or GS-1811-13 investigator need approval from a supervisor to perform a task, such as consensual monitoring (wiring a witness) and wiretaps.  <u>Id.</u> Day-to-day decisions such as what witnesses to interview, who to conduct surveillance on, when to involve other law enforcement personnel, etc. were handled by the GS-1811-12 or GS-1811-13 investigator without the approval of a supervisor.  <u>Id.</u>

Both position descriptions also make clear that the investigators work under only "general supervision of a Supervisory Criminal Investigator."  <u>Id.</u> at 53, 62; <u>see</u> <u>also</u> Def. App. 68-69.  For GS-1811-12 criminal investigators in HHS's OIG, their completed work was reviewed "for

accomplishment of overall objectives of assigned duties and responsibilities and adherence to policy, regulatory requirements, quality of written work, case documentation and timeliness." Id. at 54.  For GS-1811-13 criminal investigators in HHS's OIG, "[r]eview of work [was] in the form of discussions at certain critical points."  Id. at 62.

Specific examples of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG exercising discretion and independent judgment include: 1) altering investigative plans by interviewing different witnesses based upon information learned in other witness interviews; 2) expanding or contracting the scope of an investigation; 3) credibility determinations; 4) determinations of the pieces of evidence that should be presented to United States Attorneys or other prosecutors; and 5) when conducting surveillance, determining when the necessary evidence had been collected or when it was unlikely that such evidence would be obtained at that time.  Id. at 69-70.  At almost all times, GS-1811-12 and GS-1811-13 criminal investigators had complete discretion to follow the case wherever the evidence led them.  Id. at 70.  Additionally, as noted above, the tasks performed by GS-1811-12 and GS-1811-13 criminal investigators were complex and varied.

Therefore, the position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG and Michael Little's declaration show that GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG frequently exercised independent judgment and discretion under only general supervision.

24

<u>CONCLUSION</u>

For the reasons stated above, we respectfully request that the Court enter partial summary judgment in favor of the United States dismissing all of plaintiffs' remaining FLSA claims arising out of employment as criminal investigators at HHS's OIG.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ David M. Cohen

DAVID M. COHEN
Director

/s/ Shalom Brilliant

OF COUNSEL:                                    SHALOM BRILLIANT
Michael J. Dierberg                            Senior Trial Counsel
William P. Rayel                               Commercial Litigation Branch
Trial Attorneys                                Civil Division
Commercial Litigation Branch                   Department of Justice
Civil Division                                 1100 L Street, N.W.
Department of Justice                          Attn:  Classification Unit
                                                    8th Floor
                                               Washington, D.C.  20530
                                               Tele:  (202) 305-7561

                                               Attorneys for Defendant

December 22, 2006