IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,     )
                         )
     Plaintiffs,        )
                         )
     v.            )     No. 90-162C
                         )     and consolidated cases
THE UNITED STATES,     )     (Judge Bush)
                         )
     Defendant.      )

Declaration of Alcine Pike

I, Alcine Pike, declare as follows:

1.     I am currently a Supervisory Human Resources Management Specialist, Rockville Human Resources Center, United States Department of Health and Human Services ("HHS"). I began serving as a Human Resources Specialist with HHS in January 1990. I have been servicing HHS's Office of Inspector General ("OIG") since approximately 1996. In this position, I am responsible for overseeing the Human Resources function for HHS's OIG. I submit this declaration in support of defendant's motion for summary judgment.

2.     Annexed hereto as Exhibits A and B are, respectively, true and correct copies of position descriptions for GS-1811-12 and GS-1811-13 criminal investigators that were used by the Office of Investigations in HHS's OIG beginning on or about December 18, 1987, through on or about April 16, 2001 (when they were superseded by new position descriptions).

**46**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this ____

day of December, 2006.

_____
Alcine Pike

**47**

# EXHIBIT A

# POSITION DESCRIPTION *(Please Read Instructions on the Back)*

| | | 6. Agency Position No. |
|---|---|---|
| | | SPD-804 |

| 2. Reason for Submission | 3. Service | 4. Employing Office Location | 5. Duty Station | 6. CSC Certification No. |
|---|---|---|---|---|
| [X] Redescription  [ ] Reestablishment  [ ] New  [ ] Other | [ ] Dept  [X] Field | Washington, D.C. | Washington, DC | |

Explanation *(Show any positions replaced)*

Supersedes PD# 82-1329

| 7. Fair Labor Standards Act | 8. Employment/Financial Stmt Required | 9. Subject to IA Action |
|---|---|---|
| [X] Exempt  [ ] Nonexempt | [ ] Yes  [X] No | [X] Yes  [ ] No |

| 10. Position Status | 11. Position is | 12. Sensitivity | 13. Competitive Level Code |
|---|---|---|---|
| [X] Competitive  [ ] Excepted *(Specify)* | [ ] Supvsry  [ ] Managerial  [ ] Neither | [X] Critical  [ ] Noncritical  [ ] Nonsensitive | 0000 |

14. Agency Use

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupational Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | Criminal Investigator | GS | 1811 | 12 | 2 | 12/18/87 |
| c. Bureau | | | | | | |
| d. Field Office | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

| 16. Organizational Title of Position (if different from official title) | 17. Name of Employee (if vacant, specify) |
|---|---|
| Special Agent | |

| 18. Department, Agency, or Establishment | c. Third Subdivision |
|---|---|
| Department of Health and Human Services | Office of Investigations |
| **a. First Subdivision** | **d. Fourth Subdivision** |
| Office of the Secretary | Washington Field Office |
| **b. Second Subdivision** | **e. Fifth Subdivision** |
| Office of Inspector General | |

| 19. Employee Review. *This is an accurate description of the major duties and responsibilities of my position* | Signature of Employee (optional) |
|---|---|

20. Supervisory Certification. *I certify that this is an accurate statement of the major duties and responsibilities of this position and its organizational relationships, and that the position is necessary to carry out Government functions for which I am responsible. This certification is made with the knowledge that this information is to be used for statutory purposes relating to appointment and payment of public funds, and that false or misleading statements may constitute violations of such statutes or their implementing regulations.*

| a. Typed Name and Title of Immediate Supervisor | b. Typed Name and Title of Higher-Level Supervisor or Manager (optional) |
|---|---|
| Assistant Regional Inspector General for Investigations | Robert A. Simon, DAIG-CID |
| Signature *Michael P. Cleonti* | Date 3/23/88 | Signature | Date 12/18/87 |

21. Classification/Job Grading Certification. *I certify that this position has been classified/graded as required by Title 5, U.S. Code, in conformance with standards published by the Civil Service Commission or, if no published standards apply directly, consistently with the most applicable published standards.*

Typed Name and Title of Official Taking Action

Vivian Olivari, Supvy Position Classification Specialist

Signature _____ Date 12/18/87

| 22. Standards Used in Classifying/Grading Position |
|---|
| Criminal Investigating Series GS-1811  2/72 |

*Information for Employees. The standards and information on their application are available in the personnel office. The classification of the position may be reviewed and corrected by the agency or the Civil Service Commission. Information on classification/job grading appeals, and complaints on exemption from FLSA, is available from the personnel office or the Commission.*

| 23. Position Review | Initials | Date | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|---|---|
| a. Employee (optional) | | | | | | | | | | |
| b. Supervisor | | | | | | | | | | |
| c. Classifier | | | | | | | | | | |

24. Remarks

On December 17, 1987 Secretary Otis Bowen determined that this position is a law enforcement officer for FERS retirement purposes. This position covered under 5 U.S.C. 8336(c) for CSRS by OPM letter 1-11-89.

THIS IS A CRITICAL-SENSITIVE POSITION

25. Description of Major Duties and Responsibilities *(see attached)*

Optional Form 8 (Revised 8  
U.S. Civil Service Commission, FPM Chapter

Criminal Investigator                SPD - 804
(Special Agent)
GS-1811-12

## I.  INTRODUCTION

This position is established in the field service, Criminal
Investigations Division, Office of Investigations (OI), Office of
the Inspector General (OIG), Department of Health and Human
Services (HHS).

The magnitude and complexity of HHS program extends over more
than 300 separate programs and impacts in all geographic areas
nationwide.  The large budget of the Department and the
characteristics of the varied programs are potentially vulnerable
to fraud and other criminal violations.  The programs of the
Department and the activities of OIG draw high political, social,
and economic interest; the interest of the health service
community; special interest groups, beneficiaries of the
programs, grantees, contractors, and the general public and
intense news media interest.

Investigative activities of OI involve allegations of criminal
activities perpetrated by providers of services, program
participants, contractors, grantees, and private individuals as
well as Department employees and others involving programs funded
by the Department and Departmental operations.

The primary functions of the Division are to conduct and direct
criminal investigations of alleged or suspected violations of the
criminal laws of the United States relating to the programs and
operations of the Department.

 Incumbent serves as a journeyman level Criminal Investigator
(Special Agent) and is assigned to one of the Field Offices or
one of the sub-offices to conduct independently or as a team
member criminal investigations presenting a high degree of
difficulty and complexity.  Serves as team leader for agents
assigned on a project or occasional basis.

Cases are characterized by the difficulty of working with
fragmentary or cold evidence; the prominence or characteristics
of the subjects investigated; the substantial number of separate
investigative matters which may grow from original assignments;
the high degree of skill required to establish the
interrelationship of fact and evidence; the interwoven facts of
conspiracies and multi-layered business organizations; the high
degree of sensitivity that assigned cases involve; and
significant jurisdictional problems.

12/1

SPD – 804

## II. <u>DUTIES</u>

Plans and conducts criminal investigations, of a highly complex
and difficult nature, independently as a lead agent or as a team
member. Cases frequently concern highly sensitive matters
related to critical issues and/or prominent individuals,
complicated by obscure leads, few visible records, conflicting
evidence and other barriers, including language and customs,
alleged or suspected violations of Federal statutes involving
fraud against the Government, bribery, conflict of interest,
improper and false claims, collusion, misuse of loan/grant funds,
conversion of government property, embezzlement, and kickbacks.

Studies case to determine the applicable laws and the
implementing regulations which were violated, the proof required
to place responsibility for the violations, and the methods for
obtaining, preserving, and presenting the evidence so it will be
most useful. Determines the most effective manner for planning,
developing and conducting investigations and any additional
resources required.

Plans investigative activity with proper geographic and time
distribution so as to validate allegations, and the evidence
gathered; and relate events to the milestones and critical points
in the progress of the case, in order to keep on target.

Initiates contacts with Federal, State, and local officials,
civic and business leaders, officials of lending institutions,
medical facilities, societies, and other organizations and
individuals related to matters under investigation for the
purpose of obtaining facts, signed statements, explanation of
actions, etc.; to learn sequence of events and background or
related information that incumbent determines is required, and to
determine the sequence of interviews and the extent/scope of
investigations. Examines records, books, payrolls, reports,
correspondence and other data of consequence to the transactions,
actions, or allegations under investigation. Verifies,
corroborates and establishes relationships of all facts and
evidence obtained, presented or alleged in order to establish the
accuracy and authenticity. Establishment of relationships is
often remote and difficult. Utilizes services of forensic
laboratories to identify handwriting, fingerprints, questioned
documents and substances, sound and video recordings, and other
physical evidence.

The Special Agent conducts investigations of subjects engaged in
activities that are the concern of several local, county, State
and Federal agencies. This involves a web of relationships that
requires the application of extensive knowledge of the laws,
rules, policies and practices of each of these jurisdictions.

12/2

**51**

Conducts interviews with suspects, witnesses and informants in case development. Plans and times serving of warrants and subpoenas and participation of other law enforcement agencies as required. Serves subpoenas and participates with other law enforcement agents in the execution of arrests and the search for, and seizure of, evidence. As assigned, is appointed Special Deputy U.S. Marshal with full law enforcement authority. In such instances, incumbent carries an authorized firearm; executes arrest and search warrants; apprehends, searches, and transports violators and arranges for their appropriate detention.

Investigations may involve criminal activities carried out under cover of legitimate organizations, diversion of legitimate financial interests to finance illegal activities, or organized fronts carrying out illegal operations through several unrelated activities.

The Special Agent is often involved in reconstruction of activities and/or records from fragments or scattered sources by working towards the center of criminal activity, by use of informants and working undercover, or arranging for and coordinating with individuals working undercover.

The development of the full depth and breadth of the investigation includes planning and conducting surveillance of a suspect or various groups of suspects, and coordinating the activities of others required to participate in the surveillance.

Problems are also presented where jurisdiction may be obscure or diffused, requiring coordination with other OIG offices, other Federal agencies, local, county, and State officials.

Initiates requests for approval for use of mail covers and recording instruments and special devices, in accordance with mandatory legal requirements and instructions for the Department of Justice and the U.S. Postal Service.

Investigations require ferreting out legal or administratively defensible testimony requiring such techniques as, for example, pitting a violator, criminal or witness against another and extensively checking the word of one against another, which imposes a need to verify and evaluate information with extreme care.

During all investigational phases, keeps supervisor informed of problem areas encountered and of progress being made. On own initiative, decides when to enlist the assistance of other Federal, State and local law enforcement officers and coordinates investigational efforts with them.

Prepares interim and comprehensive final investigative reports for prosecutive and management officials. Responsible for the

12/3

**52**

preparation of investigative reports which are logical, clear, and complete, presenting all aspects of the investigation in sufficient detail with the highest degree of accuracy to aid in supporting positive prosecution and/or administrative action.

The Special Agent prepares a Management Implication Report (MIR) in those cases where programmatic weaknesses were identified in the investigative process.  The Special Agent reports program areas involved, observations, existing integrity controls and lack of controls, and how controls were circumvented or how they worked to prevent violation and prepares recommendations for improvement, which may result in regulatory or procedural changes.

Through his/her supervisor, the Special Agent confers with and advises responsible management officials on investigative activities and reports; the course direction and progress of investigations; significant findings and developments; problems or questions of evidence, testimony or law; actions to be taken; and other related matters.

The Special Agent also conducts civil and administrative investigations under other procedures.  The documentation in these cases differs from the criminal cases.  Cases which may initially appear to be civil or administrative violation may result in the identification of criminal aspects to the case.  Cases which are criminal in nature may be determined to be more effectively prosecuted under civil or administrative procedures due to jurisdictional precedents.  Cases prosecuted under criminal procedures are also referred for further investigation and penalty under civil procedure.

Provides advice and assistance to the department of Justice and U.S. Attorneys in the preparation of cases for presentation to Federal Grand Juries.  Assists U.S. Attorneys in the selection of witnesses, the preparation of evidence, and exhibits for trial, and with the organization and presentation of the cases at trial.  Testifies before Grand Juries and in trial courts and in administrative hearings, in matters involving violations of Federal Criminal statutes, civil fraud, and administrative violations.

III. <u>SUPERVISORY CONTROLS</u>

The Special Agent works under the general supervision of a Supervisory Criminal Investigator who makes work assignments and assigns the Special Agent as a team member.  Supervisor or team leader/lead agent provides policy guidance such as information on jurisdictional problems or new court decisions and other special technical aspects which impact the on case.  Incumbent performs

12/4

**53**

duties with a high degree of personal responsibility for sound
judgment and decisions.

The Special Agent confers with supervisor/team leader on critical
and controversial situations and keeps him/her briefed on status
of work.  Completed work is reviewed for accomplishment of
overall objectives of assigned duties and responsibilities and
adherence to policy, regulatory requirements, quality of written
work, case documentation and timeliness.

IV.   OTHER SIGNIFICANT FACTS

The incumbent of this position must  possess an extensive
knowledge of generally accepted investigative principles,
techniques, methods and procedures and a knowledge of the laws of
evidence, the rules of criminal procedure, and precedent court
decisions concerning admissibility of evidence, constitutional
rights, search and seizure and related issues; the ability to
recognize, develop and present evidence that reconstructs events,
sequences, and time elements and establishes relationships,
responsibilities, legal liabilities, conflicts of interest, in a
manner that meets requirements for presentation in various legal
hearings and court proceedings; and skill in applying the
techniques required in performing such duties as maintaining
surveillance, performing undercover work, and advising and
assisting the U.S. Attorney in and out of court.

He/She must be thoroughly familiar with the many varied and
complex Department programs and operations; and have a
comprehensive knowledge of laws, policies, regulations,
directives, procedures, and instructions governing, affecting and
pertaining to the Department's activities.

He/She must have the ability to (1) make contacts, maintain
effective work relations, and gain the confidence and cooperation
of others; (2) plan and conduct extensive and highly complex
investigations, and devise and improvise ways and means of
accomplishing investigation goals effectively and expeditiously;
(3) obtain information and develop evidence by observation,
interviewing individuals, examining and analyzing records; (4)
report facts clearly, accurately, logically and objectively both
orally and in writing; (5) meet and cope with unusual demands or
situations, make responsible decisions on short notice and adapt
prescribed policies and procedures; as required, coordinate
several phases of an investigation, or separate investigations
being conducted simultaneously. He/She must exercise a high
degree  of tact, diplomacy, resourcefulness, judgment and
ingenuity.

In addition, the Special Agent must understand and meet the
following requirements:

12/5

This is a rigorous position which often requires the Special Agent to work long and unscheduled hours with personal danger including bodily harm, exposure to all kinds of weather, considerable travel, including automobile, vans, trucks, and commercial or Government aircraft.

Employs defensive tactics to control an adversary and physically control an individual while participating in the conduct of an arrest or search.

Required to be qualified to use firearms.

Subject to assignment to carry and use firearms.

Must pass a physical examination for initial appointment as a Criminal Investigator.

Unquestionable loyalty to the United States.

Must have and maintain a reputation for integrity, reliability, trustworthiness, impartiality and good judgment.

Must have good morals, personal habits and associations.

Must possess and maintain a valid state driver's license.

12/6

**55**

**EXHIBIT B**

# POSITION DESCRIPTION *(Please Read Instructions on the Back)*

| | | 1. Agency Position No. |
|---|---|---|
| | | SPD-805 |

2. Reason for Submission:
[X] Reclassification  [ ] New
[ ] Reestablishment  [ ] Other
[ ] Dept'l  [X] Field
(Show any positions replaced)

Supersedes PD# 82-1383

3. Service  4. Employing Office Location: Washington, D.C.
5. Duty Station: Baltimore, MD
6. Fair Labor Standards Act: [X] Exempt  [ ] Nonexempt
7. Employment/Financial Stmt Required: [X] Yes [ ] No
8. Subject to IA Action: [X] Yes
9. Competitive Level: 0000
10. Position Status: [X] Competitive  [ ] Excepted (Specify)
11. Position is: [ ] Supervisory [ ] Managerial [X] Neither
12. Sensitivity: [X] Critical [ ] Noncritical [ ] Nonsensitive
14. Agency Use

| 15. Classified/Graded by | Official Title of Position | Pay Plan | Occupancy Code | Grade | Initials | Date |
|---|---|---|---|---|---|---|
| a. Civil Service Commission | | | | | | |
| b. Department, Agency, or Establishment | Criminal Investigator | GS | 1811 | 13 | 7 | 12/18 |
| c. Bureau | | | | | | |
| d. Field Office | | | | | | |
| e. Recommended by Supervisor or Initiating Office | | | | | | |

16. Organizational Title of Position: Senior Special Agent
17. Name of Employee

18. Department, Agency, or Establishment: Department of Health and Human Services
a. First Subdivision: Office of the Secretary
b. Second Subdivision: Office of Inspector General
c. Third Subdivision: Office of Investigations
d. Fourth Subdivision: Phila. Field Office
e. Fifth Subdivision: Baltimore Sub-Office

19. Employee Review. (certification text)

20a. Typed Name and Title of Immediate Supervisor:
E. Clarke Bowie
Asst. Reg. I. G. for Investigations
Signature: E. Clarke Bowie  Date 8/3/92

20b. Typed Name and Title of Higher-Level Supervisor or Manager:
Robert A. Simon, DAIG-CID
Signature  Date 12/18

21. Typed Name and Title of Official Taking Action:
Vivian Olivari, Supvy Position Classification Specialist
Signature  Date 12/18/87

22. Standards Used in Classifying/Grading Position:
Criminal Investigating Series GS-181 dated 2/72

23. Position Review:
| | Initials | Date | Initials | Date | Initials | Date | Initials | Date |
|---|---|---|---|---|---|---|---|---|
| a. Employee | | | | | | | | |
| b. Supervisor | | | | | | | | |
| c. Classifier | | | | | | | | |

24. Remarks:
On December 17, 1987 Secretary Otis Bowen determined that this position is a law enforcement officer for FERS retirement purposes.
This position covered under 5 U.S.C 8336(c) for CSRS by OPM letter dated 1-11-89

### THIS IS A CRITICAL-SENSITIVE POSITION

57

Criminal Investigator                    SPD - 805
(Senior Special Agent)
GS-1811-13

## I.  INTRODUCTION

This position is established in the field service, Criminal
Investigations Division (CID), Office of Investigations (OI),
Office of the Inspector General (OIG), Department of Health and
Human Services (HHS).

The magnitude and complexity of HHS program extends over more
than 300 separate programs and impacts in all geographic areas
nationwide.  The large budget of the Department and the
characteristics of the varied programs are potentially vulnerable
to fraud and other criminal violations.  The programs of the
Department and the activities of OIG draw high political, social,
and economic interest; the interest of the health service
community; special interest groups, beneficiaries of the
programs, grantees, contractors, and the general public and
intense news media interest.

Investigative activities of OI involve allegations of criminal
activities perpetrated by providers of services, program
participants, contractors, grantees, and private individuals as
well as Department employees and others involving programs funded
by the Department and Departmental operations.

The primary functions of the Division are to conduct and direct
criminal investigations of alleged or suspected violations of the
criminal laws of the United States  relating to  the programs and
operations of the Department.

 Incumbent serves as a Senior Special Agent and is assigned to
one of the Field Offices or one of the sub-offices to conduct
criminal investigations independently or as a Team Leader.

The Senior Special Agent receives case assignments which are
characterized by the extreme complexity and scope of cases; the
interrelated activities that the subjects under investigation
are involved in; the wide number of separate investigative
matters that grow from the original assignments; the exceptional
difficulty encountered in establishing the interrelationships of
fact or evidence; the extreme sensitivity of matters involved in
assigned cases; the extensive and critical jurisdictional
problems involved in completing investigations.

The Senior Special Agent receives assignments to serve as team
leader including large scale investigations which have program
implications that are important to national objectives of the
Department of Programs.  Also receives special case assignments

13/1

**58**

to conduct independently or as a member of a special project
team.


II.  DUTIES


Plans, coordinates, conducts and leads criminal investigations
including those of an extremely complex nature.  Defines the
investigative objectives and boundaries; identifies resources and
staffing including, participation with other law enforcement
agencies in the conduct of investigation.

The Senior Special Agent serves as team leader for cases that
concern extremely sensitive matters related to critical issues
complicated by obscure leads, few visible records, conflicting
evidence and other barriers, including language and customs,
alleged or suspected violations of Federal statutes involving
fraud against the Government, bribery, conflict of interest,
improper and false claims, collusion, misuse of loan/grant funds,
conversion of government property, embezzlement, and kickbacks.
Subjects may be engaged in activities that are the concern of
several local, county, State and Federal agencies.  This involves
a highly complex web of relationships that requires the
application of extensive knowledge of the laws, rules, policies
and practices of each of these jurisdictions.

Cases assigned to the Senior Special Agent include those where
suspects are of special prominence and numerous and engage in
extremely complex and severe activities.

The suspected violators include highly organized activities
interwoven with legitimate business activities and seemingly
respectable organizations (such as providers of health care
services and equipment, hospitals and nursing homes health care
organizations with facilities in various locations nationwide).

Conducts comprehensive research, study and analysis of cases to
determine the applicable laws and the implementing regulations
which were violated; the proof required in support of cases and
methods for obtaining.  Determines the most effective manner for
planning, developing and conducting investigations and the
additional resources required.  Identifies the need for and
arranges for participation of auditors in the development of
creditable financial evidence with appropriate documentation and
defensible sampling techniques.


Plans investigative assignments of team members with proper
geographic and time distribution so as to validate allegations,
and the evidence gathered, and relate events to the milestones

and critical points in the progress of the case, in order to keep target.

Plans, coordinates and initiates contacts with Federal, State, and local officials, civic and business leaders, officials of lending institutions, medical facilities, societies, and other organizations and individuals related to matters under investigation for the purpose of obtaining facts, signed statements, explanation of actions, etc.; to learn sequence of events and background or related information that incumbent determines is required, and to determine the sequence of interviews and the extent/scope of investigations. Examines records, books, payrolls, reports, correspondence and other data of consequence to the transactions, actions, or allegations under investigation. Verifies, corroborates and establishes relationships of all facts and evidence obtained, presented or alleged in order to establish the accuracy and authenticity. Establishment of relationships is often remote and difficult. Utilizes services of forensic laboratories to identify handwriting, fingerprints, questioned documents and substances, sound and video recordings, and other physical evidence.

The Senior Special Agent must piece together evidence that comes to him/her from investigators stationed/or assigned, on a case basis, in several states or multiple nationwide locations. From this evidence he/she must recognize the suspects pattern of operation in order to anticipate and access events as they unfold by instructing separate investigators or units of investigators working on segments of the case. The agent must be aware of the implications of complex precedent court decisions over a broad area of judicial and law enforcement jurisdictions. Monitors ongoing investigative activities of each unit of the team and revises plans and reschedules assignments as unexpected problems indicating new lines of inquiry evolve in the investigative process.

Conducts interviews with suspects, witnesses and informants in case development. Plans and times serving of warrants and subpoenas and participation of other law enforcement agencies as required. Serves subpoenas and participates with other law enforcement agents in the execution of arrests and the search for, and seizure of, evidence. As assigned, is appointed Special Deputy U.S. Marshal with full law enforcement authority. In such instances, incumbent carries an authorized firearm; executes arrest and search warrants; apprehends, searches, and transports violators and arranges for their appropriate detention.

Investigations require the reconstruction of activities and/or records from fragments or scattered sources by working towards the center of criminal activity, by use of informants and working undercover, or arranging for and coordinating with individuals working undercover.

13/5

The development of the full depth and breadth of the investigation includes planning and conducting surveillance of a suspect or various groups of suspects, and coordinating the activities of others required to participate in the surveillance.

Highly complex problems are presented where jurisdiction may be obscure or diffused, requiring coordination with other OIG offices, other Federal agencies, local, county, and State officials.

Initiates requests for approval for use of mail covers and recording instruments and special devices, in accordance with mandatory legal requirements and instructions for the Department of Justice and the U. S. Postal Service.

Investigations require ferreting out legal or administratively defensible testimony requiring such techniques as, for example, pitting a violator, criminal or witness against another, which imposes a need to verify and evaluate information with extreme care.

Prepares interim and comprehensive final investigative reports for prosecutive and management officials. Responsible for the preparation of investigative reports by team members which are logical, clear, and complete, presenting all aspects of the investigation in sufficient detail with the highest degree of accuracy to aid in supporting positive prosecution and/or administrative action.

Prepares and reviews  Management Implication Report (MIR) prepared by team members in those cases where programmatic weaknesses were identified in the investigative process. Reports, include the program areas involved, observations, existing integrity controls and lack of controls, and how controls were circumvented or how they worked to prevent violation with recommendations for improvement, which may result in regulatory or procedural changes.

The Senior Special Agent confers with and advises responsible management officials on investigative activities and reports; the course direction and progress of investigations; significant findings and developments; problems or questions of evidence, testimony or law; actions to be taken; and other related matters.

The Senior Special Agent may be called upon the lead complex civil and administrative investigations under other procedures. The documentation in these cases differs for the criminal cases. Cases which may initially appear to be civil or administrative violations may result in the identification of criminal aspects to the case.  Cases which are criminal in nature may be

13/4

**61**

SPD - 805

determined to be move effectively prosecuted under civi or
administrative procedures due to jurisdictional precedents.
Cases prosecuted under criminal procedures are also referred for
further investigation and penalty under civil procedure.

Provides expert adivce and assistance to the Department of
Justice and U. S. Attorneys in th preparation of cases for
presentation to Federal Grand Juries.  Cases present highly
complex legal questions and factual issues.  Assists U.S.
Attorneys in the selection of witnesses, the preparation of
evidence, and exhibits for trial, and with the organization and
presentation of the cases at trial. Testifies before Grand Juries
and in trial courts and in administrative hearings, in matters
involving violations of Federal Criminal statutes, civil fraud,
and administrative violations.

The Senior Special Agent is responsible for continual training of
assigned agents.  Keeps staff informed of new investigative
techniques; changes in policy, procedures, and precedent cases
which impact on the work.  Identifies special training needs of
staff members and confers with supervisor.  Develops training
materials and guidelines and makes presentation in field office
meeting and as requested at training conferences for the
nationwide investigative staff.

## III.  <u>SUPERVISORY CONTROLS</u>

The Senior Special Agent works under the general supervision of a
Supervisory Criminal Investigator who outlines broad objectives,
provides general instructions and assigns staff members to serve
as investigative team members.  The agent confers with supervisor
on policy matters.

The complex, critical and sensitive nature of the cases result in
unexpected problems indicating new lines of inquiry.
Recommendations for extension, modification, or adoption of new
lines of inquiry are normally accepted.  Highly important and
sensitive cases may require clearance of plans at higher levels.

An extremely high degree of ingenuity and initiative and
expertise are required.  Suspected violators typically retain the
best legal or accounting advice available and investigations
establish important precedents.

The Senior Special Agent is responsible for devising break-
throughs in investigative approaches and techniques as well as
for completing assigned cases.

Review of work is in the form of discussions at certain critical
points.

13/5

**62**

## IV.  OTHER SIGNIFICANT FACTS

The incumbent of this position must  possess an expert knowledge
of generally accepted investigative principles, techniques,
methods and procedures and a high degree of knowledge and
expertise with respect to the laws of evidence, the rules of
criminal procedure, and expertise with respect to  precedent
court decisions concerning admissibility of evidence,
constitutional rights, search and seizure and related issues; the
ability to recognize, develop and present evidence that
reconstructs events, sequences, and time elements and establishes
relationships, responsibilities, legal liabilities, conflicts of
interest, in a manner that meets requirements for presentation in
various legal hearings and court proceedings; and skill in
applying the techniques required in performing such duties as
maintaining surveillance, performing undercover work, and
advising and assisting the U.S. Attorney in and out of court.

He/She must be thoroughly familiar with the many varied and
complex Department programs and operations; and have a
comprehensive knowledge of laws, policies, regulations,
directives, procedures, and instructions governing, affecting and
pertaining to the Department's activities.

He/She must have the ability to (1) make contacts, maintain
effective work relations, and gain the confidence and cooperation
of others; (2) plan, coordinate and conduct extensive and
extremely complex investigations, and devise and improvise ways
and means of accomplishing investigation goals effectively and
expeditiously; (3) obtain information and develop evidence by
observation, interviewing individuals, examining and analyzing
records; (4) report facts clearly, accurately, logically and
objectively both orally and in writing; (5) meet and cope with
unusual demands or situations, make responsible decisions on
short notice and adapt prescribed policies and procedures;
coordinate several phases of an investigation, or separate
investigations being conducted simultaneously with team members
assigned through a state or several states.  He/She must exercise
a high degree  of tact, diplomacy, resourcefulness, judgment and
ingenuity.

In addition, the Special Agent must understand and meet the
following requirements:

This is a rigorous position which often requires the Criminal
Investigator/Special Agent to work long and unscheduled hours
with personal danger including bodily harm, exposure to all kinds
of weather, considerable travel, including automobile, vans,
trucks, and commercial or Government aircraft.

13/6

**63**

SPD - 805

Employs defensive tactics to control an adversary and physically control an individual while participating in the conduct of an arrest or search.

Required to be qualified to use firearms.

Subject to assignment to carry and use firearms.

Must pass a physical examination for initial appointment as a Criminal Investigator.

Unquestionable loyalty to the United States.

Must have and maintain a reputation for integrity, reliability, trustworthiness, impartiality and good judgment.

Must have good morals, personal habits and associations.

Must have loyalty to the United States.

Must possess and maintain a valid state driver's license.

**64**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,                    )
                                             )
            Plaintiffs,                      )
                                             )
      v.                                     )      No. 90-162C
                                             )      and consolidated cases
THE UNITED STATES,                           )      (Judge Bush)
                                             )
            Defendant.                       )

<u>Declaration of Michael Little</u>

I, Michael Little, declare as follows:

1.    From approximately 1978 to February 14, 1987, I was a Special Agent in the New York

      office of the Office of Inspector General ("OIG") in the United States Department of

      Health and Human Services ("HHS").

2.    From approximately February 15, 1987 to October 1994, I was an Assistant Regional

      Inspector General for Investigations in the Philadelphia office of HHS's OIG. During

      that time, I supervised a squad of approximately 13 GS-1811 criminal investigators.

3.    From approximately October 1994 to May 2004, I was the Special Agent in Charge of the

      Philadelphia office of HHS's OIG and supervised the entire office. Since May 2004, I

      have been Deputy Inspector General for Investigations for HHS's OIG.

4.    I have personal knowledge of the type of work performed by GS-1811 criminal

      investigators who worked in the Philadelphia Office of HHS's OIG from the period

      February 15, 1987 through May 2004. As Deputy Inspector General for Investigations, I

      also have personal knowledge that there are no significant differences in the type of work

      or the duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the

**65**

various field offices of HHS's OIG.  Also, during my time in the New York office of

HHS's OIG, the type of work and duties performed by GS-1811-12 and GS-1811-13

criminal investigators was not significantly different from the type of work and duties

performed by GS-1811-12 and GS-1811-13 criminal investigators in the Philadelphia

office.  Furthermore, in my capacity as Assistant Regional Inspector General for

Investigations in the Philadelphia office of HHS's OIG, I traveled to various conferences

and learned that GS-1811-12 and GS-1811-13 criminal investigators in other offices

performed the same type of work and duties as GS-1811-12 and GS-1811-13 criminal

investigators in the Philadelphia office.  Therefore, my description of the type of work

and duties performed by GS-1811-12 and GS-1811-13 criminal investigators applies to

all GS-1811-12 and GS-1811-13 criminal investigators within HHS's OIG, not only those

in the Philadelphia office.

5.      From 1978 to the present, GS-1811-12 and GS-1811-13 criminal investigators who

worked for HHS's OIG spent the vast majority of their time investigating fraud involving

HHS programs.  During the period from February 16, 1987 through September 30, 1995,

the type of work and duties performed by typical GS-1811-12 or GS-1811-13 criminal

investigators within HHS's OIG did not vary significantly in the aggregate from year to

year, except that, with limited exceptions, after March 30, 1995, GS-1811-12 or GS-

1811-13 criminal investigators no longer investigated Social Security fraud.

6.      During the period from February 16, 1987, through March 30, 1995, a typical GS-1811-

12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 40-45% of

his or her time investigating Medicare or Medicaid fraud.  The vast majority of Medicare

**66**

and Medicaid fraud consisted of doctors, hospitals or others in the medical field falsely

obtaining or misappropriating Medicare benefits. Medicare and Medicaid fraud may have

also consisted of health care companies and professionals paying kickbacks to other

professionals and companies for Medicare and Medicaid referrals.

7.  During the period from February 16, 1987, through March 30, 1995, a typical GS-1811-
    12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 40-45% of
    his or her time investigating Social Security fraud. About half of this time was spent
    investigating people fraudulently obtaining Social Security and Supplemental Security
    Income benefits. The other half of this time was spent assisting other agencies and law
    enforcement authorities in investigating crimes involving the fraudulent use of Social
    Security numbers.

8.  During the period from February 16, 1987, through March 30, 1995, a typical GS-1811-
    12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 5-15% of his
    or her time investigating other types of crimes involving HHS programs. Some examples
    include people fraudulently obtaining welfare payments or misusing HHS program grants.

9.  During the period from February 16, 1987 through March 30, 1995, a typical GS-1811-12
    or GS-1811-13 criminal investigator in HHS's OIG spent approximately 5% of his or her
    time investigating HHS employee misconduct.

10. On or about March 31, 1995, the Social Security Administration became an independent
    agency with its own OIG. Therefore, with limited exceptions for certain cases in
    progress, after March 30, 1995, criminal investigators in HHS's OIG did not investigate
    Social Security fraud. As such, between and including March 31, 1995 through

**67**

September 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's

OIG spent approximately 80-85% of his or her time investigating Medicare and Medicaid

fraud, approximately 10-15% of his or her time investigating other types of crimes

involving HHS programs and approximately 3-5% of his or her time investigating

employee misconduct.

11.     During the period from February 16, 1987 through September 30, 1995, the typical day-

to-day duties of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG varied

depending upon what type of case they were working on.  However, most GS-1811-12

and GS-1811-13 investigators in HHS's OIG spent the majority of their time engaged in

typical law enforcement duties such as planning investigations, collecting and reviewing

evidence, interviewing witnesses and conducting surveillance.  Collecting evidence

usually consisted of reviewing paperwork and occasionally executing search warrants.

Executing search warrants consisted of approximately 1-2% of a typical GS-1811-12 or

GS-1811-13 criminal investigator's time.

12.     Other duties consisted of initiating contact with federal state and local officials, preparing

interim and comprehensive final investigative reports, providing advice and assistance to

the Department of Justice and United States Attorneys in preparing cases to present

before grand juries and at trial and testifying before grand juries and at trial.

13.     GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG were provided very

little supervision.  GS-1811-13 investigators generated their own cases through various

contacts.  GS-1811-12 investigators generated approximately half of their cases on their

own while the other half were assigned to them.  GS-1811-12 and GS-1811-13

**68**

investigators usually started, operated and closed cases with minimal supervision. Both GS-1811-12 and GS-1811-13 investigators were expected to handle nearly every aspect of the case without the help of a supervisor. Only in special situations would a GS-1811-12 or GS-1811-13 investigator need approval from a supervisor to perform a task. Examples include consensual monitoring (wiring a witness) and wiretaps. Day-to-day decisions such as what witnesses to interview, upon whom to conduct surveillance, when to involve other law enforcement personnel, etc., were handled by the GS-1811-12 or GS-1811-13 investigator without approval of a supervisor.

14.    In the course of planning and conducting investigations, GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG altered plans in their investigation when necessary, without the consent of their supervisor. For example, an investigator may plan on interviewing persons X, Y and Z one day, but after interviewing X, an investigator may determine that interviewing B and C next would be more useful. An investigator also had discretion to expand or contract the scope of an investigation as he or she conducted the investigation.

15.    Every time a GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG interviewed a witness, he or she assessed the credibility of that witness and determined what additional questions to ask based upon previous answers in the same interview.

16.    In reviewing evidence, GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG determined which pieces of evidence would prove a case against a suspect or prove exculpatory for the suspect and adjusted their investigations accordingly.

**69**

17.   During the period from February 16, 1987 through September 30, 1995, most surveillance conducted by these investigators was done through personal viewing and audio surveillance.  In conducting surveillance, GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG made decisions as to when they had seen or heard what they needed to see or hear or when it was unlikely that they would obtain the visual or audio evidence they were seeking.

18.   GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG had almost complete discretion to follow a case wherever the evidence led them.

19.   I have reviewed the position descriptions for GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG, SPD-804 and SPD-805, respectively, and the description of duties in the position descriptions are an accurate reflection of the duties these criminal investigators actually performed on a day-to-day basis and the skills necessary for the job throughout the period February 16, 1987 through September 30, 1995.

20.   GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG learned the skills necessary to complete their jobs, as accurately described in this declaration and the SPD-804 and SPD-805 position descriptions, at the Federal Law Enforcement Training Center in Glynco, Georgia and, more importantly, through years of on the job experience.

21.   During the years 1987 through 1995, investigations by HHS's OIG resulted in millions of dollars each year in fines, savings, restitutions, settlements and recoveries for the Treasury of the United States, the Social Security and Medicare trust funds and HHS programs victimized by fraud and abuse.

**70**

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 21 $^{st}$ day of December, 2006.

_Michael Little_ (signature)

Michael Little

71

*United States.*

1987/88   The United States

# Government Manual

Office of the
Federal Register

National Archives
and Records Administration

72

282

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

200 Independence Avenue SW., Washington, DC 20201

Phone, 202-245-6296

OTIS R. BOWEN — *SECRETARY*

Don M. Newman — *Under Secretary*

Thomas R. Burke — *Chief of Staff*

Stephen E. Cheroff — *Executive Assistant to the Secretary*

Kathleen M. Meyer — *Acting, Executive Assistant*

Kimberly Fuller — *Confidential Assistant to the Secretary*

James J. Delaney II — *Executive Secretariat*

Elizabeth J. Connell — *Deputy Executive Secretary (Health and Management)*

Glenn M. Kamber — *Deputy Executive Secretary (Human Services and Management)*

Robert L. Raclin — *Deputy Under Secretary*

Richard P. Kusserow — *Inspector General*

Bryan Mitchell — *Acting Deputy Inspector General*

Thomas Roslewicz — *Assistant Inspector General for Auditing*

Don Nicholson — *Assistant Inspector General for Analysis and Inspection*

Larry Morey — *Assistant Inspector General for Investigations*

Audrey F. Morton (Vacancy) — *Acting Director, Office for Civil Rights*

Paul R. Kreichmar — *Deputy Director*

Guy E. Witcher — *Associate Deputy Director, Management*

Audrey F. Morton — *Deputy Associate Director, Planning and Evaluation*

James Hood — *Acting Associate Deputy Director, Program Operations*

Virginia H. Knauer — *Deputy Associate Deputy Director, Program Operations*

Stephanie Lee-Miller — *Special Adviser to the President for Consumer Affairs*

Richard P. Teske — *Assistant Secretary (Public Affairs)*

Charles T. Kline, Jr. — *Deputy Assistant Secretary for Public Affairs (Principal)*

Ronald F. Docksai — *Deputy Assistant Secretary for Public Affairs, News*

Mary T. Goedde — *Acting Assistant Secretary (Legislation)*

Robert E. Moffit — *Deputy Assistant Secretary (Legislation)*

Patricia Knight — *Deputy Assistant Secretary (Congressional Liaison)*

Kate Walsh O'Beirne — *Acting Deputy Assistant Secretary (Legislation)*

_____ — *Deputy Assistant Secretary (Human Services Legislation)*

---

Sally A. Kirkpatrick — *Deputy Assistant Secretary (Legislative Counsel)*

Robert B. Helms — *Acting Assistant Secretary for Planning and Evaluation*

Ann M. Segal — *Executive Assistant*

Randy Teach — *Acting Deputy Assistant Secretary for Health Policy*

Gerald Britten — *Deputy Assistant Secretary for Program Systems*

Carl J. Dahlman — *Deputy Assistant Secretary for Income Security Policy*

Arnold R. Tompkins — *Acting Deputy Assistant Secretary for Social Services Policy*

Ronald E. Robertson — *General Counsel*

Elisabeth A. Brown — *Special Assistant to the General Counsel*

Terry Coleman — *Principal Deputy General Counsel*

Isabel P. Dunst — *Deputy General Counsel*

Robert P. Charrow — *Deputy General Counsel-Legal Counsel*

Darrel Grinstead — *Associate General Counsel, Business and Administrative Law Division*

George Lyon — *Associate General Counsel, Civil Rights Division*

Frank Smith — *Associate General Counsel, Family Support and Human Development Services Division*

Thomas Scarlett — *Associate General Counsel, Food and Drug Division*

_____ — *Associate General Counsel, Health Care Financing and Human Development Services Division*

Harvey Yampolsky — *Associate General Counsel, Inspector General Division*

Frances White — *Associate General Counsel, Legislation Division*

Richard Riseberg — *Associate General Counsel, Public Health Division*

Donald Gonya — *Associate General Counsel, Social Security Division*

S. Anthony McCann — *Assistant Secretary for Management and Budget*

Elizabeth M. James — *Principal Deputy Assistant Secretary for Management and Budget*

Barbara B. Aulenbach — *Director of the Secretary, Equal Employment Opportunity Officer*

Dennis P. Williams — *Deputy Assistant Secretary, Budget*

Dennis J. Fischer — *Deputy Assistant Secretary, Finance*

Henry G. Kirschenmann, Jr. — *Deputy Assistant Secretary for Procurement, Assistance and Logistics*

James V. Oberthaler — *Deputy Assistant Secretary for Management Analysis and Systems*

James F. Trickett — *Deputy Assistant Secretary for Administrative and Management Services*

Thomas S. McFee — *Assistant Secretary for Personnel Administration*

Eugene Kinlow — *Deputy Assistant Secretary for Personnel Administration*

---

73

**290    U.S. GOVERNMENT MANUAL**

Pete V. Herrera, Jr.    *Associate Commissioner, Information*

**FAMILY SUPPORT ADMINISTRATION**

*200 Independence Avenue SW., Washington, DC 20201*
Phone, 202-245-1319.

| | |
|---|---|
| Wayne A. Stanton | *Administrator* |
| Phillip N. Hawkes | *Deputy Administrator* |
| Harvey R. Vieth | *Director, Office of Family Assistance* |
| Wayne A. Stanton | *Director, Office of Child Support Enforcement* |
| David Kitner | *Director, Office of Community Services* |
| Billie Gee | *Director, Office of Refugee Resettlement* |

The Department of Health and Human Services is the Cabinet-level department of the federal executive branch most concerned with people and most involved with the Nation's human concerns. In one way or another—whether it is administering social services or making health services more widely available—the Department touches the lives of more Americans than any other Federal agency. It's a department of people serving people, from newborn infants to our most elderly citizens.

The Department of Health, Education, and Welfare was created on April 11, 1953. The Department was redesignated as the Department of Health and Human Services (HHS) by the Department of Education Organization Act (93 Stat. 695; 20 U.S.C. 3508), approved October 17, 1979.

**Office of the Secretary**

The Secretary of HHS advises the President on health, welfare, and income security plans, policies, and programs of the Federal Government. The Secretary directs Department staff in carrying out the approved programs and activities of the Department and promotes general public understanding of the Department's goals, programs, and objectives. The Secretary administers these functions through the Office of the Secretary and the five Operating Divisions, which include the Social Security Administration, the Health Care Financing Administration, the Office of Human Development Services, the Public Health Service, and the Family Support Administration.

The Under Secretary, the Assistant Secretaries, the General Counsel, the

Inspector General, and other officials aid the Secretary with management responsibilities of the Department.

Since the Secretary accounts to the Congress and the public for the Department spends taxpayers' money, the Secretary and top aides spend a considerable amount of time making speeches before national organizations, and meeting with and the public to explain HHS. They also prepare special reports on national problems that are sent to the public through the Department, the Government Printing Office. In addition, the Secretary submits to the President and the Congress periodic reports required by law that explain how tax money was spent, progress was achieved, or what problems resolved.

**Under Secretary** The Under Secretary serves as Acting Secretary in the absence of the Secretary and performs such duties as the Secretary may desig-



*Located administratively in HHS but reports to the President*

**DEPARTMENT OF HEALTH AND HUMAN SERVICES    291**

United States. United States
government manual (Washington,
"D.C. 1973.)

# The United States Government Manual
## 1995/1996

Office of the Federal Register
National Archives and Records Administration

The Department of Health, Education, and Welfare was created on April 11, 1953 (5 U.S.C. app.). The Department was redesignated as the Department of Health and Human Services (HHS), effective May 4, 1980, by the Department of Education Organization Act (20 U.S.C. 3508).

## Office of the Secretary

The Secretary of Health and Human Services advises the President on health, welfare, and income security plans, policies, and programs of the Federal Government. The Secretary directs Department staff in carrying out the approved programs and activities of the Department and promotes general public understanding of the Department's goals, programs, and objectives. The Secretary administers these functions through the Office of the Secretary and the five Operating Divisions, which include: the Administration on Aging, the Substance Abuse and Mental Health Services Administration, the Health Care Financing Administration, the Administration for Children and Families, and the Public Health Service. The Office of the Secretary includes the offices of Deputy Secretary, the Assistant Secretaries, Inspector General, and General Counsel. Some offices whose public purposes are broadly applied are detailed further.

Civil Rights  The Office for Civil Rights is responsible for the administration and enforcement of the following laws that prohibit discrimination in federally assisted health and human services programs:
—title VI of the Civil Rights Act of 1964;
—section 504 of the Rehabilitation Act of 1973, as amended;
—the Age Discrimination Act of 1975;
—title IX of the Education Amendments of 1972;
—section 407 of the Drug Abuse Offense and Treatment Act of 1972;
—section 321 of the Comprehensive Alcohol Abuse and Alcoholism Prevention, Treatment and Rehabilitation Act of 1970;
—the Equal Employment Opportunity provisions of the Communications Finance Act of 1934, as amended;
—titles VI and XVI of the Public Health Service Act;
—the nondiscrimination provisions of the Omnibus Budget Reconciliation Act of 1981;
—section 307(a) of the Family Violence Prevention and Services Act;
—titles VII and VIII of the Public Health Service Act; and
—subtitle A, title II, of the Americans with Disabilities Act of 1990.

Consumer Affairs  The U.S. Office of Consumer Affairs advises the White House and the Secretary of HHS on consumer-related policy and programs and is responsible for handling consumer matters; analyzes and coordinates implementation of all Federal activities in the area of consumer protection; and recommends ways in which governmental consumer programs can be made more effective. The Director of the Office also chairs the U.S. Consumer Affairs Council.

## Regional Offices

The 10 Regional Directors of the Department of Health and Human Services are the Secretary's representatives in direct, official dealings with State and local government organizations. They provide a central focus in each region for departmental relations with Congress and promote general understanding of Department programs, policies, and objectives. They also advise the Secretary on the potential effects of decisions and provide administrative services and support to Department programs and activities in the regions.

### Regional Offices—Department of Health and Human Services
(Areas included within each region are indicated on the map in Appendix A.)

| Region/Address | Director | Telephone |
|---|---|---|
| 1. John F. Kennedy Federal Bldg., Boston, MA 02203 ............... | Philip Johnston ................. | 617-565-1500 |

163-239  95 –10

DEPARTMENT OF HEALTH AND HUMAN SERVICES

THE SECRETARY — DEPUTY SECRETARY — CHIEF OF STAFF — EXECUTIVE SECRETARY

OFFICE OF GENERAL COUNSEL · ASSISTANT SECRETARY FOR PLANNING AND EVALUATION · OFFICE FOR CIVIL RIGHTS · OFFICE OF INSPECTOR GENERAL

HEALTH CARE FINANCING ADMINISTRATION · ADMINISTRATION FOR CHILDREN AND FAMILIES · PUBLIC HEALTH SERVICE · ADMINISTRATION ON AGING · OFFICE OF CONSUMER AFFAIRS

ASSISTANT SECRETARY FOR MANAGEMENT AND BUDGET · ASSISTANT SECRETARY FOR LEGISLATION · ASSISTANT SECRETARY FOR PERSONNEL ADMINISTRATION · ASSISTANT SECRETARY FOR PUBLIC AFFAIRS · ASSISTANT SECRETARY FOR INTERGOVERNMENTAL AFFAIRS AND REGIONAL DIRECTORS