No. 90-162C and consolidated cases
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFFS EMPLOYED BY THE OFFICE OF INSPECTOR GENERAL IN THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7561

Attorneys for Defendant

OF COUNSEL:
Michael J. Dierberg
William P. Rayel
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

February 26, 2007

# TABLE OF CONTENTS

DEFENDANT'S BRIEF . . . . . 2

Question Presented . . . . . 2

Statement of the Case . . . . . 2

Statement of Facts . . . . . 3

Statutory and Regulatory Background . . . . . 3

ARGUMENT . . . . . 9

I. The Primary Duty Of Investigators Employed By HUD's OIG During The Time Period At Issue Was To Support The Management Of HUD By Protecting HUD's Integrity By Ensuring That HUD's Programs Run Effectively And Efficiently . . . . . 9

II. GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HUD's OIG Performed Predominantly Nonmanual Work That Was Intellectual And Varied In Nature And/Or Of A Specialized Or Technical Nature That Required Considerable Special Training, Experience, And Knowledge . . . . . 16

III. GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HUD's OIG Frequently Exercised Independent Judgment And Discretion Under Only General Supervision . . . . . 20

CONCLUSION . . . . . 22

## TABLE OF AUTHORITIES

### CASES


Adam v. United States,
26 Cl. Ct. 782 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 13

Adams v. United States,
65 Fed. Cl. 195 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17, 20

Adams v. United States,
27 Fed. Cl. 5 (1992), rev'd in part,
178 F.3d 1306 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Adams v. United States,
44 Fed. Cl. 772 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Auer v. Robbins,
65 F.3d 702 (8th Cir. 1995), aff'd,
519 U.S. 452 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Baker v. California Shipbuilding Corp.,
73 F. Supp. 322 (S.D. Cal. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Covert v. Harrington,
876 F.2d 751 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hickman v. United States,
10 Cl. Ct. 550 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Ivey v. Snow,
Civil Action No. 04-0214 (EGS),
2005 U.S. Dist. LEXIS 18872 (D.D.C. August 31, 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12

Jastremski v. Safeco Insurance Cos.,
243 F. Supp. 2d 743 (N.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Marcotte v. Secretary of Defense,
618 F. Supp. 756 (D. Kan. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

National Aeronautics and Space Administration v. FLRA,
527 U.S. 229 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Nebblett v. Office Of Personnel Management,
237 F.3d 1353 (Fed. Cir. 2001) . . . . . . . . . . 6

O'Dell v. Alyeska Pipeline Service Co.,
856 F.2d 1452 (9th Cir. 1988) . . . . . . . . . . 11

Palacio v. Progressive Insurance Co.,
244 F. Supp. 2d 1040 (C.D. Cal. 2002) . . . . . . . . . . 11

Raper v. Iowa,
688 N.W.2d 29 (Iowa 2004) . . . . . . . . . . 10

Sprague v. United States,
230 Ct. Cl. 492 (1982) . . . . . . . . . . 10

United States Department of Justice v. FLRA,
266 F.3d 1228 (D.C. Cir. 2001) . . . . . . . . . . 12

**STATUTES**

5 U.S.C. § 5541 et seq . . . . . . . . . . 3

5 U.S.C. 5545a(g) . . . . . . . . . . 8

5 U.S.C. § 7114(a)(2)(B) . . . . . . . . . . 12

5 U.S.C. App. 3 §§ 2, 11(a) . . . . . . . . . . 12

5 U.S.C. App. 3 §§ 4 . . . . . . . . . . 12

29 U.S.C. § 201 et seq . . . . . . . . . . 1

29 U.S.C. § 203(e)(2)(a) . . . . . . . . . . 3

29 U.S.C. § 204(f) . . . . . . . . . . 4

29 U.S.C. § 207 . . . . . . . . . . 3

29 U.S.C. § 213(a)(1) . . . . . . . . . . 2, 4, 8

29 U.S.C. § 213(a)(16) . . . . . . . . . . 8

29 U.S.C. § 216(b) . . . . . . . . . . 8

29 U.S.C. § 255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 3532 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**REGULATIONS**

5 C.F.R. § 551.101, <u>et seq</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 C.F.R. §§ 551.204-551.206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.205 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

5 C.F.R. §§ 551.205-551.207 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 C.F.R. § 551.206 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5 C.F.R. § 551.513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**OTHER ADMINISTRATIVE MATERIALS**

<u>Inspector General Authority to Conduct Regulatory Investigations,</u>
13 Op. O.L.C. 54, 1989 OLC LEXIS 70 (March 9, 1989) . . . . . . . . . . . . . . . . . . . . 13, 16

<u>Organizations, Functions and Delegations of Authority,</u>
49 Fed. Reg. 11161 (Mar. 26, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Organizations, Functions, and Delegations of Authority; Availability of Information to the Public; Production in Response to Subpoenas or Demands of Courts or Other Authorities,</u>
57 Fed. Reg. 2225 (Jan. 21, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**LEGISLATIVE HISTORY**

Pub. L. No. 101-509, § 210 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 93-259, 88 Stat. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. No. 103-329, § 633(e),
108 Stat. 2382 (Sept. 30, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT CONCERNING PLAINTIFFS EMPLOYED BY THE OFFICE OF INSPECTOR GENERAL IN THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, defendant respectfully requests the Court to grant the United States partial summary judgment, dismissing plaintiffs' claims for overtime pay pursuant to the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 et seq., arising from employment as criminal investigators at the Department of Housing and Urban Development ("HUD"), Office of Inspector General ("OIG"), GS-12 and above,[1] upon the grounds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon the pleadings, the following brief, the attached appendix, and the separately filed proposed findings of uncontroverted fact.[2]

---

[1] All claims of plaintiffs who worked in HUD's OIG have been settled for their time spent in grades GS-11 or below. The only remaining claims are for GS-1811-12 and GS-1811-13 criminal investigators.

[2] "Def. App. ___" refers to the appendix to this motion.

DEFENDANT'S BRIEF

Question Presented

Whether plaintiffs, while employed by HUD's OIG, in the position of Criminal Investigator, GS-1811, pay grades GS-12 and above, have been employed in a capacity that is exempt from the overtime provisions of the FLSA.

Statement of the Case

In these consolidated actions, more than 14,000 criminal investigators and employees in related positions at various federal agencies have sued to recover FLSA overtime pay and various forms of overtime and premium pay. This motion concerns plaintiffs' claims for FLSA overtime arising from employment as criminal investigators in grades GS-12 or higher at HUD's OIG. These plaintiffs, like other plaintiffs in these grades at other agencies, were classified as exempt from the FLSA based upon the administrative exemption created by 29 U.S.C. § 213(a)(1). The applicability of the administrative exemption to many of these other plaintiffs has already been adjudicated. See Adams v. United States, 27 Fed. Cl. 5 (1992) ("Adams I"), rev'd in part, 178 F.3d 1306 (Fed. Cir. 1998) ("Adams II"), on remand, 65 Fed. Cl. 195 (2005) ("Adams III"). However, in at least one very significant respect, investigators at HUD's OIG are situated very differently from the those whose FLSA claims have previously been adjudicated.

The previously adjudicated claims involved investigators employed by law enforcement agencies whose mission, the Court found, included the performance of criminal investigations. The Court held that, under these circumstances, conducting criminal investigations did not in itself meet the applicable criteria for the administrative exemption, because it constituted a "production" function rather than a "support" function. However, HUD is not a law enforcement

agency and its mission does not include the performance of criminal investigations. Rather, the mission of HUD is to "increase homeownership, support community development and increase access to affordable housing free from discrimination." HUD's Mission, *available at* http://www.hud.gov/library/bookshelf12/hudmission.cfm.

Because GS-1811 criminal investigators in HUD's OIG are not performing the mission of the agency, but rather, are performing an important support service to the agency – promoting the efficiency of HUD's programs by preventing waste, fraud and abuse in such programs – the criminal investigators meet the primary duty test of the administrative exemption. Furthermore, because the GS-1811-12 and GS-1811-13 criminal investigators perform nonmanual work that is intellectual in nature or of a specialized or technical nature and they frequently exercise discretion and independent judgment in performing day-to-day work, they are exempt from the FLSA as administrative employees.

Statement of Facts

The material facts have been set forth in Defendant's Proposed Findings of Uncontroverted Fact filed concurrently with this motion. The facts are not set forth in this brief except where helpful to an understanding of our argument.

Statutory and Regulatory Background

In 1974, Congress amended the FLSA to extend the Act's overtime provisions, 29 U.S.C. § 207, to Federal employees and State and local government employees. See Pub. L. No. 93-259, 88 Stat. 55, 29 U.S.C. § 203(e)(2)(a).[3] These overtime provisions are subject to the

[3] Pay administration for most Federal employees, including the plaintiffs, is generally governed by title 5 of the United States Code. Title 5 provides, among other things, for rates of overtime and premium pay. 5 U.S.C. § 5541 et seq. If a Federal employee is eligible to receive

exemptions contained in 29 U.S.C. § 213. Section 213(a)(1) provides, in pertinent part: "The provisions of section 206 and 207 of this title shall not apply with respect to – (1) any employee employed in a bona fide executive, administrative, or professional capacity . . . ."

When Congress enacted the 1974 amendments to the FLSA to extend the coverage of the FLSA to Federal employees, it made the Civil Service Commission ("CSC") responsible for administering the FLSA in the Federal sector. This responsibility now lies with the CSC's successor, the Office of Personnel Management ("OPM"). 29 U.S.C. § 204(f). Pursuant to the authority conferred by section 204(f), the CSC and OPM have promulgated regulations for the implementation of the FLSA in the Federal sector. 5 C.F.R. § 551.101, et seq. Among these regulations are criteria for the application of the executive, administrative, and professional exemptions contained in 29 U.S.C. § 213(a)(1). These criteria presently appear at 5 C.F.R. §§ 551.205-551.207 (2001). Prior to 1998, they appeared, in substantially the same form, at 5 C.F.R. §§ 551.204-551.206. The criteria governing the administrative exemption are as follows:

> An administrative employee is an advisor, assistan[t], or representative of management, or a specialist in a management or general business function or supporting service who meets all of the following criteria:
>
> (a) The employee's primary duty consists of work that –
>
> (1) Significantly affects the formulation or execution of management policy or programs; or

---

overtime benefits pursuant to both Title 5 and the FLSA, then, pursuant to the Federal Employees Pay Comparability Act of 1990 ("FEPCA"), Pub. L. No. 101-509, § 210, that employee is entitled to receive overtime compensation in accordance with the FLSA. Prior to FEPCA, employees eligible under both systems were entitled to be paid pursuant to whichever system provided the greater amount. 5 C.F.R. § 551.513.

(2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

(b) The employee performs office or other predominantly nonmanual work which is –

(1) Intellectual and varied in nature; or

(2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) The employee must frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

(d) . . . .[[4]]

5 C.F.R. § 551.205 (1990) (currently codified at 5 C.F.R. § 551.206 (2006)).

More detailed guidance, elaborating upon the criteria contained in 5 C.F.R. Part 551, was provided in Federal Personnel Manual System ("FPM") letters that were issued by CSC and OPM over the years. The first such FPM letter, issued several weeks after Congress extended the FLSA to the Government and prior to the promulgation of the above-cited regulations, was FPM Letter No. 551-1 (May 15, 1974). Def. App. 1-16. This FPM Letter, entitled "Interim Instructions for Implementing the Fair Labor Standards Act," included general guidance concerning the application of FLSA exemptions, and also listed various specific positions which were identified as typically meeting administrative exemption criteria at or above specified grade

[4] Subsection (d), which contains additional criteria for "General Schedule employees classified at GS-5 or GS-6," is not applicable here, because the positions in question are classified at GS-12 or above.

levels, and as typically being non-exempt below those grade levels. Id. at 10-16. The occupational code at issue here – Series GS-1811 – was identified in this list as typically exempt at and above the GS-9 grade level. Id. at 12. The exemption instructions contained in FPM Letter No. 551-1 were cancelled and superseded by those contained in FPM Letter No. 551-7 (July 1, 1975). Id. at 17-40. The latter provided far more detailed guidance than was contained in FPM Letter No. 551-1, but did not list or otherwise identify specific positions as typically exempt or non-exempt. FPM Letter No. 551-7 was further modified by FPM Letter No. 551-13 (February 21, 1978). Id. at 41-45. The FPM was abolished pursuant to the FPM Sunset Document, OPM Document No. 157-53-8 (Dec. 31, 1993). See Nebblett v. Office Of Personnel Management, 237 F.3d 1353, 1358 (Fed. Cir. 2001); Adams v. United States, 44 Fed. Cl. 772, 777 (1999). However, the FLSA exemption guidelines that were contained in FPM Letter No. 551-7 (as modified by FPM Letter No. 551-13) have largely been incorporated into a definitions section in the current regulations. See 5 C.F.R. § 551.104.

The principal provisions of the FPM letters and of 5 C.F.R. § 551.104 that are relevant to the exemption issues in this case are substantially similar. As set forth in the current section 551.104, these provisions are as follows:

> Discretion and independent judgment means work that involves comparing and evaluating possible courses of conduct, interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. . . .

* * *

Management or general business function or supporting service, as distinguished from production functions, means the work of employees who provide support to line managers.

(1) These employees furnish such support by--

(i) Providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts;

(ii) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;

(iii) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(iv) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.

* * *

Primary duty typically means the duty that constitutes the major part (over 50 percent) of an employee's work. A duty constituting less than 50 percent of the work may be credited as the primary duty for exemption purposes provided that duty--

(1) Constitutes a substantial, regular part of a position;

(2) Governs the classification and qualification requirements of the position; and

(3) Is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment, and the significance of the decisions made.

* * *

Work of an intellectual nature means work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work requiring mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. . . .

5 C.F.R. § 551.104.

The FLSA provides, in effect, for double damages, by stating that an employer in violation of FLSA obligations "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . , and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The applicable statute of limitations in this action is two years or, where a "willful violation" of the FLSA has been established, three years. 29 U.S.C. § 255(a).

In 1994, Congress provided for premium pay for criminal investigators working unscheduled overtime, in lieu of both FLSA pay and Administratively Uncontrollable Overtime ("AUO") premium pay, pursuant to the Law Enforcement Availability Pay Act of 1994 ("LEAP Act"), Pub. L. No. 103-329, § 633(e), 108 Stat. 2382, 2428 (Sept. 30, 1994); 5 U.S.C. 5545a(g); 29 U.S.C. § 213(a)(16). Regardless of whether they fall within the executive, administrative, or professional exemptions contained in 29 U.S.C. § 213(a)(1), criminal investigators receiving LEAP pay are expressly exempted from the FLSA pursuant to 29 U.S.C. § 213(a)(16). By October 30, 1994, all GS-1811 criminal investigators in HUD's OIG received LEAP pay. Def. App. 46, 67-69. Since the earliest of these consolidated cases was filed on February 16, 1990, the largest possible relevant time period for purposes of this motion is February 16, 1987 through October 30, 1994.

ARGUMENT

Investigators employed by HUD's OIG during the time period at issue were exempt from the overtime provisions of the FLSA because: 1) their primary duty was a support service to management, rather than a production function; 2) they performed predominantly nonmanual work that was intellectual and varied in nature and/or of a specialized or technical nature that required considerable special training, experience, and knowledge; and 3) they frequently exercised discretion and independent judgment, under only general supervision.

I. The Primary Duty Of Investigators Employed By HUD's OIG During The Time Period At Issue Was To Support The Management Of HUD By Protecting HUD's Integrity By Ensuring That HUD's Programs Run Effectively and Efficiently

Both the statutory and regulatory framework of the HUD's OIG and evidence of plaintiffs' day-to-day activities make clear that HUD's OIG investigators were performing a support function, rather than a production function. In determining whether an employee meets the primary duty test of the administrative exemption, courts, including this Court, often distinguish between whether the employee is performing exempt "support" functions or nonexempt "production" functions. See, e.g., Adams I, 27 Fed. Cl. 5; Adam v. United States, 26 Cl. Ct. 782 (1992); Hickman v. United States, 10 Cl. Ct. 550 (1986). Employees that engage in support services are those who "provide a service which permits the agency to pursue its basic task, while not directly engaging in that task." Adams I, 27 Fed. Cl. at 15. For example, in Hickman, 10 Cl. Ct. at 558, the Claims Court held that data processing was a support service, rather than a production function of the Department of the Navy. In contrast, in Adam, the Claims Court held that border patrol agents employed by the Immigration and Naturalization Service, who enforced the immigration laws of the United States, were performing a production

function because "[p]rosecuting violators of the immigration laws directly involves performance of an INS mission and thus is a line function of the INS." 26 Cl. Ct. at 788. However, the Adam Court made clear that law enforcement personnel who were employed by agencies that did not have a law enforcement mission would be considered support, rather than production workers. In distinguishing Sprague v. United States, 230 Ct. Cl. 492 (1982), a case involving whether postal inspectors were exempt, the Adam Court noted, "the business of the Post Office is delivering mail. An employee who works for the Post Office in an investigatory role would not appear to be performing a line function of the organization." 26 Cl. Ct. at 791.

Outside of the federal employment context, courts have also held that employees that perform services similar to OIG investigators are exempt. In Auer v. Robbins, 65 F.3d 702, 720-21 (8th Cir. 1995), aff'd, 519 U.S. 452 (1997), the Eighth Circuit held that internal affairs officers in a police department performed a support service, rather than a production function of the police department. In so holding, the Eighth Circuit noted that the officers "do not perform typical law enforcement activities; they perform internal investigations to ensure that the officers within the department are complying with its policies." Id. at 721. Therefore, although the internal affairs officers were performing investigatory work, their investigatory work was not the business of the police force, but rather, a support service that helped maintain the integrity of police department by ensuring that it remained "free of criminal conduct or other types of legal or ethical violations." Id. at 720.; see also Raper v. Iowa, 688 N.W.2d 29 (Iowa 2004) (holding that internal affairs officers were administratively exempt from the overtime provisions of the FLSA).

In Jastremski v. Safeco Insurance Cos., 243 F. Supp. 2d 743 (N.D. Ohio 2003) and Palacio v. Progressive Insurance Co., 244 F. Supp. 2d 1040 (C.D. Cal. 2002), courts held that insurance claims adjusters, who investigated and settled insurance claims for their employer insurance companies, performed support functions to the insurance companies, not production functions. In both cases, the courts held that the business of the insurance companies was to produce insurance policies, not investigate and settle claims. Jastremski, 243 F. Supp. 2d at 753; Palacio, 244 F. Supp. 2d at 1047.[5]

The duties of criminal investigators at HUD's OIG consist of performing a support function to HUD, similar to an internal affairs officer or insurance claim adjuster, rather than a criminal investigator in an agency whose mission is to investigate crimes.

The mission of HUD is to "increase homeownership, support community development and increase access to affordable housing free from discrimination." HUD's Mission, *available at* http://www.hud.gov/library/bookshelf12/hudmission.cfm.[6] HUD was not formed for the purpose of law enforcement, 42 U.S.C. § 3532, and as shown below, the law enforcement purpose of

---

[5] Other employees with investigatory duties have often been held to be performing support functions to management. See, e.g., O'Dell v. Alyeska Pipeline Service Co., 856 F.2d 1452 (9th Cir. 1988) (oil company's field inspector, who observed oil field work and assured compliance with pertinent regulations and industry standards was exempt from the FLSA's overtime provisions as an administrative employee); Baker v. California Shipbuilding Corp., 73 F. Supp. 322, 327 (S.D. Cal. 1947) (safety inspectors in a shipbuilding yard were held to be administratively exempt).

[6] HUD's mission during the period 1987-1994 was not materially different than its current mission. United States Government Manuals from the relevant time period state that HUD "is the principal Federal agency responsible for programs concerned with the Nation's housing needs, fair housing opportunities, and improvement and development of the Nation's communities." See, e.g., Def. App. 77, 82; see also Def. App. 72.

HUD's OIG is to protect the integrity and efficiency of the agency, much like an internal affairs office of a police department or claims investigation and settlement department of an insurance company.

The Inspector General Act of 1978 ("OIG Act") established OIGs in various agencies, including HUD. 5 U.S.C. App. 3 §§ 2, 11(a). The OIG is a component of the agency to which it is assigned. In National Aeronautics and Space Administration v. FLRA, 527 U.S. 229 (1999), the United States Supreme Court held that an OIG employee is a "representative of the agency" within the meaning of 5 U.S.C. § 7114(a)(2)(B), which provides a right to union representation when an employee is investigated by a representative of the agency. See also United States Department of Justice v. FLRA, 266 F.3d 1228 (D.C. Cir. 2001). In so holding, the United States Supreme Court noted that, other than certain Congressional committees and the President, "each Inspector General has no supervisory authority – except the head of the agency of which the OIG is a part." NASA v. FLRA, 527 U.S. at 240. The Supreme Court also noted that OIG investigative offices perform their duties "with regard to, and on behalf of, the particular agency in which it is stationed." Id. Therefore, the Supreme Court made clear that the OIG is a part of the agency to which it is assigned, and thus, HUD's OIG is a part of HUD.[7]

The OIG of each agency is charged with the duty to "conduct, supervise, and coordinate audits and investigations relating to the programs and operations" of that agency. 5 U.S.C. App. 3 § 4(a). A March 9, 1989 opinion of the Office of Legal Counsel, Department of Justice,

---

[7] Additionally, several courts have held that the OIG is a part of its agency for which it performs investigations for purposes of the intra-agency "need to know" exception to the Privacy Act. Covert v. Harrington, 876 F.2d 751, 756 n.3 (9th Cir. 1989); Ivey v. Snow, Civil Action No. 04-0214 (EGS), 2005 U.S. Dist. LEXIS 18872, at *8-9 (D.D.C. August 31, 2005); Marcotte v. Secretary of Defense, 618 F. Supp. 756, 763 (D. Kan. 1985).

explains that the scope of an OIG's authority does not extend to "regulatory investigations," i.e., investigations that have the objective of "regulatory compliance by private parties," but rather, "investigations properly within the ambit of the Inspector General generally have as their objective the elimination of waste and fraud in governmental departments, including waste and fraud among its employees, contractors, grantees and other recipients of federal funds." Inspector General Authority to Conduct Regulatory Investigations, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70, at *2 n.1 (March 9, 1989) ("Kmiec Letter"). Therefore, OIGs do not have the authority to investigate violations of law unless they relate to the efficiency of the agency of which the OIG is a part.

During the relevant time period, the function of HUD's OIG was primarily promoting the efficiency and effectiveness of HUD programs by preventing and detecting fraud and abuse. Organizations, Functions, and Delegations of Authority; Availability of Information to the Public; Production in Response to Subpoenas or Demands of Courts or Other Authorities, 57 Fed. Reg. 2225 (Jan. 21, 1992); Organizations, Functions and Delegations of Authority, 49 Fed. Reg. 11161 (Mar. 26, 1984); Def. App. 73-74, 79, 84. The statutory and regulatory mandate and mission of HUD's OIG make clear that the employees of their offices perform support functions for their respective agencies, not production functions. Put simply, the business of HUD is increasing affordable housing, not law enforcement. Therefore, criminal investigators in HUD's OIG are performing support services rather than production services. See Adam, 26 Cl. Ct. at 791 ("the business of the Post Office is delivering mail. An employee who works for the Post Office in an investigatory role would not appear to be performing a line function of the organization.").

Besides the general statutory and regulatory mandate and missions of HUD's OIG, the position descriptions of criminal investigators in HUD's OIG, Semi-Annual Reports of HUD's OIG and the annexed declarations of the former Assistant Inspector General for Investigations of HUD's OIG, Patrick Neri, and the former Special Agent in Charge of the New England office of HUD's OIG, Raymond Carolan, further demonstrate that the GS-1811-12 and GS-1811-13 criminal investigators were performing a support service rather than a production function for HUD.

The position descriptions for GS-1811-12 and GS-1811-13 criminal investigators state that the Office of Investigations, where the plaintiffs worked, was "primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to [HUD's] programs." Def. App. 52, 56. More specifically, Mr. Neri estimated that during the period February 1987 through approximately February 1994, approximately 98% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time was spent investigating or leading investigations into fraud upon HUD programs, such as HUD's Single Family Mortgage Insurance Program, Multifamily Mortgage Insurance Program and Rental Assistance Program. Id. at 47. Examples of the types of fraud GS-1811-12 and GS-1811-13 criminal investigators investigated are false statements, embezzlement, bribery and kickbacks. Id. at 47, 92, 111. False statement cases consisted primarily of grantees making false statements in order to fraudulently obtain grant money from the various HUD programs. See, e.g., id. at 86-90,115-19. Embezzlement cases consisted mainly of grantees diverting HUD program money for a purpose other than what was authorized by the grant. See, e.g., id. "Kickback" cases consisted largely of people accepting money in exchange for HUD funded loans or grants. See, e.g., id. at 124. All

of these types of cases were for the purpose of identifying and prosecuting persons who were defrauding HUD.

Thus, at all times during the period February 1987 through approximately February 1994, a typical GS-1811-12 or GS-1811-13 criminal investigator in HUD's OIG spent the vast majority of his or her time investigating or leading investigations into fraud upon HUD's programs. These investigations were clearly a support service as they were designed to detect people who were defrauding HUD of program money.

In February 1994, Operation Safe Home was announced. Id. at 47, 122. Operation Safe Home focused upon three major types of wrongdoing that undermine HUD programs: (a) violent crime in public and assisted housing; (b) fraud in public housing administration; and (c) equity skimming in multifamily insured housing. Id. The only part of Operation Safe Home that was a new investigative focus for HUD's OIG was combating violent crime in public and assisted housing. Id. at 47. HUD's OIG assisted federal, state and local law enforcement in protecting HUD's interest in providing safe public housing for HUD's program beneficiaries. Id. For example, GS-1811-12 and GS-1811-13 criminal investigators worked with federal, state and local law enforcement officers to investigate gangs and other drug and gun rings in an effort to prosecute their leaders. Id. at 62. After Operation Safe Home started in February 1994, some GS-1811-12 or GS-1811-13 criminal investigators for HUD's OIG spent a majority of their time working on cases involving violent crime in public and assisted housing, while others continued to spend the majority of their time investigating fraud upon HUD programs. Id. at 47-48. Although combating violent crime in assisted public housing may seem like a typical law enforcement function, the only reason HUD's OIG was able to participate is because it

contributed to the efficiency of HUD's programs. See Kmiec Letter, 13 Op. O.L.C. 54. Violent crime in public and assisted housing undermines HUD's goal or providing "decent, safe, and sanitary housing to needy Americans." Def. App. 122. Protecting public housing residents is not the kind of "regulatory investigation" in which OIGs are prohibited from engaging, Kmiec Letter, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70, at *2 n.1, but rather, contributes to the efficiency of HUD's public housing programs.

Additionally, it cannot reasonably be disputed that the supporting services performed by GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG are of substantial importance to HUD. During the period April 1, 1987 through September 30, 1994, investigations by HUD's OIG resulted in approximately $200 million dollars in savings, recoveries, fines and cost efficiencies. Def. App. 91, 94, 96, 98, 100, 102, 104, 106, 108, 110, 113, 120, 125, 127. This amounts to millions of dollars each year during the period 1987 through 1994, as well as significant indictments and convictions. Id. at 50.

Therefore, because GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG perform a support service that is of substantial importance to HUD, the GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG meet the primary duty test of the administrative exemption.

## II. GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HUD's OIG Performed Predominantly Nonmanual Work That Was Intellectual and Varied In Nature And/Or Of A Specialized Or Technical Nature That Required Considerable Special Training, Experience, And Knowledge

The position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG and Mr. Neri and Mr. Carolan's declarations show that GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG during the relevant time period performed

predominantly nonmanual work that was intellectual and varied in nature and/or of a "specialized or technical nature that requires considerable special training, experience, and knowledge." In Adams I, 27 Fed. Cl. at 19-24, this Court held that GS-1811-9, GS-1811-11, GS-1811-12 and GS-1811-13 criminal investigators in the Bureau of Alcohol, Tobacco and Firearms ("ATF"), the Drug Enforcement Administration ("DEA"), the Internal Revenue Service ("IRS") and Secret Service all perform nonmanual work that is intellectual and varied in nature. The Federal Circuit did not disturb this conclusion or the Court's analysis in Adams I. Adams II, 178 F.3d 1306; Adams III, 65 Fed. Cl. at 205.

The duties performed by GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG are similar to duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the agencies at issue in Adams I, except that criminal investigators in HUD's OIG are focused only upon crimes related to HUD's programs and employees. Both GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG plan and conduct complex criminal investigations. Def. App. 52, 56. The major duties of GS-1811-12 and GS-1811-13 criminal investigators during the relevant time period were to: 1) plan and/or lead investigative activity; 2) initiate contact with Federal, state and local officials; 3) examine records, books and other data of consequence; 4) verify the accuracy and authenticity of evidence; 5) conduct interviews with suspects, witnesses and informants; 6) serve subpoenas and execute warrants and arrests; 7) plan and conduct surveillance; 8) purchase contraband; 9) prepare interim and comprehensive final investigative reports; 10) provide advice and assistance to the Department of Justice and United States Attorneys in preparing cases to present before grand juries and at trial; and 11) testify before grand juries and at trial. Id. at 48, 53, 60-62.

None of the duties listed above could be considered manual work. In Adams I, 27 Fed. Cl. at 16, this Court determined that manual work is work where employees spend most of their time "using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands." None of the above duties involve repetitive operations or using tools, instruments or machinery. Also, while executing warrants and arrests by participating in raids, searches or seizures can be physically active work, such work is not considered to be manual labor. Id. at 19.

Additionally, the performance of all of these duties is intellectual and varied in nature. "Work of an intellectual nature means work requiring general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work requiring mental processes which involve substantial judgment based upon considering, selecting, adapting, and applying principles to numerous variables. . ." 5 C.F.R. § 551.104. Each of the duties described above requires the criminal investigator to use perceptiveness, analytical reasoning, perspective and judgment. For example, in interviewing witnesses and subjects, the criminal investigator must assess the credibility of each interviewee. Def. App. 49, 61-62. In examining evidence, the criminal investigator must determine which evidence is reliable and relevant to prove the case. Id. at 49, 61. Also, in planning and conducting surveillance, investigators must determine when the necessary evidence has been obtained or when it is unlikely that such evidence will be obtained in that surveillance. Id. at 63. Additionally, it is clear from the number and variety of different tasks that the criminal investigators performed that their work was varied in nature.

GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG also performed nonmanual work of a "specialized or technical nature that requires considerable special training, experience, and knowledge." 5 C.F.R. § 551.205(b)(2) (1990). The position description for GS-1811-12 criminal investigators in HUD's OIG states that the criminal investigator "must be thoroughly familiar with the various programs of [HUD], the Labor Standards Act, and the Davis-Bacon Act, as well as the various Federal criminal statutes relating to fraud and corruption, viz bribery, theft or vandalism of Government property, conflict of interest, [and] fraud against the Government." Def. App. 52. The position description for GS-1811-13 criminal investigators in HUD's OIG states that they must have knowledge of "admissibility of evidence, rules of criminal procedure and constitutional rights" and that they "must be constantly aware of and follow closely the implications of precedent court decisions." Id. at 57-58. Furthermore, GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG must possess an extensive knowledge of generally accepted investigative principles, techniques, methods and procedures. Id. at 49, 63. GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG obtained this knowledge and skill through training at the Federal Law Enforcement Training Center and years of on the job experience. Id. at 49-50, 63.

Therefore, during the relevant time period, the work of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG was predominantly nonmanual work that was intellectual and varied in nature and/or of a specialized or technical nature that required considerable special training, experience, and knowledge.

III. GS-1811-12 And GS-1811-13 Criminal Investigators Employed By HUD's OIG Frequently Exercised Independent Judgment And Discretion Under Only General Supervision

The position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG and Mr. Neri and Mr. Carolan's declarations demonstrate that GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG frequently exercised independent judgment and discretion under only general supervision. As noted above, "[d]iscretion and independent judgment means work that involves comparing and evaluating possible courses of conduct, interpreting results or implications, and independently taking action or making a decision after considering the various possibilities." 5 C.F.R. § 551.104. The work must also meet the following criteria: 1) "[t]he work must be sufficiently complex and varied so as to customarily and regularly require discretion and independent judgment in determining the approaches and techniques to be used, and in evaluating results"; 2) "[t]he employee must have the authority to make such determinations during the course of assignments"; and 3) "[t]he decisions made independently must be significant." Id.

In Adams I, 27 Fed. Cl. at 19-24, this Court held that GS-1811-12 and GS-1811-13 criminal investigators in the ATF, DEA, IRS and Secret Service all frequently exercised independent judgment and discretion under only general supervision. The Federal Circuit did not disturb this conclusion or the Court's analysis in Adams I. Adams II, 178 F.3d 1306; Adams III, 65 Fed. Cl. at 205. Similarly, GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG during the relevant time period frequently exercised independent judgment and discretion under only general supervision.

The position description for GS-1811-12s in HUD's OIG states that the criminal investigators have "wide latitude for individual judgment, initiative and resourcefulness." Def. App. 54. Furthermore, although many investigations are conducted jointly with, or under the supervision of, a higher grade criminal investigator, GS-1811-12 criminal investigators in HUD's OIG were "required to exercise sound judgment as situations develop, requiring immediate on-the-spot action where it is not possible to consult" with his or her supervisor. Id. Similarly, GS-1811-13 criminal investigators had "a wide latitude in planning and conducting" investigations. Id. at 58. Also, GS-1811-13 criminal investigators often led teams of criminal investigators and had discretion to add other professional and technical personnel to their teams, such as architects, engineers, construction analysts and appraisers. Id. at 57.

Specific examples of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG exercising significant discretion and independent judgment include: 1) altering investigative plans by interviewing different witnesses based upon information learned in other witness interviews; 2) making credibility determinations; 3) deciding which pieces of evidence should be presented to United States Attorneys or other prosecutors; and 4) when conducting surveillance, determining when the necessary evidence had been collected or when it was unlikely that such evidence would be obtained at that time. Id. at 48-49, 60-62. At almost all times, GS-1811-12 and GS-1811-13 criminal investigators had complete discretion to follow the case wherever the evidence led them. Id. at 49, 61. Only in the most "complex, critical and sensitive cases" would a GS-1811-13 criminal investigator need clearance to pursue a new line of inquiry from a higher level official and, even then, his or her recommendations were normally accepted. Id. at 58.

Additionally, as noted above, the tasks performed by GS-1811-12 and GS-1811-13 criminal investigators were complex and varied.

Furthermore, the GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG worked under only general supervision. Supervisors of GS-1811-12 criminal investigators provided only "general technical and administrative direction." Id. at 53. Their work was "reviewed for adequacy and from the standpoint of adherence to policy and exercise of sound judgment." Id. GS-1811-13 criminal investigators in HUD's OIG typically received "only generalized instructions and guidance." Id. at 58.

Therefore, the position descriptions of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG and Mr. Neri and Mr. Carolan's declarations show that GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG frequently exercised independent judgment and discretion under only general supervision.

## CONCLUSION

For the reasons stated above, we respectfully request that the Court enter partial summary judgment in favor of the United States dismissing all of plaintiffs' remaining FLSA claims arising out of employment as GS-1811-12 and GS-1811-13 criminal investigators at HUD's OIG.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ Jeanne E. Davidson
by Bryant G. Snee

JEANNE E. DAVIDSON
Acting Director

/s/ Shalom Brilliant

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7561

Attorneys for Defendant

OF COUNSEL:
Michael J. Dierberg
William P. Rayel
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

February 26, 2007