IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 90-162C and consolidated cases (Judge Bush) |

Declaration of Patrick Neri

I, Patrick Neri, declare as follows:

1. During the period from approximately October 1983 through June 1997 my job title was Assistant Inspector General for Investigations for the Office of Inspector General ("OIG") in the Department of Housing and Urban Development ("HUD"). My immediate supervisor was the Deputy Inspector General for HUD's OIG. Prior to becoming the Assistant Inspector General for Investigations, I was a criminal investigator in HUD's OIG beginning in August 1972. I then rose through the managerial ranks to become a Supervisory Criminal Investigator, then Director of Field Operations, and then Deputy Assistant Inspector General for Investigations until becoming Assistant Inspector General for Investigations.

2. As Assistant Inspector General for Investigations, I was the indirect supervisor of all of the plaintiffs who worked in HUD's OIG. I have personal knowledge of the type of work and duties of a typical GS 1811-12 or GS-1811-13 criminal investigator who worked in HUD's OIG during my time as Assistant Inspector General for Investigations.

3. On October 30, 1994, all GS-1811 criminal investigators in HUD's OIG started receiving availability pay under the Law Enforcement Availability Pay Act of 1994 at the same time.

4. During the period February 1987 through approximately February 1994, the plaintiff's focused the vast majority of their time upon investigations related to fraud upon HUD programs. During the period February 1987 through approximately February 1994. I estimate that approximately 98% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time was spent investigating or leading investigations into fraud upon HUD programs, such as HUD's Single Family Mortgage Insurance Program. Multifamily Mortgage Insurance Program and Rental Assistance Program. Examples of the types of fraud GS-1811-12 and GS-1811-13 criminal investigators investigated are false statements, embezzlement, bribery and kickbacks.

5. GS-1811-12 and GS-1811-13 criminal investigators were the senior investigators in HUD's OIG and typically handled the most complex cases in the office, such as, multifamily program cases, bribery cases and cases with multiple defendants.

6. In my estimate, the other approximate 2% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time during the period February 1987 through approximately February 1994 was spent investigating misconduct by HUD employees.

7. In February 1994, Operation Safe Home was announced. Operation Safe Home focused upon three major types of wrongdoing that undermine HUD programs: (a) violent crime in public and assisted housing; (b) fraud in public housing administration; and (c) equity skimming in multifamily insured housing. The only part of Operation Safe Home that was a new investigative focus for HUD's OIG was combating violent

crime in public and assisted housing. HUD's OIG assisted Federal, state and local law enforcement in protecting HUD's interest in providing safe public housing for HUD's program beneficiaries. After Operation Safe Home started in February 1994, some GS-1811-12 and GS-1811-13 criminal investigators for HUD's OIG spent a majority of their time working on cases involving violent crime in public and assisted housing, while others continued to spend the majority of their time investigating fraud upon HUD programs.

8. During the period from February 1987 through October 1994, the typical day-to-day duties of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG varied depending upon what type of case they were working on. However, most GS 1811-12 and GS-1811-13 investigators in HUD's OIG spent the majority of their time engaged in typical law enforcement duties such as planning and/or leading investigations, collecting and reviewing evidence, conducting surveillance and interviewing witnesses. For fraud investigations, collecting evidence consisted predominantly of reviewing paperwork. For violent crime investigations, evidence was usually collected through warrants or informants and reviewing evidence.

9. Other duties consisted of initiating contact with Federal, state and local officials, preparing investigative reports, providing advice and assistance to the Department of Justice and United States Attorneys in preparing cases to present before grand juries and at trial and testifying before grand juries and at trial.

10. A typical GS-1811-12 or GS-1811-13 criminal investigator for HUD's OIG exercised significant discretion in his or her day-to-day activities. The investigators had

the responsibility of identifying subjects, witnesses and coordinating their cases with law enforcement agencies and prosecutors.

11. GS-1811-12 and GS-1811-13 criminal investigators for HUD's OIG made decisions such as who to interview, when to interview the witness or subject, when and where to conduct surveillance, etc. and kept their supervisors informed of these decisions and the status of the cases. GS-1811-12 and GS-1811-13 criminal investigators did not need supervisory approval for most day-to-day activities.

12. Every time a GS-1811-12 or GS-1811-13 criminal investigator in HUD's OIG interviewed a witness, he or she assessed the credibility of that witness and determined what additional questions to ask based upon previous answers in the same interview.

13. In reviewing evidence, GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG determined which pieces of evidence would prove a case against a suspect or prove exculpatory for the suspect and adjusted their investigations accordingly. GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG had almost complete discretion to follow a case wherever the evidence led them.

14. I have reviewed the position descriptions for GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG, attached as Exhibits A and B respectively. Exhibits A and B are true and correct copies of position descriptions for GS-1811-12 and GS-1811-13 criminal investigators that were used by the Office of Investigations in HUD's OIG. The descriptions of duties in the position descriptions are an accurate reflection of duties these criminal investigators actually performed and the skills necessary for the job during the period February 1987 through October 1994.

15. GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG were required to possess an extensive knowledge of generally accepted investigative principles, techniques, methods and procedures.

16. Most GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG learned the skills necessary to complete their jobs, as accurately described in this declaration and the position descriptions, at the Federal Law Enforcement Training Center in Glynco, Georgia and, more importantly, through years of additional training and on the job experience. Some of the criminal investigators came to HUD's OIG from law enforcement agencies, such as the United States Secret Service or the Bureau of Alcohol, Tobacco, and Firearms, having already been trained at that agency.

17. During the years 1987 through 1994, investigations by HUD's OIG resulted in significant indictments and convictions as well as millions of dollars each year in fines, savings, restitutions, settlements and recoveries for the Federal Government, including HUD.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 25 day of February, 2007.

Patrick Neri

# EXHIBIT A

## Background

The Inspector General (IG) is the Department's focal point for review of integrity of operations. IG is the central authority concerned with the quality, coverage, and coordination of the audit, investigation, and security services of the Department. In directing these monitoring and review activities, the IG emphasizes both the protective and constructive aspects of these services as a tool of management within a comprehensive Departmental effort to attain improved management effectiveness.

The Inspector General reports directly to the Secretary. He has authority to inquire into all program and administrative activities of the Department, in order to carry out a comprehensive plan of selected audits, investigations, surveys, reviews, and security services of sufficient coverage to provide reasonable protection and constructive advice for Departmental management.

The Office of Inspector General consists of the following offices:

Immediate Office of the Inspector General
Office of Audit
Office of Investigations
Office of Fraud Control & Management Operations

The Office of Investigations is primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to the Department's programs and activities. Reports prepared in connection with these investigations are referred to the Department of Justice. Additionally, this office conducts all in-house equal opportunity investigations, as well as investigations involving alleged violations of regulations or other irregularities in connection with the administration of Departmental programs and activities. The Office of Investigations has a supervisory staff in Washington, D. C., and an investigative staff in each of the 10 Regional Offices.

## Duties

The incumbent of this position is a Criminal Investigator, GS-12, whose duty station is in the Central Office or in one of the ten Regional Investigations Offices.

The incumbent, under the general supervision of a Supervisory Criminal Investigator or Regional Inspector General, and acting on the basis of his own judgment and initiative with wide latitude for individual judgment, plans and conducts complete and complex criminal investigations or administrative inquiries.

To efficiently execute his responsibilities, incumbent must be thoroughly familiar with the various programs of the Department, the Labor Standards Act, and the Davis-Bacon Act, as well as the various Federal criminal statutes relating to fraud and corruption, viz bribery, theft or vandalism of Government property, conflict of interest, fraud against the Government.

Because the allegations usually involve matters of substantial delicacy concerning individuals or institutions of prominence in a community or high state or Government officials, the incumbent is required to exercise resourcefulness, versatility, tact, and sound judgment, and to utilize the best investigative skills and techniques.

Incumbent investigates allegations or suspected violations of criminal statutes of the United States as they relate to fraud and corruption in the various housing programs.

Contacts Federal, State, and municipal officials, civic and business leaders, officers of lending institutions, and local agencies and authorities, for the purpose of obtaining facts, signed statements, explanation of actions, and learning sequence of events and background or related information which he determines is required, and to determine the sequence of interviews and extent and scope of investigation.

Examines records, books, payrolls, reports, correspondence, and other data of consequence related to transactions, actions, or allegations under investigation.

Verifies and corroborates all information obtained, presented, or alleged to establish accuracy and authenticity of facts and/or evidence.

Determines when, in his judgment, he has completed all necessary investigative work on the case and that further investigative work would be unproductive.

Presents fully the investigative findings in comprehensive reports, setting forth therein all evidence of facts and circumstances with a view toward criminal-civil prosecution and/or administrative action.

Assists the Department of Justice and its United States Attorneys in the preparation of cases for presentation to Federal Grand Juries; testifies as a witness before grand juries and in the trial courts in matters involving violations of Federal criminal statutes.

Central Office assignments are made by Supervisory Criminal Investigators; Regional Investigations Office assignments are made by the Regional Inspector General. Supervisors provide general technical and administrative direction. Incumbent's work is reviewed for adequacy and from the standpoint of adherence to policy and the exercise of sound judgment.

Many investigations involve a considerable degree of hazard, since those individuals who for profit or political motives violate regulations and criminal statutes which affect the administration of any of the housing programs will go to almost any extremes to accomplish their objectives to avoid detection and prosecution. The investigations conducted by the incumbent also require him from time to time to contact individuals who have been associated with underworld characters, and frequently these contacts or interviews are made at night in neighborhoods where, if the true identity and objective of the investigator were known, reprisals involving serious physical injury could result.

Supervision and Guidance Received:

The incumbent works under the supervision of a Supervisory Criminal Investigator or Regional Inspector General but with a wide latitude for individual judgment, initiative, and resourcefulness. While many of the investigations are conducted jointly with, and under the immediate supervision of, a criminal investigator of a higher grade. The incumbent is required to exercise sound judgment as situations develop, requiring immediate on-the-spot action where it is not possible to consult with the Supervisory Criminal Investigator or Regional Inspector General.

# EXHIBIT B

## Background

The Inspector General (IG) is the Department's focal point for review of integrity of operations. IG is the central authority concerned with the quality, coverage, and coordination of the audit, investigation, and security services of the Department. In directing these monitoring and review activities, the IG emphasizes both the protective and constructive aspects of these services as a tool of management within a comprehensive Departmental effort to attain improved management effectiveness.

The Inspector General reports directly to the Secretary. He has authority to inquire into all program and administrative activities of the Department, in order to carry out a comprehensive plan of selected audits, investigations, surveys, reviews, and security services of sufficient coverage to provide reasonable protection and constructive advise for Departmental management.

The Office of Inspector General consists of the following offices:

- Immediate Office of the Inspector General
- Office of Audit
- Office of Investigations
- Office of Fraud Control and Management Operations

The Office of Investigations is primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to the Department's programs and activities. Reports prepared in connection with these investigations are referred to the Department of Justice. Additionally, this office conducts all in-house equal opportunity investigations, as well as investigations involving alleged violations of regulations or other irregularities in connection with the administration of Departmental programs and activities. The Office of Investigations has a supervisory staff in Washington, D. C., and an investigative staff in each of the 10 Regional Offices.

## Introduction

This position is located on the staff of a Regional Inspector General. The primary function of the Senior Criminal Investigator is to receive, investigate, and analyze allegations of misconduct, malfeasance, misfeasance, nonfeasance, fraud, corruption or other criminal activity on the part of any employee, person or firm directly or indirectly connected with HUD or HUD-financed operations and the preparation of comprehensive, documented reports reflecting allegations and findings.

## Duties

The Senior Criminal Investigator is assigned cases which potentially are considered to be extremely sensitive and/or complex. Assignments involve investigations of organizations (business ventures) that are complex in corporate and/or financial structure with

a large number of subsidiary activities. Boundaries of assignments are difficult to determine in advance. Investigation may be executed by the incumbent personally or through his direction of a team composed of experienced criminal investigators and at his discretion, professional and technical personnel such as architects, engineers, construction analysts and appraisers. Cases may involve nationally known government officials, large mortgagees and leaders engaged in interstate business and typically, involve multi-million dollar transactions.

Assignments may lead to many separate investigative matters which may develop the presence of criminal activities interwoven with legitimate business ventures. Suspects may be seemingly respectable officials of prominent firms who, in the performance on contracts related to Federal housing programs, are suspected of defrauding the government through such activities such as: instituting a complex system of kickbacks from sub-contractors, bribing government officials or employees; influencing the awarding of contracts or grants or deliberate use of deficient materials or workmanship.

The Senior Investigator takes a lead role in combined and coordinated Task Force Teams in Target cities. The Task Forces are composed of representatives from investigative and prosecutive agencies such as the FBI, IRS, Postal Inspection and the U. S. Attorney and probe into matters of mutual and related interest involving fraud and corruption in Federal housing programs. The incumbent must coordinate his activities within the framework of the jurisdictional responsibilities of each participating agency.

The incumbent must prepare clear, logical, impartial and thoroughly documented reports. These reports may be transmitted to the Department of Justice and provide the basis for legal hearings and court action. Preparation requires thorough knowledge of admissibility of evidence, rules of criminal procedure and constitutional rights. His report may represent a consolidation of various separate investigations and he must track down inconsistencies and possible interrelationships.

The incumbent is the OIG representative responsible to the RIGI to identify and evaluate state-wide incidents effecting HUD programs and operations and, with RIGI concurrence, initiate appropriate action. This is accomplished through developing rapport with individuals and establishing effective liaison with local, state and Federal law enforcement and prosecutive agencies.

Scope of Assignments

Assignments to a Senior Investigator generally involve high government officials and prominent industry members and/or work within a complex structure with diversified interests and outlets among several states. Such investigations would receive sustained and widespread news coverage if the investigation becomes public knowledge prematurely.

The incumbent, therefore, must exercise extreme tact and highly sophisticated inquiry procedures to avoid premature disclosure which could offset aspects of the investigation.

The consequences of investigations conducted by a Senior Investigator constitute deterrents to criminal violations, may influence changes in law and future court actions, as well as lead to curtailment or change in HUD programs. The incumbent must be constantly aware of and follow closely the implications of precedent court decisions.

Supervisions Received

The incumbent exercises a wide latitude in planning and conducting his investigation. He receives only generalized instructions and guidance except in the most complex, critical and sensitive cases he seeks clearance from higher level officials before pursuing new lines of inquiry. His technical recommendations for extension, modification, or adoption of new lines of inquiry are normally accepted. His investigations set the pattern for subsequent investigations in similar areas, particularly where his assignment may be the first of a particular type under a new law or Departmental program

Other

Many investigations involve a considerable degree of hazard since those individuals who, for profit or political motives, violate regulations and criminal statutes which affect the administration of any housing programs and will go to almost any extreme to accomplish their objectives to avoid detection and prosecution.

The investigation conducted by a Senior Investigator also requires him, from time to time, to contact individuals who have been associated with underworld characters. Frequently these contacts or interviews are made at night in neighborhoods where, if the true identity and objective of the investigator were known, reprisals involving serious physical injury could result.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

Declaration of Raymond A. Carolan

I, Raymond A. Carolan, declare as follows:

1. During the period 1982 through 2002, I was the Special Agent in Charge ("SAC") of New England for the Office of Inspector General ("OIG") of the Department of Housing and Urban Development ("HUD").

2. As the SAC of the New England office, I supervised GS-1811-12 and GS-1811-13 criminal investigators during the period February 1987 through October 1994. I have personal knowledge of the type of work and duties of a typical GS-1811-12 or GS-1811-13 criminal investigator in the New England office during my time as SAC of the New England office. During the time period 1987-1994, there were anywhere between five to nine GS-1811 criminal investigators in the New England office.

3. During the period from February 1987 through approximately February 1994, a typical GS-1811-12 or GS-1811-13 criminal investigator in my office spent the vast majority of his or her time investigating or leading investigations into fraud involving HUD programs. More specifically, during that time period, a typical GS-1811-12 or GS-1811-13 criminal investigator in HUD's OIG would spend approximately 60% of his or her time investigating false statements

made to defraud HUD programs, such as HUD's Single Family Mortgage Insurance Program, Multifamily Mortgage Insurance Program and Rental Assistance Program.

4. GS-1811-12 and GS-1811-13 criminal investigators typically worked on the more complex cases, such as cases involving conspiracies and multiple defendants.

5. In investigating a false statement case, a GS-1811-12 or GS-1811-13 investigator in my office typically spent the majority of his or her time interviewing internal and external subject matter experts, reviewing HUD files and interviewing recipients of HUD funds.

6. Other duties consisted of conducting surveillance, initiating contact with Federal, state and local officials, preparing interim and comprehensive final investigative reports, providing advice and assistance to state and local prosecutors as well the Department of Justice and United States Attorneys in preparing cases to present before grand juries and at trial, testifying before grand juries and at trial and occasionally executing arrest and search warrants.

7. In addition to the actual investigative work, GS-1811-12 and GS-1811-13 investigators in my office planned their investigations from start to finish, coordinated with law enforcement agencies and worked with state and Federal prosecutors in preparation for criminal trials. Investigative plans, other than for routine subsidy cases, were reviewed and approved at the GS-14/15 level.

8. GS-1811-12 and GS-1811-13 criminal investigators also had a significant amount of discretion. The investigators put together their initial investigation plan. Those plans were reviewed by a supervisor, but once the investigation began, the investigator had discretion to follow the evidence wherever it led him or her. For example, based upon one person's interview, an agent may determine to interview additional people that he or she had no knowledge of prior

to the interview. In other words, the GS-1811-12 and GS-1811-13 criminal investigators had nearly complete discretion in what leads to follow in order to completely address the allegations.

9. Every time a GS-1811-12 and GS-1811-13 criminal investigator in my office interviewed a witness, he or she assessed the credibility of that witness and determined what additional questions to ask based upon previous answers in the same interview.

10. In reviewing evidence, GS-1811-12 and GS-1811-13 criminal investigators in my office determined which pieces of evidence would support or not support the allegations and adjusted their investigations accordingly. GS-1811-12 and GS-1811-13 criminal investigators in my office had almost complete discretion to follow a case wherever the evidence led them.

11. GS-1811-12 and GS-1811-13 criminal investigators in my office, more often than not, only needed to notify a supervisor for certain things, such as deputization (which later became blanket for all cases) or subpoenas. Notification and approval was usually required for activities such as search or arrest warrants and anything that involved a potential safety hazard, such as late night surveillance in a dangerous area. Criminal investigators developed and/or paid informants and purchased contraband as necessary, such as access to HUD subsidy vouchers. The level of supervision increased as the risk factors increased.

12. In February 1994, Operation Safe Home was implemented. Operation Safe Home focused on three major types of wrongdoing that undermine HUD programs: (a) violent crime in public and assisted housing; (b) fraud in public housing administration; and (c) equity skimming in multifamily insured housing. The only part of Operation Safe Home that was a new investigative focus for HUD's OIG was combating violent crime in public and assisted housing. HUD's OIG solely conducted and/or partnered with other Federal, state and local law

enforcement in protecting HUD's interest in providing safe public housing for HUD's program beneficiaries.

13. Once Operation Safe Home began, GS-1811-12 and GS-1811-13 criminal investigators in my office spent approximately 60-70% of their time investigating illegal drugs, violent gangs and other types of violent criminal activity in public and assisted housing and in high density "Section 8" neighborhoods. These cases usually involved drugs, guns or other illegal trafficking. GS-1811-12 and GS-1811-13 criminal investigators in my office worked either alone or with Federal, state and local law enforcement officers to investigate gangs and other drug and gun rings in an effort to prosecute their leaders and improve the quality of life of residents. They utilized all available investigative and law enforcement techniques commonly available to Federal law enforcement officers investigating these types of violations.

14. In investigating violent crime, GS-1811-12 and GS-1811-13 criminal investigators in my office had considerable discretion. As in a fraud investigation, the investigators were free to follow the case wherever the evidence led them and needed to assess the credibility of all witnesses they interviewed. When investigators were investigating Operation Safe Home violent crime allegations, they spent the vast majority of their time interviewing subjects and witnesses, developing and paying informants, collecting evidence through surveillance, warrants, informants, telephone taps, purchasing contraband and other high risk investigative techniques and reviewing evidence.

15. In conducting surveillance, GS-1811-12 and GS-1811-13 criminal investigators in my office made decisions as to when they had seen or heard what they needed to see or hear or when it was unlikely that they would obtain the visual or audio evidence they were seeking. HUD's OIG invested heavily in technical equipment to support these efforts.

16. GS-1811-12 and GS-1811-13 criminal investigators in my office were required to possess an extensive knowledge of generally accepted investigative principles, techniques, methods and procedures.

17. GS-1811-12 and GS-1811-13 criminal investigators in my office learned the skills necessary to complete their jobs at the Federal Law Enforcement Training Center in Glynco, Georgia and, more importantly, through years of on the job experience.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 25th day of February, 2007.

Raymond A. Carolan

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

Declaration of Ellyn M. Wiles

I, Ellyn M. Wiles, declare as follows:

1. I am currently a Supervisory Human Resources Specialist (Processing Operations Branch Manager), Bureau of the Public Debt, U.S. Department of the Treasury ("BPD"). I began serving as the Processing Operations Branch Manager in May 2006. BPD has been servicing Office of Inspector General ("OIG") for the Department of Housing and Urban Development ("HUD") since 1999. The Processing Operations Branch is responsible for maintaining the formal personnel documentation for HUD's OIG. I submit this declaration in support of defendant's motion for summary judgment.

2. Annexed hereto as Exhibit A are true and correct copies of SF-50s of certain plaintiffs, who were criminal investigators in HUD's OIG, except to the extent that the SF-50s have been bates labeled and the names, social security numbers and dates of birth of plaintiffs have been redacted for privacy purposes.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of February, 2007.

Ellyn M. Wiles

# EXHIBIT A

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date: 10/30/94

**FIRST ACTION**

5-A. Code: 819 | 5-B. Nature of Action: AVAILABILITY PAY
5-C. Code: Z2S | 5-D. Legal Authority: PL 103-329, SEC 633
5-E. Code | 5-F. Legal Authority

**SECOND ACTION**

6-A. Code | 6-B. Nature of Action
6-C. Code | 6-D. Legal Authority
6-E. Code | 6-F. Legal Authority

7. FROM: Position Title and Number

15. TO: Position Title and Number
CRIM INVSTGR
MM275301 MM2753

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | | | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 1811 | 12 | 06 | 68,122.60 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| 47,013.00 | 7,522.00 | 54,535.00 | 13,587.60 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
HOUSING AND URBAN DEVELOPMENT
HQS
OIG
OIG, OI

**EMPLOYEE DATA**

23. Veterans Preference: 1 – None; 2 – 5-Point; 3 – 10-Point/Disability; 4 – 10-Point/Compensable; 5 – 10-Point/Other; 6 – 10-Point/Compensable/30%
24. Tenure: 0 – None; 1 – Permanent; 2 – Conditional; 3 – Indefinite
25. Agency Use
26. Veterans Preference for RIF: YES NO
27. FEGLI
28. Annuitant Indicator
29. Pay Rate Determinant
30. Retirement Plan: BASIC
31. Service Comp. Date (Leave)
32. Work Schedule: NOT APPLICABLE
33. Part-Time Hours Per Biweekly Pay Period

**POSITION DATA**

34. Position Occupied: 1 – Competitive Service; 2 – Excepted Service; 3 – SES General; 4 – SES Career Reserved
35. FLSA Category: E – Exempt; N – Nonexempt
36. Appropriation Code
37. Bargaining Unit Status: 8888
38. Duty Station Code
39. Duty Station (City – County – State or Overseas Location)
40. AGENCY DATA: 25-0120-025 | 41. | 42. BOSTON | 43. SUFFOLK | 44. MA

45. Remarks

CERTIFICATION BY AGENCY HEAD EFFECTIVE 10/31/94.
SPECIAL ADJUSTED RATE FOR LAW ENFORCEMENT OFFICERS EXCEEDS LOCALITY RATE
OF PAY, SO EMPLOYEE RECEIVES NO LOCALITY PAYMENT.
SALARY IN BLOCK 20 INCLUDES AVAILABILITY PAY OF $ 13,587.60.

HUD-OIG 3009

46. Employing Department or Agency: HOUSING AND URBAN DEVELOPMENT
47. Agency Code: 3-HU 0315
48. Personnel Office ID: 4400
49. Approval Date: 10/30/94
50. Signature/Authentication and Title of Approving Official: OLIVIA JENSEN, PERSONNEL OFFICER

2 – OPF Copy – Long-Term Record — DO NOT DESTROY
Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6237

HU 8311070400120000000 PP 22 1*1994*BATCH 44009999 000-00 807-19 A0/E.0 88-4400

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

| 1. Name (Last, First, Middle) | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| | | | 10/30/94 |

**FIRST ACTION**

| 5-A. Code | 5-B. Nature of Action |
|---|---|
| 819 | AVAILABILITY PAY |
| 5-C. Code | 5-D. Legal Authority |
| Z2S | PL 103-329, SEC 633 |
| 5-E. Code | 5-F. Legal Authority |
| | |

**SECOND ACTION**

6-A. Code | 6-B. Nature of Action
6-C. Code | 6-D. Legal Authority
6-E. Code | 6-F. Legal Authority

7. FROM: Position Title and Number

15. TO: Position Title and Number
CRIM INVSTGR
MM573901 MM5739

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | | | |

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 1811 | 13 | 03 | 66,941.60 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| 51,114.00 | 2,474.00 | 53,588.00 | 13,353.60 |

14. Name and Location of Position's Organization

22. Name and Location of Position's Organization
HOUSING AND URBAN DEVELOPMENT
HQS
OIG
OIG, OI

**EMPLOYEE DATA**

23. Veterans Preference — 1 – None; 2 – 5-Point; 3 – 10-Point/Disability; 4 – 10-Point/Compensable; 5 – 10-Point/Other; 6 – 10-Point/Compensable/30%
24. Tenure — 0 – None; 1 – Permanent; 2 – Conditional; 3 – Indefinite
25. Agency Use
26. Veterans Preference for RIF — YES / NO
27. FEGLI
28. Annuitant Indicator
29. Pay Rate Determinant
30. Retirement Plan WAIVED
31. Service Comp. Date (Leave)
32. Work Schedule NOT APPLICABLE
33. Part-Time Hours Per Biweekly Pay Period

**POSITION DATA** SPEC

34. Position Occupied — 1 – Competitive Service; 2 – Excepted Service; 3 – SES General; 4 – SES Career Reserved
35. FLSA Category — E – Exempt; N – Nonexempt
36. Appropriation Code
37. Bargaining Unit Status 8888
38. Duty Station Code
39. Duty Station (City – County – State or Overseas Location)

| 40. AGENCY DATA | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 26-1250-163 | | DETROIT | WAYNE | MI |

45. Remarks

CERTIFICATION BY AGENCY HEAD EFFECTIVE 10/31/94.
SALARY INCLUDES A LOCALITY-BASED PAYMENT OF 4.84 %.
SALARY IN BLOCK 20 INCLUDES AVAILABILITY PAY OF $ 13,353.60.

**HUD-OIG 3010**

46. Employing Department or Agency
HOUSING AND URBAN DEVELOPMENT

50. Signature/Authentication and Title of Approving Official
OLIVIA JENSEN
PERSONNEL OFFICER

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date |
|---|---|---|
| HU | 4400 | 10/30/94 |

3-Part 50-315 — Editions Prior to 7/91 Are Not Usable After 6/30/93
2 – OPF Copy – Long-Term Record — DO NOT DESTROY
NSN 7540-01-333-6237

Standard Form 50-B
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 4

# NOTIFICATION OF PERSONNEL ACTION

1. Name (Last, First, Middle)
2. Social Security Number
3. Date of Birth
4. Effective Date: 10/30/94

**FIRST ACTION**

5-A. Code: 819
5-B. Nature of Action: AVAILABILITY PAY
5-C. Code: Z25
5-D. Legal Authority: PL 103-329, SEC 633
5-E. Code
5-F. Legal Authority

**SECOND ACTION**

6-A. Code
6-B. Nature of Action
6-C. Code
6-D. Legal Authority
6-E. Code
6-F. Legal Authority

7. FROM: Position Title and Number

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis |
|---|---|---|---|---|---|
| | | | | | |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay |
|---|---|---|---|
| | | | |

14. Name and Location of Position's Organization

15. TO: Position Title and Number
SUPVY CRIMINAL INVESTIGATOR
MM820901 MM8209

| 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|
| GS | 1811 | 14 | 05 | 91,530.00 | PA |

| 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
|---|---|---|---|
| 64,179.00 | 10,269.00 | 74,448.00 | 17,082.00 |

22. Name and Location of Position's Organization
HOUSING AND URBAN DEVELOPMENT
HQS
OIG
OIG, OI

**EMPLOYEE DATA**

23. Veterans Preference: 1 – None; 2 – 5-Point; 3 – 10-Point/Disability; 4 – 10-Point/Compensable; 5 – 10-Point/Other; 6 – 10-Point/Compensable/30%
24. Tenure: 0 – None; 1 – Permanent; 2 – Conditional; 3 – Indefinite
25. Agency Use
26. Veterans Preference for RIF: YES / NO
27. FEGLI
28. Annuitant Indicator
29. Pay Rate Determinant
30. Retirement Plan: WAIVED
31. Service Comp. Date (Leave)
32. Work Schedule: NOT APPLICABLE
33. Part-Time Hours Per Biweekly Pay Period

**POSITION DATA**

34. Position Occupied: 1 – Competitive Service; 2 – Excepted Service; 3 – SES General; 4 – SES Career Reserved
35. FLSA Category: E – Exempt; N – Nonexempt
36. Appropriation Code
37. Bargaining Unit Status: 8888
38. Duty Station Code
39. Duty Station (City – County – State or Overseas Location)
40. AGENCY DATA: 061
41.
42. NEW YORK
43. NEW YORK
44. NEW YORK NY

45. Remarks

CERTIFICATION BY AGENCY HEAD EFFECTIVE 10/31/94.
SPECIAL ADJUSTED RATE FOR LAW ENFORCEMENT OFFICERS EXCEEDS LOCALITY RATE OF PAY, SO EMPLOYEE RECEIVES NO LOCALITY PAYMENT.
SALARY IN BLOCK 20 INCLUDES AVAILABILITY PAY OF $ 17,082.00.

**HUD-OIG 3011**

46. Employing Department or Agency: HOUSING AND URBAN DEVELOPMENT
47. Agency Code: HU: 50315
48. Personnel Office ID: 4400
49. Approval Date: 10/30/94
50. Signature/Authentication and Title of Approving Official: OLIVIA JENSEN, PERSONNEL OFFICER

3-Part 2 – OPF Copy – Long-Term Record — DO NOT DESTROY
Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6237

United States.

1987/88 The United States

# Government Manual

Office of the
Federal Register

National Archives
and Records Administration

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

*451 Seventh Street SW., Washington, DC 20410*
*Phone, 202–655–4000*

| | |
|---|---|
| SAMUEL R. PIERCE, JR. | *SECRETARY OF HOUSING AND URBAN DEVELOPMENT* |
| Deborah Gore Dean | *Executive Assistant to the Secretary* |
| Carl D. Covitz | *Under Secretary* |
| (Vacancy) | *Confidential Assistant to the Under Secretary* |
| (Vacancy) | *Executive Assistant to the Under Secretary* |
| Starr B. Eckert | *Special Assistant to the Secretary* |
| Stephanie Lynch | *Special Assistant to the Secretary* |
| David Turner | *Special Assistant to the Secretary* |
| David Turner | *Acting Director, Executive Secretariat Operations* |
| James L. Pitts | *Special Assistant to the Secretary* |
| John Mooring | *Special Assistant to the Secretary* |
| Peter Tropp | *Special Assistant to the Secretary* |
| James R. Walker | *Administrative Officer* |
| Alan J. Greenwald | *Deputy Under Secretary for Intergovernmental Relations* |
| Timothy L. Coyle | *Deputy Under Secretary for Field Coordination* |
| Justin Logsdon | *Assistant for Labor Relations* |
| Theodore R. Britton, Jr. | *Assistant for International Affairs* |
| Raymond E. Combs | *Special Assistant for Indian and Alaska Native Programs* |
| David T. Anderson | *Chairman, Board of Contract Appeals* |
| Alan W. Heifetz | *Chief Administrative Law Judge* |
| Bernice Williams | *Director, Office of Small and Disadvantaged Business Utilization* |
| J. Michael Dorsey | *General Counsel* |
| Stuart C. Sloame | *Deputy General Counsel* |
| Carolyn B. Lieberman | *Deputy General Counsel (Operations)* |
| John A. Maxim, Jr. | *Associate General Counsel, Insured Housing and Finance* |
| Burton Bloomberg | *Associate General Counsel, Equal Opportunity and Administrative Law* |
| Robert S. Kenison | *Associate General Counsel, Assisted Housing and Community Development* |
| John P. Kennedy | *Associate General Counsel, Program Enforcement* |
| Edward J. Murphy, Jr. | *Associate General Counsel, Legislation and Regulations* |
| Gershon M. Ratner | *Associate General Counsel, Litigation* |
| Andrew E. Latvala | *Director, Administrative Services* |
| (Vacancy) | *Assistant Secretary for Public Affairs* |
| Jayne H. Gallagher | *Director, Office of Public Affairs* |
| Leonard Burchman | *General Deputy Assistant Secretary* |
| Robert S. Mason | *Deputy Assistant Secretary* |
| Stephen May | *Assistant Secretary for Legislation and Congressional Relations* |
| Thomas D. Casey | *Deputy Assistant Secretary for Legislation* |
| Audrey Scott | *Deputy Assistant Secretary for Congressional Relations* |
| (Vacancy) | *Assistant Secretary for Community Planning and Development* |
| Nancy C. Silvers | *Executive Assistant to the Secretary* |
| Jack R. Stokvis | *General Deputy Assistant Secretary* |
| (Vacancy) | *Deputy Assistant Secretary for Program Management* |
| DuBois Gilliam | *Deputy Assistant Secretary for Program Policy Development and Evaluation* |
| Janice S. Golec | *Deputy Assistant Secretary for Field Program Development* |
| Marcia K. Dodge | *Director, Office of Management* |
| Frank L. Davis | *Director, Office of Field Operations and Monitoring* |
| Stanley Newman | *Director, Office of Urban Development Action Grants* |
| Syl C. Angel | *Director, Office of Program Policy Development* |
| Richard H. Broun | *Director, Office of Environment and Energy* |
| Christopher G. Wye | *Director, Office of Program Analysis and Evaluation* |
| Don I. Patch | *Director, Office of Block Grant Assistance* |
| David M. Cohen | *Director, Office of Urban Rehabilitation* |
| Thomas T. Demery | *Assistant Secretary for Housing-Federal Housing Commissioner* |
| James Schoenberger | *Acting General Deputy Assistant Secretary* |
| Susan Zagame | *Deputy Assistant Secretary for Policy, Financial Management and Administration* |
| Ernest Waller | *Director, Field Monitoring Staff* |
| Stephen W. Cooley | *Director, Office of Policy Development* |
| Stephen Martin | *Director, Office of Financial Management* |
| Paul Williams | *Director, Office of Management* |
| R. Hunter Cushing | *Deputy Assistant Secretary for Multifamily Housing* |
| James Hamernick | *Director, Office of Insured Multifamily Housing Development* |
| Morris Bourne | *Director, Office of Multifamily Housing Management* |
| Lawrence Goldberger | *Director, Office of Elderly and Assisted Housing* |
| James C. Nistler | *Deputy Assistant Secretary for Single Family Housing* |
| William Heyman | *Director, Office of Lender Activities and Land Sales Registration* |
| Alan Kappeler | *Director, Office of Single-Family Housing* |
| Christopher Peterson | *Director, Office of Manufactured Housing and Regulatory Functions* |

71

| | |
|---|---|
| (Vacancy) | *Assistant Secretary for Public and Indian Housing* |
| James E. Baugh | *General Deputy Assistant Secretary for Public and Indian Housing* |
| John V. Meyers | *Director, Office of Indian Housing* |
| Thomas Sherman | *Director, Office of Public Housing* |
| Nancy S. Chisholm | *Director, Policy Staff* |
| Joseph H. Sens | *Director, Office of Finance and Management* |
| (Vacancy) | *President, Government National Mortgage Association* |
| Louis C. Gasper | *Executive Vice President* |
| Robert P. Kalish | *Vice President for Mortgage Finance* |
| Victor M. Correa | *Treasurer* |
| Richard W. Dyas | *Vice President for Mortgage-Backed Securities* |
| Albert J. Fulner, Jr. | *Controller* |
| Elton A. Peller | *Secretary* |
| Judith Brachman | *Assistant Secretary for Fair Housing and Equal Opportunity* |
| William E. Wynn | *General Deputy Assistant Secretary* |
| Florence Maultsby | *Acting Deputy Assistant Secretary for Operations and Management* |
| (Vacancy) | *Deputy Assistant Secretary, Enforcement and Compliance* |
| June Q. Koch | *Assistant Secretary for Policy Development and Research* |
| C. Duncan MacRae | *General Deputy Assistant Secretary* |
| Marylee Garfield | *Executive Assistant to the Assistant Secretary* |
| Kay Rubin Kinney | *Special Assistant to the Assistant Secretary* |
| James W. Stimpson | *Deputy Assistant Secretary, Policy Development* |
| Henry Felder | *Deputy Assistant Secretary, Research* |
| (Vacancy) | *Deputy Assistant Secretary, Economic Affairs* |
| Charles P. Smith | *Deputy Assistant Secretary, Urban and Community Studies* |
| Elvira S. Tiensivu | *Director, Management and Administrative Services* |
| Charles T. Taylor | *Director, Budget, Contracts and Program Control* |
| Judith L. Hofmann | *Assistant Secretary for Administration* |
| Donald J. Keuch, Jr. | *Deputy Assistant Secretary* |
| Donald C. Demitros | *Director, Office of Information Policies and Systems* |
| Albert J. Kliman | *Director, Office of Budget* |
| Jean Kerr | *Director, Office of Finance and Accounting* |
| Marie P. Kissick | *Director, Office of Administrative and Management Services* |
| Gail L. Lively | *Director, Office of Personnel and Training* |
| Roosevelt Jones | *Director, Office of Procurement and Contracts* |
| Harold W. Henry | *Director, Office of Productivity and Management Improvements* |
| Paul A. Adams | *Inspector General* |
| Alvin Tucker | *Deputy Inspector General* |
| Steven A. Switzer | *Assistant Inspector General for Audit* |
| John J. Connors | *Assistant Inspector General for Fraud Control and Management Operations* |
| Patrick J. Neri | *Assistant Inspector General for Investigations* |

*The Department of Housing and Urban Development is the Federal agency principally responsible for programs concerned with the Nation's housing needs, the development and preservation of the Nation's communities, and the provision of equal housing opportunity for every individual.*

*In carrying out its responsibilities, the Department administers a wide variety of programs, including: Federal Housing Administration mortgage insurance programs that help families become homeowners and facilitate the construction and rehabilitation of rental units; rental assistance programs for lower income families who otherwise could not afford decent housing; the Government National Mortgage Association mortgage-backed securities program that helps ensure an adequate supply of mortgage credit; programs to combat housing discrimination and to affirmatively further fair housing; programs that aid community and neighborhood development and preservation; and programs to help protect the homebuyer in the marketplace. The Department also takes steps to encourage a strong, private sector housing industry that can produce affordable housing, and to stimulate private sector initiatives, public/private sector partnerships, and public entrepreneurship.*

The Department of Housing and Urban Development (HUD) was created to:

—administer the principal programs that provide assistance for housing and for the development of the Nation's communities;

—assist the President in achieving maximum coordination of the various Federal activities that have a major effect upon community preservation and development;

—encourage the solution of problems of housing and community development through States and localities;

—encourage the maximum contributions that may be made by vigorous private homebuilding and mortgage lending industries, both primary and secondary, to housing, community development, and the national economy; and

—provide for full and appropriate consideration, at the national level, of the needs and interests of the Nation's communities and of the people who live and work in them.

HUD was established by the Department of Housing and Urban Development Act, approved September 9, 1965 (79 Stat. 667; 42 U.S.C. 3532–3537), effective November 9, 1965.

## Office of the Secretary

**Secretary** The Department is administered under the supervision and direction of the Secretary, who is responsible for the administration of all programs, functions, and authorities of the Department, including the secondary mortgage market operations of the Government National Mortgage Association. The Secretary advises the President on Federal policy, programs, and activities relating to housing and community development. The Secretary formulates recommendations for basic housing and community development policies for purposes such as the Department's legislative program, the State of the Union message, and the President's budget.

The Secretary:

—works with the Executive Office of the President and other Federal agencies to ensure that economic and fiscal policies in housing and community development are consistent with other

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT




economic and fiscal policies of the Government;

—encourages private enterprise to serve as large a part of the Nation's total housing and community development needs as possible;

—promotes the growth of cities and States and the efficient and effective use of housing, and community and economic development resources, by stimulating private sector initiatives, public/private sector partnerships, and public entrepreneurship;

—takes steps to ensure equal access to housing for all and to affirmatively prevent discrimination in housing; and

—develops the fullest cooperation with private enterprise in achieving the objectives of the Department. The Secretary also provides general oversight (as required by law) of the Federal National Mortgage Association.

**Under Secretary** The Under Secretary assists the Secretary in the discharge of Secretarial duties and responsibilities, and serves as Acting Secretary in the absence of the Secretary.

**Staff Offices** The Office of the Secretary also contains staff offices having Department-wide responsibility in specialized functional areas such as coordination of field activities, Indian and Alaskan Native programs, small and disadvantaged business utilization, intergovernmental relations, labor relations, international affairs, administrative judicial proceedings, and contract appeals.

**Public Affairs** The Assistant Secretary for Public Affairs advises the Secretary and other departmental staff on matters involving the Department's communications with the public and the media. The Assistant Secretary is responsible for matters relating to public information, public opinion, and participation in public events.

The Assistant Secretary also coordinates the activities of the Office of Public Affairs in providing:

—responses to requests for information by national, regional, and local news media;

—news releases and other publications explaining or describing departmental activities;

—communication support for the program activities of the Department;

—scheduling of the Secretary's public appearances;

—preparation of speeches for use by the Secretary and the Under Secretary;

—responses to Freedom of Information requests from the media; and

—review of all departmental publications.

**Legislation and Congressional Relations** The Assistant Secretary for Legislation and Congressional Relations advises the Secretary on matters affecting Congress and is responsible for providing services to Congress for all programs and activities of the Department. These responsibilities are carried out through a Deputy Assistant Secretary for Legislation and a Deputy Assistant Secretary for Congressional Relations.

**Administration** The Assistant Secretary for Administration advises the Secretary and other departmental staff and is the chief officer of the Department on administrative management. The responsibilities of this office are carried out through the following offices: Personnel and Training, Budget, Finance and Accounting, Administrative and Management Services, Procurement and Contracts, Information Policies and Systems, and Productivity and Management Improvements.

**General Counsel** The General Counsel is the chief law officer of the Department and is the legal adviser to the Secretary and other departmental staff. The General Counsel provides legal opinions, advice, and services with respect to all programs and activities of the Department; and provides counsel and assistance in the development of the Department's programs and policies. The General Counsel supervises all staff assigned to the Office of the General Counsel at Headquarters and provides professional guidance for staff assigned to the Regional and Field Office Counsels' Offices.

**Inspector General** Pursuant to the Inspector General Act of 1978 (92 Stat. 1101; 5 U.S.C. App.), the Inspector General is appointed by the President with the advice and consent of the

Senate to keep the Secretary and the Congress informed of fraud and other deficiencies in the Department's programs and operations. The Office of Inspector General is responsible for conducting independent audits and investigations relating to the Department's operations. The Inspector General also provides leadership and coordination for activities designed to promote economy, efficiency, and effectiveness in the administration of programs and operations, as well as the prevention and detection of fraud and abuse in such programs and operations. These include such activities as receiving and investigating employee complaints, reviewing proposed legislation and regulations, and chairing a Departmental Committee on Fraud, Waste and Mismanagement. The Inspector General is a member of the President's Council on Integrity and Efficiency, established by the President to coordinate and implement government policies with respect to integrity and efficiency in Federal programs.

## Program Areas

### Community Planning and Development

The Assistant Secretary for Community Planning and Development is responsible for the following programs and activities:

**Community Development Block Grants** The Community Development Block Grant (CDBG) Program was established by title I of the Housing and Community Development Act of 1974 (88 Stat. 633; 42 U.S.C. 5301) to meet a wide variety of community development needs in "entitlement" and "nonentitlement" communities, with its primary objective being to develop viable urban communities by providing decent housing and a suitable living environment and expanding economic opportunities principally for persons of low and moderate income. Entitlement communities, generally cities with more than 50,000 population, central cities, and counties with more than 200,000 population, receive an annual amount of CDBG funds (their entitlement) based on a formula contained in the statute. Thirty percent of the funds appropriated for the CDBG also are allocated among States, using a formula, for use by nonentitlement communities.

Grants are awarded to entitlement communities to carry out a wide range of community development activities directed at neighborhood revitalization, economic development, and the provision of improved community facilities and services.

Entitlement communities develop their own programs and funding priorities. However, grantees must meet one of the following program objectives: benefit low- and moderate-income persons, or aid in the prevention or elimination of slums and blight. In addition, activities may be carried out that the community certifies are designed to meet other community development needs having a particular urgency because existing conditions pose a serious and immediate threat to the health or welfare of the community where other financial resources are not available to meet such needs. Grantees must also certify that during a period of not more than 3 years, not less than 51 percent of their CDBG funds will be used for activities that benefit low- and moderate-income persons. Activities that do not meet one of these three broad national objectives may not be undertaken with CDBG funds. Regulations governing the entitlement portion of the program may be found in 24 CFR, part 570.

Nonentitlement communities are places that are not entitled to an annual grant. States may administer the nonentitlement CDBG funds, as a result of amendments to the act in 1981 (95 Stat. 384; 42 U.S.C. 5301). In States that do not choose to administer the nonentitlement funds, HUD administers the Small Cities Program, which was established by amendments to the act in 1977.

The HUD-administered Small Cities Program is competitive; HUD ranks each community's application according to its percentage and absolute poverty, its program's impact, its community development needs, and its performance in fair housing and equal opportunity. The most highly ranked applications are then funded to the extent funds are available.

The State-administered Small Cities Program application requirements and the methods in which funds are distributed to nonentitlement communities are established by the State. Eligible activities are the same as those for the entitlement communities, and programs must address the same program objectives. In electing to administer the program, the Governor must certify that the State has or will: plan for community development activities; provide technical assistance in connection with community development programs; provide, from State resources, funds equal to 10 percent of its CDBG allocation for community development activities; and consult with local elected officials in designing the method of funds distribution it will use. Other applicable laws and requirements may be found in the Housing and Community Development Act of 1974, as amended, and in 24 CFR, part 570, subpart I.

Some of the specific activities that can be carried out with block grant funds include the acquisition of real property, relocation and demolition, rehabilitation of residential and nonresidential structures, provisions for public facilities and improvements, such as water and sewer facilities, streets, and neighborhood centers, and the conversion of schools for eligible purposes. In addition, block grant funds are available to pay for public services within certain limits, for activities relating to energy conservation and renewable energy resources, planning activities, assistance to profit-motivated businesses to carry out economic development activities, and assistance to nonprofit entities for community development activities.

**For further information, contact the Office of Block Grant Assistance. Phone, 202–755–6587.**

**Section 108 Loan Guarantees** Under Section 108, HUD guarantees loans to communities to finance the acquisition of real property and the rehabilitation of publicly owned real property, plus certain related activities. CDBG entitlement cities, such as metropolitan cities and urban counties, are eligible to apply for loan guarantee assistance under Section 108. To secure the loan guarantee, the community is required to pledge any grant approved or any grant that the community becomes eligible for under title I of the Housing and Community Development Act of 1974, as amended. Obligations guaranteed under Section 108 are sold to an underwriting group of investment bankers for resale through periodic public offerings.

**For further information, contact the Office of Block Grant Assistance. Phone, 202–755–6587.**

**Secretary's Discretionary Fund** Under title I of the act, a fund is reserved for Secretarial discretion in making community development grants to insular areas and Indian tribes for special project grants in unique and urgent circumstances, and for technical assistance to improve the planning, development, and administration of title I programs.

**For further information, contact the Office of Program Policy Development. Phone, 202–755–6090.**

**Urban Development Action Grants** These grants are authorized by title I of the Housing and Community Development Act of 1974, as amended. The Action Grant program is designed to encourage new or increased private investment in cities and urban counties that are experiencing severe economic distress. The availability of Action Grant funds permits local officials to capitalize on opportunities to stimulate economic development activity such as new, permanent jobs and increased tax

United States,

# The United States Government Manual 1992/1993

EXCHANGE & GIFT DIVISION
NOV 24 1992
LIBRARY OF CONGRESS

Office of the Federal Register
National Archives and Records Administration

**Employment** A variety of civil service registers and examinations are used in hiring new employees. Specific employment information may be obtained from the Office of Personnel. Phone, 410–965–4506.

**Publications** The Social Security Administration collects a substantial volume of economic, demographic, and other data in furtherance of its program mission. Basic data on employment and earnings, beneficiaries and benefit payments, utilization of health services, and other items of program interest are published regularly in the *Social Security Bulletin*, its *Annual Statistical Supplement*, and in special releases and reports that appear periodically on selected topics of interest to the general public. Additional information may be obtained from the Publications Staff, Office of Research and Statistics, Room 209, 4301 Connecticut Avenue NW., Washington, DC 20008. Phone, 202–282–7138.

The Office of Public Affairs has published numerous pamphlets concerning Administration programs. Single copies may be obtained at any of over 1,300 local offices.

**Reading Rooms** Requests for information, for copies of records, or to inspect or copy records may be made at any local office or the Headquarters Contact Unit, Room G–44, Altmeyer Building. Phone, 1–800–2345–SSA (toll-free answering service).

**Speaker and Films** It is the Administration's policy to make speakers, films, and exhibits available to public or private organizations, community groups, schools, etc., throughout the Nation. Requests for this service should be directed to the nearest Social Security Office or the Office of Public Affairs.

**For further information concerning the Department of Health and Human Services, contact the Information Center, Department of Health and Human Services, 200 Independence Avenue SW., Washington, DC 20201. Phone, 202–619–0257.**



# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

*451 Seventh Street SW., Washington, DC 20410*
*Phone, 202–708–1422*

| | |
|---|---|
| SECRETARY OF HOUSING AND URBAN DEVELOPMENT | JACK KEMP |
| Chief of Staff | WILLIAM A. DAL COL |
| Senior Advisor to the Secretary | SHARON A. ZELASKA |
| Special Assistant to the Secretary | LEAH G. LEVY |
| Executive Assistant to the Secretary | JAMES R. TAYLOR |
| Special Assistant | NETTA DICKEY |
| Assistant to the Secretary of Communications | KEVIN STACH |
| Counselor to the Secretary | (VACANCY) |
| Deputy Secretary | ALFRED A. DELLIBOVI |
| Assistant to the Deputy Secretary for Management Planning and Operations | MICHAEL M. JACOBSON |
| Assistant to the Secretary for Field Management | LINDA Z. MARSTON |
| Assistant to the Secretary for Labor Relations | JOSEPH A. SCUDERO |
| Executive Officer for Administrative Operations and Management | JAMES R. WALKER |
| *Staff Offices:* | |
| Special Assistant to the Secretary for Indian and Alaskan Native Programs | (VACANCY) |
| Director, Office of Small and Disadvantaged Business Utilization | JORGE A. NEGRON |
| Chief, Office of Administrative Law Judges | ALAN W. HEIFETZ |
| Chairperson, HUD Board of Contract Appeals | DAVID T. ANDERSON |
| *External Organizations:* | |
| Executive Director, Interagency Council on the Homeless | PATRICIA A. CARLILE |
| Chairperson, Federal Housing Finance Board | DANIEL F. EVANS |
| General Counsel | FRANCIS A. KEATING II |
| Principal Deputy General Counsel | CLARENCE H. ALBRIGHT, JR. |
| Deputy General Counsel | (VACANCY) |
| Deputy General Counsel for Operations | GEORGE L. WEIDENFELLER |
| Associate Deputy General Counsel | (VACANCY) |
| Associate General Counsel, Office of Equal Opportunity and Administrative Law | CAROLE WILSON |
| Associate General Counsel, Office of Insured Housing and Finance | JOHN J. DALY |
| Associate General Counsel, Office of Assisted Housing and Community Development | ROBERT S. KENISON |

| | |
|---|---|
| Assistant Secretary for Congressional and Intergovernmental Relations | RUSSELL K. PAUL |
| Deputy Assistant Secretary for Legislation | IVAN A. RANSOPHER |
| Deputy Assistant Secretary for Congressional Relations | JAMES L. BYNUM |
| Deputy Assistant Secretary for Intergovernmental Relations | MARGARET M. CACCIA, *Acting* |
| Assistant Secretary for Fair Housing and Equal Opportunity | GORDON H. MANSFIELD |
| General Deputy Assistant Secretary for Fair Housing and Equal Opportunity/Enforcement and Compliance | LEONORA L. GUARRAIA |
| Director, Office of Fair Housing Assistance and Voluntary Programs | JACQULYN J. SHELTON |
| Director, Office of Investigations | (VACANCY) |
| Director, Office of Program Standards and Evaluation | LAURENCE D. PEARL |
| Director, Office of Program Training and Technical Assistance | PETER KAPLAN |
| Deputy Assistant Secretary for Operations and Management | PHILLIP H. SAVAGE |
| Director, Office of Affirmative Action and Equal Employment Opportunity | WILLIAM O. ANDERSON |
| Director, Office of Management and Field Coordination | PAUL WILLIAMS |
| Assistant Secretary for Public Affairs | (VACANCY) |
| Deputy Assistant Secretary | CHARLES M. CHAMNESS, *Acting* |
| Director, Office of Press Relations | ROBERT E. NIPP |
| Director, Office of Policy Support | CHARLES S. COGAN |
| Assistant Secretary for Public and Indian Housing | JOSEPH G. SCHIFF |
| General Deputy Assistant Secretary | MICHAEL B. JANIS |
| Deputy Assistant Secretary, Office of Resident Initiatives | DAVID L. CAPRARA |
| Director, Office of Management and Policy | CASIMIR R. BONKOWSKI |
| Director, Office of Construction, Rehabilitation, and Maintenance | JANICE D. RATTLEY |
| Director, Office of the Public and Indian Housing Comptroller | BARBARA L. BURKHALTER |
| Director, Office of Indian Housing | DOMINIC A. NESSI |
| Director, Office of Assisted Housing | ROGER W. BRANEE, *Acting* |
| President, Government National Mortgage Association | RAOUL L. CARROLL |
| Executive Vice President | ROBERT P. KALISH |
| Vice President, Office of Asset Management | GEORGE S. ANDERSON |
| Vice President, Office of Mortgage-Backed Securities | GUY S. WILSON |
| Corporate Secretary | ELTON A. PELLER |
| Vice President, Office of Finance | WILLIAM E. DOBRZYKOWSKI |
| Controller | ALBERT J. FULNER, JR. |
| Treasurer | VICTOR M. CORREA |
| Inspector General | (VACANCY) |
| Deputy Inspector General | JOHN J. CONNORS |
| Assistant Inspector General for Management and Policy | JACQULYN K. HOWARD |
| Assistant Inspector General for Investigation | PATRICK J. NERI |
| Assistant Inspector General for Audit | JOHN H. (CHRIS) GREER |

*The Department of Housing and Urban Development is the principal Federal agency responsible for programs concerned with the Nation's housing needs, fair housing opportunities, and improvement and development of the Nation's communities.*

*In carrying out its responsibilities, the Department administers a wide variety of programs, including: Federal Housing Administration mortgage insurance programs that help families become homeowners and facilitate the construction and rehabilitation of rental units; rental assistance programs for lower-income families who otherwise could not afford decent housing; the Government National Mortgage Association mortgage-backed securities program that helps ensure an adequate supply of mortgage credit; programs to combat housing discrimination and affirmatively further fair housing; programs that aid community and neighborhood development and preservation; and programs to help protect the homebuyer in the marketplace. The Department also takes steps to encourage a strong private sector housing industry that can produce affordable housing, and to stimulate private sector initiatives, public/private sector partnerships, and public entrepreneurship.*

The Department of Housing and Urban Development (HUD) was established by the Department of Housing and Urban Development Act (42 U.S.C. 3532–3537), effective November 9, 1965. It was created to:

—administer the principal programs that provide assistance for housing and for the development of the Nation's communities;

—assist the President in achieving maximum coordination of the various Federal activities that have a major effect upon community preservation and development;

—encourage the problem-solving of housing and community development through States and localities;

—encourage the maximum contributions that may be made by vigorous private homebuilding and mortgage lending industries, both primary and secondary, to housing, community development, and the national economy; and

—provide for full and appropriate consideration, at the national level, of the needs and interests of the Nation's communities and of the people who live and work in them.

Although HUD administers many programs, its major functions may be grouped into six categories, which include:

—insuring mortgages for single-family and multifamily dwellings and loans for home improvement and the purchase of mobile homes;

—channeling funds from investors into the mortgage industry through the Government National Mortgage Association;

—making direct loans for construction or rehabilitation of housing projects for the elderly and the handicapped;

—providing Federal housing subsidies for low- and moderate-income families;

—providing grants to States and communities for community development activities; and

—promoting and enforcing fair housing and equal housing opportunity.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**




## Office of the Secretary

**Secretary** The Department is administered under the supervision and direction of a Cabinet-level Secretary.

The Secretary:

—formulates recommendations for basic policies in the fields of housing and community development;

—works with the Executive Office of the President and other Federal agencies to ensure that economic and fiscal policies in housing and community development are consistent with other economic and fiscal policies of the Government;

—encourages private enterprise to serve as large a part of the Nation's total housing and community development needs as possible;

—promotes the growth of cities and States, the efficient and effective use of housing and community and economic development resources by stimulating private sector initiatives, public/private sector partnerships, and public entrepreneurship;

—takes steps to ensure equal access to housing and to affirmatively prevent discrimination in housing; and

—develops the fullest cooperation with private enterprise in achieving the objectives of the Department. The Secretary also provides general oversight—as required by law—of the Federal National Mortgage Association.

**Deputy Secretary** The Deputy Secretary assists the Secretary in discharging Secretarial duties and responsibilities and serves as Acting Secretary in the absence of the Secretary.

**Assistant to the Secretary for Field Management** The Office of the Assistant to the Secretary for Field Coordination advises the Secretary, Deputy Secretary, and other principal staff on the effectiveness of regional and field operating policies and procedures and serves as the Secretary's principal focal point in all matters dealing with the regional and field offices.

**Assistant to the Secretary for Labor Relations** The Office of the Assistant to the Secretary for Labor Relations advises the Secretary, Deputy Secretary, and principal staff on all matters pertaining to organized labor, labor regulations, and related matters.

**Staff Offices** The Office of the Secretary also contains staff offices having departmentwide responsibility in specialized areas such as Indian and Alaskan Native programs, small and disadvantaged business utilization, administrative judicial proceedings, and contract appeals.

**Special Assistant for Indian and Alaska Native Programs** The Office of the Special Assistant coordinates all departmental housing and community development programs for Indian and Alaskan Natives.

**Small and Disadvantaged Business Utilization** The Office of Small and Disadvantaged Business Utilization oversees HUD's small and disadvantaged set-aside contracting activities and the Minority Business Enterprise Program.

**Administrative Law Judges** The Office of Administrative Law Judges hears and decides Federal Housing Equal Opportunity cases, as well as cases under the Administrative Procedure Act.

**HUD Board of Contract Appeals** The Board issues binding decisions on all appeals of HUD actions in contracting, awarding grants, disciplining mortgagees, and offsetting tax refunds of people indebted to HUD.

## External Organizations

**Interagency Council on the Homeless** The Council is responsible for reviewing and coordinating Federal programs and activities designed to help the homeless. The Council works with State and local governments on homeless-related efforts and collects and disseminates information on homeless activities. It is comprised of the heads of 10 Cabinet departments and 5 independent agencies.

**Federal Housing Finance Board** The Board oversees the Federal Home Loan Banks. It is the function of the Board to ensure that the Federal Home Loan Banks carry out their housing finance mission, remain adequately capitalized, and operate in a safe and sound manner.

**General Counsel** The Office of General Counsel serves as the chief legal

advisor to the Secretary and other principal staff on the effectiveness of regional and field operating policies and procedures and serves as the Secretary's principal focal point in all legal matters dealing with the regional and field offices.

The General Counsel provides legal opinions, advice, and services with respect to all programs and activities of the Department; and provides counsel and assistance in the development of the Department's programs and policies. The General Counsel supervises all staff assigned to the headquarters office and provides professional guidance for staff assigned to the regional and field Counsel's offices.

**Chief Financial Officer** The Office of the Chief Financial Officer leads the Department's headquarters and field office officials in understanding and practicing sound financial management in program development and operations, and in the stewardship of public resources; advises the Secretary on all aspects of financial management; and ensures that the Department establishes and meets financial management goals and objectives and that it complies with financial management legislation and directives.

The Office also establishes policies and standards for development, maintenance, operation, and evaluation of the Department's financial management systems, including: budget and accounting systems, internal central systems, financial reporting systems, asset and credit management systems, and systems to audit compliance with financial management and related requirements.

**Assistant Secretary for Administration** The Assistant Secretary advises the Secretary and other departmental staff and is the chief officer of the Department for administrative management.

The Office of Ethics reports directly to the Assistant Secretary for Administration and manages ethics programs, standards of conduct, and review of financial disclosure reports.

**Deputy Assistant Secretary for Resource Planning and Operations** The Deputy Assistant Secretary functions through the following offices:

—Office of Budget, which prepares HUD budget, policy for formulation, presentation, execution, funding, and staffing controls;

—Office of Management and Planning, which prepares the Secretary's management reporting systems, Administration's participation in field performance reviews, management analysis, and consulting services;

—Office of Personnel and Training, which handles human resources management, staffing and classification, training, labor and employee relations, payroll, and leave management; and

—Office of Administrative and Management Services, which oversees building operations, space and communications management, printing and visual arts, directives and records management, safety and health services, and contract services (library, cafeteria, parking).

**Deputy Assistant Secretary for Finance and Management** The Deputy Assistant Secretary functions through the following offices:

—Office of Procurement and Contracts, which awards and administers contracts, purchase orders, grants, cooperative agreements, and interagency agreements;

—Office of Finance and Accounting/Administration Comptroller, which handles policy and coordination of financial and accounting systems and services (other than GNMA and MIAS); and

—Office of Information Policies and Systems, which oversees information management, ADP policy and services, systems development, and equipment operation.

**Deputy Assistant Secretary for Executive Services** The Deputy Assistant Secretary functions through the Office of Executive Scheduling, which schedules public appearances for top staff and prepares briefing papers; and the Executive Secretariat, which controls correspondence for the Secretary and Deputy Secretary, and Freedom of Information Act requests.

**Assistant Secretary for Congressional and Intergovernmental Relations** The Assistant Secretary works with the Office of General Counsel and program offices to develop HUD's position on all legislative matters. The Assistant Secretary oversees the progress of the Department's legislative and appropriations initiatives in the Congress; ensures that all testimony and responses to congressional inquiries are consistent with the Secretary's positions; and helps to resolve differences with the Office of Management and Budget on legislative issues.

The Deputy Assistant Secretary for Intergovernmental Relations serves as the principal point of contact with State and local governments and public and private interest groups on departmental intergovernmental policy; and advises the Secretary on policy matters affecting State and local governments.

**Assistant Secretary for Public Affairs** The Assistant Secretary provides advice to the Secretary and principal staff members on matters involving HUD's communication with the public and the media. Through the speechwriting and media relations sub-offices, this office is responsible for matters relating to public information, public opinion, and participation in public events.

**Office of the Inspector General** The Inspector General is appointed by the President and reports to the Congress and the Secretary in accordance with the provisions of the Inspector General Act of 1978 (5 U.S.C. app.).

This office conducts independent audits and investigations of departmental activities; advises the Secretary with respect to audits, investigations, and designated security services; and coordinates activities designed to promote economy, efficiency, and integrity of programs and operations. The HUD Hotline is maintained by OIG as a means for individuals to report activities involving fraud and waste due to mismanagement.

Hotline numbers are:

Headquarters/Commercial/FTS—202-708-4200; 202-708-2451 (hearing impaired).

Toll-free—1-800-347-3735.

## Program Areas

**Assistant Secretary for Housing—Federal Housing Commissioner** This office underwrites single family, multifamily, property improvement, and manufactured home loans; administers special purpose programs designed specifically for the elderly, the handicapped, and the chronically mentally ill; administers assisted housing programs for low-income families who are experiencing difficulties affording standard housing; and protects consumers against fraudulent practices of land developers and promoters.

**For further information, contact the Assistant Secretary for Housing—Federal Housing Commissioner. Phone, 202-708-3600.**

**Assistant Secretary for Community Planning and Development** This office administers:

—Community Development Block Grants (CDBG's), which provide communities with funds to carry out a wide range of community development activities. These grants are authorized under title I of the Housing and Community Development Act of 1974, as amended. The Department's Block Grant Program legislatively consolidates a number of earlier categorical programs, including the model cities, urban renewal, and water and sewage programs. The Block Grant Program has three components: entitlement grants made on a formula basis to each State and eligible unit of local government; State block grants to assist small cities; and discretionary grants to assist Indian tribes, insular areas, and States needing technical assistance to plan, develop, and administer grant programs.