United States

NOV 2 0 1994
COPY
EXCHANGE & GIFT DIVISION

# The United States Government Manual, 1994/1995

Office of the Federal Register
National Archives and Records Administration

published regularly in the *Social Security Bulletin,* its *Annual Statistical Supplement,* and in special releases and reports that appear periodically on selected topics of interest to the general public. Additional information may be obtained from the Publications Staff, Office of Research and Statistics, Room 209, 4301 Connecticut Avenue NW., Washington, DC 20008. Phone, 202–282–7138.

The Office of Public Affairs has published numerous pamphlets concerning Administration programs. Single copies may be obtained at any of over 1,300 local offices.

**Reading Rooms** Requests for information, for copies of records, or to inspect or copy records may be made at any local office or the Headquarters Contact Unit, Room G–44, Altmeyer Building. Phone, 800–2345–SSA (toll-free answering service).

**Speaker and Films** It is the Administration's policy to make speakers, films, and exhibits available to public or private organizations, community groups, schools, etc., throughout the Nation. Requests for this service should be directed to the nearest Social Security Office or the Office of Public Affairs.

**For further information concerning the Department of Health and Human Services, contact the Information Center, Department of Health and Human Services, 200 Independence Avenue SW., Washington, DC 20201. Phone, 202–619–0257.**

81

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT[1]

*451 Seventh Street SW., Washington, DC 20410*
*Phone, 202–708–1422*

| | |
|---|---|
| SECRETARY OF HOUSING AND URBAN DEVELOPMENT | HENRY G. CISNEROS |
| Chief of Staff | BRUCE J. KATZ |
| Senior Advisor to the Secretary | FRANK D. WING, JR. |
| Deputy Secretary | TERRY R. DUVERNAY |
| Assistant to the Deputy Secretary for Management Planning and Operations | ALBERT M. MILLER, *Acting* |
| Assistant to the Secretary for Field Management | (VACANCY) |
| Assistant to the Secretary for Labor Relations | JOSEPH A. SCUDERO |
| Executive Officer for Administrative Operations and Management | JAMES R. WALKER |
| *Staff Offices:* | |
| Director, Office of Small and Disadvantaged Business Utilization | (VACANCY) |
| Chief, Office of Administrative Law Judges | ALAN W. HEIFETZ |
| Chairperson, HUD Board of Contract Appeals | DAVID T. ANDERSON |
| *External Organizations:* | |
| Executive Director, Interagency Council on the Homeless | MARSHA A. MARTIN |
| Chairperson, Federal Housing Finance Board | PHIL CONOVER |
| General Counsel | NELSON DÍAZ |
| Deputy General Counsel for Programs and Regulations | MONICA HILTON-SUSSMAN |
| Deputy General Counsel for Civil Rights and Litigation | ELIZABETH JULIAN |
| Deputy General Counsel for Operations | GEORGE L. WEIDENFELLER |
| Associate General Counsel, Office of Equal Opportunity and Administrative Law | CAROLE WILSON |
| Associate General Counsel, Office of Insured Housing and Finance | JOHN J. DALY |
| Associate General Counsel, Office of Assisted Housing and Community Development | ROBERT S. KENISON |

[1] Due to a major reorganization within the Department, organizational changes that occur after the revision date of this publication will be reflected in next year's *Manual.*

| | |
|---|---|
| Deputy Assistant Secretary for Congressional Relations | JOHN BIECHMAN |
| Deputy Assistant Secretary for Intergovernmental Relations | CHOCO G. MEZA |
| Assistant Secretary for Fair Housing and Equal Opportunity | ROBERTA ACHTENBERG |
| General Deputy Assistant Secretary for Fair Housing and Equal Opportunity/ Enforcement and Compliance | PAUL WILLIAMS |
| Director, Office of Fair Housing Assistance and Voluntary Programs | JACQULYN J. SHELTON |
| Director, Office of Investigations | SARA PRATT |
| Director, Office of Program Standards and Evaluation | LAURENCE D. PEARL |
| Director, Office of Program Training and Technical Assistance | PETER KAPLAN |
| Deputy Assistant Secretary for Operations and Management | PHILLIP H. SAVAGE |
| Director, Office of Affirmative Action and Equal Employment Opportunity | WILLIAM O. ANDERSON |
| Director, Office of Management and Field Coordination | THEODORE DANIELS |
| Assistant Secretary for Public Affairs | JEAN NOLAN |
| Deputy Assistant Secretary | SHARON MAEDA |
| Director, Office of Press Relations | ROBERT E. NIPP |
| Director, Office of Policy Support | CHARLES S. COGAN |
| Assistant Secretary for Public and Indian Housing | JOSEPH SHULDINER |
| General Deputy Assistant Secretary | MICHAEL B. JANIS |
| Director, Office of Resident Initiatives | EDWARD L. MOSES |
| Director, Office of Management and Policy | CASIMIR R. BONKOWSKI |
| Director, Office of Construction, Rehabilitation, and Maintenance | JANICE D. RATTLEY |
| Director, Office of the Public and Indian Housing Comptroller | BARBARA L. BURKHALTER |
| Director, Office of Native American Programs | DOMINIC A. NESSI |
| Director, Office of Assisted Housing | MARY ANN RUSS |
| President, Government National Mortgage Association | DWIGHT P. ROBINSON |
| Executive Vice President | ROBERT P. KALISH |
| Vice President, Office of Asset Management | GEORGE S. ANDERSON |
| Vice President, Office of Mortgage-Backed Securities | GUY S. WILSON |
| Corporate Secretary | ELTON A. PELLER |
| Vice President, Office of Finance | WILLIAM E. DOBRZYKOWSKI |
| Controller | ALBERT J. FULNER, JR. |
| Treasurer | VICTOR M. CORREA |
| Inspector General | SUSAN GAFFNEY |
| Deputy Inspector General | JOHN J. CONNORS |
| Assistant Inspector General for | JACQULYN K. HOWARD |





| | |
|---|---|
| Assistant Inspector General for Investigation | PATRICK J. NERI |
| Assistant Inspector General for Audit | JOHN H. (CHRIS) GREER |

*The Department of Housing and Urban Development is the principal Federal agency responsible for programs concerned with the Nation's housing needs, fair housing opportunities, and improvement and development of the Nation's communities.*

*In carrying out its responsibilities, the Department administers a wide variety of programs, including: Federal Housing Administration mortgage insurance programs that help families become homeowners and facilitate the construction and rehabilitation of rental units; rental assistance programs for lower-income families who otherwise could not afford decent housing; the Government National Mortgage Association mortgage-backed securities program that helps ensure an adequate supply of mortgage credit; programs to combat housing discrimination and affirmatively expand fair housing; programs that aid community and neighborhood development and preservation; and programs to help protect the homebuyer in the marketplace. The Department also takes steps to encourage a strong private sector housing industry that can produce affordable housing; and to stimulate private sector initiatives, public/private sector partnerships, and public entrepreneurship.*

The Department of Housing and Urban Development (HUD) was established by the Department of Housing and Urban Development Act (42 U.S.C. 3532–3537), effective November 9, 1965. It was created to:

—administer the principal programs that provide assistance for housing and for the development of the Nation's communities;

—assist the President in achieving maximum coordination of the various Federal activities that have a major effect upon community preservation and development;

—encourage the solution of housing and community development problems through States and localities;

—encourage the maximum contributions that may be made by vigorous private homebuilding and mortgage lending industries, both primary and secondary, to housing, community development, and the national economy; and

—provide for full and appropriate consideration, at the national level, of the needs and interests of the Nation's communities and of the people who live and work in them.

Although HUD administers many programs, its major functions may be grouped into six categories, which include:

—insuring mortgages for single-family and multifamily dwellings, and extending loans for home improvement and for purchasing mobile homes;

—channeling funds from investors into the mortgage industry through the Government National Mortgage Association;

—making direct loans for construction or rehabilitation of housing projects for the elderly and the handicapped;

—providing Federal housing subsidies for low- and moderate-income families;

—providing grants to States and communities for community development activities; and

—promoting and enforcing fair housing and equal housing opportunity.

## Office of the Secretary

**Secretary** The Department is administered under the supervision and direction of a Cabinet-level Secretary who:

—formulates recommendations for basic policies in the fields of housing and community development;

—works with the Executive Office of the President and other Federal agencies to ensure that economic and fiscal policies in housing and community development are consistent with other economic and fiscal policies of the Government;

—encourages private enterprise to serve as large a part of the Nation's total housing and community development needs as possible:

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT






—promotes the growth of cities and States and the efficient and effective use of housing and community and economic development resources by stimulating private sector initiatives, public/private sector partnerships, and public entrepreneurship;

—ensures equal access to housing and affirmatively prevents discrimination in housing;

—develops the fullest cooperation with private enterprise in achieving the objectives of the Department; and

—provides general oversight, as required by law, of the Federal National Mortgage Association.

**Deputy Secretary** The Deputy Secretary assists the Secretary in the discharge of Secretarial duties and responsibilities, and serves as Acting Secretary in the absence of the Secretary.

**Assistant to the Secretary for Field Management** The Assistant to the Secretary for Field Management advises the Secretary, Deputy Secretary, and other principal staff on the effectiveness of regional and field operating policies and procedures and serves as the Secretary's principal focal point in all matters dealing with the regional and field offices.

**Assistant to the Secretary for Labor Relations** The Assistant to the Secretary for Labor Relations advises the Secretary, Deputy Secretary, and principal staff on all matters pertaining to organized labor, labor regulations, and related matters.

**Staff Offices** The Office of the Secretary also contains staff offices having Departmentwide responsibility in specialized functional areas such as small and disadvantaged business utilization, administrative judicial proceedings, and contract appeals.

**Special Assistant for Indian and Alaska Native Programs** The Office of the Special Assistant coordinates all departmental housing and community development programs for Indian and Alaskan Natives.

**Small and Disadvantaged Business Utilization** The Office of Small and Disadvantaged Business Utilization oversees HUD's small and disadvantaged set-aside contracting activities and the Minority Business Enterprise Programs.

**Administrative Law Judges** The Office of Administrative Law Judges hears and decides Federal Housing discrimination cases under the Administrative Procedure Act, as well as those arising under departmental regulations.

**HUD Board of Contract Appeals** The Board issues binding decisions on all appeals of HUD actions in contracting, awarding grants, disciplining mortgagees, and offsetting tax refunds of people indebted to HUD.

## External Organizations

**Interagency Council on the Homeless** The Council is responsible for reviewing and coordinating Federal programs and activities designed to help the homeless. The Council works with State and local governments on homeless-related efforts and collects and disseminates information on homeless activities. It is comprised of the heads of 12 Cabinet departments and 5 independent agencies.

**Federal Housing Finance Board** The Board, established as an independent agency in the executive branch by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, oversees the Federal Home Loan Banks. Its function is to ensure that the Federal Home Loan Banks carry out their housing finance mission, remain adequately capitalized, and operate in a safe and sound manner.

**General Counsel** The Office of General Counsel (OGC) serves as the chief legal advisor to the Secretary and other principal staff on the effectiveness of regional and field operating policies and procedures and serves as the Secretary's principal focal point in all legal matters dealing with the regional and field offices.

The General Counsel provides legal opinions, advice, and services with respect to all programs and activities of the Department; and provides counsel and assistance in the development of the Department's programs and policies. The General Counsel supervises all staff

assigned to the Office of the General Counsel headquarters and provides professional guidance for staff assigned to the regional and field Counsel's offices.

**Chief Financial Officer** The Office of the Chief Financial Officer leads the Department's headquarters and field office officials toward the understanding and practice of sound financial management in program development and operations, and in the stewardship of public resources; advises the Secretary on all aspects of financial management; and ensures that the Department establishes and meets financial management goals and objectives and that it complies with financial management legislation and directives. The scope of activity crosscuts the entire Department.

The Office also establishes policies and standards for development, maintenance, operation, and evaluation of the Department's financial management systems, including: budget and accounting systems, internal central systems, financial reporting systems, asset and credit management systems, and systems to audit compliance with financial management and related requirements.

**Assistant Secretary for Administration** The Assistant Secretary for Administration directs the Department's budget and administrative affairs.

The Office of Ethics reports directly to the Assistant Secretary for Administration and manages ethics programs, standards of conduct, and review of financial disclosure reports.

**Deputy Assistant Secretary for Resource Planning and Operations** The Deputy Assistant Secretary functions through the following offices:

—Office of Budget, which prepares HUD's budget and policy for formulation, presentation, execution, funding, and staffing controls;

—Office of Management and Planning, which prepares the Secretary's management reporting systems, Administration's participation in field performance reviews, management analysis, and consulting services;

—Office of Human Resources, which handles human resources management, staffing and classification, training, labor and employee relations, pay administration, and leave management; and

—Office of Administrative and Management Services, which oversees building operations, space and communications management, printing and visual arts, directives and records management, safety and health services, and contract services (library, cafeteria, parking).

**Deputy Assistant Secretary for Management** The Deputy Assistant Secretary functions through the following offices:

—Office of Procurement and Contracts, which awards and administers contracts, purchase orders, grants, cooperative agreements, and interagency agreements;

—Office of Finance and Accounting/Administration Comptroller, which handles policy and coordination of financial and accounting systems and services (other than GNMA and MIAS); and

—Office of Information Policies and Systems, which oversees information management, ADP policy and services, systems development, and equipment operation.

**Deputy Assistant Secretary for Executive Services** The Deputy Assistant Secretary functions through the Office of Executive Scheduling, which schedules public appearances for top staff and prepares briefing papers; and the Executive Secretariat, which controls correspondence for the Secretary and the Deputy Secretary, and Freedom of Information Act requests.

**Assistant Secretary for Congressional and Intergovernmental Relations** The Assistant Secretary for Congressional and Intergovernmental Relations works with the Office of General Counsel and program offices to develop HUD's position on all legislative matters. The Assistant Secretary oversees the progress of the Department's legislative and appropriations initiatives in the Congress and ensures that all testimony and responses to congressional inquiries are consistent with the Secretary's positions. The Assistant Secretary also helps to resolve differences with the Office of Management and Budget on legislative issues.

The Congressional and Intergovernmental Relations Office serves as the principal point of contact with State and local governments and public and private interest groups on departmental intergovernmental policy. This office also advises the Secretary on policy matters affecting State and local governments.

**Deputy Assistant Secretary for Federal Relief—South Dade County** The Office of Federal Relief—South Dade County was established as part of President Clinton's seven-point plan for helping South Dade County recover from Hurricane Andrew. The role of this Office is to help local, county, and State officials and community groups organize to address their problems, and to coordinate the work of the various Federal agencies having a role in the relief project.

The temporary South Dade County HUD Office is staffed with technical experts in HUD's programs. This is not a servicing HUD Field Office. Region IV and the Jacksonville and Coral Gable offices will continue to process and control all HUD funds and approvals for the South Dade County area.

**Director for Federal Housing Enterprise Oversight** The mission of this office, as defined by the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, is to oversee the financial safety and soundness of the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation.

**Assistant Secretary for Public Affairs** The Assistant Secretary provides advice to the Secretary and principal staff members on matters involving HUD's communications with the public and the media. Through its Policy Support and Press Relations sub-offices, this office is responsible for matters relating to public information, public opinion, and participation in public events.

**Office of the Inspector General** The Inspector General is appointed by the President and reports to the Congress and the Secretary in accordance with the provisions of the Inspector General Act of 1978 (5 U.S.C. app.).

This office conducts independent audits and investigations of departmental activities; advises the Secretary with respect to audits, investigations, and designated security services; and coordinates activities designed to promote economy, efficiency, and integrity of programs and operations. The HUD Hotline is maintained by OIG as a means for individuals to report activities involving fraud, waste, or mismanagement.

Hotline numbers are:

Headquarters/Commercial/FTS—202–708–4200; 202–708–2451 (hearing impaired).
Toll-free—1–800–347–3735.

## Program Areas

**Assistant Secretary for Housing—Federal Housing Commissioner** This office underwrites single family, multifamily, property improvement, and manufactured home loans; administers special purpose programs designed specifically for the elderly, the handicapped, and the chronically mentally ill; administers assisted housing programs for low-income families who are experiencing difficulties affording standard housing; administers grants to fund resident ownership of multifamily house properties development; and protects consumers against fraudulent practices of land developers and promoters.

**For further information, contact the Assistant Secretary for Housing—Federal Housing Commissioner. Phone, 202–708–3600.**

**Assistant Secretary for Community Planning and Development** The

U.S. Department of Housing and Urban Development
Office of Inspector General

# Office of Inspector General Report to the Congress

Number 18

for the 6-month period
April 1, 1987 through September 30, 1987
Pursuant to Section 5(b)
of Public Law 95-452

HUD-OIG 2871

# Chapter 3

## SIGNIFICANT INVESTIGATIONS

This Chapter describes some of the more significant prosecutive actions which occurred during the reporting period. The Chapter is divided into Public Housing and Multifamily; Interstate Land Sales; Community Development Block Grants; and Title I Property Improvement Loans. Chapter 1 of this report summarizes our efforts and details significant investigative results in the Single Family Program area, e.g., loan origination and equity skimming, and Rental Assistance Programs.

### Public Housing and Multifamily

- An investigation of illegal activities at the Damen Court Apartments, Chicago, Illinois, resulted in the indictment of an Illinois State Representative and his Legislative Aide for conspiracy, the filing of false income tax returns, and extortion in connection with profits derived from the project. In addition, a site manager was convicted of submission of false statements and mail fraud and the project sponsor, who had been a candidate for alderman/mayor, was convicted of income tax evasion.

  This effort began with disclosures that tenants affiliated with a particular political organization received rental subsidies to which they were not entitled. The project managers and sponsors routinely falsified documents and submitted them to HUD in order to obtain rental assistance funds on behalf of these political allies.

  To date, 20 tenants, all of whom were employees of either city, state, county or the Federal Government, have been sentenced for submitting false statements about their family composition or income to obtain housing assistance from 1979 to 1985. The court has thus far ordered restitution of $268,462 to HUD, and those convicted have collectively received 31 months of confinement; 20 years of suspended sentences; 89 years of probation; $10,000 in fines; and 2,000 hours of community service. Two trials are still pending. (United States vs. Edward Allen, Douglas Huff, Jeanette Nickles, et al., Northern District of Illinois).

- Two contractors in Baltimore, Maryland, were indicted on one count each of conspiracy and making false statements. The charges involved their role in fixing a $2.1 million contract awarded by the Annapolis, Maryland Housing Authority to furnish exterior site work at the Robinwood Housing Development. Both contractors conspired to submit higher bids so that one of the contractors could win the contract. (United States vs. Robert Kniffen and James Cox, District of Maryland.)

- A former bookkeeper for the Monroe, Georgia Housing Authority was sentenced to 5 years in prison, 10 years probation, fined $5,000 and ordered to make restitution of $312,852. An investigation by the OIG and the Georgia Bureau of Investigation found that the bookkeeper was responsible for accounting for funds at five public housing authorities and misappropriating housing authority money between January 1985 and September 1986. (State of Georgia vs. Walter Herren.)

- The Executive Director of the Housing Authority (PHA) of the City of Idabel, Oklahoma, was sentenced to 5 years probation and ordered to make restitution of $129,192 to the PHA. The Director waived indictment and pled guilty to two counts of embezzlement. She embezzled $111,192 from the PHA general account and $18,000 from the petty cash fund by falsifying documents regarding maintenance work performed by the PHA and then converting the money into cash for her own personal use. (United States vs. Carolyn Marie Zimmerman, Eastern District of Oklahoma.)

- The cashier of the Rock Island, Illinois Housing Authority was sentenced to 3 years in jail with all but 50 weekends suspended. The cashier was also placed on 5 years probation, fined $50 and ordered to make restitution of $41,895. In July 1987, the cashier pled guilty to theft after being charged by the U.S. Attorney with willfully embezzling funds from the Authority for personal use. An OIG investigation found that the cashier, who also served as an occupancy specialist at the Authority, was responsible for the misapplication of rental receipts between 1985 and 1986. (United States vs. Patricia A. McCormick, Central District of Illinois.)

- The Executive Director of the Greenville, Michigan Housing Commission pled guilty to the theft of government funds. The one-count plea was the result of an 18-count indictment returned in April 1987 by a Federal Grand Jury which charged the Executive Director with both theft and the submission of false statements to HUD. The Executive Director converted rental receipts and contract payments totaling $30,000 to her personal use in 1982 and 1983. (United States vs. Patricia Heynen, Western District of Michigan.)

- The Executive Director of the Coshocton, Ohio Housing Authority was indicted by a Federal Grand Jury on fraud charges. The indictment charged the Executive Director with submitting false statements to HUD by altering authority invoices, and submitting a false claim for $19,150 to HUD in connection with a requisition for Community Development Block Grant funds. In 1983, the Director changed invoices to conceal the purchase of a firearm and charged block grant funds for work already completed under the public housing program. (United States vs. John O'Reilly, Southern District of Ohio.)

- The Executive Director of the Indian Housing Authority (IHA) of the Iowa Tribe of Kansas and Nebraska was sentenced in Kansas City, Kansas, to 1 year in prison (suspended), 3 years probation, 4 months in an alcohol abuse treatment institution, and ordered to make restitution of $3,700 to

the IHA. The Director pled guilty to embezzlement and theft from an Indian Tribal Organization after being charged with misusing and misappropriating IHA funds between January 1983 and April 1984. (United States vs. James A. Rhodd, District of Kansas.)

- A Federal Grand Jury in Kansas City, Missouri, indicted the former manager of Park Tower Gardens apartments. He was charged with one count of diverting project funds and five counts of making false statements to HUD. A joint OIG-FBI audit and investigation found that the manager misused or caused the misuse of $8,574 between July 1984 and June 1985, and concealed his actions by causing the submission of false monthly accounting reports to HUD. The manager was suspended from doing business with HUD. (United States vs. Walter Johnson, Western District of Missouri.)

- A contractor in Grand Rapids, Minnesota, was convicted of submitting false statements to HUD in a scheme to underpay workers at a Federally funded housing project. An investigation conducted jointly by the OIG and the FBI found that the contractor falsified payroll forms for wages paid and received kickbacks of wages from employees in 1983. He was sentenced to serve 18 months on probation, ordered to make full restitution to underpaid employees and has been debarred from participating in HUD programs for 3 years. (United States vs. Richard S. Meyers, District of Minnesota.)

**Interstate Land Sales**

- A Federal Grand Jury in Oxford, Mississippi, returned a 154-count indictment against 16 individuals, identified as officers and/or employees of the Kilgore Mining Company, Southhaven, Mississippi, charging them with conspiracy, mail fraud, wire fraud, Interstate Land Sales fraud, and interstate transportation of money taken by fraud. Seven additional employees of Kilgore Mining Company pled guilty to criminal informations charging them with the same violations. The OIG assisted the FBI in an investigation which disclosed that the individuals induced numerous people in 1985 and 1986 to invest large sums of money in what was purported to be the sale of 1-acre lots in Sebastian County, Arkansas. The lots were supposed to contain a guaranteed amount of 2,500 to 6,000 tons of coal deposit per acre. Fraudulent geology reports were used to support the scheme. Deeds were never delivered to a substantial number of the investors. (United States vs. David W. Judd, doing business as Kilgore Mining Company, et al., Northern District of Mississippi.)

## Community Development Block Grants (CDBG)

- The Executive Director of the Economic Development Cabinet, a governmental unit within the City of Louisville, Kentucky, pled guilty to one count of embezzlement. The Director was also a member of the Board of Directors of the Minority Venture Capital Corporation (MVCC), a nonprofit corporation established by the City of Louisville and funded through the CDBG program. An FBI investigation resulted in charges that the former Director caused a false application to be submitted by another person for a $50,000 loan from MVCC. He then converted the $50,000 to his own use and that of another person. (United States vs. Charles Roberts, Western District of Kentucky.)

- A director of a rental housing improvement program which received CDBG funds in Pittsburgh, Pennsylvania, was sentenced to 179 days in prison, 30 years suspended, 5 years probation, fined $5,000, and ordered to make restitution of $70,510. An FBI investigation disclosed that the director was funneling money into his own business by making CDBG loans to the business to remodel houses. (United States vs. David Joseph Panza, Western District of Pennsylvania.)

- An owner of a construction company in Finleyville, Pennsylvania, was sentenced to 2 years probation, ordered to pay fines totaling $4,850 and make restitution to his employees in the amount of $52,164. The sentencing followed a guilty plea to a one-count information charging the company owner with making false statements to the government. An FBI investigation determined that the owner failed to pay Federal prevailing wage rates on a Federally funded contract administered by the local redevelopment authority. The owner caused false entries to be made on weekly certified payroll sheets submitted to show compliance with the wage rates. (United States vs. John Arthur Smith, Western District of Pennsylvania.)

## Title I Property Improvement Loans

- A Federal Grand Jury in Houston, Texas, indicted a borrower on one count of making a false statement to HUD and one count of making a false statement to a savings association. The borrower applied for and received a $15,000 Title I loan in September 1982, and failed to report a prior defaulted Title I loan. The Title I loan obtained in September 1982 went into default and resulted in a claim to HUD of $15,623. (United States vs. Nash H. Saul, Southern District of Texas.)

- A borrower was sentenced in Cedar Rapids, Iowa, to 6 months probation and fined $500 after pleading guilty to one count of making a false statement to HUD. The borrower obtained two Title I loans. She failed to make home improvements with the funds from one loan and failed to pay a contractor in full with the proceeds from the second loan. (United States vs. Roma Jean Brown, Northern District of Iowa.)

- Six individuals were charged in Philadelphia, Pennsylvania. One recipient was sentenced to a total of 15 years probation and ordered to perform 200 hours of community service and make restitution to HUD in the amount of $25,281. Four other recipients were sentenced to a total of 31 years probation and ordered to make restitution to HUD in excess of $62,442. The remaining borrower is awaiting sentencing after pleading guilty to one count of mail fraud and one count of making false statements to HUD. A joint investigation by the Postal Service and the OIG determined that the subjects obtained Title I home improvement loans by using fictitious names and fraudulent employment and credit information. The overall scheme involved 19 loans that have resulted in losses to HUD of $246,300. (United States vs. Richard Teat, Tommy Wong, Kevin James, Sylvester Bryant, William Congan and Robert Stinson, Eastern District of Pennsylvania.)

- A mobile home corporation in Greenburg, Louisiana, entered a guilty plea to a 13-count criminal information and was subsequently sentenced to 5 years probation and fined a total of $125,000. An OIG investigation showed that the corporation submitted false placement certificates and used inflated manufacturers' invoices in obtaining Title I loans for borrowers in 1983. (United States vs. Carter Mobile Homes, Inc., Southern District of Mississippi.)

# Chapter 7

## STATISTICAL SUMMARY

**Department of Housing and Urban Development**
**Office of Inspector General**

| | | April 1, 1987 through September 30, 1987 |
|---|---|---|
| • **Cash Recoveries/Savings** | | $33,575,948 |
| Audit: | $28,223,021 | |
| Investigation: | $5,352,927 | |
| • **Commitments to Recover Funds** | | $32,770,106 |
| Audit: | $32,171,082 | |
| Investigation: | $599,024 | |
| • **Cost Efficiencies** | | $18,009,993 |
| Audit: | $17,605,658 | |
| Investigation: | $404,335 | |
| • **Total Fines Levied** | | $703,450 |
| • **Indictments (Convictions)** | | 230(175) |
| Persons and Firms: | 229(174) | |
| HUD Employees | 1(1) | |
| • **Total Years of Prison Sentences** | | 157 |
| • **Mortgagees/Lenders Sanctioned as a Result of Referrals to HUD Mortgagee Review Board** | | 20 |
| • **Suspensions of Persons/Firms Doing Business with HUD** | | 197 |
| Audit: | 54 | |
| Investigation: | 143 | |
| • **Debarments of Persons/Firms Doing Business with HUD** | | 100 |
| Audit: | 9 | |
| Investigation: | 91 | |
| • **Personnel Actions Initiated Against HUD Employees** | | 28 |
| • **Subpoenas Served** | | 44 |
| Audit: | 28 | |
| Investigation: | 16 | |
| • **Reports Issued** | | 2,661 |
| Internal Audit Reports: | 21 | |
| External Audit Reports: | 77 | |
| Audit-Related Memoranda Issued: | 32 | |
| Non-Federal & Other Agency Reports Accepted: | 2,531 | |
| • **Fraud Awareness Publications Issued** | | 9 |
| • **Hotline Complaints Opened** | | 126 |
| • **Proposed Legislation and Regulations Reviewed** | | 75 |

**Investigation Cases Opened**

The following tables break down the 460 investigation cases opened during the last 6 months. Of these cases, 277 involved false statement violations as shown below.

**False Statement Investigation Cases Opened**
*April 1, 1987 Through September 30, 1987*




The following table depicts the types of alleged violations involved in the remaining 183 cases that were opened.

**Other Categories of Investigation**
*April 1, 1987 Through September 30, 1987*




HUD-OIG 2922

U.S. Department of Housing and Urban Development
Office of Inspector General

# Office of Inspector General Report to the Congress

for the 6-month period
October 1, 1987 through
March 31, 1988
Pursuant to Section 5(b)
of Public Law 95-452

Number 19





HUD-OIG 1581

# Chapter 7

## STATISTICAL SUMMARY

### Department of Housing and Urban Development
### Office of Inspector General

| | October 1, 1987, through March 31, 1988 |
|---|---|
| **Audit Activities** | |
| • Cash Recoveries/Savings | $13,426,177 |
| • Commitments to Recover Funds | $22,092,237 |
| • Cost Efficiencies | $4,655,155 |
| • Suspensions of Persons/Firms Doing Business with HUD | 12 |
| • Debarments of Persons/Firms Doing Business with HUD | 51 |
| • Mortgagees/Lenders Sanctioned as a Result of Referrals to HUD Mortgagee Review Board | 11 |
| • Subpoenas Served | 80 |
| • Reports Issued | |
| Internal Audit Reports: | 19 |
| External Audit Reports: | 99 |
| Audit-Related Memoranda Issued: | 31 |
| Non-Federal and Other Agency Reports Accepted: | 2,571 |
| **Investigation Activities** | |
| • Cash Recoveries/Savings | $4,396,559 |
| • Commitments to Recover Funds | $226,472 |
| • Cost Efficiencies | $6,507,933 |
| • Total Fines Levied | $287,386 |
| • Indictments | 160 |
| • Convictions | 114 |
| • Total Years of Prison Sentences | 182 |
| • Suspensions of Persons/Firms Doing Business with HUD | 23 |
| • Debarments of Persons/Firms Doing Business with HUD | 54 |
| • Personnel Actions Initiated Against HUD Employees | 15 |
| • Subpoenas Served | 28 |
| **Fraud Control Activities** | |
| • Fraud Awareness Publications Issued | 3 |
| • Hotline Complaints Opened | 97 |
| • Proposed Legislation and Regulations Reviewed | 73 |

HUD-OIG 1631

# Office of Inspector General
# Report to the Congress

## Number 21

*for the 6-month period*
*October 1, 1988 through March 31, 1989*
*Pursuant to Section 5(b) of Public Law 95-452*

HUD-OIG 1655

# Chapter 6

## STATISTICAL SUMMARY

### Department of Housing and Urban Development
### Office of Inspector General

| | October 1, 1988, through March 31, 1989 |
|---|---|
| **Audit Activities** | |
| • Cash Recoveries/Savings | $11,708,753 |
| • Commitments to Recover Funds | $29,353,397 |
| • Cost Efficiencies | $6,010,370 |
| • Suspensions of Persons/Firms Doing Business with HUD | 11 |
| • Debarments of Persons/Firms Doing Business with HUD | 50 |
| • Mortgagees/Lenders Sanctioned as a Result of Referrals to HUD Mortgagee Review Board | 2 |
| • Subpoenas Served | 128 |
| • Material Weaknesses Reported | 7 |
| • Reports Issued | |
| Internal Audit Reports: | 31 |
| External Audit Reports: | 111 |
| Audit-Related Memoranda Issued: | 28 |
| Non-Federal and Other Agency Reports Accepted: | 2,870 |
| **Investigation Activities** | |
| • Cash Recoveries/Savings | $7,127,404 |
| • Commitments to Recover Funds | $658,013 |
| • Cost Efficiencies | $314,029 |
| • Total Fines Levied | $485,156 |
| • Indictments | 188 |
| • Convictions | 152 |
| • Total Years of Prison Sentences | 144 |
| • Suspensions of Persons/Firms Doing Business with HUD | 60 |
| • Debarments of Persons/Firms Doing Business with HUD | 81 |
| • Personnel Actions Initiated Against HUD Employees | 22 |
| • Subpoenas Served | 75 |
| **Fraud Control Activities** | |
| • Fraud Awareness Publications Issued | 3 |
| • Hotline Complaints Opened | 161 |
| • Proposed Legislation and Regulations Reviewed | 81 |

HUD-OIG 1710

# Office of Inspector General Report to the Congress

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

Number 22

*for the 6-month period*
*April 1,1989 through September 30, 1989*
*Pursuant to Section 5(b) of Public Law 95-452*

HUD-OIG 1738

# Chapter 7

## STATISTICAL SUMMARY

### Department of Housing and Urban Development
### Office of Inspector General

| | April 1, 1989 through September 30, 1989 | Fiscal Year 1989 |
|---|---|---|
| **Audit Activities** | | |
| • Cash Recoveries[1] | $25,646,138 | $37,354,891 |
| • Cost Efficiencies Realized[1] | $21,178,007 | $21,178,007[2] |
| • Commitments to Recover Funds[1] | $50,479,334 | $79,832,731 |
| • Cost Efficiencies Sustained[1] | $20,054,184 | $26,064,554 |
| • Suspensions of Persons/Firms Doing Business with HUD | 8 | 19 |
| • Debarments of Persons/Firms Doing Business with HUD | 8 | 58 |
| • Mortgagees/Lenders Sanctioned as a Result of Referrals to HUD Mortgagee Review Board | 0 | 2 |
| • Subpoenas Served | 41 | 169 |
| • Material Weaknesses Reported | 2 | 9 |
| • Reports Issued | | |
| Internal Audit Reports: | 35 | 66 |
| External Audit Reports: | 103 | 214 |
| Audit-Related Membranda Issued: | 41 | 69 |
| Non-Federal and Other Agency Reports Accepted: | 2,621 | 5,491 |
| **Investigation Activities** | | |
| • Cash Recoveries/Savings | $3,510,001 | $10,637,405 |
| • Commitments to Recover Funds | $273,195 | $931,208 |
| • Cost Efficiencies | $10,345 | $324,374 |
| • Total Fines Levied | $546,437 | $1,031,593 |
| • Indictments | 161 | 349 |
| • Convictions | 135 | 287 |
| • Total Years of Prison Sentences | 84 | 228 |
| • Suspensions of Persons/Firms Doing Business with HUD | 62 | 122 |
| • Debarments of Persons/Firms Doing Business with HUD | 73 | 154 |
| • Personnel Actions Initiated Against HUD Employees | 39 | 61 |
| • Subpoenas Served | 71 | 146 |
| **Program Integrity Activities** | | |
| • Awareness Publications Issued | 5 | 8 |
| • Hotline Complaints Opened | 229 | 390 |
| • Proposed Legislation and Regulations Reviewed | 129 | 210 |

[1]Includes amounts due to HUD program participants.

[2]This is the first reporting period we have reported this category.

HUD-OIG 1820

Report No. 23
For the 6-month
Period ending
March 31, 1990

# Inspector General's Report to the Congress



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

# Chapter 7

## STATISTICAL SUMMARY

| | October 1, 1989 through March 31, 1990 |
|---|---|
| **Audit Activities** | |
| • Cash Recoveries | $13,162,912 |
| • Cost Efficiencies Realized | $14,756,842 |
| • Commitments to Recover Funds | $61,347,820 |
| • Cost Efficiencies Sustained | $16,605,108 |
| • Suspensions of Persons/Firms Doing Business with HUD | 19 |
| • Debarments of Persons/Firms Doing Business with HUD | 10 |
| • Mortgagees/Lenders Sanctioned as a Result of Referrals to HUD Mortgagee Review Board | 5 |
| • Subpoenas Served | 11 |
| • Material Weaknesses Reported | 6 |
| • Reports Issued | |
| Internal Audit Reports | 22 |
| External Audit Reports | 92 |
| Audit-Related Memoranda Issued | 36 |
| Non-Federal and Other Agency Reports Accepted | 2,688 |
| **Investigation Activities** | |
| • Cash Recoveries/Savings | $5,465,167 |
| • Commitments to Recover Funds | $1,019,940 |
| • Cost Efficiencies | $224,464 |
| • Total Fines Levied | $315,709 |
| • Indictments | 185 |
| • Convictions | 144 |
| • Total Years of Prison Sentences | 111 |
| • Suspensions of Persons/Firms Doing Business with HUD | 34 |
| • Debarments of Persons/Firms Doing Business with HUD | 34 |
| • Personnel Actions Initiated Against HUD Employees | 25 |
| • Subpoenas Served | 23 |
| **Program Integrity Activities** | |
| • Awareness Publications Issued | 1 |
| • Hotline Complaints Opened | 260 |
| • Proposed Legislation and Regulations Reviewed | 90 |

Report No. 24
For the 6-month
Period ending
September 30, 1990

# Inspector General's Report to the Congress



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

HUD-OIG 1978

## Investigation Statistics

| | 04/01/90 - 09/30/90 | Fiscal Year 1990 |
|---|---|---|
| Cash Recoveries/Savings | $7,879,812 | $13,344,979 |
| Commitments to Recover Funds | $1,195,243 | $2,215,183 |
| Cost Efficiencies | — | $224,464 |
| Total Fines Levied | $2,573,103 | $2,888,812 |
| Indictments | 209 | 394 |
| Convictions | 152 | 296 |
| Investigations Pending as of 9/30/90 | | |
| OIG | 828 | |
| FBI/Other | 737 | |
| U.S. Attorney | 218 | |
| Total Investigations Pending | 1,783 | |
| Investigations Closed | 417 | 828 |
| Referred for Prosecution | | |
| FBI (Prima Facie-OIG Investigation) | 46 | 100 |
| FBI (No OIG Investigation) | 4 | 5 |
| Department of Justice | 56 | 128 |
| Other | 17 | 28 |
| Total Referrals | 123 | 261 |
| Total Years of Prison Sentences | 160 | 271 |
| Suspensions of Persons/Firms Doing Business with HUD | 94 | 128 |
| Debarments of Persons/Firms Doing Business with HUD | 79 | 113 |
| Personnel Actions Initiated Against HUD Employees | 26 | 51 |
| Subpoenas Served | 27 | 50 |

Report No. 25
For the 6-month
Period ending
March 31, 1991

# Inspector General's Report to the Congress

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

HUD-OIG 2083

## Investigation Statistics

| | 10/01/90 - 03/31/91 |
|---|---|
| Cash Recoveries/Savings | $14,391,419 |
| Commitments to Recover Funds | $240,137 |
| Cost Efficiencies | $3,904,359 |
| Total Fines Levied | $465,337 |
| Indictments | 168 |
| Convictions | 174 |
| Investigations Pending as of 3/31/91 | |
| OIG | 81,099 |
| FBI/Other | 455 |
| U.S. Attorney | 201 |
| Total Investigations Pending | 1,755 |
| Investigations Closed | 295 |
| Referred for Prosecution | |
| FBI (Prima Facie-OIG Investigation) | 19 |
| FBI (No OIG Investigation) | 3 |
| Department of Justice | 47 |
| Other | 7 |
| Total Referrals | 76 |
| Total Years of Prison Sentences | 147 |
| Suspensions of Persons/Firms Doing Business with HUD | 95 |
| Debarments of Persons/Firms Doing Business with HUD | 116 |
| Personnel Actions Initiated Against HUD Employees | 18 |
| Subpoenas Served | 33 |

HUD-OIG 2138