No. 90-162C
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CRIMINAL INVESTIGATORS EMPLOYED BY THE DEPARTMENT OF HEALTH AND HUMAN SERVICES**

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

Edgar James
Sean Bajkowski
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Of Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PLAINTIFFS' BRIEF .......................................................................................................... 1

QUESTION PRESENTED ................................................................................................... 2

STATEMENT OF THE CASE ............................................................................................. 2

STATEMENT OF FACTS ................................................................................................... 5

STATUTORY AND REGULATORY BACKGROUND ...................................................... 5

LEGAL STANDARDS ..................................................................................................... 11

ARGUMENT ..................................................................................................................... 13

      A.      INTRODUCTION ............................................................................... 13

      B.      PLAINTIFFS ARE NON-EXEMPT BECAUSE THEIR PRIMARY
            DUTY IS TRADITIONAL NON-ADMINISTRATIVE LAW
            ENFORCEMENT WORK ................................................................... 15

            1.      Plaintiffs' Primary Duty is Traditional Law Enforcement Work .............. 15

            2.      Traditional Law Enforcement Work Is Not Administrative Work Under
                  the FLSA ................................................................................... 16

      C.      THE ADMINISTRATION/PRODUCTION DICHOTOMY SUPPORTS
            PLAINTIFFS' STATUS AS NON-EXEMPT BECAUSE PLAINTIFFS
            DO NOT ADMINISTER HHS BUT RATHER EXECUTE ITS
            DAY-TO-DAY OPERATIONS ............................................................ 19

      D.      DEFENDANT'S ARGUMENT RESTS ON A MISUNDERSTANDING
            OF THE NATURE AND PURPOSE OF THE
            ADMINISTRATION/PRODUCTION DICHOTOMY AND
             SHOULD BE REJECTED .................................................................... 29

      E.      DEFENDANT'S AUTHORITIES ARE INAPPOSITE ....................................... 36

CONCLUSION .................................................................................................................. 41

# TABLE OF AUTHORITIES

## CASES

Abundis v. United States, 18 Cl. Ct. 657 (1989) ...........................................................................12

Adam v. United States, 26 Cl. Ct. 782 (1992) ................................................................... passim

Adams v. United States, 27 Fed. Cl. 5 (1992), rev'd in part and remanded,
    178 F.3d 1306, 1998 WL 804552 (Fed. Cir. Sept. 23, 1998) ........................................... passim

Adams v. United States, No. 90-162C and Consolidated Cases (Fed. Cl. Dec. 1, 2004) ..... passim

Adams v. United States, 65 Fed. Cl. 195 (2005) ........................................................2, 3, 7, 18, 19

Adams v. United States, 44 Fed. Cl. 772 (1999) ...........................................................................6

Ahern v. New York, 807 F. Supp. 919 (N.D.N.Y. 1992) ...................................................17, 19, 39

American Federation of Government Employees v. Office of Personnel Management,
    821 F.2d 761 (D.C. Cir. 1987) .......................................................................................6, 8

Amos v. United States, 13 Cl. Ct. 442 (1987) ..............................................................................12

Amshey v. United States, 26 Cl. Ct. 582 (1992) ...............................................................12, 28, 39

Arnold v. Ben Kanowsky, Inc., 361 U.S. 388 (1960) .....................................................................12

Auer v. Robbins, 65 F.3d 702 (8th Cir. 1995) ........................................................................37, 38

Baker v. California Shipbuilding Co., 73 F. Supp. 322 (S.D. Cal. 1947)......................................41

Berg v. Newman, 982 F.2d 500 (Fed. Cir. 1992) .........................................................................12

Berg v. United States, 49 Fed. Cl. 459 (2001) ................................................................... passim

Billings v. United States, 322 F.3d 1328 (Fed. Cir. 2003) .....................................................5, 6, 8

Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002)..................................27, 29, 30, 31

Bratt v. County of Los Angeles, 912 F.2d 1066 (9th Cir. 1990) ........................................... passim

Bull v. United States, No. 2006-5038, 2007 WL 764315 (Fed. Cir. Mar. 15, 2007) ...................13

Clark v. J.M. Benson Co., 789 F.2d 282 (4th Cir. 1986).............................................................12

Corning Glass Works v. Brennan, 417 U.S. 188 (1974)................................................................12

D'Camera v. District of Columbia, 693 F. Supp. 1208 (D.D.C. 1988) .............................13, 17, 39

Donovan v. United Video, Inc., 725 F.2d 577 (10th Cir. 1984).....................................................12

Dymond v. United States Postal Service, 670 F.2d 93 (8th Cir. 1982) .........................................40

Elliot v. Flying J., Inc., No. Civ. A. CV205-22, 2006 WL 13082049, 10
     (S.D. Ga. May 8, 2006)...........................................................................................................9, 10

Grandits v. United States, 66 Fed. Cl. 519 (2005)........................................................................38

Hickman v. United States, 10 Cl. Ct. 550 (1986) .........................................................................40

Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190 (1966) .....................................................13

Jastremski v. Safeco Insurance Cos., 243 F. Supp. 2d 743 (N.D. Ohio 2003) ........................38, 39

Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991) .......................................12, 13

Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir. 2004) ....................................32, 33

Marting v. Crawford & Co., No. 00 C 7132, 2006 WL 681060
     (N.D. Ill. March 14, 2006) ...........................................................................................................34

Mitchell v. Williams, 420 F.2d 67 (8th Cir. 1969) ........................................................................13

Mulverhill v. New York, No. 87-CV-853, 1994 WL 263594
     (N.D.N.Y. May 19, 1994) ................................................................................................... passim

Nebblett v. Office of Personnel Management, 237 F.3d 1353 (Fed. Cir. 2001) .............................6

O'Dell v. Alyeska Pipeline Service Co., 856 F.2d 1452 (9th Cir. 1988) ......................................41

Palacio v. Progressive Insurance Co., 244 F. Supp. 2d 1040 (C.D. Cal. 2002)................29, 38, 39

Piscione v. Ernest & Young, 171 F.3d 527 (7th Cir. 1999)...........................................................34

Powell v. U.S. Cartridge Co., 339 U.S. 497 (1950)......................................................................12

Raper v. Iowa, 688 N.W.2d 29 (Iowa 2004).............................................................................37, 38

Reich v. New York, 3 F.3d 581 (2d Cir. 1993) ...............................................................16, 19, 39

Robinson-Smith v. GEICO, 323 F. Supp. 2d 12 (D.D.C. 2004)...............................................10, 34

Roney v. United States, 790 F. Supp. 23 (D.D.C. 1992) ..............................................12, 13, 17, 27

Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir. 2004) ......................................33

Shaw v. Prentice Hall Computer Publishing, Inc., 151 F.3d 640 (7th Cir. 1998) ..................33, 34

Southland Gasoline Co. v. Bayley, 319 U.S. 44 (1943) ................................................................5

Sprague v. United States, 677 F.2d 865 (Ct. Cl. 1982) ........................................................40, 41

Statham v. United States, No. 00-699C, 2002 WL 31292278 (Fed. Cl. Sept. 11, 2002) ...... passim

Tennessee Coal, Iron & Railroad Co. v. Muscoda Local 123, 321 U.S. 590 (1944) ..............12, 13

Wirtz v. C & P Shoe Corp., 336 F.2d 21 (5th Cir. 1964) ..............................................................13

Zumerling v. Devine, 769 F.2d 745 (Fed. Cir. 1985) ....................................................................8

## STATUTES

5 U.S.C. § 5545(a) ........................................................................................................................1

29 U.S.C. § 201-219 ...................................................................................................................1, 5

29 U.S.C. § 204(f) .........................................................................................................................5

29 U.S.C. § 207(a)(1).....................................................................................................................5

29 U.S.C. § 213(a) .......................................................................................................................11

29 U.S.C. § 213(a)(1).........................................................................................................1, 4, 5, 11

29 U.S.C. § 213(b)(30) .................................................................................................................1

## REGULATIONS

### Title 5 C.F.R. (2001 edition)

5 C.F.R. § 551.104 ......................................................................................................7, 8, 27, 36

5 C.F.R. § 551.202(b) .............................................................................................................12, 13

5 C.F.R. § 551.202(d) ...................................................................................................................13

5 C.F.R. § 551.202(i) ....................................................................................................................20

5 C.F.R. § 551.206 ................................................................................6, 28

5 C.F.R. § 551.206(a)(2) ......................................................................31, 36

5 C.F.R. § 551.206(a)(2)(iii) ......................................................................39

### Title 29 C.F.R. (1994 edition)

29 C.F.R. § 541.2 .....................................................................................9, 28

29 C.F.R. § 541.2(a) ......................................................................................30

29 C.F.R. § 541.201(a)(2)(ii) ........................................................................41

29 C.F.R. § 541.205(a) ........................................................................9, 30, 31

29 C.F.R. § 541.205(b) ......................................................................9, 30, 39

29 C.F.R. § 541.205(c)(1) ..............................................................................36

29 C.F.R. § 541.205(c)(5) ..............................................................................38

### Title 29 C.F.R. (2005 edition)

29 C.F.R. Part 541 ..........................................................................................25

29 C.F.R. § 541.3(a)(1) ..................................................................................19

29 C.F.R. § 541.3(b) ................................................................................11, 39

29 C.F.R. § 541.3(b)(1), (3) ..........................................................................18

29 C.F.R. § 541.200 ........................................................................................10

29 C.F.R. § 541.201(b) ..................................................................................41

### Federal Register (April 23, 2004)

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 et seq. ...................................25, 29

69 Fed. Reg. 22129 ............................................................................11, 18, 25

69 Fed. Reg. 22130 ........................................................................................38

69 Fed. Reg. 22141 ........................................................................................29

69 Fed. Reg. 22193 ...........................................................................................................10

69 Fed. Reg. 22195 ...........................................................................................................10

## ADMINISTRATIVE DECISIONS

OPM Decision Number F-1810-12-02 (Oct. 16, 2006)...........................................8, 35

Department of Labor Wage & Hour Division Opinion FLSA2002-11 (Nov. 19, 2002).........39, 40

## OTHER AUTHORITIES

FPM Letter 551-7 (1975)..............................................................................................6, 34

FPM Letter 551-13 (1978)..................................................................................................6

FPM Sunset Document, OPM Document No. 157-53-8 (Dec. 31, 1993) .......................6

Pub. L. No. 103-329, 108 Stat. 2382 (1994)....................................................................1

Pub. L. No. 93-259, 88 Stat. 55 (1974).........................................................................5, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT WITH RESPECT TO CRIMINAL INVESTIGATORS
EMPLOYED BY THE DEPARTMENT OF HEALTH AND HUMAN SEVICES**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, Plaintiffs

respectfully request that the Court grant partial summary judgment in their favor and declare that

those Plaintiffs who were employed by the Department of Health and Human Services ("HHS")

as GS-12 and GS-13 non-supervisory criminal investigators were covered by the overtime

provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), for the period of

time beginning three years prior to the date each such Plaintiff filed his or her claim until

September 17, 1995.[1]  Defendant has filed a motion for partial summary judgment seeking a

declaration that these same criminal investigators were exempt from coverage under the

overtime provisions of the FLSA as "bona fide . . . administrative" employees pursuant to 29

U.S.C. § 213(a)(1).  Plaintiffs respectfully request that Defendant's motion be denied.

**QUESTION PRESENTED**

---

[1]      On that date, Plaintiffs were removed from FLSA coverage and the overtime pay system
known as Administratively Uncontrollable Overtime ("AUO") and were made subject to the
Law Enforcement Availability Pay ("LEAP"), under 5 U.S.C. § 5545(a) (1996).  See Pub. L. No.
103-329, 108 Stat. 2382, 2425 (1994); 29 U.S.C. § 213(b)(30).  Section 633(e) of Pub. L. No.
103-329 permitted criminal investigators who worked with OIG and received less than the

Whether Plaintiffs were, while employed by HHS as OPM Series 1811 GS-12 and GS-13

Criminal Investigators, exempt from the FLSA's overtime provisions as "administrative"

employees.

## STATEMENT OF THE CASE

In these consolidated actions, more than 14,000 criminal investigators and employees in

related positions at various federal agencies have sued to recover FLSA overtime pay and

various other forms of overtime and premium pay.[2]  This motion concerns the claims of roughly

45 Plaintiffs who are seeking FLSA compensation for overtime they worked while employed as

OPM Series 1811 Criminal Investigators in grades GS-12 and GS-13 by the Criminal

Investigative Division ("CID") of the Office of Investigations ("OI") of HHS's Office of the

Inspector General ("OIG").  Pl. HHS App. at 177.[3]  Plaintiffs, like criminal investigators in these

---

maximum percentage of AUO to be converted to LEAP no later than September 30, 1995.

[2]      As the Court noted in its Opinion of April 17, 2005, this consolidated case has a long history even though these particular criminal investigators have not been subject to prior adjudication.  The convention adopted by the Court to refer to these cases is useful, and followed in this brief: Adams v. United States, 27 Fed. Cl. 5 (1992) (Adams I), rev'd in part and remanded, 178 F.3d 1306, 1998 WL 804552 (Fed. Cir. Sept. 23, 1998) (Table and Unpublished Opinion) (Adams II); Adams v. United States, No. 90-162C and Consolidated Cases (Fed. Cl. Dec. 1, 2004) (Unpublished Opinion) (Adams III); Adams v. United States, 65 Fed. Cl. 195 (2005) (Adams IV).  Defendant uses a different convention than the one used by the Court and Plaintiffs, because it inexplicably ignores this Court's decision of December 1, 2004.  Thus, Defendant refers to Adams IV as "Adams III."

[3]      Plaintiffs adopt the following convention to clarify and abbreviate their references:

(a) "Pl. HHS App." refers to the Appendix to Plaintiffs' Cross-Motion and Opposition To Defendant's Motion For Partial Summary Judgment for the HHS criminal investigators;
(b) "Pl. HHS Statement of Fact" refers to Plaintiffs' Proposed Finding of Uncontroverted Fact to support its Cross-Motion and Opposition To Defendant's Motion for Partial Summary Judgment for the HHS criminal investigators;
(c) "Def. HHS Mem." refers to Defendant's Motion for Partial Summary Judgment for the HHS criminal investigators;
(d) "Def. HHS App." refers to the Appendix to Defendant's Motion for Partial Summary Judgment for the HHS criminal investigators; and

same grades at other federal agencies, were classified by Defendant as exempt from the FLSA

based upon the FLSA's administrative exemption.  The inapplicability of the administrative

exemption to many of these other categories of plaintiffs has already been adjudicated.  See

Adams I, rev'd in part, Adams II, on remand, Adams III, Adams IV.

This Court, numerous other courts, the Department of Labor ("DOL"), and the Office of

Personnel Management ("OPM") have been of one voice in holding that criminal investigators

whose primary duty is to perform traditional criminal investigative work such as making arrests,

serving subpoenas and warrants, conducting surveillance, collecting and reviewing evidence,

interviewing witnesses, and interrogating suspects are not exempt from the FLSA as

administrative employees.  Defendant does not dispute the fact that Plaintiffs' primary duty was

to perform such traditional investigative work; indeed, Defendant concedes that Plaintiffs "spent

the majority of their time engaged in typical law enforcement duties such as planning

investigations, collecting and reviewing evidence, interviewing witnesses and conducting

surveillance."  Def. HHS Statement of Fact ¶¶ 5, 7, 11, 13, 16.  Plaintiffs are therefore non-

exempt from the FLSA and entitled to summary judgment in their favor.

Defendant rests its case on a rigidly formalistic application of the so-called

administration/production dichotomy, an approach which relegates Plaintiffs' actual day-to-day

duties to irrelevance.  The only relevant fact, in Defendant's view, is that the words "law

enforcement" do not appear in HHS's mission, as that mission is platitudinously characterized in

the introductory heading of a "Performance and Accountability Report" available in the "Office

of Finance Library" section of HHS's website.  Def. HHS Mem. at 2, 11 ("The mission of HHS

---

(e) "Def. HHS Statement of Fact" refers to Defendant's Proposed Findings of
Uncontroverted Fact to support its Motion for Partial Summary Judgment for the HHS criminal
investigators.

is to 'enhance the health and well-being of Americans by providing for effective health and human services and by fostering strong, sustained advances in the sciences, underlying medicine, public health and social services.").  This, Defendant suggests, proves that Plaintiffs do not perform a "production function" for HHS, a revelation which in turn transforms Plaintiffs into exempt HHS administrators – despite the fact that their actual work is indistinguishable from that of any non-exempt criminal investigator and certainly not "administrative" in character.  Def. HHS Mem. at 11.

This argument is utterly specious.  Plaintiffs' primary duty is to carry out one of HHS's many objectives – investigating and deterring crimes against HHS programs – not to manage or administer HHS itself.  These investigations, and the criminal and civil penalties they lead to, deter frauds and other criminals who would subject HHS beneficiaries to dangerous, substandard, or unnecessary medical procedures or steal monetary benefits desperately needed by those beneficiaries, who are often elderly, poor, disabled and/or otherwise vulnerable. Plaintiffs therefore perform one of HHS's production functions and, in any event, cannot plausibly be described as "administrative" employees for purposes of 29 U.S.C. § 213(a)(1) or, indeed, under any imaginable definition of the term.  Defendant's appeal to the administration/production dichotomy is simply misguided.  Courts, DOL and OPM have explicitly and repeatedly refused to apply that dichotomy in the formalistic manner Defendant proposes.  Instead, they have properly focused on a FLSA plaintiff's day-to-day activities when applying the administrative exemption, and the day-to-day law enforcement activities Plaintiffs perform have uniformly been declared non-exempt.

## STATEMENT OF FACTS

The material facts have been set forth in the Plaintiffs' Proposed Findings of

Uncontroverted Fact, which was filed concurrently with this Memorandum. The facts are not set forth in full in this Memorandum except where helpful to an understanding of the argument.

## **STATUTORY AND REGULATORY BACKGROUND**

Congress enacted the FLSA in 1938 to create national minimum wage and overtime pay standards for certain private sector employees. Fair Labor Standards Act, ch. 676, 52 Stat. 1060 (1938) (codified at 29 U.S.C. §§ 201-219 (2001)). In 1974, Congress placed federal, state and local government employees under the FLSA's protections. Fair Labor Standards Act Amendments of 1974, Pub. L. No. 93-259, 88 Stat. 55. In general, the FLSA requires that employees be paid at a premium rate, generally 1.5 times the employee's base rate, for overtime work. 29 U.S.C. § 207(a)(1). The FLSA's overtime provisions were enacted not merely to reward employees for working long hours, but also to make overtime more costly so as to discourage employers from requiring employees to work overtime. This was intended to improve employees' health and well-being and to provide work for more employees. See, e.g., Southland Gasoline Co. v. Bayley, 319 U.S. 44, 48 (1943).

A limited class of exempt employees, including "any employee employed in a bona fide executive, administrative, or professional capacity[,]" is denied the right to premium overtime pay under the FLSA. 29 U.S.C. § 213(a)(1). The terms "administrative," "executive," and "professional" (collectively known as the "white collar" exemptions) are not defined by the statute. Instead, Congress delegated that authority to DOL. Id. § 204(f) and § 213(a)(1). While OPM has authority to determine the scope of the exemptions in the federal sector, id. § 204(f), its regulations "must be consistent with" DOL's regulations. Billings v. United States, 322 F.3d 1328, 1331 (Fed. Cir. 2003). Accord Am. Fed'n of Gov't Employees v. OPM, 821 F.2d 761, 769 (D.C. Cir. 1987) ("AFGE v. OPM").

The OPM and its predecessor agency, the Civil Service Commission ("CSC"), have promulgated regulations on the application of the FLSA's exemptions to federal employees. The OPM regulation governing the administrative exemption provides:

> An *administrative employee* **is an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service and meets** all four of **the following criteria**:
>
> > **(a)** *Primary duty test.* **The primary duty test is met if the employee's work—**
> > > (1) Significantly affects the formulation or execution of management programs or policies; or
> > > **(2) Involves management or general business functions or supporting services of substantial importance to the organization serviced**; or
> > > (3) Involves substantial participation in the executive or administrative functions of a management official.
> >
> > (b) *Nonmanual work test.* The employee performs office or other predominantly nonmanual work which is—
> > > (1) Intellectual and varied in nature; or
> > > (2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.
> >
> > (c) *Discretion and independent judgment test.* The employee frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work.

5 C.F.R. § 551.206 (bold emphasis added).[4] For the limited purpose of the parties' opposing motions for summary judgment regarding HHS criminal investigators, Plaintiffs do not contest

---

[4] These regulations codify the guidelines originally laid out in FPM Letters 551-7 and 551-13. The FPM was abolished pursuant to the FPM Sunset Document, OPM Document No. 157-53-8 (Dec. 31, 1993), see Nebblett v. Office of Personnel Mgmt, 237 F.3d 1353, 1358 (Fed. Cir. 2001); Adams v. United States, 44 Fed. Cl. 772, 776 (1999), but its exemption guidelines have largely been incorporated into the definitions section of the current regulations. See 5 C.F.R. § 551.104. Moreover, these FPM Letters are routinely cited by the courts. E.g., Adams III at 6-7; Adams IV at 200.

Defendant's contention that their work satisfies the nonmanual work test or the discretion and independent judgment test.[5]  Accordingly, sections (b) and (c) are not addressed in this brief.[6]  Moreover, because Defendant – which bears the burden of proving the exemption – has moved only on the theory that Plaintiffs' primary duty is "a support service to management, rather than a production function," subsections (1) and (3) of section (a)'s "primary duty test" are not implicated by the instant motions.  Def. HHS Mem. at 8.  Accordingly, the only sections of the regulation that are relevant to this case are those emphasized in bold type – the general requirement that the exemption applies only to "an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service" and section (a)(2)'s primary duty test.[7]

The OPM has issued more detailed guidance on the primary duty test by defining "*Management or general business function or supporting service,* as distinguished from production functions" as:

> the work of employees who provide support to line managers.
> (1) These employees furnish such support by—
>
> (i) Providing expert advice in specialized subject matter

---

[5]     Plaintiffs do not generally concede, either for themselves or for other categories of plaintiffs in Adams, that their work was predominantly nonmanual or that it required the frequent exercise of discretion and independent judgment.  Plaintiffs also specifically dispute any implication that GS-11 and lower grade criminal investigators frequently exercise discretion and independent judgment.  Pl. HHS App. at 14 (deposition of HHS's law enforcement declarant).

[6]     Nor is subsection (d), which was omitted because it applies only to "General Schedule employees classified at GS-5 or GS-6[.]"  See Def. HHS Mem. at 5 n.3.

[7]     As a general matter, "[a]n employee's primary duty is 'that which constitutes the major part (over 50%) of the employee's work.'"  Adams IV at 200 (quoting Adams I at 13).  Because Defendant has not attempted to prove the applicability of the alternate primary duty test, this general rule governs the pending motions.

fields, such as that provided by management consultants or systems analysts;

(ii) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;

(iii) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(iv) Providing supporting services such as automated data processing, communications, or procurement and distribution of supplies.

5 C.F.R. § 551.104 (emphasis in original).

The DOL, the agency given primary responsibility by Congress to define the meaning of the administrative exemption, has also propounded regulations defining its scope.[8] Like the very similar OPM regulations, DOL's require an employer to prove that an employee satisfies a number of factual requirements before that employee may be declared an exempt administrator. One of the requirements an employer must establish is the primary duty test, which DOL defines as follows:

The term *employee employed in a bona fide \*\*\* administrative \*\*\* capacity* in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of . . . :

---

[8]     While OPM's regulations directly apply to this case, DOL's regulations are highly significant. As the Federal Circuit held in Billings, 322 F.3d at 1331, "OPM regulations, rather than the Labor Department regulations . . . govern the application of the [FLSA] to [federal employees]. To be valid, however, the OPM regulation must be consistent with the Labor Department regulation." (emphasis added). See also, Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, 1974 U.S.C.C.A.N. (88 Stat. 55) 2811, 2837; AFGE v. OPM, 821 F.2d at 769; Zumerling v. Devine, 769 F.2d 745, 750 (Fed. Cir. 1985) (OPM guidelines must "harmonize . . . with the Secretary of Labor's regulations."); Adam v. United States, 26 Cl. Ct. 782, 786 (1992) ("the DOL regulations can be used to shed light on the [FLSA]"); FLSA Claim Decision 1810-12-02 (OPM Oct. 16, 2006) (quoting Billings).

> (1) The performance of office or nonmanual work <u>directly related to management policies or general business operations of his employer</u> or his employer's customers.

29 C.F.R. § 541.2 (second emphasis added).

Like OPM, DOL has issued additional regulations interpreting the primary duty test:

> The phrase "<u>directly related to management policies or general business operations of his employer</u> or his employer's customers" describes those types of activities <u>relating to the administrative operations of a business as distinguished from "production"</u> or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a) (emphasis added). The regulation provides further guidance on the meaning of "the administrative operations of the business" explaining, in relevant part:

> (b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

29 C.F.R. § 541.205(b).

In 2004, DOL issued revised regulations on the scope of the white collar exemptions, including the administrative exemption. Because these new regulations are not retroactive, only the older regulations quoted above are directly applicable to this case.[9] <u>See, e.g.</u>, <u>Elliot v. Flying J., Inc.</u>, No. Civ.A. CV205-22, 2006 WL 1308204, *1 n.1 (S.D. Ga. May 8, 2006). However, DOL has stated that the new regulation defining the administrative exemption "is very similar, if not functionally identical, to the current short duties test when the current interpretive guidelines

---

[9]     To avoid any confusion, throughout this brief citations to the 2004 DOL regulations are cited as "New 29 C.F.R. § xxx.xxx" while citations to DOL's earlier regulations are cited as simply "29 C.F.R. § xxx.xxx."

are taken into account as appropriate."  69 Fed. Reg. 22193 (Apr. 23, 2004).  Accord Robinson-Smith v. GEICO, 323 F. Supp. 2d 12, 18 (D.D.C. 2004) ("The general criteria for employees employed in a bona fide administrative capacity are essentially the same under the August 2004 regulations as under the current regulations.").  In fact, DOL explicitly determined that the new regulations do not change the administrative exemption status of law enforcement officers.  See 69 Fed. Reg. 22195 (discussing the impact of the new regulations on "police officers, fire fighters, paramedics, EMT's and other first responders," noting that "[t]he Department has no intention of departing from th[e] established case law" holding such workers, including criminal investigators, non-exempt, and concluding that the only impact of the new regulations would be that some first responders who were exempt under the old executive exemption regulations may be non-exempt under the current regulations).

The new DOL regulations set forth the primary duty test which is nearly identical to the language of DOL's older regulations and very similar to OPM's language:

> (a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> > (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers[.]

New 29 C.F.R. § 541.200.  Unlike the older regulations, the 2004 DOL regulations specifically discuss the exemption status of criminal investigators and other first responders, concluding:

> (1) The section 13(a)(1) exemptions [including the administrative exemption] and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as

10

preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; <u>preventing or detecting crimes;</u> <u>conducting investigations or inspections for violations of law;</u> <u>performing surveillance; pursuing, restraining and apprehending</u> <u>suspects; detaining or supervising suspected and convicted</u> <u>criminals,</u> including those on probation or parole; <u>interviewing</u> <u>witnesses; interrogating and fingerprinting suspects; preparing</u> <u>investigative reports; or other similar work.</u>
. . .
(3) Such employees do not qualify as exempt administrative employees because <u>their primary duty is not the performance of</u> <u>work directly related to the management or general business</u> <u>operations of the employer</u> or the employers customers as required under Sec. 541.200.

New 29 C.F.R. § 541.3(b) (emphasis added).  Again, in DOL's view this new regulation

does not represent a change in law but merely clarifies what has always been the case – workers

employed as law enforcement officers are, and always have been, non-exempt so long as their

primary duty is traditional investigative work.  69 Fed. Reg. 22129.

## LEGAL STANDARDS

Defendant bears a heavy burden in this case because Plaintiffs, like all workers, are

presumed to be entitled to FLSA premium pay for their overtime hours unless their employer

demonstrates that they meet the statute's administrative exemption, 29 U.S.C. § 213(a)(1).[10]  As

this Court declared in <u>Adams I</u>, "'the FLSA in effect establishes a presumption for . . .

nonexempt status.'. . . This court must therefore assume that plaintiffs are covered by the

overtime provisions of FLSA unless defendant proves otherwise."  <u>Adams I</u>, 27 Fed. Cl. at 10

(quoting <u>Amshey v. United States</u>, 26 Cl. Ct. 582, 590 (1992)).  <u>Accord</u> <u>Adams III</u> at 4; <u>Corning</u>

<u>Glass Works v. Brennan</u>, 417 U.S. 188, 196-97 (1974) ("the application of an exemption under

---

[10]     In <u>Adams I</u>, the Court stated "the parties . . . indicated and the court agrees that the executive and professional exemptions [of 29 U.S.C. § 213(a)] clearly do not apply" to the plaintiffs.  27 Fed. Cl. at 11 n.3.  Defendant's motion for partial summary judgment is likewise limited to the administrative exemption.

the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof"); Berg v. Newman, 982 F.2d 500, 503 (Fed. Cir. 1992); Berg v. United States, 49 Fed. Cl. 459, 467 (2001).  A plaintiff "merely has to show that he or she is an employee covered by the FLSA, and the burden shifts to [the] defendant to justify the exempt status." Abundis v. United States, 18 Cl. Ct. 657, 663 (1989).  Moreover, Defendant must satisfy this burden by "clear and affirmative evidence."  Donovan v. United Video, Inc., 725 F.2d 577, 581 (10th Cir. 1984).  Accord Clark v. J.M. Benson Co., 789 F.2d 282, 286 (4th Cir. 1986); Amos v. United States, 13 Cl. Ct. 442, 445 (1987); Roney v. United States, 790 F. Supp. 23, 26 (D.D.C. 1992) ("the employer's claims must be proved by clear and affirmative evidence or the employee must be given coverage under the Act").

Furthermore, the administrative exemption must be construed narrowly so as to further Congress's remedial goal of providing the FLSA's protections to nearly all American workers.[11]  As the Supreme Court has recognized, the FLSA is "remedial and humanitarian in purpose" and "must not be interpreted or applied in a narrow, grudging manner."  Tenn. Coal, Iron & R.R. v. Muscoda Local 123, 321 U.S. 590, 597 (1944).  The Federal Circuit recently emphasized the "expansive nature of FLSA coverage" in Bull v. United States, No. 2006-5038, 2007 WL 764315, *9 (Fed. Cir. Mar. 15, 2007).  The OPM regulations require an employer to "prove that the employee 'clearly meets the criteria for exemption' for the employee to be found exempt." Statham v. United States, No. 00-699C, 2002 WL 31292278, *5 (Fed. Cl. Sept. 11, 2002) (quoting 5 C.F.R. § 551.202(b)).  According to OPM, "[i]f there is a reasonable doubt as to

---

[11]     See, e.g., Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960); Powell v. U.S. Cartridge Co., 339 U.S. 497 (1950); Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991); 5 C.F.R. § 551.202(b).

whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt." Id. § 551.202(d).  In addition, a lack of certainty regarding any single element of an exemption is fatal to a claim that an employee falls within the exemption.[12]

## ARGUMENT

### A.   INTRODUCTION

Because Defendant cannot meet its burden to establish that Plaintiffs' primary duty is administrative, Plaintiffs are entitled to summary judgment.  It is undisputed that Plaintiffs' primary duty is to perform traditional law enforcement work – such tasks as making arrests, serving subpoenas and warrants, conducting surveillance, collecting and reviewing evidence, interviewing witnesses, and interrogating suspects.  Def. HHS App. at 68; Pl. HHS App. at 195, 202, 206-07, 213, 235, 241-42, 250-51, 259, 272, 278, 302, 356-57, 375, 381-82, 388, 397, 404, 409.  These day-to-day work activities are identical to the day-to-day duties performed by other federal criminal investigators who have already been determined to be FLSA non-exempt by this Court.  Def. HHS Mem. at 19; Pl. HHS App. at 9.  Moreover, the authorities overwhelmingly make clear that workers who primarily perform this kind of traditional law enforcement work are not exempt from the FLSA.  For this reason, Plaintiffs are entitled to summary judgment in their favor.

The Court should give no credence to Defendant's attempt to reach a different result through a rigidly formalistic application of the so-called "administration/production dichotomy." On Defendant's view, the dichotomy compels the absurd conclusion that Plaintiffs would be

---

[12]     Martin, 940 F.2d at 900 (citing Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206 (1966)); Bratt v. County of Los Angeles, 912 F.2d 1066, 1069 (9th Cir. 1990), cert. denied, 498 U.S. 1086 (1991); Mitchell v. Williams, 420 F.2d 67, 69 (8th Cir. 1969); Wirtz v. C & P Shoe Corp., 336 F.2d 21, 27-28 (5th Cir. 1964); Roney v. United States, 790 F. Supp. 23, 26 (D.D.C. 1992); D'Camera v. District of Columbia, 693 F. Supp. 1208, 1213 (D.D.C. 1988).

FLSA-exempt even if they spent <u>all</u> their time investigating cases shoulder-to-shoulder with other, non-exempt law enforcement officers doing identical work.  This is contrary not only to the letter and spirit of the FLSA, but also to simple common sense.

Defendant's reasoning is flawed in at least two broad respects.  Defendant's most immediate problem is that its insistence that the administration/production dichotomy is a rigidly formalistic sorting device amenable to a robotic application cannot be squared with the caselaw, which consistently applies the dichotomy in a flexible, judicious manner.  Applied properly, the dichotomy clearly supports Plaintiffs' position, and doubly so when Defendant's cramped articulation of HHS's mission is replaced with a more realistic one.  Defendant's more fundamental problem is that its entire argument rests on a misunderstanding of the nature and purpose of the dichotomy itself.  Defendant fatally confuses the dichotomy – one analogy sometimes employed as a conceptual aid by courts in applying the primary duty test – with the primary duty test itself.  This is simply not so.  In the end, Defendant cannot escape the fact that the primary duty test ultimately focuses on the character of an employee's actual primary duties rather than some abstruse conceptual model.  Because Plaintiffs' actual primary duties are not administrative, they are not exempt from the FLSA.

**B.      PLAINTIFFS ARE NON-EXEMPT BECAUSE THEIR PRIMARY DUTY IS TRADITIONAL NON-ADMINISTRATIVE LAW ENFORCEMENT WORK**

### 1. *Plaintiffs' Primary Duty is Traditional Law Enforcement Work*

Defendant concedes that "[b]etween and including February 16, 1987 through September 30, 1995 . . . most GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG spent the majority of their time engaged in typical law enforcement duties such as planning investigations, collecting and reviewing evidence, interviewing witnesses and conducting surveillance."  Def.

HHS Statement of Fact ¶¶ 5, 7, 11, 13, 16.  Indeed, according to Defendant, they spent 85%-100% of their time engaged in these traditional law enforcement activities.  Def. HHS Statement of Fact ¶¶ 7, 11, 13.  Defendant further concedes that "[t]he duties performed by GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG are similar to the duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the agencies at issue in Adams I [the Bureau of Alcohol, Tobacco and Firearms ("BATF"), the Drug Enforcement Agency ("DEA"), the Internal Revenue Service ("IRS"), the Secret Service, and the Customs Service ("Customs")]."  Def. HHS Mem. at 19.  See also Pl. HHS App. at 8-9 (Dep. of HHS Deputy Inspector General for Investigations) ("our criminal investigative work is essentially the same as work engaged in by other criminal investigators throughout the federal government").

According to Defendant, the typical HHS OI criminal investigator spent 40%-45% of his or her time during the period from February 16, 1987 through September 30, 1995 investigating Medicare and Medicaid fraud and another 40%-45% of his or her time investigating Social Security fraud.  Def. HHS Statement of Fact ¶¶ 7, 11.[13]  These facts are expanded upon in declarations submitted by many of the Plaintiffs detailing their day-to-day activities, which consisted of typical law enforcement duties such as searching for and examining evidence; making arrests; executing warrants; conducting surveillance; interviewing witnesses and subjects; obtaining signed and sworn statements; assisting Federal and State prosecutors in the drafting of indictments, criminal informations, and grand jury and trial subpoenas and serving

---

[13]    The Social Security Administration became an independent agency on March 31, 1995.  Def. HHS Statement of Fact ¶ 15.  Between March 31, 1995 and September 30, 1995, Defendant estimates that each HHS plaintiff "spent approximately 80%-85% of his or her time investigating Medicare and Medicaid fraud, approximately 10%-15% of his or her time investigating other types of crimes at HHS programs and approximately 3%-5% of his or her time investigating employee misconduct."  Id.

those documents; and testifying as government witnesses in grand jury proceedings as well as criminal and civil trials.  See, e.g., Pl. HHS App. at 195, 202, 206-07, 213, 235, 241-42, 250-51, 259, 272, 278, 302, 356-57, 375, 381-82, 388, 397, 404, 409.[14]

**2. *Traditional Law Enforcement Work Is Not Administrative Work Under the FLSA***

Courts applying the FLSA's administrative exemption to criminal investigators and other law enforcement officers have overwhelmingly ruled that employees who, like Plaintiffs, primarily perform traditional law enforcement work are not exempt from the FLSA.  See, e.g., Reich v. New York, 3 F.3d 581, 586 (2d Cir. 1993) (police investigators whose primary duties were to investigate crime scenes, gather evidence, interview witnesses, interrogate suspects, make arrests, conduct surveillance, obtain warrants and testify in court are not exempt administrators because their primary duty is conducting investigations, not administering the affairs of the department itself); Bratt v. County of Los Angeles, 912 F.2d 1066, 1068-70 (9th Cir. 1990) (probation officers whose primary duty is to conduct investigations and make sentencing recommendations non-exempt because the "essence" of the primary duty test is to distinguish between "the running of a business" and "the day-to-day carrying out of its affairs"); Mulverhill v. New York, No. 87-CV-853, 1994 WL 263594, *4 (N.D.N.Y. May 19, 1994) (environmental crimes investigators employed by New York's Department of Environmental Conservation non-exempt because they "do not administer the business affairs of the agency"); Roney, 790 F. Supp. at 27 (U.S. Marshal who provided court security non-exempt because his primary duty "does not relate to security policy or operational management but rather to the application of security measures to the day-to-day production process of a working courtroom");

---

[14]     Eighteen plaintiffs have submitted declarations regarding their time as HHS criminal investigators, and, for some, their subsequent time at SSA.  See Pl. HHS App. at 193-411. Plaintiffs are not moving for summary judgment at this time with respect to any time they

D'Camera, 693 F. Supp. at 1211 (denying employer's motion for summary judgment against police sergeants who "spend most of their time on the streets working with police officers, or performing routine administrative duties"); Ahern v. New York, 807 F. Supp. 919, 926 (N.D.N.Y. 1992) (criminal investigators whose "primary duty . . . is to prevent, investigate and detect serious violations of the criminal laws" non-exempt); Adam v. United States, 26 Cl. Ct. 782, 784, 789 (1992) (INS border patrol agents who primarily "perform[] intelligence, prosecutions, anti smuggling and/or other law enforcement work" non-exempt where "objective reading" of OPM regulations reveals an "obvious intent . . . to identify persons performing management or business functions"); Amshey, 26 Cl. Ct. at 608 (sergeants and lieutenants with Secret Service uniformed division non-exempt).  Cf. Statham, 2002 WL 31292278 at *8 (employee whose primary duty was to physically protect Secretary of Energy does not satisfy primary duty test because he "did not perform the managerial type functions that Congress intended to exempt from the FLSA").

The earlier decisions in this case are in accord with this long-established rule, having clearly held that law enforcement officers whose primary duty is traditional criminal investigation, as opposed to managerial or other administrative duties tangential to traditional law enforcement activities, are non-exempt.  See, e.g., Adams IV at 204 ("Plaintiffs more accurately cite the record for the proposition that 'the Court held what it considered to be 'pure investigative work' to be non-exempt 'production work.'") and 205 (plaintiff's testimony that his primary duty consists of "typical investigative tasks, such as conducting interviews, reviewing documents, preparing paperwork for enforcement actions, and meeting with the Assistant U.S. Attorney" prevents summary judgment for Defendant); Adams I at 18 (BATF agents whose

---

worked while employed by SSA.

"primary duty is pure investigative work" non-exempt) and 20, 21-22, 23, 26 (DEA, IRS, Secret

Service and Customs agents whose primary duty is to plan and conduct investigations non-

exempt).

While DOL's older regulations on the administrative exemption did not explicitly refer to

law enforcement activities, DOL noted in its commentary on its revised regulations that "[m]ost

of the courts facing this issue [under the old regulations] have held that police officers, fire

fighters, paramedics and EMTs and similar employees are not exempt[.]"  69 Fed. Reg. 22129.

The new regulations do not change this result, but merely "make clear" this long-established

rule. Id.  The current regulations explicitly provide that

> police officers, detectives, . . . investigators, inspectors . . . and
> similar employees, regardless of rank or pay level, who perform
> work such as . . . preventing or detecting crimes; conducting
> investigations . . . for violations of law; performing surveillance;
> pursuing, restraining and apprehending suspects; . . . interviewing
> witnesses; interrogating . . . suspects; preparing investigative
> reports; or other similar work

are not exempt administrative employees because "their primary duty is not the performance of

work directly related to the management or general business operations of the employer[.]"  New

29 C.F.R. § 541.3(b)(1), (3)(emphasis added).

Plaintiffs' duties correspond almost perfectly to the work listed in this regulation.

Defendant concedes that Plaintiffs' primary duty was to conduct investigations for violations of

law.  See, e.g., Def. HHS Statement of Fact ¶¶ 4, 5, 16; Def. App. at 66 ¶ 5, and 68 ¶ 11.  In

conducting those investigations, Plaintiffs performed all or nearly all of the other law

enforcement functions listed in New 29 C.F.R. § 541.3(a)(1), including, among other duties,

performing surveillance, pursuing, restraining and apprehending suspects, interviewing

witnesses, preparing investigative reports, and interrogating suspects.  See, e.g., Def. HHS

Statement of Fact ¶¶ 16-18.  These are the same types of day-to-day activities performed by the federal criminal investigators found to be non-exempt in <u>Adams I</u>, <u>Adams III</u>, and <u>Adams IV</u>, as well as by the state criminal investigators found to be non-exempt in <u>Reich</u>, <u>Bratt</u>, <u>Mulverhill</u>, and <u>Ahern</u>.  In short, because it is undisputed that Plaintiffs' primary duties are traditional, non-administrative law enforcement tasks, Plaintiffs are not exempt from the FLSA.

**C.      THE ADMINISTRATION/PRODUCTION DICHOTOMY SUPPORTS PLAINTIFFS' STATUS AS NON-EXEMPT BECAUSE PLAINTIFFS DO NOT ADMINISTER HHS BUT RATHER EXECUTE ITS DAY-TO-DAY OPERATIONS**

Faced with these authorities, Defendant resorts to semantics, relying solely on a formalistic interpretation of the administration/production dichotomy to support its position that Plaintiffs satisfy the primary duty test.  Def. HHS Mem. at 9-18.  Defendant claims that because HHS's mission – as summarily characterized in one document on HHS's website – does not include the words "law enforcement," Plaintiffs' law enforcement work must, *ipso facto*, be considered FLSA-exempt "administrative" work.  <u>See</u> Def. HHS Mem. at 11 ("The duties of criminal investigators at HHS's OIG consist of performing a support function to HHS . . . rather than a criminal investigator in an agency whose mission is to investigate crimes.").  In arguing that an employer's mission is more significant to the application of the primary duty test than an employee's actual day-to-day work, Defendant ignores one of the most basic tenets of the FLSA, that "exempt or nonexempt status 'rests on the duties actually performed by the employee[.]'" <u>Berg</u>, 49 Fed. Cl. at 467 (quoting 5 C.F.R. § 551.202(i)); <u>see also</u>, <u>Statham</u>, 2002 WL 31292278 at *5 (exemption determinations "must be based upon the day-to-day duties actually performed by plaintiff").  Nor can Defendant's simplistic application of the administrative/production

dichotomy be squared with the authorities or common sense.[15]

It is important to recognize the consequences of Defendant's position.  On this view, even though an OPM series 1811 GS-12 Criminal Investigator with HHS, for example, may do the underlined exact same work on a day-to-day basis as an OPM series 1811 GS-12 Criminal Investigator with, for example, IRS, the IRS agent is entitled to FLSA overtime while the HHS agent is exempt.[16]  Indeed, the same result obtains even where the IRS agent and the HHS agent spend all their time working shoulder-to-shoulder on the same case, interviewing the same witnesses, reviewing the same documents, arresting the same armed and dangerous criminals, and ultimately ensuring the conviction of those criminals by testifying at the same trial.  This surreal result is no mere conjecture – Plaintiffs often worked side-by-side with criminal investigators from IRS and other federal and state agencies, many of whom have already been declared non-exempt.[17]  The FLSA cannot and does not permit, much less compel, compel such an absurd result.

Defendant's argument also depends on an abstract and incomplete conception of HHS's

---

[15]    Taking Defendant's argument to its natural conclusion, only a very limited class of employees, such as medical researchers and social workers, perform HHS's "production work."  All other HHS employees, including not only HHS's law enforcement officers but its janitors, cafeteria workers, and security guards, apparently perform "administrative" work.

[16]    Defendant concedes that this is true.  Pl. HHS App. at 8-9; Def. HHS Mem. at 19 ("The duties performed by [Plaintiffs] are similar to the duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the agencies at issue in Adams I[.]").

[17]    Plaintiffs' Declarations attest to the fact that they frequently worked with criminal investigators from a wide range of federal agencies as well as state and local police.  See, e.g., Pl. HHS App. at 214-15 (FBI, IRS, Secret Service, INS, Border Patrol, Customs, state and local law enforcement), 236 (FBI, IRS, Secret Service, DCIS, state and local law enforcement), 272-73 (FBI, IRS, DEA, DCIS, state and local police), 356 (FBI, U.S. Marshals, INS, Secret Service, DCIS, state and local police), 374-75 (FBI, DEA, INS, IRS, Secret Service, state and local police), 396-97 (FBI, INS, IRS, DEA, Secret Service, state and local police), 403 (FBI, INS, IRS, Secret Service, state and local police).

mission.  See Def. HHS Mem. at 2, 11 ("The mission of HHS is to 'enhance the health and well-being of Americans by providing for effective health and human services and by fostering strong, sustained advances in the sciences, underlying medicine, public health and social services.").  HHS is, and was during the time period relevant to this litigation, an enormous and multifaceted agency that runs over 300 programs in support of its overarching goals, primarily through insurance and transfer payments.  Pl. HHS Statement of Fact ¶ 11.  It is, and was, the Nation's largest distributor of health care entitlements and, prior to the creation of the separate Social Security Administration ("SSA") in March of 1995, was the largest provider of Social Security benefits to the disabled and the elderly, among others.  Id.  During the relevant time period, HHS spent more than one-third of the entire budget of the United States on these and related programs. Id. ¶ 12.  Defendant's blithe assertion that the mission of this behemoth agency can be reduced to a simple, unattributed aphorism culled from HHS's website is unwarranted.

Further, Plaintiffs' law enforcement work did directly advance HHS's core mission, even under Defendant's cramped characterization of it.[18]  This is apparent from, among other sources, the projects outlined in the HHS OIG OI Work Plan for 1991 and 1992, which "explains projects

---

[18]     As HHS criminal investigators, Plaintiffs had "primary jurisdiction" to enforce a set of criminal and civil statutes peculiar to the mission of HHS.  Pl. HHS Statement of Fact ¶ 23. During the relevant time period, Plaintiffs were given a Digest of Applicable Statutes to "help them understand what charges could be brought" that set forth a number of statutes peculiar to the mission of HHS, including 42 U.S.C. § 408, covering Social Security fraud, 42 U.S.C. § 1320a-7a, a civil monetary penalties provision for certain other kinds of fraud, 42 U.S.C. § 1320a-7b, Medicare and Medicaid fraud rules including the anti-kickback provisions, and 42 U.S.C. § 1383a, Supplemental Security Income fraud.  Pl. HHS App. at 59-99.  The Digest of Applicable Statutes also listed a number of statutes contained in Title 18, the general federal criminal code, including false claims, conspiracy and mail fraud, which frequently would be relevant to Plaintiffs' investigations of crimes against HHS and its programs.  Pl. HHS App. at 60-76.  A larger collection of criminal and civil statutes peculiar to the mission of HHS that Plaintiffs and other HHS criminal investigators were charged with investigating is set forth in OIG's semi-annual reports to Congress.  See, e.g., Pl. HHS App. at 165.

and initiatives developed by [OI] for implementation in Fiscal Years (FYs) 1991 and 1992)."  Pl. HHS. App. at 308.  See, e.g., Pl. HHS App. at 312 ("Some of OI's projects continue to focus on insidious practices which exploit sick and helpless people, such as providing poor-quality medical care or misusing their benefits."), 318 (describing program designed to punish "hospitals and physicians who knowingly deny emergency treatment to individuals (i.e., who improperly transfer a patient who is in active labor or who is medically unstable")), 318 (OI will investigate "allegations of poor medical care and slacking standards made against several hospitals"), 337 (investigation of "payees for [SSI] recipients who are unable to fully care for themselves [who] illegally convert the recipient's checks for their own personal use").  By investigating and deterring criminals willing to exploit the sick and steal benefits from the poor, Plaintiffs directly furthered HHS's mission to provide effective health and social services.

Defining the precise contours of HHS's many functions and missions is ultimately unnecessary to resolve this case because Defendant's fundamental legal assumption – that the administration/production dichotomy is a robotic sorting device under which all employees who do not directly perform their employer's precisely-defined mission automatically satisfy the primary duty test – is simply false.  Not only is this view contrary to the remedial nature of the FLSA and the well-established rule that all FLSA exemptions must be construed narrowly, it has been solidly rejected by the Adams I ruling, numerous judicial decisions, and both DOL and OPM.  When the actual administration/production dichotomy, rather than Defendant's ossified version of it, is applied to the facts of this case, it is clear that Plaintiffs' law enforcement duties constitute non-exempt production work rather than exempt administrative work under any plausible characterization of HHS's mission.

Defendant made a series of similar arguments in Adams I, arguing, for example, that the

role of IRS criminal investigators was to perform "supporting services," because "[t]he purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness."  Pl. HHS Statement of Fact ¶8.[19]  IRS criminal investigators were performing exempt "supporting services" by "determin[ing] the extent of compliance and the causes of noncompliance" and "detect[ing] fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial."  Pl. HHS Statement of Fact ¶¶ 8-10.  Defendant argued that because IRS criminal investigators were not collecting taxes, they did not do "production" work for IRS (much less the Treasury Department).  Id.  The Court quickly rejected "Defendant's broad construction" as contrary to the intent of the regulations defining "supporting services."  Adams I at 14-16.[20]  The same should be done here.[21]

---

[19]    Defendant also cited the IRS Manual: "To achieve that purpose, [the IRSA] will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . . .  In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency[.]"  Pl. HHS Statement of Fact ¶ 9.

[20]    Defendant also argued that all federal criminal investigators performed "a support function to federal prosecutors . . . by testifying and providing evidence at trial."  Adams I at 15. Judge Tidwell rejected this argument, noting that "testifying at trial and preparing case reports is not equivalent to advising management on the operations of an organization or providing expert advice."  Id. at 16 (emphasis added).  Like their Adams I counterparts, Plaintiffs' primary duty is not to advise HHS management on the internal operations of HHS, but rather to investigate alleged violations of criminal laws involving HHS programs.

[21]    In the same way that IRS criminal investigators "produce" IRS's revenue-collection mission by counteracting and deterring tax fraud, ensuring that monies owed are collected, HHS criminal investigators "produce" HHS's benefit-distribution mission by counteracting and

Many other courts considering the question of whether or not public employees are exempt administrators have also explicitly refused to apply the administration/production dichotomy in the formalistic manner Defendant proposes.  For example, <u>Mulverhill</u> presented the question of whether certain categories of employees, including Environmental Conservation Investigators ("ECIs"), employed by the New York State Department of Environmental Conservation ("NYDEC") were exempt administrative employees under the FLSA.  The mission of NYDEC is "to conserve and protect the State's natural resources and scenic beauty and encourage the development and improvement of its agricultural lands for the production of food and other agricultural products." <u>Mulverhill</u>, 1994 WL 263594 at *1 (quoting N.Y. Const. art. XIV, § 4).  The primary duty of NYDEC's ECIs is to "conduct investigations of criminal violations of the Environmental Conservation Law.  They are strictly plain clothes law enforcement positions involved in covert surveillance of activities related to the generation, transport, storage and disposal of hazardous and toxic waste." <u>Id.</u> (citation and internal quotation omitted).  In determining whether ECIs satisfied the primary duty test, the <u>Mulverhill</u> court applied the production/administration dichotomy, concluding that ECIs were non-exempt because "the prevention, detection, and investigation of violations of the environmental laws and regulations of [New York]" is part of NYDEC's production work. <u>Id.</u> at 4.

The analogy to the instant case is clear.  Like NYDEC, HHS may not have the words "law enforcement" emblazoned in some formal mission statement.  But that fact is in no way determinative, because the dichotomy does not demand nearly so close a nexus between a public employee's job duties and his or her employer's primary mission as Defendant would have it.

---

deterring fraud against HHS programs, ensuring that HHS benefits flow to people who are entitled to them and not to those who are not.  The fact that the primary role of the IRS is to collect monies while one of HHS's main roles is to disburse monies does not change the fact that

Common sense dictates that criminal investigators employed by an environmental agency who spend their time investigating violations of toxic waste disposal laws and regulations are not administering that agency.  Similarly, criminal investigators employed by HHS who spend their time investigating Medicare and Social Security fraud can hardly be said to be administering HHS.

Mulverhill's holding was expressly endorsed by the Department of Labor in its commentary to New 29 C.F.R. Part 541.  69 Fed. Reg. 22122, 22129 (citing Mulverhill, inter alia, noting that "[t]he Department has no intention of departing from this established case law").  This practical, common-sense approach to the application of the administration/production dichotomy can also be found in Berg v. United States, 49 Fed. Cl. 459 (2001).  The Berg plaintiffs were civilian electronics technicians employed by the Air Force to work at Edwards Air Force Base ("Edwards"), a "test facility for high performance aircraft."  Id. at 459.  The case was initially brought in a federal district court in California, which applied the administration/production dichotomy in the narrow, formalistic manner Defendant advocates here, granting summary judgment to the employer because the Berg plaintiffs "are responsible for the maintenance and repair of complex radar and communications equipment on which the air traffic controllers and military and commercial pilots rely."  Id. at 461.  This, the district court concluded, was an administrative task because maintaining and repairing radar systems was not part of Edwards' formal mission, and therefore not production work.  Id.

The case was appealed and then transferred to the Federal Circuit, which ruled that summary judgment was not appropriate because the employer had not submitted evidence establishing the actual day-to-day duties of civilian electronics technicians at Edwards.  Id. at

the roles of fraud-fighting criminal investigators in both agencies are analogous.

463.  On remand, Judge Horn, like the original district court, applied the administration/production dichotomy, but did so in a common-sense manner.  Judge Horn's analysis began with an articulation of the <u>Berg</u> plaintiffs' duties, noting that

> the primary duties of the electronic technicians in the Military Radar Unit at [Edwards] were to maintain, repair, and certify equipment as operational <u>in support of the flight test mission</u> . . . [T]he majority . . . of the actual worktime of each of the plaintiffs is spent keeping the operating systems in repair by performing preventative maintenance checks . . . maintaining, troubleshooting, repairing, installing, modifying, and certifying equipment <u>in support of air traffic control and flight testing</u> at Edwards.

<u>Id.</u> at 468 (emphasis added).  In Defendant's view, the administration/production dichotomy would compel a grant of summary judgment for the employer in <u>Berg</u>.  The court, however, did just the opposite, granting summary judgment to the plaintiffs, ruling that "[t]he production mission of Edwards Air Force Base is flight testing, and the plaintiffs, who maintain and repair the equipment necessary for that function, are an <u>integral part</u> of that function."  <u>Id.</u> at 471 (emphasis added).  Because electronics technicians "do not act as management consultants or systems analysts; do not engage in overall management functions . . .; do not serve as representatives of management . . . ; and do not provide management or administrative supporting services" they are non-exempt.  <u>Id.</u> at 472 (citing 5 C.F.R. § 551.104).  <u>Accord Roney</u>, 790 F. Supp. at 27 ("The service that the Marshals provide for the courts does not relate to security policy or operational management but rather to the application of security measures to the day-to-day production process of a working courtroom."); <u>Adams I</u> at 20 (DEA plaintiffs do production work because they "perform duties which are themselves, <u>or closely related to</u>, [DEA's] 'major functions.'").[22]

---

[22]     This practical approach to the administration/production dichotomy is also prevalent in cases evaluating the administrative exemption in the private sector.  <u>See, e.g.</u>, <u>Bothell v. Phase</u>

Like the Environmental Conservation Investigators in <u>Mulverhill</u>, the electronics technicians in <u>Berg</u>, and the U.S. Marshal in <u>Roney</u>, Plaintiffs arguably do not directly perform the central "production" work of HHS, at least if HHS's mission is defined in the extremely narrow fashion Defendant proposes.  They do not write Social Security checks or perform medical research.  They do, however, perform law enforcement work – work the authorities deem non-exempt in nearly every circumstance – that is an "integral part" of HHS's efforts to provide effective health and social services.  <u>Berg</u>, 49 Fed. Cl. at 471.  A criminal investigator with HHS is not "an advisor, assistance [sic], or representative of management, or a specialist in a management or general business function or supporting service" nor is his or her primary duty "directly related to the management or general business operations of [HHS] or of [HHS's] customers."  5 C.F.R. § 551.206; 29 C.F.R. §541.2.  They are, accordingly, non-exempt under the FLSA.

Defendant's application of the administration/production dichotomy is also faulty because it assumes, without argument, that the only mission relevant to the inquiry is that of HHS as a whole.  Def. HHS Mem. at 11.  This assumption is incorrect.  In applying the dichotomy to public employees, courts generally ask not whether a plaintiff's work "produces" the mission of the large, complex agency which ultimately employs them, but rather the division or department of that agency for which they directly work.  <u>See, e.g.</u>, <u>Amshey</u>, 26 Cl. Ct. at 603

---

<u>Metrics, Inc.</u>, 299 F.3d 1120, 1127 (9th Cir. 2002) ("The administration/production distinction thus distinguishes between work *related* to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'  It is not meant to differentiate between a company's 'primary' marketplace offering and secondary or tertiary marketplace offerings.").  Unlike Defendant's rigid approach to the dichotomy, this view is fully in accord with the letter and spirit of the administrative exemption which, as Judge Bruggink noted in <u>Adam</u>, is clearly designed to exempt jobs with a "managerial flavor."  <u>Adam</u>, 26 Cl. Ct. at 789.  <u>Accord</u> <u>Statham</u>, 2002 WL 31292278 at *9 ("The OPM regulations clearly indicate that employees with a certain level of managerial responsibility were intended to be

("The primary function of the UD as a unit of the Secret Service [which itself is a subdivision of the Treasury Department] is law enforcement . . . . They are not necessarily taking part in general management or management policies."); Adams I, 27 Fed. Cl. at 21 (considering the "IRS criminal investigative mission" rather than the overarching missions of the IRS or Treasury Department in applying administration/production analysis to IRS criminal investigators) and 23 (considering mission of Secret Service, not Treasury Department as a whole, in applying dichotomy to Secret Service criminal investigators).  There can be no doubt that Plaintiffs do the production work of OIG, OI and CID.[23]

---

exempt from the FLSA under the primary duty test.").

[23]     Defendant itself admits that the "primary functions of the [Criminal Investigative Division of HHS OIG OI] are to conduct and direct criminal investigations of alleged or suspected violations of the criminal laws of the United States relating to the programs and operations of [HHS]."  Def. Statement of HHS Fact ¶ 4 (alterations in original).  No matter how narrowly "production" is defined, Plaintiffs do the production work of OI and CID.  The same result holds if the dichotomy is evaluated with reference to the mission of OIG, which includes conducting "investigations relating to the programs and operations of the Department[.]"  Id. ¶ 2. Moreover, Plaintiffs clearly perform production work for the United States Government – the organization which ultimately employs them and the sole Defendant in this case – which unquestionably exists, in part, to enforce criminal laws.

**D.    DEFENDANT'S ARGUMENT RESTS ON A MISUNDERSTANDING OF THE NATURE AND PURPOSE OF THE ADMINISTRATION/PRODUCTION DICHOTOMY AND SHOULD BE REJECTED**

The central problem with Defendant's reasoning is that it mistakes the administration/production dichotomy, an analogy courts sometimes employ as an analytical tool to assist in determining whether a particular worker satisfies the primary duty test, for the primary duty test itself.  It is well-established that the administration/production dichotomy is not to be used in this way and that it is never determinative in declaring a worker exempt.  See 69 Fed. Reg. 22141 ("We do not believe that it is appropriate to eliminate the concept entirely from the administrative exemption, but neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption.").  As numerous courts have held, including at least one ruling relied upon by Defendant, the dichotomy can be determinative in only one situation – where "an employee squarely falls on the production side of the line" and is therefore non-exempt.  Palacio v. Progressive Ins. Co, 244 F. Supp. 2d 1040, 1146 (C.D. Cal. 2002), cited in Def. HHS Mem. at 10 (quoting Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1126 (9th Cir. 2002)).

The DOL, in its comments to the new administrative exemption regulations, repeatedly cited and extensively quoted the Ninth Circuit's opinion in Bothell as an example of the proper analysis and application of the administration/production dichotomy under the old regulations.  See 69 Fed. Reg. 22122.  The plaintiff in Bothell worked as a field service engineer for Phase Metrics, a company that "designs, manufactures, and sells robotic test and inspection equipment for the data storage industry."  299 F.3d at 1122.  While the parties agreed that Mr. Bothell spent most of his time working at the facility of one of Phase Metrics' clients, Max Media, they sharply disagreed as to the nature of Mr. Bothell's day-to-day activities.  Id. at 1123.  Phase

Metrics contended that Mr. Bothell "was the company representative to Max Media and independently managed the Max Media customer account." Id. Mr. Bothell, on the other hand, claimed that "his job was to install, troubleshoot, and maintain Phase Metrics' products at Max Media's facility." Id. at 1124.

In the district court's view, this factual dispute was irrelevant. Whether Mr. Bothell was essentially an account manager or essentially a repairman, it was undisputed that his primary duty was not designing, manufacturing, or selling robotic test equipment. Id. at 1126. Accordingly, he fell on the administrative side of the dichotomy, thereby satisfying the primary duty test and entitling Phase Metrics to summary judgment. Id. This, of course, is the same view advanced by Defendant in this case – that the dichotomy *is* the primary duty test. All that the primary duty test requires is for a court to mechanically compare an employee's work with their employer's primary product or mission statement. If they do not match perfectly, the employee's primary duty – no matter what that duty actually is – is administrative.

The Ninth Circuit reversed, holding that "the [administration/production] distinction should only be employed as a tool toward answering the ultimate question, whether work is 'directly related to management policies or general business operations' not as an end in itself." Id. at 1127 (citing 29 C.F.R. § 541.2(a)).[24] The district court's fundamental mistake was

_____

[24] The Bothell court further explained that

> the regulation from which the dichotomy derives does not stand alone. Rather, the administrative exemption is explicated in a series of interpretative regulations, of which 29 C.F.R. § 541.205(a) is only one, attempting to clarify the elusive meaning of the term 'administration.' In particular, 29 C.F.R. § 541.205(a) must be read in conjunction with § 541.205(b) which specifies: "The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management,

assuming "that <u>all</u> activities 'ancillary' to a business' core activities are 'administrative' activities." <u>Id.</u> at 1126.  This same mistake rests at the heart of Defendant's analysis.

The <u>Bothell</u> court therefore remanded the case for a determination of the real issue – the nature of Mr. Bothell's actual day-to-day work.  If Phase Metrics could prove that he "managed Max Media's account and performed all the administrative aspects of that task, such as staffing, supervision, and billing" it "could support the ultimate conclusion" that he satisfied the primary duty test.  <u>Id.</u> at 1128.  If, on the other hand, "Bothell was essentially a repairman, then he did not engage in 'running the business itself or determining its overall course or policies'" and could not satisfy the primary duty test.  <u>Id.</u> (quoting <u>Bratt</u>, 912 F.2d at 1070).  "This holds true whether customer service was a primary, secondary, or 'ancillary' part of Phase Metrics' marketplace offerings."  <u>Id.</u>  Here, of course, there is no dispute over Plaintiffs' day-to-day activities – Plaintiffs are "essentially" police investigators.  Accordingly, they are non-exempt regardless of whether investigating crimes against HHS is a primary, secondary, or ancillary part of HHS's mission.[25]

In addition to being explicitly adopted by DOL, the reasoning of <u>Bothell</u> is reflected in many other decisions, including a particularly illuminating Sixth Circuit case, <u>Martin v. Indiana</u>

---

planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."

<u>Id.</u> at 1126 (citations omitted).

[25]   <u>Bothell</u> also undermines Defendant's claim that Plaintiffs' duties were "of substantial importance to HHS" for purposes of the administrative exemption.  Def. HHS Mem. at 17-18.  Plaintiffs' law enforcement duties were certainly "of substantial importance" to HHS, using the ordinary understanding of the term.  However, the term has a particular meaning in the context of the primary duty test, and refers only to "work [that is] 'substantially important' <u>to the management or operation</u> of [the employer's or customer's business.]"  <u>Bothell</u>, 299 F.3d at 1128 (quoting 29 C.F.R. § 541.205(a)) (emphasis in original).  Plaintiffs' work is important, but it is not at all related to HHS's internal management or operations.  <u>Accord</u> 5 C.F.R. § 551.206(a)(2).

Michigan Power Co., 381 F.3d 574 (6th Cir. 2004).  The employer in Martin, American Electric

Power ("AEP"), generated and sold electrical power.  The plaintiff worked at a nuclear power

plant run by AEP where he maintained computers used by plant employees and the network that

connected them by, among other things, installing software and responding to calls to the IT help

desk.  Id. at 577.  He did not, however, "work on the plant process computer – 'which deals with

the plant, what's going on as far as the reactor operators' – which is a different system."  Id.

(quoting testimony of Mr. Martin's supervisor).

Like Defendant, AEP relied solely on the administration/production dichotomy in

arguing that Mr. Martin was an exempt administrative employee:

> AEP's only argument that Martin's work is "directly related to
> management policies or general business operations of the
> employer" is that Martin's work is not production work.  That is,
> he is not producing electricity because he is not an "operator"
> running the nuclear power equipment – and therefore his work is
> administrative and thus "directly related to management policies or
> general business operations of the employer."

Id. at 582.[26]  The Sixth Circuit paused to contemplate the ridiculous consequences of AEP's

argument, noting:

> Under AEP's theory, shippers of radioactive waste, the individuals
> who don radiation suits and perform maintenance work on the
> reactors, the janitorial staff, the security guards, the cooks in the
> company cafeteria, and various other workers including Martin are
> all doing work "relating to the administrative operations of the
> business" purely because they do not operate the nuclear reactors.

Id. (citation omitted).  The court unsurprisingly rejected AEP's suggestion that a formalistic

---

[26]     AEP also argued that Mr. Martin was exempt as a computer professional, a separate
exemption to the FLSA.  Id. at 579-82.  This argument was rejected on other grounds, with one
judge dissenting, arguing that the case should be remanded because material facts relevant to the
computer professional exemption were disputed.  Id. at 586-87 (Norris, J. dissenting).  Judge
Norris did not dissent from the court's ruling on the administrative exemption, which was
unanimous.  Id.

application of the administration/production dichotomy controls the primary duty analysis,

explaining that "AEP's error is in concluding that all work is either related to 'the administrative

operations of the business' or production work.  The regulations do not set up an absolute

dichotomy under which all work must either be classified as production or administrative."  Id.

(emphasis added).

      The Martin court then addressed the question of whether or not Martin's work was in fact

administrative by looking his actual day-to-day duties.  Id.  Noting that "Martin's job . . . is to

assist in keeping the computers and network running" and that he "is in no way involved in

'advising the management, planning, negotiating, representing the company, purchasing,

promoting sales, and business research and control[,]'" the court concluded that "not only is AEP

not entitled to summary judgment . . . Martin is entitled to summary judgment."  Id. at 582, 584.

In short, the primary duty test is ultimately driven by an analysis of a plaintiff's actual primary

duties, not by the dichotomy or any other theoretical construct.  Accord Schaefer v. Ind. Mich.

Power Co., 358 F.3d 394, 402-403 (6th Cir. 2004) (Employee responsible for waste disposal at

nuclear power plant is not exempt under the primary duty test despite the fact that he does not

generate or sell electricity because "the administration versus production dichotomy does not fit

all cases.  The analogy – like other parts of the interpretative regulations – is only useful to the

extent that it is a helpful analogy in the case at hand, that is, to the extent it elucidates the phrase

'work directly related to the management policies or general business operations.'"); Shaw v.

Prentice Hall Computer Publ'g, Inc., 151 F.3d 640, 644 (7th Cir. 1998) (the dichotomy, like

other interpretative regulations, is "to be used to the extent they are helpful analogies to the case

at hand"); Bratt, 912 F.2d at 1070 (application of the dichotomy to public employees is

"somewhat strained" but useful insofar as it distinguished "the running of a business" from "the day-to-day carrying out of its affairs").[27]

The idea that the primary duty test is not reducible to a rote application of the administration/production dichotomy has also been embraced by the Court of Federal Claims in interpreting OPM's regulations.  For example, the primary duty of the plaintiff in Statham "was to provide physical security to the Secretary" of the Department of Energy ("DOE").  Statham, 2002 WL 31292278 at *8.  Defendant made essentially the same argument it makes in this case, arguing that "the primary function of the [DOE] is, among other things, to promote the general welfare by assuring coordinated and efficient administration of federal energy policy and programs . . . . [T]he front line production work of DOE involves the establishment of energy policies and programs.  The executive protection program, on the other hand, provides a supporting service."  Id.

Judge Futey flatly rejected this argument, ruling that the "'the obvious intent [of FPM Letter 551-7] is to identify persons performing management or business functions.  The listed activities all have a managerial flavor, including the examples of support services.'  The court . . . finds that plaintiff did not perform the managerial type functions that Congress intended to exempt from the FLSA."  Id. (quoting Adam, 26 Cl. Ct. at 789).  In rejecting DOE's invitation to apply the administration/production dichotomy formalistically, Judge Futey properly ignored Defendant's semantic argument and focused on the proper issue – the nature of Statham's actual

---

[27]     Some courts have gone further, questioning whether the dichotomy is ever applicable or helpful.  See, e.g., Marting v. Crawford & Co., No. 00 C 7132, 2006 WL 681060 at *6 (N.D. Ill. March 14, 2006) ("the production/administration dichotomy is neither a clear nor a widely relied upon legal test . . . . courts have questioned its analytical utility") (citing Shaw, 151 F.3d at 640 and Piscione v. Ernst & Young, 171 F.3d 527 (7th Cir. 1999)); Robinson-Smith, 323 F. Supp. 2d at 23 n.6 (D.D.C. 2004) (the dichotomy "is used to try and force the operations of modern day post-industrial service-oriented businesses into an analytical framework formulated in the

work.  "The OPM regulations clearly indicate that employees with a certain level of managerial responsibility were intended to be exempt from the FLSA under the primary duty test.  Plaintiff's primary duties cannot be characterized as 'managerial' or 'supportive services' as defined in the regulations."  Id. at *9 (emphasis added).  Accordingly, summary judgment was granted to the plaintiff in Statham.  Id. at *11.

The OPM itself has reached the same conclusion.  In a recent decision, OPM considered the exemption status of a GS-1810-12 investigator who "spent 95 percent or more of his time conducting personnel security investigations ('PSIs').  The investigative reports were used by adjudicators within the Department of Defense to make security clearance determinations."  OPM Decision Number F-1810-12-02 (Oct. 16, 2006).  The mission of the claimant's employer, the Department of Defense, is to defend the Nation, not to conduct background checks.  Were the simplistic version of the administration/production dichotomy Defendant advocates controlling, this claimant would satisfy the primary duty test.  Indeed, OPM recognized this, noting that "[s]ecurity functions are, in their broadest sense, staff support functions in that they assist management in making employment and security clearance decisions."  Id., Slip. Op. at 4.  That, however, was irrelevant because the dichotomy is not determinative, as evidenced by OPM's conclusion: "Rather than advising DSS management on program matters, representing DSS on management and/or program service matters with customer agencies, [claimant] conducted fact-finding background investigations . . . . Therefore, we find that the claimant's work did not meet criterion [5 C.F.R. § 551.206](a)(2)."  Id. at 5.[28]

---

industrial climate of the late 1940s") (citation and internal quotation omitted).
[28]     The regulations also suggest that the inverse may be true – the fact that some clearly administrative work could possibly be characterized, through the application of creative linguistic gymnastics, as "production" work is not determinative.  See 5 C.F.R. § 551.104 ("Neither the organizational location nor the number of employees performing identical or

The lesson of these authorities is clear.  While it may be a helpful analytic tool in some cases, the administration/production dichotomy does not control the primary duty test and is not always helpful in every case.  Even where it is helpful, it must be applied judiciously.  Here, Plaintiffs perform the same day-to-day work as other law enforcement officers who have been declared non-exempt by this Court, a ruling that is supported by the overwhelming weight of legal authority.  See § B, supra.  These day-to-day activities advance HHS's objective of providing effective health care and social services.  Plaintiffs do not advise HHS managers on policy matters, they do not represent HHS in negotiations, and they do not participate in the general management or administration of HHS.  Instead, they investigate crimes, arrest criminals, execute search warrants, collect and review evidence, interview witnesses, interrogate subjects, and testify at trials.  This is not administrative work by any reasonable definition of the term, and the presence or absence of the words "law enforcement" in any report on HHS's website – or anywhere else for that matter – cannot change that fact.  Defendant's attempt to define it as such through a robotic application of the administration/production dichotomy should be rejected.

## E.    DEFENDANT'S AUTHORITIES ARE INAPPOSITE

In its brief, Defendant cites cases discussing the exemption status of insurance adjusters, internal affairs officers and data processors in support of its notion that Plaintiffs are exempt HHS administrators.  These cases are readily distinguishable on their facts and offer no support for Defendant's legal argument.

Citing Auer v. Robbins, 65 F.3d 702, 720-21 (8th Cir. 1995) and Raper v. Iowa, 688

---

similar work changes management or general business functions or supporting services into production functions."); 29 C.F.R. § 541.205(c)(1) (tax consultant employed by tax consulting firm is nevertheless "ordinarily doing work of substantial importance to the management or

N.W.2d 29 (Iowa 2004), Defendant analogizes Plaintiffs to "internal affairs officers in a police department."  Def. HHS Mem. at 10.  These cases are simply irrelevant.  A police department's internal affairs office deals with allegations of wrongdoing by other police officers.  An analogous position at HHS would be an employee who had as his or her primary duty the investigation of other HHS employees.  Yet Defendant itself estimates that Plaintiffs spent only approximately 3%-5% of their time investigating HHS employees.  Def. HHS Statement of Fact ¶¶ 14, 15.[29]  In contrast, Plaintiffs spent the overwhelming majority – 85%-100% – of their time investigating allegations of fraud and other crimes against HHS programs by non-employees.  Id. ¶¶ 5, 7, 11, 13, 14, 15.  Because it cannot plausibly be argued that performing internal affairs-type work is Plaintiffs' primary duty.  Auer and Raper are simply inapposite.[30]

---

operation of a business").

[29]     That estimate may actually overstate the role of such investigations, as many plaintiffs attest that they participated in no such investigations, or only a handful of them, during the time period relevant to this case, or even over the course of their entire career.  See, e.g., Pl. HHS App. at 273, 197, 260, 237, 410, 279.

[30]     Moreover, both the Auer and Raper decisions suggest that the primary duty of the internal affairs officer plaintiffs in those cases may have been to perform traditional administrative functions rather than traditional law enforcement duties.  See Auer, 63 F.3d at 720-21 (analogizing internal affairs sergeants who "are not involved in traditional law enforcement activities" to expressly exempt data processors because they "spend all of their time accumulating and analyzing data and making recommendations that shape the department's policy with respect to internal discipline"); Raper, 688 N.W.2d at 43-44 (duties of sergeant with "sole control and direction of all bureau investigations" included "analyz[ing] data" and "mak[ing] recommendations that ensure the patrol operates in accordance with its stated goals and objectives") (citing Auer at 721).

If the primary duties of the Auer and Raper plaintiffs were to perform traditional criminal investigations where the suspects happened to be other police officers, those cases would be contrary to the majority understanding of the administration/production dichotomy and in conflict with DOL's current regulations on criminal investigators, which were issued subsequent to those two decisions.  Indeed, DOL addressed the issue of internal affairs in its commentary to its new regulations, noting that only "high level" employees whose primary duty is "handling community complaints, including determining whether to refer such complaints to internal affairs for further investigation" may satisfy the primary duty test.  69 Fed. Reg. 22130.  This

Defendant also attempts to analogize Plaintiffs to insurance claims adjusters in citing

Jastremski v. Safeco Insurance Cos., 243 F. Supp. 2d 743 (N.D. Ohio 2003) and Palacio v.

Progressive Insurance Co., 244 F. Supp. 2d 1040 (C.D. Cal. 2002).  These cases are inapplicable

because the DOL's regulations, which governed both cases, specifically provide that the duties

of "claims agents and adjusters" usually satisfy the administrative exemption's primary duty test.

29 C.F.R. § 541.205(c)(5).  Both cases were decided largely on the basis of deference to this

regulation.  See Jastremski, 243 F. Supp. 2d at 751 ("The regulations must be given controlling

weight") (citation and internal quotation omitted); Palacio, 244 F. Supp. 2d at 1046-47 (plaintiff

"functioned as a claims agent and/or adjuster" therefore satisfying primary duty test under the

regulation).  In the instant case, there is no regulation – from either OPM or DOL – providing

that criminal investigators satisfy the primary duty test.[31]  To the contrary, there is an explicit

regulation providing that criminal investigators do not satisfy that test.  New 29 C.F.R. §

541.3(b) ("their duty is not the performance of work directly related to the management or

general business operations of the employer").  Here, the force of deference supports a finding in

Plaintiffs' favor.

---

comment clearly implies that rank-and-file internal affairs investigators are non-exempt, which
would be contrary to Auer and Raper (if those cases actually involved such investigators). This
question, however, need not be resolved in this case; Auer and Raper are factually inapposite
because Plaintiffs' primary duty is not internal affairs work.

[31]     This is not the first time Defendant has attempted to rely on Jastremski and Palacio to
demonstrate that a plaintiff who was not an insurance claims agent, in that case an import
specialist with Customs, was exempt from the FLSA.  See Grandits v. United States, 66 Fed. Cl.
519 (2005).  In that case, Judge Horn rejected that argument, pointing out that 29 C.F.R. §
541.205(c)(5) essentially mandated a finding that claims adjusters satisfied the primary duty test.
Id. at 541.  The court further noted "In addition to this explicit language in the Department of
Labor regulations tying claim agents and adjusters to management policies or general business
operations, both cases emphasized that the employees advised management throughout the
claims adjustment process, determined insurance coverage, weighed evidence, assessed liability,
negotiated with claimants, consulted with company counsel, made recommendations to

Palacio and Jastermski are also distinguishable on their facts.  While some duties performed by insurance claims adjusters, such as interviewing witnesses and gathering evidence, are similar to some activities performed by all criminal investigators – including not only Plaintiffs but the criminal investigators found non-exempt in, among other cases, Adams I, Adams III, Reich, Bratt, Mulverhill, D'Camera, Ahern, and Amshey – insurance claims adjusters also perform duties that criminal investigators do not.  For example, exempt claims adjusters "regularly and continually represent[] their employer during negotiations with attorneys and claimants" and have "absolute authority to settle [claims] within [certain financial] limits." Palacio, 244 F. Supp. 2d at 1047.  Accord Jastremski, 243 F. Supp. 2d at 751 (plaintiff "negotiated binding settlements with claimants while representing the company"); DOL Wage & Hour Division Op. FLSA2002-11 (Nov. 19, 2002) (exempt claims adjusters "represent the company . . . make [decisions] on whether and how much to pay on a claim . . . [and] negotiate on behalf of the company with the claimant"), quoted in, Jastremski at 752.  Plaintiffs, in contrast, do not regularly represent HHS in negotiations, settle cases, or make ultimate determinations of liability – those duties are performed by federal and state prosecutors, judges, and juries.  This is a crucial distinction because "the administrative operations of the business" are defined to include "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control."  29 C.F.R. § 541.205(b) (emphasis added).  Accord 5 C.F.R. § 551.206(a)(2)(iii) ("Management or general business function or supporting service" includes "[r]epresenting management in such business functions as negotiating and administering contracts").  These cases cannot bear the weight Defendant places upon them.

---

management, and represented the company." Id.

Defendant's failure to appreciate the critical role of deference to regulations explicitly indicating that particular classes of employees are generally exempt or non-exempt also undermines its reliance on Hickman v. United States, 10 Cl. Ct. 550, 558-60 (Cl. Ct. 1986). Hickman's ruling is entirely premised on the notion that "[d]ata processing itself has always been determined in any context to be a service" by DOL. Id. at 558. Indeed, Hickman was distinguished by both the Berg and Adam courts on that very ground. See Adam, 26 Cl. Ct. at 790; Berg, 49 Fed. Cl. at 471. Defendant's reliance, through Adam, on Sprague v. United States, 677 F.2d 865 (Ct. Cl. 1982) suffers the same fate. Sprague, which ruled that certain postal inspectors were exempt from the FLSA, rested entirely on deference to a DOL Wage and Hour Division ("WHD") Opinion Letter explicitly finding those employees to be exempt. Id. at 868-69. The decision contains no substantive analysis of the statute or regulations but merely affirmed the WHD's ruling, deferring to WHD's "40-year experience in interpreting the administrative employee exemption." Id. at 869. As Judge Bruggink observed, Sprague contains no reasoning that could even be considered persuasive.[32] Adam, 26 Cl. Ct. at 790-91 (Neither "the Sprague court nor the Dymond [v. USPS, 670 F.2d 93 (8th Cir. 1982)] court discussed the analysis used by DOL in reaching its determination that the postal inspectors were exempt. The court in Sprague simply cited [the WHD letter]. That statement, standing alone, does not offer us a sufficient basis for applying Sprague to the present facts. The courts in both cases refused to examine the DOL's finding.").[33] Defendant's authorities are simply

---

[32]     The Sprague court did note that postal inspectors "also perform numerous non-investigative functions such as auditing, training new personnel, maintaining security, and developing and implementing new programs." Sprague, 677 F.2d at 865. These functions, which are sometimes determined to be administrative, are not Plaintiffs' primary duty.

[33]     Defendant's claim that the Adam court distinguished Sprague based on a formalistic application of the administration/production dichotomy is simply false. Def. HHS Mem. at 9-10.

inapposite.[34]

## **CONCLUSION**

For all the aforementioned reasons, Plaintiffs Motion for Summary Judgment should be

granted in its entirety, and Defendant's contrary motion should be denied.

---

Adam distinguished Sprague on deference grounds, and its remarks on the dichotomy are clearly dicta. See Adam, 26 Cl. Ct. at 791 (distinguishing Sprague as a deference case and then remarking that "[i]n any event" the dichotomy also distinguishes Sprague). This reading is further supported by the Adam court's observation that the "obvious intent" of the FPM letters expounding on the administrative exemption "is to identify persons performing management or business functions. The listed activities all have a managerial flavor, including the examples of support services." Id. at 789. A fair reading of Adam provides no support at all for Defendant's formalistic conception of the administration/production dichotomy. Accord Statham, 2002 WL 31292278 at *8 (rejecting claim that Adam supports Defendant's version of the dichotomy).

[34]     Defendant's reliance, in a footnote, upon O'Dell v. Alyeska Pipeline Service Co., 856 F.2d 1452 (9th Cir. 1988) and Baker v. California Shipbuilding Co., 73 F. Supp. 322, 327 (S.D. Cal. 1947), fares no better. Def. HHS Mem. at 11 n.4. The brief O'Dell decision discusses only the "discretion and independent judgment" prong of the administrative exemption, which is not at issue in this case. O'Dell at 1453-54. Moreover, the plaintiff in O'Dell worked as a field inspector, overseeing his employer's internal operations, whose "duties included observing work and assuring compliance with pertinent regulations and industry standards, and auditing records to ensure compliance with U.S. Department of Interior and Department of Transportation requirements." Id. at 1453. Plaintiffs' primary duty has nothing to do with HHS's internal operations or HHS's compliance with external regulations. The Baker decision's holding on safety inspectors contains little analysis of their duties beyond the observation that "[e]ach was the sole representative in his respective area of the defendant corporation to ascertain the safety conditions and methods under which the large number of men worked" and the conclusion that such duties "directly related to management policies or general business operations[.]" Baker at 327. Like the O'Dell plaintiff, the safety inspectors in Baker were focused on their employer's internal operations and, in any event, DOL has long held that safety directors are generally exempt from the FLSA. See 29 C.F.R. § 541.201(a)(2)(ii); New 29 C.F.R. § 541.201(b).

Respectfully submitted,

/s/ Jules Bernstein

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

/s/ Edgar James

Edgar James
Sean Bajkowski
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Of Counsel

Dated: March 29, 2007