IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN ADAMS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 90-162C and consolidated cases (Judge Lynn J. Bush) |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT REGARDING HHS CRIMINAL INVESTIGATORS**

Pursuant to RCFC 56(h)(1), Plaintiffs submit these proposed findings of fact in support of their cross-motion for partial summary judgment:[1]

1. Within the Office of Investigations ("OI") of the Office of the Inspector General ("OIG") at the Department of Health and Human Services ("HHS"), Plaintiffs worked directly for the Criminal Investigative Division ("CID") of the OI. Def. HHS App. at 46, 50, 58.

3. The Social Security Administration ("SSA") was established as separate

---

1 Plaintiffs adopt the following convention to clarify and abbreviate the references:

(a) "Pl. HHS App." refers to the Appendix to Plaintiffs' Cross-Motion and Opposition To Defendant's Motion For Partial Summary Judgment for the HHS criminal investigators;
(b) "Pl. HHS Statement of Fact" refers to Plaintiffs' Proposed Finding of Uncontroverted Fact to support its Cross-Motion and Opposition To Defendant's Motion for Partial Summary Judgment for the HHS criminal investigators;
(c) "Def. HHS App." refers to the Appendix to Defendant's Motion for Partial Summary Judgment for the HHS criminal investigators; and
(d) "Def. HHS Statement of Fact" refers to Defendant's Proposed Findings of Uncontroverted Fact to support its Motion for Partial Summary Judgment for the HHS criminal investigators.

agency on March 30, 1995, and a number of these HHS CID OI criminal investigators were transferred to work under the SSA OIG. Def. HHS Statement of Fact ¶ 15.

4. Criminal investigators at HHS and SSA were removed from coverage under the FLSA and converted to Law Enforcement Availability Pay ("LEAP") on September 17, 1995. Def. HHS Statement of Fact ¶ 40; Pl. HHS App. at, e.g., 270.

5. Criminal investigators at HHS worked overtime for which they were not paid according to the FLSA, because they were treated as FLSA exempt at Grades 9 through 13 pursuant to the "administrative exemption" to the FLSA. Defendant's Motion for Partial Summary Judgment [with respect to HHS criminal investigators] at 2; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

6. While the criminal investigators at HHS had and have primary jurisdiction over certain statutes peculiar to their particular agency, the choice of which statutes to enforce is made by the state and federal prosecutors and not by the criminal investigator. Pl. HHS App. at 15-16; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

7. Federal prosecutors typically chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, false statements, false claims, and other criminal statutes of general applicability. Pl. HHS App. at, e.g., 212.

8. According to Defendant, the role of IRS criminal investigators in the execution of IRS's policies is set forth in the Internal Revenue Manual:

> (1) The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness. To achieve that purpose, we will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . .

> (2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency . . . .

Pl. HHS App. at 103.

9. According to Defendant, IRS criminal investigators "determine the extent of compliance and the causes of noncompliance" and "detect fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HHS App. at 103-104.

10. Defendant argued in 1992 in this consolidated case that the role of IRS criminal investigator was to perform "supporting services," because "The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness." According to Defendant, IRS criminal investigators were performing exempt "supporting services" by "determin[ing] the extent of compliance and the causes of noncompliance" and "detect[ing] fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HHS App. at 101-104.

11. HHS runs over 300 programs to protect and promote the health and well being of all Americans through various health benefit and transfer payment programs. Pl. HHS App. at 170. HHS's mission to provide health benefits has not changed materially

from its mission in the 1987-1995 time period. Def. HHS Statement of Fact ¶ 1. It is, and was, the nation's largest provider of health benefits, and, prior to the creation of the separate SSA in March 1995, was the largest provider of social security benefits to, principally, the disabled and the elderly. Pl. HHS App. at 173, 175.

12. HHS spent over one-third of the entire budget of the United States on these and related programs. The programs of HHS affect virtually every American citizen. Pl. HHS App. at 170.

13. The Office of the Inspector General ("OIG") promotes "high quality, cost-effective health care and human services, improved access to health care for all Americans, and the integrity of the Social Security and Medicare trust funds." See, e.g., Pl. HHS App. at 166.

14. The HHS OIG consisted of five organizational units:

(a) The Office of the Inspector General, which consists of the Inspector General and his administrative staff. Pl. HHS App. at 157.

(b) The Office of the Principal Deputy Inspector General, which is responsible for "the reporting and legislative and regulatory review functions required in the law; for formulating and executing the OIG budget, for managing external affairs; for establishing functional policies for the general management of the OIG. In support of [OIG's] mission, the [Office of the Principal Deputy Inspector General] carried out and maintains an internal quality assurance system." Pl. HHS App. at 157-58. The Office of Management Policy ("OMP") is under the supervision of this office. Id. at 158.

(c) The Office of Audit Services ("OA") "provides policy direction for and conducts and oversees comprehensive audits of HHS programs, operations, grantees

and contractors." Pl. HHS App. at 158-59. Most employees within the OIG work as administrative personnel within the OA. Pl. HHS App. at 32-33, 42-53.

(d) The Office of Evaluation and Inspections ("OEI") "is responsible for conducting inspections of HHS programs, operations and processes to identify vulnerabilities, to prevent and detect misconduct, and to promote economy, efficiency and effectiveness in HHS programs and operations." Pl. HHS App. at 163.

(e) The Office of Investigations and Enforcement ("OI") "is responsible to the Inspector General for carrying out the investigative mission of the OIG and for leading and providing general supervision to the OIG investigative component." Pl. HHS App. at 160-61. Under the OI is the Criminal Investigative Division ("CID") which is responsible for "conduct[ing] and direct[ing] criminal investigations of alleged or suspected violations of the criminal laws of the United States relating to the programs and operations of the Department." Def. HHS App. at 58.

15. The GS-12 and GS-13 criminal investigator Plaintiffs at HHS work for the CID. Def. HHS App. at 46, 50, 58. There are approximately 45 of these Plaintiffs in this case. Pl. HHS App. at 177.

16. More than three-fourths of the staff of the OIG carry out administrative functions for HHS and for the OIG but none of these are criminal investigators. For example, the accountants, auditors and program analysts within the OA and OEI consisted of approximately 926 employees in 1992, 876 in 1993, and 837 in 1994. Pl. HHS App. at 42-53, 136-143.

17. Approximately 263 criminal investigators worked for the CID in 1992, 254 in 1993, and 245 in 1994. Pl. HHS App. at 42-53.

18. The criminal investigators at HHS CID did the same investigative work as criminal investigators at other federal agencies and often work side by side with criminal investigators from a variety of state and federal agencies. Pl. HHS App. at 8-9; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

19. The range of functions that an HHS CID criminal investigator might perform is set forth in the Position Description; however, the Position Description does not provide information about what particular criminal investigators did every day, occasionally or not at all. Pl. HHS App. at 6-8, 213.

20. The FBI has concurrent jurisdiction over the criminal investigations at HHS. Pl. HHS App. at 10, 118-125

21. During the relevant time period, HHS CID criminal investigators were given a Digest of Applicable Statutes, Department of Health and Human Services, Office of Inspector General, Office of Investigations, which explained the principal criminal statutes that HHS criminal investigators were charged with enforcing. Pl. HHS App. at 15-16, 59-99, 211.

22. Criminal investigators within the HHS CID were also give a booklet on Social Security fraud that was issued in September 1992, SSA Fraud Awareness Guide, Office of Inspector General, Office of Investigations, U.S. Department of Health and Human Services. Pl. HHS App. at 211.

23. HHS CID criminal investigators had primary responsibility for certain criminal and civil penalty statutes of HHS. Pl. HHS App. at 11-12, 144-45.

24. These statutes included 42 U.S.C. § 408, covering Social Security fraud, 42 U.S.C. § 1320a-7a, a civil monetary penalties provision for certain other kinds of

fraud, 42 U.S.C. § 1320a-7b, Medicare and Medicaid fraud rules including the anti-kickback provisions, and 42 U.S.C. § 1383a, Supplemental Security Income fraud. Pl. HHS App. at 15-16, 59-99, 144

25. Criminal investigators within the HHS CID enforced other criminal and civil statutes. Pl. HHS App. at 165, 169.

26. Criminal investigators with HHS CID were also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws relating to the programs and operations of HHS. These statutes included, but were not limited to, 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit). Pl. HHS App. at, e.g., 212.

27. A typical GS-1811-12 or GS-1811-13 criminal investigator who worked for HHS CID during the period from February 16, 1987 through September 30, 1995 spent over 50 percent of his or her time investigating fraud involving HHS programs. Def. HHS Statement of Fact ¶ 5.

28. During the period from February 16, 1987 through September 30, 1995, the type of work and duties performed by typical GS-1811-12 or GS-1811-13 criminal investigators within HHS's CID did not vary significantly in the aggregate from year to year, except that, with limited exceptions, after March 30, 1995, GS-1811-12 or GS-

1811-13 certain criminal investigators no longer investigated Social Security fraud. Def. HHS Statement of Fact ¶ 6; Def. HHS App. at 66.

29. During the period from February 16, 1987 through March 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS CID spent at least 40-45 percent of his or her time investigating Medicare or Medicaid fraud. Def. HHS Statement of Fact ¶ 7; Def. HHS App. at 66.

30. The vast majority of Medicare and Medicaid fraud consisted of doctors, hospitals or others in the medical field falsely obtaining or misappropriating Medicare benefits. Def. HHS Statement of Fact ¶ 8; Def. HHS App. at 66-67, 84, 107-110.

31. Medicare and Medicaid fraud also consisted of health care companies and professionals paying kickbacks to other professionals and companies for Medicare and Medicaid referrals. Def. HHS Statement of Facts ¶ 9; Def. HHS App. at 67, 85, 111-12.

32. Another common type of Medicare or Medicaid fraud HHS=s CID investigated was fraudulent schemes in which Medicare or Medicaid was billed for durable medical equipment that was never delivered, higher cost equipment than was actually delivered, totally unnecessary equipment or supplies or equipment delivered in a different state than billed in order to obtain higher reimbursement. Def. HHS Statement of Fact ¶ 10; Def. HHS App. at 91-92, 113-15.

33. During the period from February 16, 1987 through March 30, 1995, many GS-1811-12 or GS-1811-13 criminal investigators in HHS's CID spent approximately 40-45 percent of his or her time investigating Social Security fraud. About half of this time was spent investigating people fraudulently obtaining Social Security and Supplemental Security Income benefits. Def. HHS Statement of Fact ¶ 11; see also Def.

HHS App. at 80-83, 116-21. The other half of this time was spent assisting other agencies and law enforcement authorities in investigating crimes involving the fraudulent use of Social Security numbers. Def. HHS Statement of Fact ¶ 11; Def. HHS App. at 67, 79-83, 116-23.

34. During the period from February 16, 1987 through March 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 5-15 percent of his or her time investigating other types of crimes involving HHS programs. Some examples include people fraudulently obtaining welfare payments or misusing HHS program grants. Def. HHS Statement of HHS Fact ¶ 13; Def. HHS App. at 67, 86-87, 93, 124-26.

35. During the period from February 16, 1987 through March 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG spent no more than 5 percent of his or her time investigating HHS employee misconduct. Def. HHS Statement of Fact ¶ 14; Def. HHS App. at 67, 86-87, 93, 124-26; see also Def. HHS App. at 78, 127.

36. On or about March 31, 1995, the SSA became an independent agency with its own OIG. Therefore, with limited exceptions for certain cases in progress, after March 30, 1995, criminal investigators in HHS's CID did not investigate Social Security fraud. As such, during the period from March 31, 1995 through September 30, 1995, a typical GS-1811-12 or GS-1811-13 criminal investigator in HHS's OIG spent approximately 80-85 percent of his or her time investigating Medicare and Medicaid fraud and approximately 10-15 percent of his or her time investigating other types of crimes

involving at HHS programs. Def. HHS Statement of Fact ¶ 15; Def. HHS App. at 67-68, 106.

37. HHS CID criminal investigators were issued a variety of weapons, most commonly a revolver and later a 9 mm semi-automatic pistol. Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

Respectfully submitted,

/s/ Jules Bernstein

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

/s/ Edgar James

Edgar James
Sean Bajkowski
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Of Counsel

Dated: March 28, 2007