(2) *makes or causes to be made any false statement or representation of a material fact in any application for any payment or for a disability determination under this subchapter; or*

(3) *at any time makes or causes to be made any false statement or representation of a material fact for use in determining rights to payment under this subchapter; or*

(4) *having knowledge of the occurrence of any event affecting*

(A) *his initial or continued right to of any payment under this subchapter, or*

(B) *the initial or continued right to any payment any other individual in whose behalf he has applied for or is receiving such payment, conceals or fails to disclose such event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized; or*

(5) *having made application to receive payment under this subchapter for the use and benefit of another and having received such a payment, knowingly and willfully converts such a payment, or any part thereof, to a use other than for the use and benefit of such other person; or*

(6) *willfully, knowingly, and with intent to deceive the Secretary as to his true identity (or the true identity of any other person) furnishes or causes to be furnished false information to the Secretary with respect to any information required by the Secretary in connection with the establishment and maintenance of the records provided for in section 405(c)(2); or*



(7) *for the purpose of causing an increase in any payment authorized under this subchapter (or any other program financed in whole or in part from Federal funds), or for the purpose of causing a payment under this subchapter (or any such other program) to be made when no payment is authorized thereunder, or for the purpose of obtaining (for himself or any other person) any payment or any other benefit to which he (or such other person) is not entitled, or for the purpose of obtaining anything of value from any person, or for any other purpose -*

(A) *willfully, knowingly, and with intent to deceive, uses a Social Security account number, assigned by the Secretary (in the exercise of his authority under section 405(c)(2) to establish and maintain records) on the basis of false information furnished to the Secretary by him or by any other person; or*

(B) *with intent to deceive, falsely represents a number to be the Social Security account number assigned by the Secretary to him or to another person, when in fact such number is not the Social Security account number assigned by the Secretary to him or to such other person; or*

(C) *knowingly alters a Social Security card issued by the Secretary, buys or sells a card that is, or purports to be, a card so issued, counterfeits a Social Security card, or possesses a Social Security card or counterfeit Social Security card with intent to sell or alter it; or*

(8) *discloses, uses, or compels the disclosure of the Social Security number of any person in violation of the laws of the United States, shall be guilty of a felony and upon conviction thereof shall be fined not more than $5,000 or imprisoned for not more than five years, or both.*

(b) *Any person or other entity who is convicted of a violation of any of the provisions of this section, if such violation is committed by such person or entity in his role as, or in applying to become, a certified payee under section 405(j) of this title on behalf of another individual (other than such person's spouse), upon his second or any subsequent such conviction shall, in lieu of the penalty set forth in the preceding provisions of this section, be guilty of a felony and shall be fined not more than $25,000 or imprisoned for not more than five years, or both. In the case of any violation described in the preceding sentence, including a first such violation, if the court determines that such violation includes a willful misuse of funds by such person or entity, the court may also require that full or partial restitution of such funds be made to the individual for whom such person or entity was the certified payee.*

(c) *Any individual or entity convicted of a felony under this section or under section 1383 (b) may not be certified as a payee under section 405(j) of this title.*

(d) (1) *Except as provided in paragraph (2), an alien—*



(A) *whose status is adjusted to that of lawful temporary resident under section 210 or 245A of the Immigration and Nationality Act or under section 902 of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989,*

(B) *whose status is adjusted to that of permanent resident—*

(i) *under section 202 of the Immigration Reform and Control Act of 1986, or*

(ii) *pursuant to section 249 of the Immigration and Nationality Act, or*

(C) *who is granted special immigrant status under section 101(a)(27)(I) of the Immigration and Nationality Act, shall not be subject to prosecution for any alleged conduct described in paragraph (6) or (7) of subsection (a) if such conduct is alleged to have occurred prior to 60 days after the date of the enactment of the Omnibus Budget Reconciliation Act of 1990.*

(2) *Paragraph (1) shall not apply with respect to conduct (described in subsection (a)(7)(C) consisting of—*

(A) *selling a card that is, or purports to be, a social security card issued by the Secretary,*

(B) *possessing a social security card with intent to sell it, or*

(C) *counterfeiting a social security card with intent to sell it.*

*(3) Paragraph (1) shall not apply with respect to any criminal conduct involving both the conduct described in subsection (a)(7) to which paragraph (1) applies and any other criminal conduct if such other conduct would be criminal conduct if the conduct described in subsection (a)(7) were not committed.*

***EXAMPLES:***

1. B, the director of security for a large manufacturing company, used his position of trust to create two nonexistent employees with two fictitious Social Security account numbers. B caused the company to submit to the Internal Revenue Service (IRS) false statements reflecting wages paid to the nonexistent employees when, in fact, no wages had been paid.

   B has violated 42 U.S.C. § 408(a)(1). B also has violated 18 U.S.C. § 1001 and 18 U.S.C. § 1341 when he caused the submission of the false statements to the IRS.

2. B filed an application of Social Security disability insurance benefit payments as the representative payee for his disabled daughter. B claimed that his daughter resides in his home and that he is providing for his disabled daughter's care. In truth, as B well knew, his daughter was not residing with him and that he provided no care to his daughter.

   B has violated 42 U.S.C. § 408 (a)(2).



3. R, a recipient of disability insurance benefits, represents on a continuing disability questionnaire that he had not been working as an independent contractor. In fact, he was earning monies as an independent contractor.

   R has violated 42 U.S.C. § 408 (a)(3).

4. B, who receives Social Security benefits on behalf of his minor son, failed to disclose to the Social Security Administration that his son had died. B did so in order to receive his deceased son's benefits knowing no payments were authorized.

   B has violated 42 U.S.C. § 408 (a)(4).

5. D made application to the Social Security Administration to receive payment for the benefit of her son. Having received a payment, D decided to use the money for herself rather than for the use and benefit of her son.

   D has violated 42 U.S.C. § 408 (a)(5).

6. In order to receive increased benefit payments, H falsely represented on an application for benefits that her father's Social Security account number had been assigned to her.

   H has violated 42 U.S.C. § 408 (a)(7)(B), as well as 18 U.S.C. § 1001 [False Statements].

7. L knowingly submits false Social Security numbers to a bank in order to procure a loan.

   L has violated 42 U.S.C. § 408 (a)(7)(B).

8. K buys a Social Security card which she knows to be a counterfeit.

   K has violated 42 U.S.C. § 408 (a)(7)(C).

9. F intentionally gives a false name, date of birth, and place of birth, on an application for a Social Security card, in an effort to hide his true identity.

F has violated 42 U.S.C. § 408 (a)(6).

*CASES:*

*U.S. v. Katz*, 455 F.2d 496 (5th Cir. 1972)

Defendant physician convicted for violating 42 U.S.C. § 408 where Medicare was billed for patient visits in the hospital which were not made.

*U.S. v. Cormier*, 639 F.2d 1177 (5th Cir. 1981)

No violation occurs unless Defendant is aware both that he is deceiving the government and that the government will pay out more money because of his deception.

*U.S. v. Darrell*, 828 F.2d 644 (10th Cir. 1987)

Violation occurs which Government proves defendant falsely, with intent to deceive, represented a social security number to be his own.



## 42 U.S.C. § 1320a-7a: CIVIL MONETARY PENALTIES

*LAW:*

*(a) Any person (including an organization, agency, or other entity, but excluding a beneficiary, as defined in subsection (i)(5)) that -*

*(1) presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency (as defined in subsection (i)(1)), a claim (as defined in subsection (i)(2)) that the Secretary determines -*

*(A) is for a medical or other item or service that the person knows or should know was not provided as claimed,*

*(B) is for a medical or other item or service and the person knows or should know the claim is false or fraudulent,*

*(C) is presented for a physician's service (or an item or service incident to a physician's service) by a person who knows or should know that the individual who furnished (or supervised the furnishing of) the service -*

*(i) was not licensed as a physician,*

*(ii) was licensed as a physician, but such license had been obtained through a misrepresentation of material fact (including cheating on an examination required for licensing), or*

*(iii) represented to the patient at the time the service was furnished that the physician was certified in a medical specialty by a medical specialty board when the individual was not so certified, or*

(D) *is for a medical or other item or service furnished during a period in which the person was excluded from the program under which the claim was made pursuant to a determination by the Secretary under this section or under section 1128, 1156, 1160(b) of this title (as in effect on September 2, 1982), 1862(d) (as in effect on the date of the enactment of the Medicare and Medicaid Patient and Program Protection Act of 1987), or 1866(b) or as a result of the application of the provisions of section 1842(j)(2),*

(2) *presents or causes to be presented to any person a request for payment which is in violation of the terms of (A) an assignment under section 1842(b)(3)(B)(ii), or (B) an agreement with a State agency (or other requirement of a State plan under title XIX) not to charge a person for an item or service in excess of the amount permitted to be charged, or (C) an agreement to be a participating physician or supplier under section 1842(h)(1) or (D) an agreement pursuant to section 1866(a)(1)(G); (3)gives to any person, with respect to coverage under title XXIII of inpatient hospital services subject to the provisions of section 1886, information that the knows or should know is false or misleading, and that could reasonably be expected to influence the decision when to discharge such person or another individual from the hospital; or*

(4) *in the case of a participating or nonparticipating pharmacy (as defined for purposes of part B of title XVIII)—*



(A) *presents or causes to be presented to any person a request for payment for covered outpatient drugs dispensed to an individual entitled to benefits under part B of title XVIII and for which the amount charged by the pharmacy is greater than the amount the pharmacy charges the general public (as determined by the Secretary in regulations), or*

(B) *fails to provide the information requested by the Secretary in a survey under section 1834(c)(3)(C)(ii); shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $2,000 for each item or service (or, in cases under paragraph (3), $15,000 for each individual with respect to whom false or misleading information was given). In addition, such a person shall be subject to an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim. In addition the Secretary may make a determination in the same proceeding to exclude the person from participation in the programs under title XVIII and to direct the appropriate State agency to exclude the person from participation in any State health care program.*

(b) (1) *If a hospital, an eligible organization with a risk-sharing contract under section 1876b, or an entity with a contract under section 1903(m) knowingly makes a payment, directly or indirectly, to a physician as an inducement to reduce or limit services provided with respect to individuals who—*

*(3) Paragraph (1) shall not apply with respect to any criminal conduct involving both the conduct described in subsection (a)(7) to which paragraph (1) applies and any other criminal conduct if such other conduct would be criminal conduct if the conduct described in subsection (a)(7) were not committed.*

*EXAMPLES:*

1. B, the director of security for a large manufacturing company, used his position of trust to create two nonexistent employees with two fictitious Social Security account numbers. B caused the company to submit to the Internal Revenue Service (IRS) false statements reflecting wages paid to the nonexistent employees when, in fact, no wages had been paid.

   B has violated 42 U.S.C. § 408(a)(1). B also has violated 18 U.S.C. § 1001 and 18 U.S.C. § 1341 when he caused the submission of the false statements to the IRS.

[illegible]

*individual described in such paragraph with respect to whom the payment is made.*

*(c) (1) The Secretary may initiate a proceeding to determine whether to impose a civil money penalty, assessment, or exclusion under subsection (a) or (b) only as authorized by the Attorney General pursuant to procedures agreed upon by them. The Secretary may not initiate an action under this section with respect to any claim, request for payment, or other occurrence described in this section later than six years after the date the claim was presented, the request for payment was made, or the occurrence took place. The Secretary may initiate an action under this section by serving notice of the action in any manner authorized by Rule 4 of the Federal Rules of Civil Procedure.*



3. R, a recipient of disability insurance benefits, represents on a continuing disability questionnaire that he had not been working as an independent contractor. In fact, he was earning monies as an independent contractor.

   R has violated 42 U.S.C. § 408 (a)(3).

4. B, who receives Social Security benefits on behalf of his minor son, failed to disclose to the Social Security Administration that his son had died. B did so in order to receive his deceased son's benefits knowing no payments were authorized.

   B has violated 42 U.S.C. § 408 (a)(4).

5. D made application to the Social Security Administration to receive payment for the benefit of her son. Having received a payment, D decided to use the money for herself rather than for the use and benefit of her son.

   D has violated 42 U.S.C. § 408 (a)(5).

6. In order to receive increased benefit payments, H falsely

*elements of the criminal offense.*

*(4) The official conducting a hearing under this section may sanction a person, including any party or attorney, for failing to comply with an order or procedure, failing to defend an action, or other misconduct as would interfere with the speedy, orderly, or fair conduct of the hearing. Such sanction shall reasonably relate to the severity and nature of the failure or misconduct. Such sanction may include—*

*(A) in the case of refusal to provide or permit discovery, drawing negative factual inferences or treating such refusal as an admission by deeming the matter, or certain facts, to be established,*

*(B) prohibiting a party from introducing certain evidence or otherwise supporting a particular claim or defense,*

*(C) striking pleadings, in whole or in part,*

*(D) staying the proceedings,*

*(E) dismissal of the action,*

*(F) entering a default judgment,*

*(G) ordering the party or attorney to pay attorneys' fees and other costs caused by the failure or misconduct, and*

*(H) refusing to consider any motion or other action which is not filed in a timely manner.*

*(d) in determining the amount or scope of any penalty, assessment, or exclusion imposed pursuant to subsection (a) or (b) of this section, the Secretary shall take into account—*

*(1) the nature of claims and the circumstances under which they were presented,*

*(2) the degree of culpability, history of prior offenses, and financial condition of the person presenting the claims, and*

*(3) such other matters as justice may require.*

*(e) Any person adversely affected by a determination of the Secretary under this section may obtain a review of such determination in the United States Court of Appeals for the circuit in which the person resides, or in which the claim was presented, by filing in such court (within sixty days following the date the person is notified of the Secretary's determination) a written petition requesting that the determination be modified or set aside. A copy of the petition shall be forthwith*



*transmitted by the clerk of the court to the Secretary, and there upon the Secretary shall file in the Court the record in the proceeding as provided in section 2112 of title 28, United States Code. Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein, and shall have the power to make and enter upon the pleadings, testimony, and proceedings set forth in such record a decree affirming, modifying, remanding for further consideration, or setting aside, in whole or in part, the determination of the Secretary and enforcing the same to the extent that such order is affirmed or modified. No objection that has not been urged before the Secretary shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Secretary with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive. If any party shall apply to the court for leave to adduce additional evidence and shall show to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the hearing before the Secretary, the court may order such additional evidence to be taken before the Secretary and to be made a part of the record. The Secretary may modify his findings as to the facts, or make new findings, by reason of additional evidence so taken and filed, and he shall file with the court such modified or new findings, which findings with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be conclusive, and his recommendations, if any, for the modification or setting aside of his original order. Upon the filing of the record with it, the jurisdiction of the court shall be exclusive and its judgment and decree shall be final, except that the same shall be subject to review by the Supreme Court of the United States, as provided in section 1254 of title 28, United States Code.*

(D) *is for a medical or other item or service furnished during a period in which the person was excluded from the program under which the claim was made pursuant to a determination by the Secretary under this section or under section 1128, 1156, 1160(b) of this title (as in effect on September 2, 1982), 1862(d) (as in effect on the date of the enactment of the Medicare and Medicaid Patient and Program Protection Act of 1987), or 1866(b) or as a result of the application of the provisions of section 1842(j)(2),*

(2) *presents or causes to be presented to any person a request for payment which is in violation of the terms of (A) an assignment under section 1842(b)(3)(B)(ii), or (B) an agreement with a State agency (or other requirement of a State plan under title XIX) not to charge a person for an item or service in excess of the amount permitted to be charged, or (C) an agreement to be a participating physician or supplier under section 1842(h)(1) or (D) an agreement pursuant to section 1866(a)(1)(G);*

(2) *Such portion of the amounts recovered as is determined to have been paid out of the trust funds under sections 1817 and 1841 shall be repaid to such trust funds.*

(3) *The remainder of the amounts recovered shall be deposited as miscellaneous receipts of the Treasury of the United States.*

*The amount of such penalty or assessment, when finally determined, or the amount agreed upon in compromise, may be deducted from any sum then or later owing by the United States or a State agency to the person against whom the penalty or assessment has been assessed.*



(A) *presents or causes to be presented to any person a request for payment for covered outpatient drugs dispensed to an individual entitled to benefits under part B of title XVIII and for which the amount charged by the pharmacy is greater than the amount the pharmacy charges the general public (as determined by the Secretary in regulations), or*

(B) *fails to provide the information requested by the Secretary in a survey under section 1834(c)(3)(C)(ii); shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $2,000 for each item or service (or, in cases under paragraph (3), $15,000 for each individual with respect to whom false or misleading information was given). In addition, such a person shall be subject to an assessment of not more than twice the amount claimed for each such item or services in lieu of damages sustained by the United*

*assessment, or exclusion has become final and the reasons therefor.*

(i) *For the purposes of this subsection:*

(1) *The term "State agency" means the agency established or designated to administer or supervise the administration of the State plan under title XIX of this Act or designated to administer the State's program under title V or title XX of this Act.*

*(2) The term "claim" means an application for payments for items and services under title V, XVIII, XIX, or XX of this Act.*

*(3) The term "item or service" includes (A) any particular item, device, medical supply, or service claimed to have been provided to a patient and listed in an itemized claim for payment, and (B) in the case of a claim based on costs, any entry in the cost report, books of account or other documents supporting such claim.*

*(4) The term "agency of the United States" includes any contractor acting as a fiscal intermediary, carrier, or fiscal agent or any other claims processing agent for a health insurance or medical services program under title XVIII or XIX of this Act.*

*(5) The term "beneficiary" means an individual who is eligible to receive items or services for which payment may be made under title V, XVIII, XIX, or XX but does not include a provider, supplier, or practitioner.*

*(j) The provisions of subsections (d) and (e) of section 205 shall apply with respect to this section to the same extent as they are applicable with respect to title II. The Secretary may delegate the authority granted by section 205(d) (as made applicable to this section) to the Inspector General of the Department of Health and Human Services for purposes of any investigation under this section.*



*(k) Whenever the Secretary has reason to believe that any person has engaged, is engaging, or is about to engage in any activity which makes the person subject to a civil monetary penalty under this section, the Secretary may bring an action in an appropriate district court of the United States (or, if applicable, a United States court of any territory) to enjoin such activity, or to enjoin the person from concealing, removing, encumbering, or disposing of assets which may be required in order to pay a civil monetary penalty if any such penalty were to be imposed or to seek other appropriate relief.*

*(l) A principal is liable for penalties, assessments, and an exclusion under this section for the actions of the principal s agent acting within the scope of the agency.*

***EXAMPLES:***

1. Dr. S, disregarding Medicare carrier instructions to the contrary, instructs his billing clerk to submit claims for individual laboratory tests when in fact the tests were performed as a group. Dr. S is reimbursed at a higher rate than would have been paid for a group test as a result of the improper claims.

   Dr. S has violated 42 U.S.C. § 1320a-7a and is liable for a penalty of not more than $2,000 for each false line item on the claims, as well as assessment of not more than twice the amount claimed.

2. C, a hospital administrator, offers physicians treating Medicare patients in the hospital a percentage of any savings the hospital realizes as a result of the physician ordering fewer services for his Medicare patients.

   C has violated 42 U.S.C. § 1320a-7a and the hospital may be penalized up to $2,000 per patient for whom payment is made. Any physician who accepts the payments also is subject to a $2,000 penalty.

*CASES:*

*Chapman v. U.S. Department of Health and Human Services*, 821 F.2d 253 (10th Cir. 1987)

The monetary double assessments provided for under CMPL can be calculated in cases where damages are not ascertainable. Punitive justification arises under 42 U.S.C. § 1320a-7a(a), aggravating circumstances provision.

*Mayers v. U.S. Department of Health and Human Services*, 806 F.2d 995 (11th Cir. 1986)

CMPL proceedings are constitutional even though penalty is based on amount claimed rather than actual loss sustained by the Government.



## 42 U.S.C. § 1320a-7b: CRIMINAL PENALTIES FOR ACTS INVOLVING MEDICARE OR STATE HEALTH CARE PROGRAMS [1]

*LAW:*

(a) *Whoever—*

(1) *knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a program under title XVIII or a State health care program (as defined in section 1128(h)),*

(2) *at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such benefit or payment,*

(3) *having knowledge of the occurrence of any event affecting (A) his initial or continued right to any such benefit or payment, or (B) the initial or continued right to any such benefit or payment of any other individual in whose behalf he has applied for or is receiving such benefit or payment, conceals or fails to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity than is due or when no such benefit or payment is authorized,*

[1] If there is a program-related conviction, then under 42 U.S.C. §1320a-7(a) [Mandatory Exclusion], there is a mandatory, minimum 5-year exclusion from titles V, XVIII, XIX, and XX of the Social Security Act.

*(4) having made application to receive any such benefit or payment for the use and benefit of another and having received it, knowingly and willfully converts such benefit or payment or any part thereof to a use other than for the use and benefit of such other person, or*

*(5) presents or causes to be presented a claim for a physician's service for which payment may be made under a program under title XVIII or a State Health care program and knows that the individual who furnished the service was not licensed as a physician, shall (i) in the case of such a statement, representation, concealment, failure, or conversion by any person in connection with the furnishing (by that person) of items or services for which payment is or may be made under the program, be guilty of a felony and upon conviction thereof fined not more than $25,000 or imprisoned for not more than five years or both, or (ii) in the case of such a statement, representation, concealment, failure, or conversion by any other person, be guilty of a misdemeanor and upon conviction thereof fined not more than $10,000 or imprisoned for not more than one year, or both. In addition, in any case where an individual who is otherwise eligible for assistance under a State plan approved under title XIX is convicted of an offense under the preceding provisions of this subsection, the State may at its option (notwithstanding any other provision of that title or of such plan) limit, restrict, or suspend the eligibility of that individual for such period (not exceeding one year) as it deems appropriate; but the imposition of a limitation, restriction, or suspension with respect to the eligibility of any individual under this sentence shall not affect the eligibility of any other person for assistance under the plan, regardless of the relationship between that individual and such other person.*



*(b) (1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—*

*(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under title XVIII or State health care program, or*

*(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under title XVIII or a State health care program,shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—*

*(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under title XVIII or a State health care program, or*

*(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under title XVIII or a State health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(3) Paragraphs (1) and (2) shall not apply to—*

*(A) a discount or other reduction in price obtained by a provider of services or other entity under title XVIII or a State health care program, if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under title XVIII or a State health care program,*

*(B) any amount paid by an employer to an employee (who has a bona fide employment relationship with such employer) for employment in the provision of covered items or services;*

*(C) any amount paid by a vendor of goods or services to a person authorized to act as a purchasing agent for a group of individuals or entities who are furnishing services reimbursed under title XVIII or a State health care program if—*

*(i) the person has a written contract, with each such individual or entity, which specifies the amount to be paid the person, which amount may be a fixed amount or a fixed percentage of the value of the purchases made by each such individual or entity under the contract, and*



*(ii) in the case of an entity that is a provider of services (as defined in section 1861(u)), the person discloses (in such form and manner as the Secretary requires) to the entity and, upon request, to the Secretary the amount received from each such vendor with respect to purchases made by or on behalf of the entity; and*

*(D) any payment practice specified by the Secretary in regulations promulgated pursuant to section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987.*

*(c) Whoever knowingly and willfully makes or causes to be made, or induces or seeks to induce the making of, any false statement or representation of a material fact with respect to the conditions or operation of any institution, facility, or entity in order that such institution, facility, or entity may qualify (either upon initial certification or upon recertification) as a hospital, skilled nursing facility, nursing facility, intermediate care facility for the mentally retarded, home health agency, or other entity (including an eligible organization under section 1876(b)) for which certification is required under title XVIII or a State health care program) shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(d) Whoever knowingly and willfully—*

*(1) charges, for any service provided to a patient under a State plan approved under title XIX, money or other consideration at a rate in excess of the rates established by the State, or*

*(2) charges, solicits, accepts, or receives, in addition to any amount otherwise required to be paid under a State plan approved under title XIX, any gift, money, donation, or other consideration (other than a charitable, religious, or philanthropic contribution from an organization or from a person unrelated to the patient)—*

*(A) as a precondition of admitting a patient to a hospital, skilled nursing facility, or intermediate care facility for the mentally retarded, or*

*(B) as a requirement for the patient s continued stay in such a facility, when the cost of the services provided therein to the patient is paid for (in whole or in part) under the State plan, shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(e) Whoever accepts assignments described in section 1842(b)(3)(B)(ii) or agrees to be a participating physician or supplier under section 1842(h)(1) and knowingly, willfully and repeatedly violates the term of such assignments or agreement, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than six months or both.*

***NOTE:***

*Exceptions to 42 U.S.C. § 1320a-7b are set forth at 42 U.S.C. § 1320a-7b(b)(3). Additional exceptions may be defined by regulations promulgated by the Secretary of HHS.*



***EXAMPLES:***

1. 42 U.S.C. § 1320a-7b(b)(2) - a felony

   a. N, the owner and operator of a diagnostic laboratory, offered O, a physician, the free use of a resort condominium in order to induce O to refer his Medicare or Medicaid patients' specimens to N's laboratory.

   N has violated 42 U.S.C. § 1320a-7b(b)(2), a felony.

   b. P, the owner and operator of an oxygen supply company, offered to pay remuneration in the form of a cash referral to Q, a respiratory therapist. P made this offer in order to induce Q to refer Medicare or Medicaid patients to his company. P then furnished liquid oxygen to Q's patients, for which payments were made under the Medicare program.

   P has violated 42 U.S.C. § 1320a-7b(b)(2), a felony, even if Q does not except the offer. Q has violated 42 U.S.C. § 1320a-7b(b)(1) if she accepts the referral fee.

   For an expansive interpretation of U.S.C. § 1320a-7b (formerly 42 U.S.C. § 1395nn), see *U.S. v. Greber*, 760 F.2d 68 (3rd Cir. 1985).

2. 42 U.S.C. § 1320a-7b(a)(1) - a felony

   a. R, a podiatrist, knowingly made false statements in applications for payments under the Medicare program. R submitted several claim forms which purported to reflect monetary charges for podiatric services and treatments rendered to several of his patients. R knew that the claim forms he submitted were false and that he had not rendered the services and treatments that he listed on the forms.

   R has violated 42 U.S.C. § 1320a-7b(a)(1), a felony. R also has violated 18 U.S.C. § 1001 [False Statements].

b. X, a podiatrist, submitted to the State agency administering the Medicaid program, Medicaid claims on the face of which were statements that certain podiatric services had been rendered to those Medicaid eligible patients when, in actuality, those podiatric services had not been rendered by X.

X has violated 42 U.S.C. § 1320a-7b(a)(1), a felony.

3. 42 U.S.C. § 1320a-7b(d) - a felony

a. A, a nursing home owner and operator, knowingly and willfully demanded "donations" to the home from B, as a condition for the continued stay of B's aged mother in A's nursing home. The cost of the services for B's mother's stay in A's nursing home were being paid for under 42 U.S.C. § 1320a-7b(d)(2) by the State Medicaid program.

A has violated 42 U.S.C. § 1320a-7b(d)(2), a felony.

4. 42 U.S.C. § 1320a-7b(a)

a. A, a physical therapist, pays B, a physician, to sign and submit Medicare claims on which B knowingly and willfully makes false statements concerning the services provided by B.

A has violated 42 U.S.C. § 1320a-7b(a)(1) a misdemeanor, because the false statements pertain to services by another person; B. Additionally, B has violated 42 U.S.C. § 1320a-7b(a)(1), a felony.



***CASES:***

*U.S. v. Greber*, 760 F.2d 68 (3rd Cir. 1985)

Payments made to a physician to induce referrals for laboratory services, notwithstanding payments for professional services rendered, establishes fraud. Additionally, false statements made to Federal agencies to induce Medicare payments is an essential element of offense.

*U.S. v. Duz - Mor Diagnostic Laboratory, Inc.*, 650 F.2d 223 227 (9th Cir. 1981)

Proposal to an agent of the Federal Bureau of Investigation, suggesting a 15% rebate in exchange for referral of Medicare business, meets statutory standards of an "offer" for a bribe or kickback.

## 42 U.S.C. § 1383a: PENALTIES FOR FRAUD [Supplemental Security Income]

*LAW:*

*(a) Whoever -*

*(1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit under this title [42 U.S.C. §§ 1381 et seq.],*

*(2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to any such benefit,*

*(3) having knowledge of the occurrence of any event affecting*

*(A) his initial or continued right to any such benefit, or (B) the initial or continued right to any such benefit of any other individual in whose behalf he has applied for or is receiving such benefits, conceals or fails to disclose such event with an intent fraudulently to secure such benefit either in a greater amount or quantity than is due or when no such benefit is authorized, or*

*(4) having made application to receive any such benefit for the use and benefit of another and having received it, knowingly and willfully converts such benefit or any part thereof to a use other than for the use and benefit of such other person, shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned for not more than one year, or both.*



*(b) (1) Any person or other entity who is convicted of a violation of any of the provisions of paragraphs (1) through (4) of subsection (a), if such violation is committed by such person or entity in his role as, or in applying to become, a payee under section 1631(a)(2) [42 U.S.C. § 1383(a)(2)] on behalf of another individual (other than such person's eligible spouse), in lieu of the penalty set forth in subsection (a) -*

*(A) upon his first such conviction, shall be guilty of a misdemeanor and shall be fined not more than $5,000 or imprisoned for not more than one year, or both; and*

*(B) upon his second or any subsequent such conviction, shall be guilty of a felony and shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(2) In any case in which the court determines that a violation described in paragraph (1) includes a willful misuse of funds by such person or entity, the court may also require that full or partial restitution of such funds be made to the individual for whom such person or entity was the certified payee.*

*(3) Any person or entity convicted of a felony under this section or under section 208 may not be certified as a payee under section 1631(a)(2).*

***EXAMPLES:***

1. C, the representative payee for his daughter's Supplemental Security Income (SSI) benefit checks, claimed on an application to the Social Security Administration that his daughter resided with him. In fact, C knew that she resided out of state with her mother, C's former wife. C, as representative payee, negotiated his daughter's SSI benefit checks and converted the monies received therefrom to his own use.

   C has violated 42 U.S.C. § 1383(a)(1), as a consequence of his willful making of a false benefit application. C also has violated 42 U.S.C. § 1383a(a)(4) because he knowingly and willfully cashed the benefit checks for his own use.

2. L stated in Form SSA-8200 [Statement for Determining Continued Eligibility for Supplemental Security Income Payments], that he had not received, nor did he expect to receive, any other income except SSI. At the time L knew that he was receiving money each month from a casualty insurance company as the result of an automobile accident settlement.

   L has violated 42 U.S.C. § 1383a(2). L has also violated 18 U.S.C. § 1001 [False Statements].



3. B, a single parent with children, knowingly failed to report his marriage to C to the Social Security Administration. B continued to receive and negotiate (SSI) benefit checks as a single parent with dependent children after his marriage to C. B knew that the marriage terminated his entitlement to those SSI benefits.

   B has violated 42 U.S.C. § 1383a(3).

***CASES:***

None available.

## Elements of a Civil Monetary Penalties Case 2

This outline is to identify and discuss the elements of those civil monetary penalty (CMPL) cases which are predicated on false or fraudulent claims to Medicare, Medicaid and the Maternal and Child Health Block Grant Program. With respect to such cases, the operative language from the CMP statute reads as follows:

> **"Any person (including an organization, agency, or other entity) that presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency, a claim that the Secretary determines -**
>
> **(A) is for a medical or other item or service that the person knows or should know was not provided as claimed,**
>
> **(B) is for a medical or other item or service and the person knows or should know the claim is false or fraudulent, ... shall be subject in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $2,000 for each item or service ...**

[2] This document is only for use in training personnel of the United States Government, State governments, and official agents of the Medicare and Medicaid programs. It does not state legal positions which are binding on the United States Government or on State governments.



> **In addition, the Secretary may make a determination in the same proceeding to exclude the person from participation in the programs under title XVIII and to direct the appropriate State agency to exclude the person from participation in any State health care program. In addition, such a person shall be subject to an assessment of not more than twice the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim."**
>
> Section 1128A of the Social Security Act, codified at 42 U.S.C. § 1320a-7a.

There are eight elements of this offense, described as follows:

1. A person,
2. presents or causes to be presented,
3. to the U.S. or an agent of the U.S.,
4. a claim,
5. for an item or service,
6. which the person knows or should know,
7. was false or fraudulent,
8. and which is material to the amount paid.

**42 U.S.C. § 1383a: PENALTIES FOR FRAUD [Supplemental Security Income]**

*LAW:*

*(a) Whoever -*

*(1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit under this title [42 U.S.C. §§ 1381 et seq.],*

*(2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to any such benefit,*

*(3) having knowledge of the occurrence of any event affecting*

*(A) his initial or continued right to any such benefit, or (B) the initial or continued right to any such benefit of any other individual in whose behalf he has applied for or is receiving such benefits, conceals or fails to disclose such event with an intent fraudulently to secure such benefit either in a greater amount or quantity than is due or when no such benefit is authorized, or*

*... to receive any such benefit for the*

[3] In *Inspector General v. Frank P. Silver, M.D.*, Docket No. C-19, the Under Secretary ruled that employers who are natural persons are not liable for civil monetary penalties based solely on the conduct of their employees. However, this ruling was overturned by enactment of § 1128A(1) of the Social Security Act, which provides that, "A principal is liable for penalties, assessments and an exclusion under this section for the actions of the principal's agent acting within the scope of the agency." See: Medicare Catastrophic Coverage Act (P.L. 100-360) § 411, and Family Support Act of 1988 (P.L. 100-485) § 608.



*(b) (1) Any person or other entity who is convicted of a violation of any of the provisions of paragraphs (1) through (4) of subsection (a), if such violation is committed by such person or entity in his role as, or in applying to become, a payee under section 1631(a)(2) [42 U.S.C. § 1383(a)(2)] on behalf of another individual (other than such person's eligible spouse), in lieu of the penalty set forth in subsection (a) -*

*(A) upon his first such conviction, shall be guilty of a misdemeanor and shall be fined not more than $5,000 or imprisoned for not more than one year, or both; and*

*(B) upon his second or any subsequent such conviction, shall be guilty of a felony and shall be fined not more than $25,000 or imprisoned for not more than five years, or both.*

*(2) In any case in which the court determines that a violation described in paragraph (1) includes a willful misuse of funds by such person or entity, the court may also require that full or partial restitution of such funds be made to the certified individual for whom such person or entity was the certified payee.*

*(3) Any person or entity convicted of a felony under this section or under section 208 may not be certified as a payee under section 1631(a)(2).*

or should know of the false bills). It does not have to be proved that the supplier knew that the nursing home was going to submit a cost report to the programs, but such proof would be helpful.

3. **"to an officer, employee or agent of the United States, of any department or agency thereof, or of any State agency..."**

- *Receipt of Claim.* The claim need be presented to any one of the entities specifically named, or to a Medicaid fiscal agent, Medicare carrier or intermediary.
- *Statute of Limitations.* For statute of limitations purposes, six years from the date a claim is *received* by the government or government agent is usually the last date which can be used for a count in a CMP action.

4. **"a claim ..."**

- *Broad Definition.* The claim can be in any form, written or transmitted to the government by electronic means.

5. **"for a medical or other item or service"**

- *Broad Definition.* This phrase is so broad as to include *any* item or service claimed to the government under the covered programs.
- *Cost-Based Providers.* With respect to a cost-based provider, such as a nursing home, the basis of the CMP action can be *either* "an entry in the cost report, books of account or other documents supporting such claim," such as ledgers, checks, bills, receipts, etc. See § 1128A(i)(3). However, a CMP action against such a provider *cannot* be based on all three types of documents. A choice must be made between basing the suit on (1) entries in the cost report, (2) books of account, *or* (3) the supporting documents.



6. **"that the person knows or should know"**

- *Mental Element Must Be Proved.* This is the mental element of the CMP offense. Be wary of too quickly forming the opinion that the provider knew or should have known of the impropriety of the claims. Personal opinion is not evidence. "Knowing it and proving it are two different things."
- *"Should Know" Defined* [4] The term "should know" has been interpreted as putting a provider under a duty to use reasonable diligence to insure that claims being submitted are true and accurate. In other words, providers are under an affirmative duty to ascertain the truthfulness of the claims submitted by them or on their behalf.
- *Use of Circumstantial Evidence.* A person's state of mind (knowledge) is rarely proved directly in a CMP case. Only where you have a confession do you have direct evidence of what a person's state of mind was. State of mind is usually proved by assembling evidence of the *facts and circumstances surrounding the claims in question.* Answers to questions such as the following often provide proof of state of mind:

[4] Prior to the enactment of the Omnibus Budget Reconciliation Act of 1987 (P.L. 100-203) on December 22, 1987, the CMPL mental element contained the phrase "has reason to know" instead of "should know." However, Congress specified that the change to "should know" was retroactive.

1. Who gave instructions for preparing the claims?
2. By whom, how, and when were the claims prepared?
3. What supporting documentation was used to prepare the claim?
4. Who prepared such supporting documentation?

- *Pattern or Scheme.* Usually, evidence of facts and circumstances centers upon proof of a *pattern or scheme* to defraud. Proof of facts and circumstances of a pattern or scheme will help negate or defeat the common defenses asserted by respondents, such as:

  1. "The billing clerk did everything,"
  2. "I was busy,"
  3. "I'm a doctor, not a businessman,"
  4. "Mistakes may have been made, but it was by error or inadvertence," or
  5. "I didn't understand the regs."

- *Collateral Issues.* Often, investigation of marginally relevant facts or circumstances will show conduct which is indicative of a pattern or scheme to defraud.

- *Badges of Fraud.* The following types of conduct can provide powerful evidence of a guilty state of mind:



1. concealment of information,
2. misrepresentation of minor pieces of information,
3. half-truths ("not the whole story"),
4. faulty explanations,
5. changed story,
6. sharp memory on favorable points; poor memory on problem points,
7. conduct which is unusual for businessmen or for physicians,
8. double books, or
9. witness or document tampering.

- *Inference of the Required State of Mind.* The evidence should be strong enough so that the required state of mind can be *inferred* by the judge. One should have evidence of facts and circumstances surrounding the offense which are consistent *only* with the proposition that the respondent actually knew or should have known that the claims were false or fraudulent.

- *Honest Mistakes.* CMP treatment is not available where a provider has made honest mistakes or errors.

- *Chart of Comparative Mental Elements.* The chart at the back of this outline illustrates the difference in mental elements of the CMP statute, the criminal and civil False Claims Acts, and the mental element required for recovery of overpayment.

3. **"to an officer, employee or agent of the United States, of any department or agency thereof, or of any State agency..."**

- *Receipt of Claim.* The claim need be presented to any one of the entities specifically named, or to a Medicaid fiscal agent, Medicare carrier or intermediary.

- *Statute of Limitations.* For statute of limitations purposes, six years from the date a claim is *received* by the government or government agent is usually the last date which can be used for a count in a CMP action.

provided as claimed.

- *"Not Medically Necessary" Cases.* Where a provider knows or should know that services were not medically necessary, but submits claims for such services, he may be liable for CMPL.

- *Cost Report Cases.* The entry of an item in a cost report for *non-incurred* costs is usually grounds for a CMP action. However, entry of an incurred but *non-allowable* cost item may or may not be grounds for a CMP violation. Cost-based providers have legitimate rights to appeal the disallowance of particular items, and are required to enter disputed cost items in the appropriate cost reports in order to preserve their appeal rights. This may not always excuse a provider. For example, the entry of costs which are clearly not allowable (such as a swimming pool at the owner's home) would be grounds for a CMP action.



6. **"that the person knows or should know"**

- *Mental Element Must Be Proved.* This is the mental element of the CMP offense. Be wary of too quickly forming the opinion that the provider knew or should have known of the impropriety of the claims. Personal opinion is not evidence. "Knowing it and proving it are two different things."

- *"Should Know" Defined* 4 The term "should know" has been interpreted as putting a provider under a duty to use reasonable diligence to insure that claims being submitted are true and accurate. In other words, providers are under

reasonably clear, clear enough to *exclude* the services which were actually rendered.

  - *Example.* Assume that the relevant standards for levels of physician service for a hospital visit are based on time, e.g., 20-25 minutes for an "intermediate" visit. Sometimes it is possible to show that a doctor could not possibly have rendered a visit of a particular length, because the time records on his patients' charts show that he was visiting another patient five minutes after seeing the first patient.

  - *Example.* Now assume that the relevant standards for levels of physician service are subjective and vague. There is *no* CMP case where a doctor bills for an "intermediate" level hospital visit, even if he was in the room for only five minutes, if the applicable standard for an "intermediate" visit requires only a review of the last day's progress, prescription of treatment for the next day, and discussion of findings with the patient. *These duties could be performed in five minutes.*

8. **Materiality**

- *Capacity to Affect Reimbursement.* Although not explicitly set forth in the statute as an element of the offense, a claim should contain a *material* falsehood, that is, a falsehood which has the *capacity to affect* whether a claim is payable and if so, the amount payable. If a provider makes a false statement on a claim which is *irrelevant* to payment (i.e., it cannot affect the amount the provider is paid), then that statement is not material and is probably not actionable under the CMP statute.
- *"No harm, no foul"*. In general, materiality means "no harm, no foul". If the government can not be hurt by a particular falsehood, generally no CMP case will lie for that falsehood.
    - *Example.* Consider a physician who fraudulently states that he *"personally supervised"* an EKG technician in a claim for reimbursement of EKG services "incident to" his care. Nevertheless, he is entitled to reimbursement for these EKG services as independent laboratory services, *irrespective* of his personal supervision of the EKG technician. There is no case under the CMP statute; the physician was entitled to payment regardless of the falsehood.
- *Loss to Government Not Required.* While a falsehood must be "material" in the sense that it has the *capacity* to affect payment, the CMP statute does *not* require that the government actually lose money.
    - *Example.* If an astute carrier catches the improper claims prior to payment, the fact that the claims have not been paid does not bar a CMP action.



9. **Elements NOT Required in a Civil Money Penalties Case.**

Although required by some fraud type causes of action, the elements of *intent to deceive the government* and *actual damage* to the government are *NOT* required to be proved in a civil money penalties case. Also, it is not necessary to prove that an individual knew about the CMP law itself.

10. **Primary Indicators of Case with High Potential Penalties**

Cases interpreting the CMP make it clear that the ultimate amount of penalties which will be imposed depend mainly upon three factors:

- *The degree of culpability of the respondent.* Where there is evidence of increasingly, willful, gross or greedy conduct, the higher the likely award; and
- *The amount of overpayment.* The higher the proved overpayment, due to the counts in the demand letter, and to a lesser extent the overpayment resulting from the entire course of conduct of the respondent, the higher the likely award.
- *Collectibility.* The financial condition of the respondent has a significant impact on the probable amount awarded.

## "State of Mind" Requirements for Various Offenses

| | Honest Mistake | Carelessness (Negligence) | Extreme Carelessness or Reckless Disregard of the Truth | Actual Knowledge |
|---|---|---|---|---|
| Criminal False Claims Acts, 18 U.S.C. § 287 | No | No | Yes | Yes |
| Civil False Claims Act, 31 U.S.C. § 3729 | No | No | Yes | Yes |
| Civil Money Penalties | No | Yes | Yes | Yes |
| Overpayment | Yes | Yes | Yes | Yes |

2/24

No. 90-162C
and consolidated cases

IN THE UNITED STATES CLAIMS COURT

STEPHEN S. ADAMS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

STUART M. GERSON
Assistant Attorney General

DAVID M. COHEN
Director

SHALOM BRILLIANT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
2nd Floor, Todd Building
Washington, D.C. 20530
Tele: (202) 514-7300

Attorneys for Defendant

FEBRUARY 24, 1992

### A. The Duties Described In The Position Descriptions Meet The Criteria Set Forth In Subsection (a) Of The Regulation

Subsection (a) of the OPM regulation governing the administrative exemption provides that, to come within that exemption, the employee's primary duty must consist of work that:

> (1) Significantly affects the formulation or execution of management policies or programs; or
>
> (2) Involves general management or business functions or supporting services of substantial importance to the organization serviced; or
>
> (3) Involves substantial participation in the executive or administrative functions of a management official.

5 C.F.R. § 551.205(a) (emphasis added). Subsection (a) is satisfied by work meeting any one of these three descriptions. The employees in question here perform work meeting at least two of these descriptions. The work of these employees significantly affects the execution of the policies and programs of the employing agencies. In some instances, this work also affects the formulation of these policies and programs. The duties of these employees thus satisfy subsection (a)(1) of the regulation. Additionally, the major duties performed by these employees constitute a supporting services of substantial importance to the agencies in which they are employed and to the Government as a whole. These duties thus satisfy subsection (a)(2) of the regulation.[4]

---

[4] The features that make plaintiffs' work an important supporting services to the agencies also demonstrate that these employees are "specialist[s] in a . . . supporting service," as (continued...)

1. Plaintiffs' Primary Duty Consists Of Work That Significantly Affects The Execution Of Management Policies And Programs

In FPM Letter 551-7, OPM has explained subsection (a)(1) of the administrative exemption regulation as follows:

> Management policies and programs range from broad national goals that are expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that are acted on by others. Employees who significantly affect the execution of management policies and programs typically are those whose work involves obtaining compliance with such policies by other individuals or organizations, within or outside the Federal Government, or making significant determinations in furtherance of the operation of the programs and accomplishment of program objectives.

FPM Letter 551-7, Attachment, p. 8 (emphasis added). App. 11.[5] There can be no dispute that plaintiffs' work as GS-1811 criminal investigators meets this standard, because it involves obtaining compliance with the policies and programs of their employer agencies -- i.e., the agencies' broad national goals, as well as the specific objectives of the plaintiffs' field offices -- by other individuals or organizations.

---

[4](...continued) provided in the introductory sentence preceding subsection (a) of 5 C.F.R. § 551.205.

[5] This interpretation of 5 C.F.R. § 551.205(a)(1) is entitled to an extremely high degree of deference. As the Supreme Court has stated: "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." Udall v. Tallman, 380 U.S. 1, 16 (1965) (emphasis added).

As stated in the Department of the Treasury's Single Agency Qualification Standard for criminal investigators, Treasury enforcement agents -- including criminal investigators at IRS, ATF, Customs, and Secret Service -- "investigate criminal violations of Federal laws within the enforcement jurisdiction of the Department of the Treasury and conduct certain noncriminal investigations relating to the functions of the Department." App. 29. These "special agents" enforce their employer's policies and programs concerning the collection of income tax and customs revenues, and concerning other regulatory and protective programs administered by the Treasury Department through its component agencies.

The role of IRS criminal investigators in the execution of IRS's policies is indicated in the Internal Revenue Manual (IRM), as follows:

> (1) The purpose of the IRS is to collect the proper amount of tax revenues at the least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness. To achieve that purpose, we will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . .
>
> (2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency . . . .

IRM ¶ 1111.1, App. 27. IRS criminal investigators, or "special agents," support IRS's mission by performing the investigative work necessary in order enable IRS to "determine the extent of compliance and the causes of noncompliance" and to "detect fraud

and delinquency." These agents "conduct investigations of alleged criminal violations of Federal tax law . . . ; make recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist the United States Attorney in the preparation of the case during the trial." App. 29.

The roles of criminal investigators at ATF, Customs, Secret Service, and DEA, in the execution of these agencies' respective programs, are analogous to the IRS agents' role. The mission of ATF, as described in its manual, is to combat the unlawful use of firearms, explosives, arson-for-profit schemes; to ensure the collection of alcohol and tobacco tax revenues; to suppress prohibited trade practices in the beverage alcohol industry; and to assist the States in eliminating interstate trafficking in the sale and distribution of contraband cigarettes. App. 25. To support this mission, ATF criminal investigators "conduct investigations of violations of Federal laws relating to explosives, arson, firearms, illicit liquor and tobacco." App. 29. Customs agents "conduct investigations relative to the prevention and detection of fraud affecting Customs revenue through under-evaluation of merchandise; smuggling of merchandise and contraband . . . ; neutrality act violations involving illegal shipment of arms; allegations of suspected criminal violations involving Customs employees; and other Customs matters." App. 29. Secret Service agents "conduct investigations of violations of laws relating to the counterfeiting or forgery of the currency, obligations and

## 1110 (7-6-83)
## Organizational History

### 1111 (7-6-83)
### Establishment of the Internal Revenue Service

#### 1111.1 (8-27-88)
#### Mission

(1) The purpose of the IRS is to collect the proper amount of tax revenues at the least cost to the public, and in a manner that warrants the highest degree of public confidence in our integrity, efficiency and fairness. To achieve that purpose, we will: encourage and achieve the highest possible degree of voluntary compliance in accordance with the tax law and regulations; advise the public of their rights and responsibilities; determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws; and continually search for and implement new, more efficient and effective ways of accomplishing our Mission.

(2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for collecting all taxes due, for examining, for detecting fraud and delinquency, for hearing and adjudicating appeals, for providing taxpayer service and information, for recruiting persons with a professional outlook and maximizing their ability to perform through training in both the ethical and professional aspects of their jobs, for developing evaluation methods designed to measure these aspects, for the uniform interpretation and application of the tax laws, for the preparation of regulations and tax guide materials, for clarification and simplification of tax rules, for maintaining the integrity of the Service and its efficient operation, and for performing such other duties as may be required by laws and regulations.

#### 1111.2 (7-6-83)
#### Organic Act

(1) The Office of the Commissioner of Internal Revenue was established by an act of Congress (12 Stat. 432) on July 1, 1862, and the first Commissioner of Internal Revenue took office on July 17, 1862.

(2) The act of July 1 provided:

"... That, for the purpose of superintending the collection of internal duties, stamp duties, licenses, or taxes imposed by this Act, or which may be hereafter imposed, and of assessing the same, an office is hereby created in the Treasury Department to be called the Office of the Commissioner of the Internal Revenue; ... Commissioner of Internal Revenue, ... shall be charged, and hereby is charged, under the direction of the Secretary of the Treasury, with preparing all the instructions, regulations, directions, forms, blanks, stamps, and licenses, and distributing the same or any part thereof, and all other matters pertaining to the assessment and collection of the duties, stamp duties, licenses, and taxes, which may be necessary to carry this Act into effect, and with the general superintendence of his office, as aforesaid, and shall have authority, and hereby is authorized and required, to provide proper and sufficient stamps or dies for expressing and denoting the several stamp duties, or the amount thereof in the case of percentage duties, imposed by this Act, and to alter and renew or replace such stamps from time to time, as occasion shall require; ..."

(3) By common parlance and understanding of the time, an office of the importance of the Office of Commissioner of Internal Revenue was a bureau. The Secretary of the Treasury in his report at the close of the calendar year 1862 stated that "The Bureau of Internal Revenue has been organized under the Act of the last session ..." Also it can be seen that Congress had intended to establish a Bureau of Internal Revenue, or thought they had, from the act of March 3, 1863, in which provision was made for the President to appoint with Senate confirmation a Deputy Commissioner of Internal Revenue "who shall be charged with such duties in the bureau of internal revenue as may be prescribed by the Secretary of the Treasury, or as may be required by law, and who shall act as Commissioner of internal revenue in the absence of that officer, and exercise the privilege of franking all letters and documents pertaining to the office of internal revenue." In other words, "the office of internal revenue" was "the bureau of internal revenue," and the act of July 1, 1862 is the organic act of today's Internal Revenue Service.

#### 1111.3 (7-6-83)
#### History

##### 1111.31 (7-6-83)
##### Internal Taxation

Madison's Notes on the Constitutional Convention reveal clearly that the framers of the Constitution believed for some time that the principal, if not sole, support of the new Federal Government would be derived from customs duties and taxes connected with shipping and importations. Internal taxation would not be resorted to except infrequently, and for special



27

# Table of Contents

Financial Analysis Series, GS-1160 • (11)60
Internal Revenue Officers Series, GS-1169 • (11)69
Single Agency Qualification Standard, GS-5/15 • (11)69.1
Interpretive Guidance • (11)69.2
Supervisory Collection Office Function Experience • (11)69.21
Appraising and Assessing Series, GS-1171 • (11)71

**(12)00**
**Copyright, Patent, and Trademark Group**

**(13)00**
**Physical Sciences Group**
Geology Series, GS-1350 • (13)50

**(14)00**
**Library and Archives Group**
Technical Information Service Series, GS-1412 • (14)12

**(15)00**
**Mathematics and Statistics Group**
Actuary Series, GS-1510 • (15)10
Operations Research Series, GS-1515 • (15)15
Mathematical Statistician Series, GS-1529 • (15)29
Statistician Series, GS-1530 • (15)30
Statistical Assistant Series, GS-1531 • (15)31

**(16)00**
**Equipment, Facilities, and Service Group**
Printing Management Series, GS-1654 • (16)54

**(17)00**
**Education Group**
General Education and Training Series, GS-1701 • (17)01
Education and Training Technician Series, GS-1702 • (17)02
Education and Vocational Training Series, GS-1710 • (17)10
Training Instruction Series, GS-1712 • (17)12

**(18)00**
**Investigation Group**
General Inspection, Investigation and Compliance Series, GS-1801 • (18)01
Compliance Inspection and Support Series, GS-1802 • (18)02
Interpretive Guidance • (18)02.1
General Investigating Series, GS-1810 • (18)10
Interpretive Guidance • (18)10.1
Criminal Investigating Series GS-1811 • (18)11
Single Agency Qualification Standard, GS-5/15 • (18)11.1
Waiving Qualification Standards • (18)11.2
Guidelines for Evaluating Qualifications of Candidates for Special Agent and Inspector (Internal Security) Positions • (18)11.3
Background and Purpose • (18)11.31
Academic Requirements for Special Agents • (18)11.32
Accounting and Related Business Experience for Special Agents • (18)11.33
Specialized Experience for Special Agents • (18)11.34
Specialized Experience for Inspectors • (18)11.35
Education Substitutions for Special Agent • (18)11.36
Written Test • (18)11.37
Age Limits • (18)11.38

**(19)00**
**Quality Assurance, Inspection and Grading Group**

**(20)00**
**Supply Group**
General Supply Series, GS-2001 • (20)01
Supply Program Management Series, GS-2003 • (20)03
Supply Clerical and Technician Series, GS-2005 • (20)05
Inventory Management Series, GS-2010 • (20)10

**(21)00**
**Transportation Group**
Traffic Management Series, GS-2130 • (21)30

**EXHIBITS**

Exhibit 003-1
Training Agreement: Data/Service Center Management Trainee

Exhibit 003-2
Training Agreement: Digital Computer Programmer, Digital Computer Systems Analyst, Resident Programmer Analyst, Digital Computer Analyst

Exhibit 301-1
Training Agreement: Resources Management Intern Program

Exhibit 332.1-1
Test Parts and Weights

Exhibit 340.2-1
Training Agreement: Executive Selection and Development