# EXHIBIT A

EMPLOYEE PERFORMANCE MANAGEMENT PLAN AND RATING

Lynn, Joanne
Employee's Name (Last, First, MI)

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
SSN

Criminal Investigator
Position Title

GS/WG-1811 - ~~12~~ 13
Series Grade

DHHS/OIG/Office of Investigations
Organization

Code

Appraisal Year 1994

PLAN ESTABLISHMENT

This Plan consists of 5 elements.

✓ The total weight of all job elements is ~~100~~ 500 points.

✓ The total weight of all critical job elements is greater than total weight of all non-critical job elements (i.e., at least 51 points).

✓ The lowest weighted critical element ( 20 points) has a higher weight than the highest weighted non-critical element ( 15 points).

I certify that this performance plan sets forth the job elements and standards upon which the work performance of this employee will be rated:

| Appraising Official's Signature | Date | Reviewer's Signature | Date |
|---|---|---|---|
| [signature] | 1/4/94 | [signature] | 1/5/94 |

I have received a copy of this plan and understand that it describes the job elements and standards upon which my work performance will be rated:

| Employee's Signature | Date |
|---|---|
| [signature] | 1/10/94 |

Relationship to within-grade increase: At least a Fully Successful Summary Rating is required for an acceptable level of competence determination for granting a within-grade increase.

PROGRESS REVIEW

I certify that a review of progress under this plan was conducted:

| Rater | Date | Employee | Date |
|---|---|---|---|
| [signature] | [illegible] | [signature] | [illegible] |

PERFORMANCE RATING

| Summary Rating: | | Point Range: | | Level Of Performance | Code |
|---|---|---|---|---|---|
| ____ | UNACCEPTABLE | 100-199 or | Employee is rated unacceptable on one or more critical elements | ____ | N |
| ____ | MARGINALLY SUCCESSFUL | 200-299 or | Employee is rated marginally successful on one or more critical elements | ____ | K |
| ____ | FULLY SUCCESSFUL | 300-399 | | ____ | G |
| X | EXCELLENT | 400-460 | | ____ | D |
| ____ | OUTSTANDING | 461-500 | | ____ | A |
| 435 | TOTAL SCORE | | | | |

I derived this summary rating on the following basis (check one):

✓ Rating the job elements in the attached plan.

____ Consolidating the attached summary ratings (document below the method used to consolidate summary ratings).

This Rating is ✓ A Rating of Record ____ A Summary Rating

Gerald R. Waroway 12/22/94
Appraising Official's Signature Date

12/22/94
Reviewer's Signature Date

Manager of Performance Budget Signature Date

X [signature] X 1/9/95
Employee's Signature Date

(Indicate that a copy of summary rating was received.)

Comments:

Element #01 | EPMS JOB ELEMENT | _X_ Check if Critical

[ DESCRIPTION ]

Plans and conducts investigations and projects within the jurisdiction of the Office of Inspector General by utilizing appropriate investigative skills and techniques. Controls a caseload of a size and complexity appropriate to this grade level as set out in OPM's classification guidelines for the GS-1811 Criminal Investigative Series. Establishes priorities for investigative assignments based on office policy, urgency, and sensitivity.

[ STANDARDS ]

PERFORMANCE STANDARDS

Level 2 (Marginally Successful):

Resolves basic investigative issues and allegations; occasionally has difficulty identifying complex investigative issues and selecting the appropriate investigative method or procedure to pursue and resolve all issues and allegations

Manages an assigned caseload of a size and/or complexity appropriate to a Federal criminal investigator at this grade level.

Occasionally fails to complete assignments and resolve investigative issues in a timely, productive manner.

Generally establishes appropriate investigative priorities; occasionally has difficulty recognizing and adjusting priorities as required.

Requires closer supervision and assistance than is expected of an investigator at this grade level in order to successfully conduct investigations and manage a caseload.

[ SCORE ]

Weight: 25 | Value: 5 | Score: 125

Element #01 - Critical continued

Level 3 (Fully Successful):

Effectively analyzes and plans the conduct of routine and complex investigations and projects, identifies investigative issues and selects the appropriate investigative method or procedure to pursue and resolve investigative issues and allegations.

Effectively manages an assigned caseload of a size and/or complexity appropriate to a Federal criminal investigator at this grade level.

Generally completes assignments and resolves investigative issues in a timely, productive manner.

Effectively establishes appropriate investigative priorities; recognizes changes in priorities and makes appropriate adjustments.

Carries out assignments and manages a caseload with supervisory assistance appropriate for this grade level; consults with supervisors on complex issues where appropriate and keeps supervisors currently informed of sensitive issues.

Level 4 (Excellent):

Effectively analyzes and plans the conduct of investigations and projects of a greater complexity than normally expected of a journeyman level Federal criminal investigator at this grade level; properly identifies complex investigative issues and almost always selects the appropriate investigative method to pursue and resolve all investigative issues and allegations.

Effectively manages an assigned caseload of a size and/or complexity greater than that normally expected of a Federal criminal investigator at this grade level.

Almost always completes assignments and resolves investigative issues in a timely, productive manner.

Effectively establishes appropriate investigative priorities in managing complex assignments and promptly makes adjustments in priorities to fit changing circumstances.

Independently handles assignments and manages a complex investigative caseload with less supervision than is expected of an investigator at this grade level. Promptly identifies sensitive investigative issues to discuss with supervisors and makes cogent recommendations to resolve such issues where appropriate.

[ PROGRESS REVIEW NARRATIVE ]

SA Lynn's performance has been completely successfull for this element.

[ SUMMARY NARRATIVE ]

SA Lynn plans and organizes her investigative work very well. She effectively manages a caseload above agents in her grade and level. She is a health care specialist. She has a major target under investigation who is a part of a very large national case. She also has another multimillion dollar DME case in her load which has both criminal and civil implications. SA Lynn works independently keeping the ARIGI advised of her case developments. Her assignments are completed in a timely and productive manner. She effectively establishes her own priorities where none exist. She is deputized.

| Element #02 | EPMS JOB ELEMENT | _X_Check if Critical |
|---|---|---|

[ DESCRIPTION ]

Preparation of Reports

Prepares useful and timely investigative reports, correspondence, forms and other memoranda, presenting evidence and information in a clear, logical, accurate and complete manner.

[ STANDARDS ]

PERFORMANCE STANDARDS

Level 2 (Marginally Successful):

While reports and other written work frequently meet the fully successful standard of accuracy, thoroughness and clarity, some reports are inaccurate, incomplete, or fail to adequately convey the matters being addressed. Occasionally written work is poorly organized or contain significant grammatical and spelling errors.

Occasionally fails to prepare adequate written documentation of actions taken on assignments as required by office policy.

Occasionally fails to meet established deadlines. Where there are no specific deadlines, fails to demonstrate a complete understanding of investigative priorities so that some written work is not completed in a reasonable time.

Misses or jeopardizes deadlines because written work occasionally needs revision and closer supervisory involvement than is expected of an investigator at this grade level due to significant substantive or stylistic problems.

[ SCORE ]

| Weight: 25 | Value: 5 | Score: 125 |
|---|---|---|

**Element #02 - Critical continued**

**Level 3 (Fully Successful):**

Prepares investigative reports and other written work which are accurate and thorough, and clearly communicate the matter being addressed. Generally prepares such work in an organized manner and essentially free from grammatical and spelling errors.

Generally assures that written documentation is sufficiently detailed and complete to justify actions taken on assignments and is consistent with office policy.

Generally prepares investigative reports and other written work within established deadlines and submits them to supervisors sufficiently in advance of those deadlines to allow a reasonable opportunity for review. Where no specific deadlines apply, prepares written work based on an understanding of investigative priorities and within a reasonable time frame.

Submits investigative reports and other written work for review by supervisors which generally do not require significant substantive or stylistic changes.

Level 4 (Excellent):

Prepares investigative reports and other written work which are almost always accurate and thorough and clearly communicate the matter being addressed. Almost always prepares such work in an organized manner and essentially free from grammatical and spelling errors. In addition, demonstrates an ability to produce a high quality written product addressing complex and unique investigative issues.

Written documentation is almost always sufficiently detailed and complete to fully justify actions taken on assignments and is consistent with office policy.

Meets almost all deadlines. Where no specific deadlines are established, demonstrates an ability to independently set priorities and prepare reports and other written work anticipating office demands.

Reports and other written work rarely require supervisory revision for significant substantive or stylistic errors.

Element #02 EPMS JOB ELEMENT (Continued)

[ PROGRESS REVIEW NARRATIVE ]

SA Lynn's performance has been completely satisfactory for this element with the exception of some overdue reports.

[ SUMMARY NARRATIVE ]

SA Lynn is a good report writer whose products are clear, accurate and thorough. Her work is sufficiently detailed and complete to justify her investigative actions. Her work shows her ability to produce a high quality written product which clearly addresses complex issues. She meets almost all deadlines and sets her own priroities were not exist. Her work products rarely require any supervisory revision. Her SIRS files are current and filled with reports and information.

| Element #03 | EPMS JOB ELEMENT | _X_Check if Critical |
|---|---|---|

[ DESCRIPTION ]

Knowledge of and Compliance with Applicable
Laws, Policies and Procedures

Develops, maintains and applies an accurate, current and complete knowledge of relevant laws, policies, procedures, to the conduct and reporting of investigations expected of a Federal criminal investigator at this grade level and complies with such laws, policies, and procedures in carrying out professional responsibilities. Is knowledgeable about and makes appropriate use of available technological resources to facilitate the conduct of investigations.

[ STANDARDS ]

PERFORMANCE STANDARDS

Level 2 (Marginally Successful):

Occasionally fails to keep currently informed of the laws, policies, and procedures necessary to the performance of his/her duties. Occasionally fails to understand and make use of the available technological resources. Requires closer supervisory involvement than is expected of an investigator at this grade level.

Occasionally fails to perform duties in accordance with applicable laws, policies and procedures. Occasionally makes errors in laws, policies, and procedures having a direct impact on successful case resolution. Matters having such impact include rules on evidence, warnings, consensual and nonconsensual monitoring, use of firearms, search and seizure.

Occasionally fails to assure that information is properly inputted into the Case Investigation Management System.

[ SCORE ]

| Weight: 20 | Value: 4 | Score: 80 |
|---|---|---|

Element #03 - Critical continued

Level 3 (Fully Successful):

Generally keeps currently informed of all laws, policies, and procedures necessary to the performance of his/her duties. Generally is knowledgeable of and makes appropriate use of the available technological resources. Consults with supervisors on the above matters as appropriate to this grade level.

Generally performs duties in accordance with applicable laws, policies and procedures. Only rarely are errors made in laws, policies, and procedures having a direct impact on successful case resolution. Matters having such impact include rules on evidence, warnings, consensual and nonconsensual monitoring, use of firearms, search and seizure.

Generally assures that information on investigations is properly inputted into the Case Investigation Management System.

Level 4 (Excellent):

Keeps currently informed of all laws, policies, and procedures necessary to the performance of his/her duties and demonstrates an in-depth knowledge of these materials such that he/she is consulted by others for guidance and advice. Is innovative in his/her use of the available technological resources. Consults supervisors on the above matters less frequently than expected of an investigator at this grade level.

Almost always performs duties in accordance with applicable laws, policies and procedures. No substantive errors are made in laws, policies, and procedures having a direct impact on successful case resolution. Matters having such impact include rules on evidence, warnings, consensual and nonconsensual monitoring, use of firearms, search and seizure.

Almost always assures that information on investigations is properly inputted into the Case Investigation Management System.

**Element #03** **EPMS JOB ELEMENT (Continued)**

**[ PROGRESS REVIEW NARRATIVE ]**

**SA Lynn's performance has been completely successful for this element. Her statistical accomplishments are good.**

[ SUMMARY NARRATIVE ]

SA Lynn keeps current on applicable laws, rules, regulations and procedures. Her CIMS data and information is timely and accurate. She has used the collection of trash as an extremely effective investigative tool. She contributed four **(4)** criminal and one **(1)** civil heatlh care convictions including **$245,740** in fines, savings, recoveries, restitutions and settlements. She has assisted on search warrant services.

**Element #04** | **EPMS JOB ELEMENT** | ___**Check if Critical**

[ DESCRIPTION ]

**Effectiveness in Dealing With Others**

**Coordinates activities with other law enforcement agencies and prosecutors. Coordinates activities as necessary with Federal, State and local agencies, outside entities and other components of this Department. Cooperates fully with supervisors and co-workers when necessary. Is professional and courteous with others.**

[ STANDARDS ]

PERFORMANCE STANDARDS

Level 2 (Marginally Successful):

Occasionally is ineffective at establishing and maintaining appropriate contacts in the law enforcement community.

Occasionally fails to establish appropriate liaison with other law enforcement agencies on investigative matters of joint interest.

Occasionally fails to adequately communicate with Federal, State and local attorneys assigned to prosecute matters within the jurisdiction of this organization.

Presents a less than positive image; is occasionally unresponsive to others outside the agency.

Occasionally fails to maintain a professional, cooperative and courteous attitude toward supervisors and co-workers.

[ SCORE ]

Weight: 15 | Value: 5 | Score: 75

Element #04 - Critical continued

Level 3 (Fully Successful):

Establishes and maintains appropriate contacts in the law enforcement community.

Acts as an effective liaison with other law enforcement agencies on investigative matters of joint interest.

Effectively communicates with Federal, State and local attorneys assigned to prosecute matters within the jurisdiction of this organization.

Presents a positive image and generally maintains a responsive attitude to others outside the agency.

Generally maintains a professional, cooperative and courteous attitude toward supervisors and co-workers.

Level 4 (Excellent):

Is highly effective in establishing and maintaining appropriate contacts in the law enforcement community.

Acts as a highly effective liaison with other law enforcement agencies on investigative matters of joint interest.

Is highly effective in communicating with Federal, State and local attorneys assigned to prosecute matters within the jurisdiction of this organization.

Presents a positive image such as to bring credit on the agency and is almost always responsive to others outside the agency.

Almost always maintains a professional, cooperative and courteous attitude toward supervisors and co-workers.

**Element #04** **EPMS JOB ELEMENT (Continued)**

**[ PROGRESS REVIEW NARRATIVE ]**

SA Lynn's performance has been completely satisfactory for this element.

**[ SUMMARY NARRATIVE ]**

SA Lynn has excellent rapport with many local, federal, and law enforcement agencies. She is very effective in establishing and maintaining appropriate contacts with law enforcement agencies. She presents a professional image for the OIG. She is always very cooperative and courteous with other agencies, the public, co-workers and the ARIGI.

Element #05 EPMS JOB ELEMENT ___Check if Critical

[ DESCRIPTION ]

Identifying Impact on Department Procedures
and Improving Controls

Identifies information uncovered in the course of investigations having management implications, analyzes that information, and prepares reports to improve the Department's ability to control fraud, waste and abuse.

[ STANDARDS ]

PERFORMANCE STANDARDS

Level 2 (Marginally Successful):

Occasionally fails to identify weaknesses or vulnerabilities in Department programs which should have been uncovered during the conduct of investigations.

Occasionally fails to properly analyze such information and make cogent recommendations for corrective action.

Requires more supervisory assistance than is expected of an investigator at this grade level to promptly complete reports of findings and recommendations to facilitate expeditious action on the reports.

Level 3 (Fully Successful):

Properly identifies weaknesses or vulnerabilities in Department programs uncovered during the conduct of routine and complex investigations.

Demonstrates an ability to properly analyze such information and make cogent recommendations for corrective action.

Promptly prepares and submits reports generally requiring supervisory input appropriate to this grade level setting out findings and recommendations to facilitate expeditious action on the reports.

[ SCORE ]

Weight: 15 Value: 2 Score: 30

**Element #05 - Critical continued**

**Level 4 (Excellent):**

Is highly effective in identifying weaknesses or vulnerabilities in Department programs uncovered during the conduct of more complex investigations.

Analysis and recommendations based on such information demonstrates a high level of knowledge, creativity, and innovation.

Prepares and submits reports requiring less supervisory input than is expected of an investigator at this grade level, facilitating expeditious action on the reports.

**Element #05** **EPMS JOB ELEMENT (Continued)**

**[ PROGRESS REVIEW NARRATIVE ]**

SA Lynn has not submitted an MIR or Fraud Alert; otherwise, her performance is completely satisfactory.

[ SUMMARY NARRATIVE ]

SA Lynn has not submitted an MIR or Fraud Alert for this element. She is effective in identifying weaknesses, but she has not formally initiated any written reports.

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN S. ADAMS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 90-162C and consolidated cases (Judge Bush) |

## DECLARATION OF HARRY MALDONADO

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct:

1. I began work as a criminal investigator, OPM Series 1811, with the Department of Health and Human Services ("HHS") in the Office of Investigations ("OI") within the Office of the Inspector General ("OIG") on May 21, 1989, as a GS-9. On June 17, 1990, I was promoted to GS-11. On September 20, 1992, I was promoted to GS-12.

2. I was a GS-12 with the HHS OIG OI until March 31, 1995, when I transferred to the Social Security Administration, where I continued to serve as an OPM

Series 1811 GS-12 criminal investigator until March 30, 1997, when I was promoted to GS-13.

3. I filed my case on August 18, 1995. I was treated by the agency as FLSA exempt. I regularly worked overtime for which I was not paid pursuant to FLSA.

4. At HHS OIG OI during the relevant time frame, I worked in the New York Regional Office.

5. During my tenure at HHS, the OIG consisted of three major entities, the OI, the Office of Audit ("OA"), which consisted of a much larger staff of auditors, and the Office of Evaluation and Inspections ("OEI"), which conducted evaluations of HHS programs. The OIG at HHS also had other divisions, such as the Office of General Counsel and the Special Investigative Unit, which were located in Washington DC.

6. I obtained the majority of my referrals from Social Security offices, but also received referrals from Medicare providers, criminal investigators in other agencies, including the FBI, Secret Service, INS, and state and local law enforcement, members of the public, HHS program recipients, other health care providers, developments from my or other agents' ongoing investigations and from other HHS program staff.

7. As an OPM series 1811 criminal investigator with HHS OIG OI, I was responsible for conducting criminal investigations of alleged or suspected criminal violations of Title 42, including sections 408 (Social Security Fraud), 1320a-7b (Medicare/Medicaid Fraud) and 1382a (Supplemental Security Income Fraud).

8. As an OPM series 1811 criminal investigator with HHS OIG OI, I was also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws of the United States relating to the programs and

operations of HHS. In this capacity, I was responsible for investigating alleged or suspected violations of general criminal statutes such as 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit).

9. If I believed a case was worthy of prosecution, I would first take it to the United States Attorney's Office ("USAO"). If the USAO was not interested in the case, I would sometimes take it to a state or local prosecutor.

10. The choice of which particular criminal statutes to apply in any individual case selected for prosecution was made by those state or federal prosecutors. Federal prosecutors often chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, false statements, false claims, and other criminal statutes of general applicability to the cases I brought to them as well as statutes governing Social Security and/or health care fraud in particular.

11. I was first issued a .38 caliber revolver by HHS, and I was later issued a 9 mm. semi-automatic pistol. I was regularly trained in the operation of these weapons and required to qualify in their use on a quarterly basis. I was also trained in defensive tactics quarterly.

12. During the relevant time period, I investigated fraud in various HHS programs, primarily Social Security and Medicare. In doing so, I usually worked with criminal investigators from other law enforcement agencies such as the FBI, INS, IRS,

Secret Service, other IG offices, state Medicaid fraud control units, and state and local police. These fraud investigations involved charges for medical services that were not provided or were not medically necessary, claims for Social Security benefits by beneficiaries who were not entitled to them or by persons other than the proper beneficiary, the creation and/or use of forged or stolen Social Security cards or numbers and many other types of fraud.

13. A copy of the HHS OIG OI Work Plan for fiscal years 1991 and 1992 is attached to this Declaration as Exhibit A. This Work Plan accurately describes many of the types of law enforcement projects and investigations undertaken by HHS OIG OI during the time period relevant to this case as well.

14. During the relevant time period, I performed the entire range of criminal investigative duties performed by criminal investigators for the federal government, from physically searching for evidence and interviewing subjects to drafting investigation reports and presenting cases to federal prosecutors. For example, I examined documents including invoices, books, records, computer printouts, contracts, financial instruments, and other data of consequence to the investigation. At times I conducted electronic monitoring and other covert surveillance and worked with confidential informants and undercover operatives. I executed search warrants and arrest warrants. I conducted interviews of witnesses and subjects, obtained signed and sworn statements, prepared interview reports and comprehensive investigative case reports. I assisted Federal prosecutors in the drafting of indictments, criminal informations, grand jury and trial subpoenas which I was also required to serve. I regularly testified as a government witness before grand juries and at trials.

15. I have read Position Descriptions 804 for GS-12 criminal investigators and 805 for GS-13 criminal investigators that were attached to the Declaration of Alcine Pike in this case, and I have read the Declaration of Michael Little. While these old and generic Position Descriptions describe a range of functions that a criminal investigator may perform at that grade, they do not describe by any means the duties actually performed at any time let alone on a day to day basis. They do accurately state that, at the higher grades, agents generally handle more complex investigations and with less supervision. Some of the functions I performed regularly, such as complex investigations, some I performed only on occasion and some not at all. For example, I rarely wrote Management Incident Reports (MIRs), and can specifically recall writing only two MIRS over the course of my career.

16. During my career as a criminal investigator with OI, I spent very little time investigating cases where the subject was an employee of HHS. I would estimate that I worked on 0-2 such cases per year.

Declaration Pursuant to 28 U.S.C. § 1746

I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: 3/15/07

Harry Maldonado

Harry Maldonado

# EXHIBIT A

# Office of Inspector General
# Office of Investigations
# Work Plan

## Fiscal Years 1991 and 1992




*U.S. Department of Health and Human Services*

# OFFICE OF INSPECTOR GENERAL

# OFFICE OF INVESTIGATIONS

# WORK PLAN

# FISCAL YEARS 1991 AND 1992

U.S. Department of

Health and Human Services

Richard P. Kusserow
Inspector General

Larry D. Morey
Deputy Inspector General
for Investigations

# FOREWORD

## Purpose

This document explains projects and initiatives developed by the Office of Investigations (OI) for implementation in Fiscal Years (FYs) 1991 and 1992. These projects and initiatives are designed to combat fraud, abuse, waste, misconduct and mismanagement in Department of Health and Human Services (HHS) programs and operations. The targets of investigation may be employees, contractors, grantees, medical providers, benefit recipients or others.

## Mission

The OI mission is carried out by a trained force of investigators assigned to field offices in Boston, New York, Philadelphia, Atlanta, Chicago, Dallas, Denver, San Francisco and Washington, D.C. There are also suboffices in many other major cities. The OI Headquarters staff works as a team with the field investigators in support of the overall effort. All investigative activities are carried out in accordance with Federal legal requirements and U.S. Department of Justice guidelines, and, when appropriate, are coordinated with other Federal, State and local law enforcement agencies.

## Initiating Investigations

The OI looks for trouble. That is, it aggressively develops and conducts projects to seek out targets for investigation. Activities investigated range from large-scale medical billing fraud, through counterfeiting Social Security number (SSN) cards, drug dealing, exploiting program beneficiaries, and scientific misconduct. These initiatives also identify systemic weaknesses and areas of program vulnerability which can be eliminated through corrective management action, legislation or other means. The corrective actions result in cost savings and improved efficiency throughout HHS. Participation with other agencies in task forces, and the conduct of complex computer matching operations, are additional strategies frequently employed by OI to effectively and economically deter fraud on a broad scale.

## Complaints From Others

Many investigations begin with the receipt of allegations or other information indicating violations of law, rules, or regulations. This information comes from many sources, including audits, referrals from other agencies, the public, Government employees, the Congress, and program recipients.

## Criminal and Civil Prosecution

Investigative results that establish criminal or civil violations of law are forwarded to the Department of Justice, so that criminal prosecution or other suitable action can be undertaken. Many cases result in the conviction, imprisonment and fining of offenders, including restitution of funds illegally obtained. Administrative actions based on the results of OI investigations are reviewed to ensure that proper measures are taken to correct problems and to prevent their recurrence.

## Administrative Sanctions

Imposition of administrative sanctions and civil monetary penalties against health care providers and practitioners, including exclusions from the Medicare, Medicaid and State health care programs, are also integral to the OI mission. Such sanctions and penalties may be imposed in addition to penalties flowing from criminal and/or civil prosecution.

## Project Execution - Who and When

The description of each project in this document is followed by information in parentheses that shows the OI office involved and when the project will be in effect.

The OI field offices (OIFOs) are identified by city of location; the OI Headquarters (HQ) components are identified by division, staff or unit name. Thereafter, the timing of the project is shown.

- "Ongoing FY 1991" means the project will be initiated in, or be carried forward into, that year.
- "Ongoing FY 1991 and FY 1992" means the same thing, but also reflects a judgment that the project will produce results warranting its continuation into FY 1992.
- The identification of a specific quarter, e.g., "fourth quarter FY 1991," represents a judgment that the project will be completed in that quarter.

Regardless of the currently-forecast timing of the investigative projects, each will be continued for as long as there is a high probability that wrongdoing will be uncovered, prosecuted, and deterred. Thus, just as a project described as "ongoing" might be terminated when the circumstances indicate this would be desirable, a project scheduled for completion as of a certain time might well be extended if some benefit would flow from continued attention to the problem addressed. These decisions are made by OI managers on a case-by-case basis.

# OFFICE OF INSPECTOR GENERAL

# OFFICE OF INVESTIGATIONS

# WORK PLAN

# FISCAL YEARS 1991 AND 1992

## CONTENTS


| | Page |
|---|---|
| FOREWORD | i |
| I. OVERVIEW | 1 |
| II. HEALTH CARE | 5 |
| - Hospitals | 9 |
| - Physicians | 10 |
| - Other Providers, Services and Equipment | 11 |
| - Laboratories | 14 |
| - Drugs | 14 |
| - Nursing and Care Facilities | 15 |
| - Medicaid Program | 15 |
| - Other Program and Management Issues | 17 |
| - Contractors | 19 |

# OFFICE OF INSPECTOR GENERAL

# OFFICE OF INVESTIGATIONS

# WORK PLAN

# FISCAL YEARS 1991 AND 1992

## CONTENTS


| | Page |
|---|---|
| III. SOCIAL SECURITY | 20 |
| - Social Security Number Issues | 24 |
| - Supplemental Security Income | 30 |
| - Cross-Cutting Program Issues | 30 |
| IV. GRANTS AND INTERNAL SYSTEMS | 32 |
| - Acquired Immune Deficiency Syndrome | 36 |
| - Biomedical Research | 36 |
| - Indian Health | 36 |
| - Food, Drugs and Devices | 38 |
| - Aid to Families With Dependent Children | 38 |
| - Additional Activities | 39 |
| V. INTERNAL MANAGEMENT | 40 |
| - Expanding and Advancing Computer Operations | 44 |
| - Policy Coordination and Instructions Improvements | 46 |
| - Training Supplementation | 47 |

# I - OVERVIEW

## Health Care Emphasis Once Again Leads 105 Projects

For FYs 1991 and 1992, OI has 105 projects in its work plan. Forty-four directly concern health care programs, and several others involve certain aspects of this area of continued significance. New measures to effectively and economically detect and deter fraud on a broad scale, and projects specifically designed to address fraud in scientific research and illegal joint ventures are also included.

## Criminal and Civil Penalties

The attack on all forms of fraud continues to involve vigorous criminal investigation and prosecution, as well as efforts to obtain restitution and deterrent publicity. It also includes continued development of, and education about, regulations and procedures for implementing authorities to impose administrative sanctions and civil monetary penalties against health care practitioners, providers and suppliers whose conduct warrants such actions.

## Social Security; AFDC; Grants

Although the number of health care investigative projects leads the rest, substantial emphasis is placed on other HHS programs and operations. Projects and initiatives for FYs 1991 and 1992 include operations to detect and prevent Social Security number (SSN) misuse, and fraud in Social Security and Family Support Administration programs. Attention will also be given to situations involving grants to facilities which are funded to provide day care and certain mental health services.

Revised guides on investigating Social Security programs will be published. The guides, first issued by OI in 1983 and 1984, provide a general understanding of how the programs are supposed to work, and how individuals attempt to defraud them. The revised guides will reflect changes in program coverage and policies, and the sections concerning investigative methods and techniques will be bolstered by investigative experience gained over the last few years.

## Exploitation

Some of OI's projects continue to focus on insidious practices which exploit sick and helpless people, such as providing poor-quality medical care or misusing their benefits. Others targeted again for investigation include individuals who illegally obtain and negotiate the Social Security checks of deceased persons.

## Cooperation; Education

The OI's commitment to a wide range of cooperative and educational efforts continues to grow and become more dynamic. Interaction with health care contractors, program administrators and others, in fighting waste, fraud, and abuse, has had positive effects and is one of the keys to future successes.

Building and maintaining strong new alliances, as well as strengthening previous affiliations with a variety of law enforcement, public and private entities, have also proven to be mutually beneficial. Review of projects and initiatives in this Work Plan will clearly show that OI will combine its forces with these elements in task force and other operations aimed at striking swiftly and surely at targets of investigation.

Innovative strategies for maximizing OI's investigative impact highlight many of the projects for FYs 1991 and 1992. For example, schemes designed to obtain money illegally, or to create false or fictitious identities for unlawful purposes, will be combated by conducting sophisticated computer matching operations.

## Prevention

As in previous years, the prevention of fraud and abuse will receive high priority in OI's work plan. Proactive efforts to identify weaknesses and vulnerabilities to fraudulent or abusive practices in HHS or other Governmental programs are integral parts of OI's methodology. In addition, OI will seek action to remedy the penetrability of programs and other problems caused by loopholes in administrative practices, policy, regulations or legislation.

## MIRs, MARs and Fraud Alerts

Three effective vehicles designed for prevention purposes are the Management Implication Report (MIR), the Management Advisory Report (MAR), and the Fraud Alert.

The MIR is an important byproduct of investigation. It is prepared typically by an investigator to alert OI Headquarters to conditions, discovered in the course of investigation, that allow program fraud or other wrongdoing to occur or to go undetected for long periods of time. The MIR is evaluated in OI Headquarters, and, when appropriate, is used to develop a MAR. The MAR is sent to the responsible program official, as an alert to the vulnerabilities or weaknesses disclosed by investigation. It also recommends corrective action to reduce or eliminate the problem.

Fraud Alerts are similar, but may warrant wider dissemination and produce more immediate effect. For example, they may be issued to the level where employees take claims face-to-face from people in an area where a particular type of false document is being submitted as proof of some eligibility factor.

## Internal Controls

The OI also adheres to the provisions of the Federal Managers' Financial Integrity Act (FMFIA), which sets forth criteria for determining if material weaknesses exist in an agency's administration or in its approach to mission accomplishment. Through an internal control review process consistent with FMFIA requirements, the OI is able to effectively identify and subsequently correct any material weaknesses.

## Internal Improvements

The OI Work Plan for FYs 1991 and 1992 acknowledges the need for internal improvements, and clearly reflects a commitment at the Headquarters level to develop and augment ways and means of accomplishing the OI mission.

## Systems

Enhanced computerized systems and streamlined data collection methods are in place or being developed. These will serve management as the primary tools for tracking individual cases, managing regional and national workloads, and producing statistical reports. Also, a project to develop the ability to link up with and access national data bases containing useful information for fraud detection and prevention, and to thus improve overall effectiveness, is under way.

## Instructions

Efforts are being made to put the entire OI Special Agent Handbook (SAH) and Administrative Manual (AM) in a computer data base accessible to all users. Consideration will be given to establishing the computerized versions as the official operational texts. A computerized superindex of key words appearing in the SAH, AM, and other OI instructions is also planned.

## Training

The OI Work Plan also recognizes the need for professional staff to develop and broaden their educational horizons, and to sharpen skills previously acquired. Basic and in-service training plans designed for entry-level and experienced employees, and for managers, are being developed and executed continuously.

# II - HEALTH CARE

## Proactive Projects and Initiatives

Included in the health care segment of OI's Work Plan for FYs 1991 and 1992 are 44 proactive projects or initiatives.

## Penalties Sought

Individual cases stemming from these efforts will be considered from criminal and civil prosecutive standpoints. After that, administrative sanctions against offenders may be sought; and civil monetary penalties (CMPs) will also be imposed where appropriate. Thus, in an egregious case, a health care provider could be imprisoned, fined, sued civilly, thrown out of the program and forced to make restitution and pay other penalties.

## Project Index and Descriptions

Following is an index of the projects and initiatives that will produce cases suitable for some or all of the measures described above. They are loosely grouped by areas of interest, as highlighted below. Descriptions of each follow the index.

*Areas of Interest*

o *Hospitals*

o *Physicians*

o *Other Providers, Services and Equipment*

o *Laboratories*

o *Drugs*

o *Nursing and Care Facilities*

o *Medicaid Program*

o *Other Program and Management Issues*

o *Contractors*

# Index

Page

## Hospitals

Enforcement of Anti-Dumping Law .................................... 9
Hospital Inpatient and Outpatient Credit Balances .......................... 9
Tax Exempt Hospital Oversight .......................................... 9
Quality of Care by California Hospital Chain ............................ 9
Diagnosis Upgrading for Higher Reimbursement ............................ 10

## Physicians

Physician Referrals: Laboratories Undercover Project ...................... 10
Physician Referrals: Civil Kickback Recoveries ........................... 10
Physician-Chiropractor Billing Arrangements .............................. 10
Physician Groups: Emergency Room Services ............................... 11
Podiatrists: Billing for Services Not Rendered ........................... 11
Ophthalmologists: Charges for Removal of Eye Sutures ...................... 11

## Other Providers, Services and Equipment

Opticians: False Billings to Medicare .................................. 11
Ambulance Services: Billing for Free Items .............................. 12
Durable Medical Equipment: Kickbacks and Billings ........................ 12
Durable Medical Equipment: Tele-Marketing ................................ 12
Provider Fraud: Task Force Approach ..................................... 12
Provider Fraud: Microcomputers in Investigations ......................... 13
Utah Health Care Anti-Fraud Council ...................................... 13
Home Infusion Companies: Kickbacks ...................................... 13
Combating Illegal Joint Ventures in Southern California .................. 13

## Laboratories

Laboratories: Kickbacks and False Billings .............................. 14
Laboratories: Kickbacks for Holter Monitoring ............................ 14

Page

## Drugs

Pharmacies: Generic Substitutions . . . . . 14
Pharmacies: Overbilling to Medicaid - Texas . . . . . 14
Pharmacies: False Claims . . . . . 15
Pharmacies: Medicaid Fraud Projects - Atlanta Region . . . . . 15

## Nursing and Care Facilities

Nursing Homes: Billing of Leave Days . . . . . 15

## Medicaid Program

Medicaid: Administrative Exclusions . . . . . 15
Medicaid: Sanctions Case Referrals . . . . . 16
Medicaid: Recertification Reviews of MFCUs . . . . . 16
Medicaid: State Share of Penalty Collections . . . . . 16
Medicaid: Civil False Claims . . . . . 16

## Other Program and Management Issues

Medicare: Secondary Payer Reviews . . . . . 17
Medicare: Private Insurance Fraud Initiative . . . . . 17
Qui Tam Provision of the False Claims Act . . . . . 17
Administrative Sanction Data: Referrals to OIG . . . . . 18
Administrative Sanction Authority: Full Utilization . . . . . 18
Anti-Kickback Regulation Implementation . . . . . 18
Program Fraud Civil Remedies Act--Full Implementation . . . . . 18
Medicare: Civil False Claims . . . . . 19
Default on Health Education Loans . . . . . 19

## Contractors

Medicare Contractors: Knowledge of CMP Authorities . . . . . 19
Medicare Carriers: Case Referrals to OIG . . . . . 19
Medicare Carriers: Program Integrity Responsibilities . . . . . 19

# Project Descriptions

## *HOSPITALS*

### *ENFORCEMENT OF ANTI-DUMPING LAW*

This project will ensure that participating hospitals and physicians who knowingly deny emergency treatment to individuals (i.e., who improperly transfer a patient who is in active labor or who is medically unstable) are appropriately subjected to civil monetary penalties (CMPs) and sanctions. These practices of patient dumping are investigated, and CMPs are sought in appropriate cases. (Dallas OIFO - ongoing FY 1991)

### *HOSPITAL INPATIENT AND OUTPATIENT CREDIT BALANCES*

The OIG, in conjunction with the Health Care Financing Administration (HCFA) and the Massachusetts Medicaid Fraud Control Unit (MFCU), is taking action against hospitals that have received duplicate payments as a result of duplicate billings and have not returned these payments. Investigation by OIG and the MFCU has identified 15 hospitals suspected of submitting such false billings. Civil monetary penalties and reimbursement will be sought in appropriate cases. (Boston OIFO - ongoing FY 1991 and FY 1992)

### *TAX EXEMPT HOSPITAL OVERSIGHT*

This national project will identify health care providers and others who violate the anti-kickback statute or the Internal Revenue Code governing nonprofit entities. The OIG will work closely with the Internal Revenue Service to develop strategies for conducting these investigations. As a result of this project, controls will be tightened regarding entities with tax exemptions that pay kickbacks from their earnings to providers who refer patients to them. (Criminal Investigations Division, HQ - ongoing FY 1991 and FY 1992)

### *QUALITY OF CARE BY CALIFORNIA HOSPITAL CHAIN*

This investigation will determine the validity of allegations of poor medical care and slacking of standards made against several hospitals of a medium-size hospital chain in California. If appropriate, criminal and administrative sanctions will be sought. (San Francisco OIFO - first quarter FY 1991)

*DIAGNOSIS UPGRADING FOR HIGHER REIMBURSEMENT*

This project will obtain convictions of and restitution and/or monetary penalties from hospitals which falsely upgrade diagnoses to obtain a higher reimbursement from Medicare. Claims involving diagnosis-related groups for which two billing codes exist and for which a substantially higher percentage of the bills is coded at the higher reimbursement rate (indicating the same procedure but with complications) will be selected and compared to other diagnosis records for the patient. Hospitals which show a pattern of diagnosis-related groups which are not supported by diagnosis records will be investigated. (Atlanta OIFO - ongoing FY 1991 and FY 1992)

## *PHYSICIANS*

*PHYSICIAN REFERRALS: LABORATORIES UNDERCOVER PROJECT*

This project identifies physicians who receive kickbacks from laboratories. The first stage identifies physicians demanding kickbacks and laboratories paying the kickbacks. The second stage investigates and prosecutes physicians who accept kickbacks from ancillary service providers, such as laboratories, home health care providers, physical therapists, laboratories, ambulance services and medical equipment companies. The project is being coordinated with the FBI and the California Department of Justice. (San Francisco OIFO - ongoing FY 1991)

*PHYSICIAN REFERRALS: CIVIL KICKBACK RECOVERIES*

This continuing project will obtain civil recoveries from and penalties against physicians who accepted payments from laboratories for referring Medicare beneficiaries for testing. Civil demand letters have been mailed to hundreds of physicians, and hundreds of thousands of dollars have been received and credited to the Medicare trust fund. (Philadelphia OIFO - ongoing FY 1991 and FY 1992)

*PHYSICIAN-CHIROPRACTOR BILLING ARRANGEMENTS*

This project will assess civil monetary penalties against physicians and chiropractors who have submitted false claims in an attempt to circumvent Medicare program limitations on payment for services rendered or ordered by chiropractors. Evidence suggests that some chiropractors have entered into arrangements with medical doctors wherein the services (x-rays, physical therapy, etc.) ordered by the chiropractor are billed to Medicare as if ordered by the medical doctor. These cases are investigated by making computer matches of dates of service by both medical doctors and chiropractors, and then determining through interviews and review of medical records whether services were actually ordered by the chiropractor. (Atlanta OIFO - ongoing FY 1991 and FY 1992)

*PHYSICIAN GROUPS: EMERGENCY ROOM SERVICES*

This project will determine if emergency room physician groups under contract with teaching hospitals improperly billed Medicare for services rendered by hospital residents. Such groups receive payment from hospitals for teaching and supervising hospital residents and interns. The costs are paid by Medicare Part A. Group members are not customarily considered to be the attending physicians of patients cared for by hospital residents and interns. Consequently, Part B claims for services performed by residents and interns should not be submitted to the Medicare carrier by the supervising emergency room physician or by the hospital. Civil remedies, including overpayment recovery and monetary penalties, will be sought in appropriate cases. (Boston OIFO - ongoing FY 1991 and FY 1992)

*PODIATRISTS: BILLING FOR SERVICES NOT RENDERED*

The objective of this project is to obtain convictions of and restitution from podiatrists who bill the Medicare program for services not rendered. The Medicare program reimburses podiatrists for certain covered services. Some podiatrists perform toenail trimming services (a noncovered service), primarily for senior citizens and nursing home patients, but bill for covered services not actually performed. Suitable cases are presented for prosecution and/or civil litigation. (Chicago OIFO - ongoing FY 1991)

*OPHTHALMOLOGISTS: CHARGES FOR REMOVAL OF EYE SUTURES*

This project will identify ophthalmologists who may be billing the Medicare program for corneal foreign body removal when actually removing surgical sutures they had previously implanted. The project is being coordinated with the Medicare carrier. (San Francisco OIFO - ongoing FY 1991)

*OTHER PROVIDERS, SERVICES AND EQUIPMENT*

*OPTICIANS: FALSE BILLINGS TO MEDICARE*

The objectives of this project are to obtain convictions of and restitution from opticians defrauding the Medicare program and to exclude them from participation in the program. Indications are that certain opticians are submitting claims to Medicare for reimbursement for eyeglasses supplied to Medicare beneficiaries who had no prior history of cataract surgery. No Medicare payment can be made for glasses unless they are prescribed as a result of prior cataract surgery. The project targets opticians who only fill prescriptions, accept assignment of Medicare payments, submit a large number of claims, and show substantial earnings. (New York OIFO - ongoing FY 1991)

*AMBULANCE SERVICES: BILLING FOR FREE ITEMS*
The objective of this project is to prosecute ambulance companies civilly and/or criminally if evidence shows they billed for items and services provided free of charge by others. In many areas, emergency medical aid is provided free of charge by fire departments, while the transporting of patients is done by private, for-profit ambulance companies. This project will identify situations where a fire department supplies items such as oxygen and heart monitoring equipment free of charge, yet the ambulance company bills Medicare for them. (Chicago OIFO - ongoing FY 1991)

*DURABLE MEDICAL EQUIPMENT: KICKBACKS AND BILLINGS*
The objective of this project is to obtain criminal and civil convictions and bring administrative sanctions against durable medical equipment suppliers who are involved in kickback schemes and false billings to the Medicare and Medicaid programs. Several cases have been developed which involve durable medical equipment suppliers who pay kickbacks to physicians for the referral of patients for medical equipment. These suppliers falsely bill the Medicare and Medicaid programs for equipment that was not provided or falsify diagnoses on physician authorization forms. By falsifying the diagnosis, the supplier is assured payment of Medicare and Medicaid claims. These cases are being worked jointly with the FBI. (New York OIFO - ongoing FY 1991)

*DURABLE MEDICAL EQUIPMENT: TELE-MARKETING*
The objective of this project is to obtain criminal and civil convictions and bring administrative sanctions against durable medical equipment suppliers who use aggressive tele-marketing techniques in order to bill for durable medical equipment that is medically unnecessary. Several companies have been targeted. One case has resulted in a civil action against a major supplier, freezing $500,000 of its assets. (Philadelphia OIFO - ongoing FY 1991)

*PROVIDER FRAUD: TASK FORCE APPROACH*
A major objective of OIG's investigation and enforcement functions is to obtain criminal convictions and restitution from health care providers and suppliers who commit fraud against Medicare, Medicaid and other health care programs. Another objective is to stop them from doing business with the Government. To facilitate these objectives, the OIG is participating in a number of health care fraud task forces nationwide. Members of the task forces, along with the OIG, include the FBI; the U.S. Postal Inspection Service; State Medicaid Fraud Control Units; the Drug Enforcement Administration; the U.S. Department of Labor OIG; representatives of U.S. Attorneys' offices; the Internal Revenue Service; insurance companies; and various other agencies. The task force approach aids in assessing the scope of potential frauds and in determining the resources needed to investigate the allegations. Task force meetings are held to discuss investigative targets, allegations against them, possible investigative strategies and potential defense tactics. (Dallas, Denver, Philadelphia OIFOs - ongoing FY 1991 and FY 1992)

*PROVIDER FRAUD: MICROCOMPUTERS IN INVESTIGATIONS*

This project will develop and refine microcomputer technology to target and investigate Medicare and Medicaid providers for fraud and abuse. This project focuses on numerous provider types and several health care program areas. It seeks out aberrant patterns of Medicare and Medicaid billing practices by providers. The computer applications are also designed to speed the OIG investigative process itself. Suitable cases arising from this process are presented for prosecution. (Denver OIFO - ongoing FY 1991)

*UTAH HEALTH CARE ANTI-FRAUD COUNCIL*

This council was established and is maintained as a forum in which State and Federal agencies can identify and take appropriate legal and/or administrative action against medical providers who are abusing or defrauding the Medicare/Medicaid programs. A secondary objective of OIG participation is the continuing education of the State's regulatory and investigative agencies as to the criminal and civil liabilities of providers who abuse the health care programs. (Denver OIFO - ongoing FY 1991 and FY 1992)

*HOME INFUSION COMPANIES: KICKBACKS*

This project will identify and investigate home infusion companies and their referral sources (hospitals, physicians, home health agencies, etc.) who participate in contractual arrangements which disguise kickbacks as fees for service. Home infusion companies depend principally on physicians and hospitals for referrals. In view of the tremendous profits that are being earned, the competition among home infusion companies has involved offering a variety of incentives and/or inducements for the referral of patients. While these inducements are commonly described as contract service agreements, or fee for service agreements, and are covered by written contracts, they provide, in essence, that payments be made by home infusion companies to referral sources for the referral of patients. (Denver OIFO - ongoing FY 1991 and FY 1992)

*COMBATING ILLEGAL JOINT VENTURES IN SOUTHERN CALIFORNIA*

The objective of this project is to investigate joint ventures that violate the Medicare anti-kickback statute in the Southern California area, in which the OIG has received over 150 complaints. To date, over 50 providers have been served with a subpoena for documents. It is anticipated that the review of these documents will reveal joint ventures that will be pursued for criminal prosecution and/or administrative sanctions. (San Francisco OIFO - ongoing FY 1991)

## *LABORATORIES*

### *LABORATORIES: KICKBACKS AND FALSE BILLINGS*

This project will pursue leads indicating laboratories are engaging in kickbacks and false billing schemes. Cases of this type will be developed for criminal, civil and administrative action through the use of cooperating witnesses. These witnesses, through meetings with the subjects of the investigations, will help secure incriminating information regarding schemes to defraud the Medicare and Medicaid programs. The investigations are being coordinated with the FBI. (New York OIFO - ongoing FY 1991)

### *LABORATORIES: KICKBACKS FOR HOLTER MONITORING*

This project will identify and investigate laboratories that falsely overcharge Medicare a service fee for Holter monitoring in order to subsidize a kickback to referring physicians. Holter devices provide cardiac activity data on patients. This project involves cooperation with the carrier and the Massachusetts U.S. Attorney's office. (Boston OIFO - ongoing FY 1991 and FY 1992)

## *DRUGS*

### *PHARMACIES: GENERIC SUBSTITUTIONS*

The objective of this project is to obtain convictions of and restitution from pharmacists who falsely bill the Medicaid program for prescription drugs which they do not provide. Medicaid is a shared Federal/State program to provide cost-free medical service to the needy. Prescription drugs are a covered service. Some pharmacists dispense sample drugs labeled "not for resale," unlawfully fill or refill forged prescriptions, and substitute generic drugs for brand name drugs although they bill the Medicaid program for the more costly brand name products. (Chicago OIFO - ongoing FY 1991)

### *PHARMACIES: OVERBILLING TO MEDICAID - TEXAS*

The objective of this project is to identify and prosecute pharmacists and/or owners of pharmacies who engage in the practice of fraudulent billings to the Medicaid program for prescriptions. Such cases are investigated by making a cash purchase of a pharmaceutical and then making a Medicaid purchase of the same pharmaceutical. The cash purchases are then compared to the Medicaid purchases to establish whether the billing reports accurately reflect a specific drug purchased and to determine if additional billings are submitted for which there are no purchases. Suitable cases are presented for prosecution. (Dallas OIFO - ongoing FY 1991)

*PHARMACIES: FALSE CLAIMS*
The objective of this project is to obtain convictions of and restitution or civil monetary penalty settlements from pharmacists who file false claims. Medicaid pharmacy providers will be matched with State MFCU complaints and records of ongoing investigations, to identify targets for joint investigative efforts. Such cases will be investigated by obtaining carrier and pharmacy records and by interviewing beneficiaries, prescribing physicians and other witnesses who have knowledge of the billing practices of the pharmacy. (Atlanta OIFO - ongoing FY 1991 and FY 1992)

*PHARMACIES: MEDICAID FRAUD PROJECTS - ATLANTA REGION*
The objective is to investigate and obtain convictions of and restitution from pharmacies, pharmacists and other individuals committing fraud and other criminal and/or administrative violations involving the Medicaid program. Civil monetary penalties will also be imposed in appropriate cases. Suspected violations include, but are not limited to, fraudulent overbillings for prescriptions; illegal dispensing and fraudulent billing of "sample" drugs labeled "not for resale"; billing Medicaid at a higher cost than the general public is charged; shorting the number of pills dispensed; and billing for brand name drugs when generics were actually dispensed. Investigation of such violations is coordinated as appropriate with State Medicaid Fraud Control Units and other agencies. (Atlanta OIFO - ongoing FY 1991 and FY 1992)

## *NURSING AND CARE FACILITIES*

*NURSING HOMES: BILLING OF LEAVE DAYS*
This project will identify and result in appropriate action against nursing home providers that did not report, or underreported, leave days. Nursing home residents in Louisiana are allowed a maximum number of hospital leave days and home leave days. The nursing home cannot bill Medicaid for leave days in excess of the maximum. (Dallas OIFO - fourth quarter FY 1991)

## *MEDICAID PROGRAM*

*MEDICAID: ADMINISTRATIVE EXCLUSIONS*
This project will ensure that administrative exclusion actions under the law are taken as appropriate. Through written requests to all MFCUs, health care licensing boards and Federal and State health care licensing programs in the region, the OIG receives information about health care provider convictions and/or license revocations, suspensions and surrenders. Once received, the information is reviewed and an administrative exclusion from health care program participation is sought if warranted. (Dallas OIFO - ongoing FY 1991)