### *MEDICAID: SANCTIONS CASE REFERRALS*

The objective of this project in the New York region is to increase the numbers and quality of sanctions referrals from Medicaid State agencies. Enactment of P.L. 100-93 greatly increased the authority under which the OIG can exclude individuals and entities from reimbursement by the Medicaid program. The OIG can now exclude an individual or entity suspended or excluded from participation, or otherwise sanctioned by a State health care program, for reasons bearing on the individual or entity's professional competence, performance or financial integrity. State Medicaid agencies will be reminded or made aware of this new authority and will be encouraged to refer such violations to the OIG. Agency reporting and feedback systems will also be established. (New York OIFO - ongoing FY 1991)

### *MEDICAID: RECERTIFICATION REVIEWS OF MFCUs*

This project will determine the effectiveness and efficiency of the State Medicaid Fraud Control Units (MFCUs). There are currently 38 MFCUs nationwide which are responsible for investigating and prosecuting fraud in the Medicaid program. Approximately 19 MFCUs will be visited each fiscal year to conduct these recertification reviews. (State Fraud Branch, HQ - ongoing FY 1991 and FY 1992)

### *MEDICAID: STATE SHARE OF PENALTY COLLECTIONS*

Pursuant to an amendment of the civil monetary penalties law, States are entitled to share in any penalties collected when overpayments relating to the Medicaid program are involved. This affects 38 State Medicaid Fraud Control Units and Single State Agencies. The OIG is putting particular emphasis on the States' collection of overpayments and is working with HCFA to ensure that information on collections is disseminated to the appropriate parties and that the State financial shares are properly allocated. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991 and FY 1992)

### *MEDICAID: CIVIL FALSE CLAIMS*

The objective of this project is successful litigation against all individuals and entities which violate the civil False Claims Act by falsely billing the Medicaid program, including (1) providers criminally convicted by State or local agencies; (2) providers against which criminal prosecution was declined; and (3) providers against which a combined criminal/civil investigative approach is most appropriate. Suitable cases are presented for civil litigation. Such cases will produce substantial civil settlements and damages above any recoveries from criminal prosecutive actions. (Chicago OIFO - ongoing FY 1991)

## *OTHER PROGRAM AND MANAGEMENT ISSUES*

### *MEDICARE: SECONDARY PAYER REVIEWS*

This series of reviews will determine whether the Medicare secondary payer (MSP) provisions relative to the working aged have been implemented, to avoid Medicare overpayments and to properly direct the claim to the appropriate insurance company for processing. Under 42 U.S.C. 1395y(b)(3), Medicare is required to be the secondary payer to employer-sponsored group health plans in those instances where medical services are rendered to Medicare-entitled employed individuals and/or their spouses. The OIG has indications that some companies have not been complying with these requirements. The OIG will conduct reviews at selected insurance companies and fiscal intermediaries, to determine if they are complying with the MSP provisions and to identify the extent of any inappropriate payments made by the Medicare program. The OIG will also use HCFA and SSA records to identify inappropriate Medicare payments. This project is being steered by an OIG-wide task force headed by the Principal Deputy Inspector General. Participants include all components of the OIG. (Criminal Investigations Division, HQ, has OI lead - ongoing FY 1991 and FY 1992)

### *MEDICARE: PRIVATE INSURANCE FRAUD INITIATIVE*

This project will combine resources of private insurance companies with those of the OIG to identify and prosecute violators of public and private health insurance programs. Health care providers that defraud the Medicare program may at the same time defraud private insurance carriers. In the past, such cases would be investigated separately. This project combines investigations by various private insurance companies with OIG investigations. Suitable cases are presented for prosecution. (Philadelphia OIFO - ongoing FY 1991 and FY 1992)

### *QUI TAM PROVISION OF THE FALSE CLAIMS ACT*

The qui tam provision allows persons having knowledge of a false claim against the Government to bring an action in a Federal District Court for themselves on behalf of the United States Government. Any person who files a qui tam suit on behalf of the Government will share a percentage of the recovery realized from a successful action. The OIG will continue to work closely with the Department of Justice in analyzing qui tam complaints involving HHS issues, so that a determination can be made as to whether Government intervention is appropriate. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991 and FY 1992)

*ADMINISTRATIVE SANCTION DATA: REFERRALS TO OIG*
This project will assure that OIG receives all the information necessary for exercise of the health care administrative sanction authorities contained in Public Law 100-93. This law provided new sanction authorities based on specific information received from State and local authorities. Experience to date shows an uneven flow of such information to the OIG, and in some areas no submissions at all. The OIG will identify those State and local authorities which are not furnishing the needed information. Contact will then be made with those authorities to determine the reasons for their failure to refer the necessary information and to advise them of their responsibilities to do so. (Civil and Administrative Remedies Division, HQ - second quarter FY 1991)

*ADMINISTRATIVE SANCTION AUTHORITY: FULL UTILIZATION*
This project will assure that all health care administrative sanction authorities are being utilized. A sample review of nonprosecuted closed criminal cases disclosed that several should have been further developed for administrative sanction or civil monetary penalty purposes. The OIG will determine the full extent of the problem and conduct remedial training to assure that all authorities available to OIG are used in all appropriate cases. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991)

*ANTI-KICKBACK REGULATION IMPLEMENTATION*
This project will assure that anti-kickback "safe harbor" regulations are fully disseminated to all appropriate persons. These regulations, implementing section 1128(b)(7) of the Social Security Act, will identify situations which would not be considered kickbacks potentially warranting civil prosecution or administrative sanction. The lack of clarification as to what types of business arrangements may constitute a potential violation of the law has been a long-standing problem. Upon publication of the final regulations, the OIG plans to explain the substance of the provisions and the consequences of not adhering to them. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991)

*PROGRAM FRAUD CIVIL REMEDIES ACT--FULL IMPLEMENTATION*
This project will assure that OI field offices are fully informed on the provisions of the Program Fraud Civil Remedies Act, including the evidentiary requirements and the referral procedures, to ensure that cases are referred to the Office of the General Counsel in a timely fashion and are complete from OIG's perspective. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991)

### *MEDICARE: CIVIL FALSE CLAIMS*

The objective of this project is successful litigation against all individuals and entities which violate the civil False Claims Act by falsely billing the Medicare program, including (1) providers criminally convicted by State or local agencies; (2) providers against which criminal prosecution was declined; and (3) providers against which a combined criminal/civil investigative approach is most appropriate. Suitable cases are presented for civil litigation. Such cases will produce substantial civil settlements and damages above any recoveries from criminal prosecutive actions. (Chicago OIFO - ongoing FY 1991)

### *DEFAULT ON HEALTH EDUCATION LOANS*

This Colorado project will obtain restitution from or exclusion of health care providers who have defaulted or failed to repay scholarship obligations or loans in connection with health care professions. Cases will be identified through cross-checking of records. This effort will involve the cooperation of the Medicare carrier, the Department of Education's Office of Inspector General, and the Colorado Guaranteed Student Loan Program. (Denver OIFO - ongoing FY 1991)

## <u>*CONTRACTORS*</u>

### *MEDICARE CONTRACTORS: KNOWLEDGE OF CMP AUTHORITIES*

The OIG will make the Medicare contractors and MFCUs in the Dallas region aware of the full range of cases which can be handled under CMP authorities. This will be done through training sessions, telephone contacts and written requests. Cases will be evaluated to determine the applicability of any of the CMP authorities, and penalties will be imposed as appropriate. (Dallas OIFO - ongoing FY 1991)

### *MEDICARE CARRIERS: CASE REFERRALS TO OIG*

The objective of this project is to enhance the quality of referrals, for both criminal and administrative sanctions, to OIG; and to improve the efficiency of case development work performed by the carriers. This will be done by conducting periodic meetings with carrier staff and HCFA regional office staff, to provide ongoing case development training, communication and feedback on cases. Much of this work will involve on-site visits to carriers. Specific emphasis will be placed on the program integrity and medical review operation of the carriers. (New York OIFO - ongoing FY 1991)

### *MEDICARE CARRIERS: PROGRAM INTEGRITY RESPONSIBILITIES*

The OIG will participate in all Medicare carrier meetings sponsored by HCFA, as well as make periodic visits to Medicare carriers, to discuss the carriers' responsibilities for referring cases for possible CMP action. During on-site visits to the carriers, OIG staff will meet with case processing and program integrity personnel. Individual cases with identified overpayments will be reviewed to assess the potential for CMP action. (Civil and Administrative Remedies Division, HQ - ongoing FY 1991)

# III - SOCIAL SECURITY

## Proactive Strategy

For FYs 1991 and 1992, OI's strategy for fighting fraud, abuse and waste in Social Security programs and operations continues to be intensively proactive. The approach is simple and straightforward: Programs, activities and functions are reviewed and analyzed to identify and isolate areas considered most vulnerable. Investigative plans are then developed and implemented, and appropriate actions are taken against the violators. Experience with individual cases disclosed through implementation of the investigative plans is used as the basis for corrective action recommendations to program managers, to minimize the opportunities for fraud. The work plan contains 32 Social Security projects.

## The Plan

The OI's Work Plan for Social Security investigations continues its focus on two basic areas:

- Social Security number (SSN) fraud; and
- Benefit fraud in order to:
  - Stop incorrect payments.
  - Obtain convictions, recover incorrect payments, and deter fraud.

## Elements of the Plan

Following is an index of the projects and initiatives which represent the key elements of the plan. They are grouped by broad area of interest, as highlighted below. Descriptions of each project or initiative follow the index.

### *Areas of Interest*

- *Social Security Number Issues*
- *Supplemental Security Income*
- *Cross-Cutting Program Issues*

# Index

## Social Security Number Issues

Page

False SSNs and Identities of Deceased Citizens to Obtain Visas and Passports ...... 24
False SSNs Used by Aliens for Various Financial Purposes .................... 24
False SSNs to Defraud the State of Massachusetts .......................... 24
False SSNs to Obtain Bank Loans ........................................ 24
False SSNs Used in Labor Union Embezzlement ............................. 25
False SSNs Used in Money Laundering ..................................... 25
False SSNs to Obtain Unemployment Compensation .......................... 25
False SSNs Used by Outlaw Motorcycle Gangs ............................... 25
False SSNs in Firearms Applications ...................................... 26
False SSNs to Defraud Banks: Mail Box Drop Services ........................ 26
False SSNs to Obtain Credit Cards--Banks ................................. 26
False SSNs to Obtain Food Stamps ........................................ 26
False SSNs to Move Stolen Items .......................................... 26
False SSNs to Obtain Airline Tickets, Credit Cards ........................... 27
False SSNs in Insurance Fraud ............................................ 27
False SSNs to Conceal Employment and Get Welfare Benefits ................... 27
False SSNs in Colorado Guaranteed Student Loan Program ..................... 27
Misuse of SSN Cards .................................................... 27
Misuse of SSN Cards: Aliens .............................................. 28
Misuse of SSNs - Arkansas ............................................... 28
SSN Misuse: Drug Deals and Credit Scams .................................. 28
SSN Misuse: Identification and Documentation .............................. 28
Combating SSN Misuse for Financial Gain in San Diego ....................... 28
Misuse of SSNs - Counterfeiting and Sale of Social Security Cards .............. 29
Counterfeit Identification Involving SSNs and SSA Employees .................. 29
SSN Counterfeiting: Postal Inspection Task Force ............................ 29
False Credit Card Application Project ...................................... 29

## Supplemental Security Income

Unreported Employment Income, Representative Payee Misuse, and Concealing Assets 30

## Cross-Cutting Program Issues

Benefit Payments to Incarcerated Individuals ............................... 30
Illegal Payments to Residents of Mexico ................................... 30
Checks Cashed After Beneficiary's Death .................................. 30
State Death Match Project ............................................... 31

# Project Descriptions

## *SOCIAL SECURITY NUMBER ISSUES*

### *FALSE SSNs AND IDENTITIES OF DECEASED CITIZENS TO OBTAIN VISAS AND PASSPORTS*

This project identifies and obtains criminal convictions of individuals who apply for United States visas and passports using false identification, including bogus SSNs and the identities of deceased U.S. citizens. The project is being coordinated with the U.S. Department of State and has resulted in the conviction of illegal aliens for the sale of counterfeited SSN cards. (Washington OIFO - ongoing FY 1991 and FY 1992)

### *FALSE SSNs USED BY ALIENS FOR VARIOUS FINANCIAL PURPOSES*

This project detects SSN fraud by aliens in the Washington, D.C. metropolitan area who are using the SSNs, names, and financial/credit histories of other people. The schemes include the fraudulent application for and use of bank credit cards obtained by submitting either false information or the legitimate credit report of another individual. These efforts involve cooperation with various other law enforcement agencies. Suitable cases are presented for prosecution. (Washington OIFO - ongoing FY 1991 and FY 1992)

### *FALSE SSNs TO DEFRAUD THE STATE OF MASSACHUSETTS*

This project obtains criminal convictions of transients who are defrauding the Massachusetts State welfare program and possibly the Supplemental Security Income (SSI) program administered by the Social Security Administration (SSA). The perpetrators create various identities and collect benefits under these identities. The project involves matching names, dates of birth, and SSNs used on State welfare forms against SSA's SSN and SSI records. Cases meeting established guidelines are presented for prosecution. (Boston OIFO - ongoing FY 1991 and FY 1992)

### *FALSE SSNs TO OBTAIN BANK LOANS*

This project in New Jersey and Puerto Rico obtains convictions of and restitution from individuals who illegally obtain bank loans by using false SSNs. Agents develop these cases in cooperation with bank officials and the FBI. Suitable cases are presented for prosecution. (New York OIFO - ongoing FY 1991)

***FALSE SSNs USED IN LABOR UNION EMBEZZLEMENT***

This project determines whether monies are being extorted from the New Jersey casino industry by labor unions. Indications are that for each union worker employed by an Atlantic City casino the casino must contribute varying sums of money into the union's diverse benefit funds on behalf of that worker. After the money has been deposited with the union, it is suspected that union officers may be embezzling it for their personal benefit. The alleged scheme is perpetrated by placing fictitious persons, or others seeking to conceal their work activity, on Atlantic City casino payrolls. This scheme involves the use of improper names and SSNs; i.e., SSNs belonging to deceased persons or to persons other than those listed on the union's membership roster. (New York OIFO - ongoing FY 1991)

***FALSE SSNs USED IN MONEY LAUNDERING***

These projects obtain the convictions of individuals who use false SSNs in submitting currency transaction reports to evade Federal income tax and to launder illegally obtained funds. The projects are coordinated with other investigative agencies, including the Internal Revenue Service and the U.S. Customs Service. They involve electronic surveillance, undercover operations and extensive financial records review. (Philadelphia OIFO - ongoing FY 1991 and FY 1992)

***FALSE SSNs TO OBTAIN UNEMPLOYMENT COMPENSATION***

This is a national project with separate but related regional operations under way simultaneously. The objective is to obtain convictions of and restitution from individuals who use various fraudulent schemes to receive unemployment compensation benefits. The project is being coordinated with the U.S. Department of Labor, and State authorities. By matching unemployment compensation payment records against the SSN numerical identification file and earnings files, the OIG will generate information on erroneous payments. The matches will uncover such schemes as employees having no valid periods of employment and employers not paying Federal Insurance Contributions Act taxes. It should also result in identification of fictitious business entities. Suitable cases will be presented for prosecution. (Criminal Investigations Division, HQ - ongoing FY 1991 and FY 1992)

***FALSE SSNs USED BY OUTLAW MOTORCYCLE GANGS***

This project obtains convictions of motorcycle gang members who misuse SSNs. It involves participation in a task force with the Bureau of Alcohol, Tobacco, and Firearms, the U.S. Marshals Service, the Drug Enforcement Administration, the Pennsylvania State Police and the Philadelphia Police Department. Prior investigations by the other members of this task force had revealed that the misuse of SSNs was occurring among members of motorcycle gangs, to change their identities to avoid arrest and prosecution for various other crimes. (Philadelphia OIFO - ongoing FY 1991 and FY 1992)

***FALSE SSNs IN FIREARMS APPLICATIONS***

This project obtains convictions of individuals who use false SSNs in Federal applications for registered firearms. Many of the firearms are illegal weapons and are detected incident to narcotics investigations. The project is a joint effort with other investigative agencies in Ohio. It involves surveillances, undercover operations and extensive records review. (Chicago OIFO - ongoing FY 1991)

***FALSE SSNs TO DEFRAUD BANKS: MAIL BOX DROP SERVICES***

This project obtains convictions of and restitution from those who fraudulently use invalid SSNs to defraud banks. Cooperating private mail box drop services have identified persons suspected of providing false information, including SSNs, to rent private mail boxes. Often, the violators rent the boxes with checks drawn on local banks from which they have obtained loans and credit cards using false SSNs. Unique to the investigation is the routine use of Federal search warrants for the mail drop boxes. This is a joint investigation with the U.S. Secret Service. All violations are presented to the U.S. Attorney for prosecution. (Chicago OIFO - ongoing FY 1991)

***FALSE SSNs TO OBTAIN CREDIT CARDS--BANKS***

This project identifies and prosecutes individuals who provide false information, including SSNs, to banks to obtain credit cards. The project is being conducted jointly with the U.S. Secret Service. It involves extensively reviewing financial records, comparing handwriting exemplars and using Federal search warrants. Suitable cases are presented for prosecution. (Chicago OIFO - ongoing FY 1991)

***FALSE SSNs TO OBTAIN FOOD STAMPS***

This project obtains convictions of and restitution from individuals who fraudulently obtain food stamps and other program benefits by using false SSNs. It involves individuals who provided false information and SSNs to obtain public assistance from the Aid to Families With Dependent Children program, U.S. Department of Agriculture Food Stamps, and Social Security benefits. The project is being coordinated with State authorities. In one jurisdiction, it involves alleged kickbacks to a county employee in return for his concealment of the perpetrators' employment. (Chicago OIFO - ongoing FY 1991)

***FALSE SSNs TO MOVE STOLEN ITEMS***

This project identifies and prosecutes individuals who use false SSNs to facilitate the transportation and sale of stolen items. The project is being conducted jointly with the Ohio Organized Crime Investigations Commission and its member organizations. The fraud involves receiving stolen items and concealing them by falsifying personal and business records, including using false SSNs. Extensive efforts have identified many potential subjects suspected of trafficking in stolen property. Prosecutable cases will be presented in the jurisdictions where the offenses occurred. (Chicago OIFO - first quarter FY 1991)

*FALSE SSNs TO OBTAIN AIRLINE TICKETS, CREDIT CARDS*

This project will identify and obtain convictions of individuals who use false SSNs to fraudulently obtain airline tickets and credit cards. Credit card and airline company investigators have cooperated in identifying individuals who have devised a scheme to use multiple false identification documents, including SSNs, to obtain airline tickets and credit cards which they use throughout the country. (Chicago OIFO - first quarter FY 1991)

*FALSE SSNs IN INSURANCE FRAUD*

This project will obtain convictions of individuals who use false SSNs to file fraudulent automobile and slip-and-fall accident claims with major insurance carriers. There is evidence that several individuals have submitted false claims under fictitious names and SSNs to various insurance companies. The project is a joint investigative effort with the U.S. Postal Inspection Service. (Chicago OIFO - fourth quarter FY 1991)

*FALSE SSNs TO CONCEAL EMPLOYMENT AND GET WELFARE BENEFITS*

This project identifies and obtains convictions of Indiana welfare recipients who are concealing employment in Illinois by using false SSNs. Computerized records were matched to produce a list of Indiana residents who claimed to be employed by Illinois firms. Further investigation will ensue, and suitable cases will be presented for prosecution. (Chicago OIFO - second quarter FY 1991)

*FALSE SSNs IN COLORADO GUARANTEED STUDENT LOAN PROGRAM*

This project obtains convictions of and restitution from individuals who misuse an SSN on a Colorado Guaranteed Student Loan application where the student loan is also in default, resulting in monetary damages to the U.S. Government. Suitable cases are presented for prosecution. (Denver OIFO - ongoing FY 1991)

*MISUSE OF SSN CARDS*

This project is part of a joint task force investigation involving the U.S. Immigration and Naturalization Service (INS) New Orleans District Office and the OI field office in Dallas, Texas. This task force is being directed by the U.S. Attorney's Office in New Orleans. The purpose of this project is to identify and prosecute legal and illegal aliens who misuse the SSN to obtain Government documents and employment. This project will also identify individuals who produce false SSN cards and/or false INS documents; and those who misuse SSA's SSN enumeration process to employ illegal aliens. (Dallas OIFO - fourth quarter FY 1991)

*MISUSE OF SSN CARDS: ALIENS*

This project obtains convictions of and restitution from individuals who use false SSNs to obtain bank loans, school loans and credit cards. An Alien Crimes Task Force has been formed in Baltimore. It includes representatives of various Federal law enforcement agencies in the State. The targets of this task force are aliens who enter the U.S., legally or illegally, for the sole purpose of obtaining sums of money illegally to be sent back to their own countries. Misuse of SSNs is nearly always a part of the scheme to obtain these monies. Suitable cases are presented to the U.S. Attorney for prosecution, and illegal aliens are deported. (Philadelphia OIFO - ongoing FY 1991 and FY 1992)

*MISUSE OF SSNs - ARKANSAS*

This project involves joint investigations with a variety of Federal, State, and local law enforcement entities in Arkansas, into the activities of individuals who misuse SSNs to commit credit card fraud, bank loan fraud, weapons violations and any other violation where the subject misuses an SSN. (Dallas OIFO - fourth quarter FY 1991)

*SSN MISUSE: DRUG DEALS AND CREDIT SCAMS*

This project obtains convictions of individuals who misuse SSNs in violating laws. The OIG has ongoing extensive involvement with numerous law enforcement organizations in identifying, investigating, and prosecuting individuals who use false identities in making illegal drug deals and in defrauding various credit organizations, or who are involved in other types of crimes facilitated by misuse of SSNs. The OIG verifies SSNs; analyzes documents containing fraudulent SSN information; obtains certifications as to the subject's true SSN (and negative certifications of SSNs misused by subjects); presents cases, including draft indictments, to assistant U.S. Attorneys and district attorneys; and is prepared to testify at Federal and State trials. (Dallas OIFO - ongoing FY 1991)

*SSN MISUSE: IDENTIFICATION AND DOCUMENTATION*

This project's goal is to obtain the maximum number of convictions in northern California for the illegal use of SSNs. The OIG works jointly with numerous local, State and Federal law enforcement agencies to identify and prosecute cases where false SSNs are used for financial gain. (San Francisco OIFO - ongoing FY 1991)

*COMBATING SSN MISUSE FOR FINANCIAL GAIN IN SAN DIEGO*

The purpose of this project is to increase the prosecution of cases by the U.S. Attorney and the local district attorney in the San Diego area, involving the fraudulent use of SSNs for financial gain. The OIG works in concert with numerous local law enforcement agencies to provide investigative support in such cases, and provides support to local and Federal prosecutors in these cases. (San Francisco OIFO - ongoing FY 1991)

*MISUSE OF SSNs - COUNTERFEITING AND SALE OF SOCIAL SECURITY CARDS*
This project involves a joint investigation with INS in Oklahoma City, Oklahoma. The intent is to seek convictions of illegal aliens who misuse SSNs for employment and those individuals who counterfeit and sell SSN cards to illegal aliens. (Dallas OIFO - fourth quarter FY 1991)

*COUNTERFEIT IDENTIFICATION INVOLVING SSNs AND SSA EMPLOYEES*
This project identifies and prosecutes the producers and sellers of counterfeit identification documents. The project also identifies and prosecutes SSA employees who accept bribes from illegal aliens in exchange for providing the alien with a legitimate SSN card. (San Francisco OIFO - ongoing FY 1991)

*SSN COUNTERFEITING: POSTAL INSPECTION TASK FORCE*
The OIG's involvement with the Postal Inspection Task Force helps identify and prosecute members of a well organized gang who have been breaking into U.S. Postal Service vehicles and stealing the mail. The suspects retrieve all negotiable checks including Social Security checks. The ringleaders then counterfeit SSN cards and other identification documents to match the names on the checks. Illegal aliens are paid to cash the checks at local stores or to send the checks elsewhere for negotiation. This project was initiated in 1988 at the request of the United States Postal Inspection Service (USPIS). Since its inception, a number of the false identification mills have been targeted and raided. Approximately 40 gang members have been identified and prosecuted. The USPIS has indicated that the number of mail vehicle break-ins has decreased significantly since this effort began. (San Francisco OIFO - ongoing FY 1991)

*FALSE CREDIT CARD APPLICATION PROJECT*
The objective of this project is to identify and prosecute individuals who provide false information, including SSNs, to banks and credit card companies in order to obtain credit cards. This project is being investigated jointly with the U.S. Secret Service. Several cases have been presented for criminal prosecution. (Philadelphia OIFO - ongoing FY 1991)

## *SUPPLEMENTAL SECURITY INCOME*

### *UNREPORTED EMPLOYMENT INCOME, REPRESENTATIVE PAYEE MISUSE, AND CONCEALING ASSETS*

This project obtains convictions of and restitution from individuals who illegally obtain and/or continue to receive SSI payments to which they are not entitled or who misuse payments made to them on behalf of another. Sometimes recipients fail to report income and resources which affect their eligibility or payment amount. Additionally, some payees for recipients who are unable to fully care for themselves illegally convert the recipients' checks to their own personal use. These cases are investigated and suitable cases are presented for prosecution. (Chicago OIFO - ongoing FY 1991)

## *CROSS-CUTTING PROGRAM ISSUES*

### *BENEFIT PAYMENTS TO INCARCERATED INDIVIDUALS*

This project locates and identifies individuals incarcerated in county, State and Federal penal institutions who may be collecting Social Security benefits improperly. No benefits are payable for any month during which an individual is confined in a correction facility pursuant to a felony conviction. Such cases are detected by comparing lists of prisoners against records of Social Security beneficiaries. Suitable cases are presented for prosecution, and incorrect payments are terminated. (San Francisco OIFO - ongoing FY 1991)

### *ILLEGAL PAYMENTS TO RESIDENTS OF MEXICO*

This project identifies persons who are illegally receiving either Social Security or assistance payments and are living in Mexico. It is anticipated that a large number of individuals will be identified and removed from the rolls, resulting in program savings. (San Francisco OIFO - ongoing FY 1991)

### *CHECKS CASHED AFTER BENEFICIARY'S DEATH*

This project, which is being conducted in several jurisdictions by a number of field offices, obtains convictions of and restitution from individuals who illegally acquire and negotiate the Social Security checks of deceased persons. Monthly benefit checks are sometimes issued improperly after the death of Social Security beneficiaries and are cashed by others. Checks properly issued but not negotiated prior to the beneficiary's death may also be cashed illegally. Such cases are detected through various means, including computer matching, and are investigated by obtaining SSA records and check descriptions. The investigators then interview persons who are in a position to know what happened to the checks. Suitable cases are presented to U.S. Attorneys for prosecution. These efforts are coordinated with the U.S. Secret Service as circumstances require. (Chicago, Dallas, Philadelphia OIFOs - ongoing FY 1991 and FY 1992)

***STATE DEATH MATCH PROJECT***

The objective of this project is to use the Social Security Administration Limited State Death computer list to identify Title II and Title XVI SSA payments that continue to be issued to beneficiaries subsequent to their deaths. Several cases have been presented for criminal prosecution. (Philadelphia OIFO - ongoing FY 1991)

# IV - GRANTS AND INTERNAL SYSTEMS

## In General

Investigative projects concerning grants and internal systems are included in OI's Work Plan for FYs 1991 and 1992. It is vital that grant funds are used for their intended purposes, and that the results achieved through such expenditures are valid. It is also essential that program benefits go only to recipients entitled to them. Perpetrators who obtain benefit payments unlawfully, and those who defraud agency programs, indirectly rob those most in need of essential services and benefits. The OI acknowledges the significance of such corrupt activity and has designed projects to meet the challenge.

## AIDS

One significant feature of OI's Work Plan for FYs 1991 and 1992 is a project focused on fraud in connection with drugs to treat Acquired Immune Deficiency Syndrome (AIDS). The project may flush out pharmacies looking for some illicit payoff on the human misery and desperation associated with AIDS.

## Scientific Misconduct

Another vital feature of the plan is the continued inclusion of projects involving scientific misconduct directly or indirectly. This signals continued commitment to cases of this type, not only because of the vast amounts of money involved but also because the health and well-being of the public are at stake.

## Employee Misconduct

Greater involvement in employee ethics and conduct goes hand-in-hand with continued involvement in scientific misconduct cases. Other areas of employee conduct will be addressed, also, with increased attention to certain Indian Health Service matters.

## Beneficiary Fraud

Some attention will also be given to beneficiary fraud. Suitable cases will be pursued from both criminal and civil standpoints, with an emphasis on stopping incorrect payments, obtaining restitution and publicizing convictions as a deterrent to activity of this type.

## Facilities Grants

The OI will not overlook grants to certain types of facilities that are supposed to provide services to beneficiaries. The work plan includes projects that address day care and mental health.

## Project Index and Descriptions

On the following page is an index of the discrete projects and initiatives that comprise this segment of OI's Work Plan for FYs 1991 and 1992. They are grouped broadly by program or issue, as highlighted below. A description of each project follows the index.

***Areas of Interest***

*o Acquired Immune Deficiency Syndrome*

*o Biomedical Research*

*o Indian Health*

*o Food, Drugs and Devices*

*o Aid to Families With Dependent Children*

*o Additional Activities*

# Index

Page

PUBLIC HEALTH SERVICE

**Acquired Immune Deficiency Syndrome**

AIDS Drug Reimbursement Program Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Biomedical Research**

Scientific Misconduct In Research Grants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**Indian Health**

Fraud, Misconduct Involving Indian Health Service . . . . . . . . . . . . . . . . . . . . . . . . 37
Indian Health Service Contract Fraud Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Indian Health Service Health Care Provider Fraud Project . . . . . . . . . . . . . . . . . . . 38
IPA Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Fraud and Misconduct - Indian Health Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Fraud in Indian Health Service Programs and Grants . . . . . . . . . . . . . . . . . . . . . . 38

**Food, Drugs and Devices**

Ethics and Integrity in Government . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Generic Drug Companies - False Statements/Substitution/
Destruction of Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

FAMILY SUPPORT ADMINISTRATION

**Aid to Families With Dependent Children**

AFDC Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

OFFICE OF HUMAN DEVELOPMENT SERVICES

**Additional Activities**

Intermediate Care Facilities for the Mentally Retarded . . . . . . . . . . . . . . . . . . . . . 40

Title XX Day Care Project . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

# Project Descriptions

## *PUBLIC HEALTH SERVICE*

### *ACQUIRED IMMUNE DEFICIENCY SYNDROME*

#### *AIDS DRUG REIMBURSEMENT PROGRAM PROJECT*

This national project is aimed at identifying fraud in a Public Health Service (PHS) grant program by which pharmacies are supplied with life-saving drugs for eligible victims of Acquired Immune Deficiency Syndrome (AIDS). The project stemmed from an OIG investigation involving a pharmacy which obtained the drug AZT for patients already deceased or whose health insurers had paid for their AZT. (Criminal Investigations Division, HQ - ongoing FY 1991)

### *BIOMEDICAL RESEARCH*

#### *SCIENTIFIC MISCONDUCT IN RESEARCH GRANTS*

This project will ensure the integrity of science-oriented grants and contracts funded by the PHS. The OIG will identify potential criminal violations which will be referred to the appropriate field offices for investigation. The project will be accomplished through effective liaison contacts with PHS agencies including the NIH Office of Scientific Integrity and the PHS Office of Scientific Integrity Research. (Criminal Investigations Division, HQ - ongoing FY 1991 and FY 1992)

### *INDIAN HEALTH*

#### *FRAUD, MISCONDUCT INVOLVING INDIAN HEALTH SERVICE*

This project is designed to obtain convictions of and restitution from individuals who defraud the Indian Health Service (IHS) programs, and its results will also be used to initiate the removal of employees who seriously violate the HHS Standards of Conduct. The project began with allegations of fraudulent travel vouchers in the Bemidji, Minnesota, Area Office of the IHS. A number of travel fraud cases have been developed and prosecuted. More are expected. This inroad has also resulted in the initiation of IHS grant cases. (Chicago OIFO - ongoing FY 1991)

*INDIAN HEALTH SERVICE CONTRACT FRAUD PROJECT*

This national project will identify contract health care providers who are diverting third-party monies from tribal health care facilities under contract with the IHS. This project arose from an OIG investigation in which a dentist employed by a tribe under contract with IHS billed Medicaid under her own provider number instead of the tribe's provider number. (Criminal Investigations Division, HQ - ongoing FY 1991 and FY 1992)

*INDIAN HEALTH SERVICE HEALTH CARE PROVIDER FRAUD PROJECT*

This project will be developed by the OI Criminal Investigations Division and the Chicago Field Office. If viable and productive in that region, it will be expanded to others. Medicare billings to the single IHS Medicare carrier will be compared with other individual Medicare carriers, to detect duplicate billings. (Criminal Investigations Division, HQ, and Chicago OIFO - ongoing FY 1991)

*IPA PROJECT*

The Intergovernmental Personnel Act (IPA) Project is designed to detect fraud in the IHS IPA agreement program. The IPA provides for the temporary assignment of Federal employees to eligible non-Federal organizations without the loss of employee rights and benefits. A review will be conducted of IHS personnel agreements and other appropriate records of all IHS employees participating in the IPA agreement program, to ensure that employees are in compliance with the terms of the agreement. The project is expected to identify employees engaged in time and attendance fraud, salary fraud, and other standards of conduct and misuse of funds violations. (Criminal Investigations Division, HQ - ongoing FY 1991)

*FRAUD AND MISCONDUCT - INDIAN HEALTH SERVICE*

This project seeks convictions of and restitution from individuals who commit fraud involving IHS programs and grants. This project began with a number of allegations ranging from theft by an IHS employee to embezzlement of grant monies. (Chicago OIFO - ongoing FY 1991)

*FRAUD IN INDIAN HEALTH SERVICE PROGRAMS AND GRANTS*

This project also is designed to obtain convictions of and restitution from individuals who commit fraud involving IHS programs and grants. The Dallas Region has established a number of such cases. Because of the variety of issues and their complexity, teams of OIG agents are being used to work them. (Dallas OIFO - fourth quarter FY 1991)

## *FOOD, DRUGS AND DEVICES*

### *ETHICS AND INTEGRITY IN GOVERNMENT*

This project will implement a program by which both new and current employees will be educated on integrity matters. This effort will begin in the Food and Drug Administration (FDA), where recent investigations have centered on corruption charges related to FDA officials in the Division of Generic Drugs. The project will also be extended to other program areas, such as contracting activities and HHS personnel orientation programs. Particular emphasis will be placed on bribery awareness, real and apparent conflicts of interest, and some types of noncriminal misconduct. (Criminal Investigations Division, HQ - fourth quarter FY 1991)

### *GENERIC DRUG COMPANIES - FALSE STATEMENTS/SUBSTITUTION / DESTRUCTION OF RECORDS*

This project involves joint investigations with the FDA into generic drug companies that have made false statements to the FDA either in their initial Application for a New Drug Approval or in subsequent reporting to the FDA. Also under review are companies that may have substituted an approved brand name drug for their own, during lab tests, and companies that may have altered or destroyed documents. (Washington OIFO - third quarter FY 1991)

## *FAMILY SUPPORT ADMINISTRATION*

## *AID TO FAMILIES WITH DEPENDENT CHILDREN*

### *AFDC FRAUD*

This project will obtain convictions of, and restitution from, individuals who obtain AFDC benefits to which they are not entitled. Applicants for AFDC must declare their eligibility, earnings, property and assets on applications. Some applicants conceal income from employment, and marriages or remarriages, because their AFDC grants would either be reduced or eliminated if the facts were known. These cases are investigated by obtaining AFDC records and check descriptions from State agencies, and then interviewing people who are in a position to know how the fraud is perpetrated. Suitable cases will be presented for prosecution. (Chicago OIFO - second quarter FY 1992)

## *OFFICE OF HUMAN DEVELOPMENT SERVICES*

## *ADDITIONAL ACTIVITIES*

### *INTERMEDIATE CARE FACILITIES FOR THE MENTALLY RETARDED*

This project will detect fraud in connection with grants and payments of Medicaid funds to intermediate care facilities for the mentally retarded. Such facilities are operated in several States. It is expected that criminal prosecutions will result. This project involves a task force comprised of agents from OIG and the U.S. Postal Inspection Service, under the coordination of the U.S. Attorney for the District of Massachusetts. (Boston OIFO - ongoing FY 1991 and 1992)

### *TITLE XX DAY CARE PROJECT*

This project will identify, investigate and prosecute individuals who are defrauding the Day Care program under title XX of the Social Security Act. Several investigations involving Day Care centers operating with title XX funds have been undertaken in the Southern District of Texas. Over 70 convictions have been obtained and improper payments totaling over $600,000 have been identified. In all instances, ineligible children are enrolled based on false information being entered on program applications. (Dallas OIFO - ongoing FY 1991)

# V - INTERNAL MANAGEMENT

## Staying Effective

Organizations do not remain effective unless they pursue continuous improvement of their operations and the professional development of employees. In recognition of this, OI Headquarters components will continue to pursue projects and initiatives to enhance computer operations, improve instructional media, and increase training opportunities.

## Computer Operations

Building on experience, which established that refinement and expansion of computer systems operations were essential for meeting management information needs and enhancing work production, the Computer Techniques Staff (CTS) at OI Headquarters has developed a number of projects to maximize the impact of OI investigative resources for FYs 1991 and 1992.

## Instructional Media

The Policy Coordination and Instructions Staff (PCIS) at OI Headquarters also will undertake a number of major initiatives in FYs 1991 and 1992, some in concert with CTS. It will update and reissue certain HHS program investigative guides, reissue the OI Special Agent Handbook (SAH), and establish new data bases which will provide access to the SAH and to the OI Administrative Manual (AM) for all special agents and other users. A computerized superindex of key words appearing in instructional and other issuances is also planned.

## Training

Also, the OI Training Unit (TU) will undertake major initiatives to provide basic training and improved in-service investigator training, and will develop a Training and Planning Guide necessary to maintain professional proficiency and to foster personal growth by investigators and other OI employees.

## Project Index and Descriptions

The projects and initiatives that will be pursued by OI Headquarters in FYs 1991 and 1992 are grouped by area of interest, as highlighted on the next page. They are discussed in more detail in the text following the index.

***Areas of Interest***

- *Expanding and Advancing Computer Operations*
- *Policy Coordination and Instructions Improvements*
- *Training Supplementation*

# Index

Page

## COMPUTER TECHNIQUES STAFF

### Expanding and Advancing Computer Operations


Automated MSRA . . . . . . . . . . 44
CIMS Enhancement . . . . . . . . . . 44
National Data Base Linkage/Matching . . . . . . . . . . 44
Time Accounting Subsystem (TASS) . . . . . . . . . . 45
Central Index Subsystem . . . . . . . . . . 45
ADP Equipment Upgrading . . . . . . . . . . 45
Local Area Networks (LANs) . . . . . . . . . . 45


## POLICY COORDINATION AND INSTRUCTIONS STAFF

### Policy Coordination and Instructions Improvements


Reissuance of OI Special Agent Handbook . . . . . . . . . . 46
Updating Investigative Guide for Aid to Families With Dependent Children Program . . . . . . . . . . 46
Updating of Social Security Program Investigative Guides . . . . . . . . . . 46
Computerization of OI Special Agent Handbook . . . . . . . . . . 46
Computerization of OI Administrative Manual . . . . . . . . . . 46
Computerized Superindex . . . . . . . . . . 47


## TRAINING UNIT

### Training Supplementation


Investigative and Management Training . . . . . . . . . . 48
Training and Planning Guide . . . . . . . . . . 48

# Project Descriptions

## *COMPUTER TECHNIQUES STAFF*

## *EXPANDING AND ADVANCING COMPUTER OPERATIONS*

### *AUTOMATED MSRA*

The objective of this project is to develop the capability for producing OI's Monthly Statistical Report of Accomplishments (MSRA) entirely by computer. The MSRA is the primary management tool used to track progress toward OI goals. At present, all of the data needed to produce the MSRA is entered routinely in the Case Investigation Management System (CIMS) and can be extracted automatically in the format required. The CTS is now creating programs to produce the MSRA. (CTS - ongoing FY 1991)

### *CIMS ENHANCEMENT*

The objective of this project is to streamline the methodology and formats for producing the statistical reports needed by management from CIMS. These reports are used in managing regional and national investigative workloads, and in preparing various other reports on OI activities and accomplishments. Two years' experience with CIMS fully operational has disclosed areas and types of information gathering and manipulation that need simplification or enhancement to achieve more efficient and effective report production. (CTS - ongoing FY 1991)

### *NATIONAL DATA BASE LINKAGE/MATCHING*

The objective of this project is to expand OI's access to national data bases having information useful in fraud detection and prevention. Several national data bases contain information that could be used in the detection, investigation, prosecution and prevention of fraud. Linking up with these national data bases would allow OI to extract information to be used in improving the efficiency and effectiveness of its activities. (CTS - ongoing FY 1991)

### *TIME ACCOUNTING SUBSYSTEM (TASS)*

This project has already developed and implemented reporting programs to run in and against the Time Accounting Subsystem, an automated system for tracking time usage by OI investigators. The reports produced enhance management's ability to utilize limited investigative resources in the most efficient manner. The CTS will be creating new reports to determine the capability and flexibility of TASS. This system is a subsystem of CIMS. (CTS - ongoing FY 1991)

### *CENTRAL INDEX SUBSYSTEM*

This project is up and running and has converted the manual OI complaint and case indexing system to an automated subsystem of CIMS. This conversion has improved the accuracy, accessibility and use of this intelligence source. (CTS - ongoing FY 1991)

### *ADP EQUIPMENT UPGRADING*

The objectives of this project are to improve OI efficiency by upgrading and replacing outmoded hardware and software and acquiring state-of-the-art equipment; and by increasing the ratio of computers to employees. (CTS - ongoing FY 1991)

### *LOCAL AREA NETWORKS (LANS)*

The objective of this project is to improve the capability of computer work stations for:

- o Data transfer.
- o Non-technical usage.
- o Electronic mail.
- o Access to HHS mainframe computer resources and files.
- o Peripheral sharing of digitally-scanned document retrieval.
- o Sharing data files.

The project will also lay the groundwork for development of OIG-wide application systems. (CTS - ongoing FY 1991)

## *POLICY COORDINATION AND INSTRUCTIONS STAFF*

## *POLICY COORDINATION AND INSTRUCTIONS IMPROVEMENTS*

### *REISSUANCE OF OI SPECIAL AGENT HANDBOOK*

The objective of this project is to consolidate into a single reprint the 90+ transmittals issued since the current Special Agent Handbook (SAH) was established by OI in 1986. This will bring all special agents and other SAH users up to date simultaneously, and facilitate OI's response to requests for copies of the SAH. (PCIS - second quarter FY 1991)

### *UPDATING INVESTIGATIVE GUIDE FOR AID TO FAMILIES WITH DEPENDENT CHILDREN PROGRAM*

The objective of this project is to update and reissue the investigative guide pertaining to the AFDC program. This guide, first issued by OI in 1984, explains the operation of the AFDC program and gives guidance on conducting investigations of program violations. (PCIS - third quarter FY 1991)

### *UPDATING OF SOCIAL SECURITY PROGRAM INVESTIGATIVE GUIDES*

The objective of this project is to update and reissue guides on investigating Social Security programs. The guides being revised were first issued by OI in 1983 and 1984. They pertain to the Retirement and Survivors Insurance, Disability Insurance and Supplemental Security Income programs. They provide a general understanding of how the programs are supposed to work, how individuals attempt to defraud them, and what experience has shown with respect to investigating such attempts. (PCIS - fourth quarter FY 1991)

### *COMPUTERIZATION OF OI SPECIAL AGENT HANDBOOK*

The objective of this project is to put the entire OI SAH in a computer data base accessible to all users, possibly via LAN. Consideration will also be given to establishing the computerized version of the SAH as the official, operational version. (PCIS and CTS - second quarter FY 1992)

### *COMPUTERIZATION OF OI ADMINISTRATIVE MANUAL*

The objective of this project is to put the entire OI Administrative Manual (AM) in a computer data base accessible to all users via local terminals. As with the SAH, consideration will also be given to putting it on a LAN and to establishing the computerized version of the AM as the official, operational version. (PCIS and CTS - third quarter FY 1992)

***COMPUTERIZED SUPERINDEX***

The objective of this project is to create a computer data base index of key words appearing in the SAH, the AM and other appropriate OI instructions. The index will be accessible to all users, perhaps via LAN, and will direct them to the full text of the SAH, AM or other instructions related to the key word. (PCIS and CTS - fourth quarter FY 1992)

***TRAINING UNIT***

***TRAINING SUPPLEMENTATION***

***INVESTIGATIVE AND MANAGEMENT TRAINING***

The objective of this continuing effort by the OI Training Unit (TU) is to establish entry-, journeyman-, and management-level training for all professionals, at all grade levels, in OI. The OI has established a policy for mandatory basic training of OI criminal investigators at the Federal Law Enforcement Training Center, Glynco, Georgia and/or at other Federal law enforcement training academies, such as those operated by the FBI and by the U.S. Postal Inspection Service. The TU will also develop and continuously improve a basic and an advanced in-service training program, to ensure that all investigative personnel are provided with updated training on legal issues, computer use and other technical matters. (TU - ongoing FY 1991 and FY 1992)

***TRAINING AND PLANNING GUIDE***

The TU will develop a Training and Planning Guide for all employees. Its purpose is to provide guidance for acquiring the knowledge, skills and abilities that will be necessary to maintain professional proficiency; and to foster the employee's personal growth through development and maintenance of the skills needed to carry out the OI mission. (TU - fourth quarter FY 1991)

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN S. ADAMS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 90-162C and consolidated cases (Judge Bush) |

**DECLARATION OF EDWARD MENDICELLO**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct:

1. I began work as a criminal investigator, OPM Series 1811, with the Department of Health and Human Services ("HHS") in the Office of Investigations ("OI") within the Office of the Inspector General ("OIG") on August 18, 1985, as a GS-12. On January 4, 1987, I was promoted to GS-13.

2. I was a GS-13 with the HHS OIG OI until February 3, 2004, when I retired.

3. I filed my case on August 18, 1995. I was treated by the agency as FLSA exempt. I regularly worked overtime for which I was not paid pursuant to FLSA.

4. At HHS OIG OI during the relevant time frame, I worked in the Denver Regional Office, which had responsibility for conducting criminal investigations in Colorado, Montana, North Dakota, South Dakota, Utah and Wyoming.

5. During my tenure at HHS, the OIG consisted of three major entities, the OI, the Office of Audit ("OA"), which consisted of a much larger staff of auditors, and the Office of Evaluation and Inspections ("OEI"), which conducted evaluations of HHS programs. The OIG at HHS also had other divisions, such as the Office of General Counsel and the Special Investigative Unit, which were located in Washington DC.

6. I frequently obtained referrals from insurance carriers such as Blue Cross and Blue Shield, Medicare providers, criminal investigators in other agencies, including the FBI, Secret Service, INS, and state and local law enforcement, Social Security offices, members of the public, HHS program recipients, other health care providers, developments from my or other agents' ongoing investigations and referrals from other HHS program staff.

7. As an OPM series 1811 criminal investigator with HHS OIG OI, I was responsible for conducting criminal investigations of alleged or suspected criminal violations of Title 42, including sections 408 (Social Security Fraud), 1320a-7b (Medicare/Medicaid Fraud) and 1382a (Supplemental Security Income Fraud).

8. As an OPM series 1811 criminal investigator with HHS OIG OI, I was also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws of the United States relating to the programs and operations of HHS. In this capacity, I was responsible for investigating alleged or suspected violations of general criminal statutes such as 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit).

9. If I believed a case was worthy of prosecution, I would first take it to the United States Attorney's Office ("USAO"). If the USAO was not interested in the case, I would sometimes take it to a state or local prosecutor.

10. The choice of which particular criminal statutes to apply in any individual case selected for prosecution was made by those state or federal prosecutors. Federal prosecutors often chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, money laundering, and other criminal statutes of general applicability to the cases I brought to them as well as statutes governing health care and/or social security fraud in particular.

11. I was first issued a .38 caliber revolver by HHS, and I was later issued a 9 mm. semi-automatic pistol. I was regularly trained in the operation of these weapons and

required to qualify in their use on a quarterly basis. I was also trained in defensive tactics quarterly.

12. During the relevant time period, I investigated fraud in various HHS programs, primarily Medicare and Medicaid. I also spent a significant amount of time investigating fraud in other HHS programs, such as Social Security, the Indian Health Service, and the Rural Health Service. In doing so, I usually worked with criminal investigators from other law enforcement agencies such as the FBI, U.S. Marshals Service, INS, Secret Service, DCIS, other IG offices, and state and local police. These fraud investigations typically involved charges for medical services that were not provided or were not medically necessary, kickbacks for patient referrals, doctors running prescription mills, misuse of federal grant funds, claims for Social Security benefits by beneficiaries who were not entitled to them or by persons other than the proper beneficiary, the creation and/or use of forged or stolen Social Security cards or numbers and many other types of fraud.

13. During the relevant time period, I performed the entire range of criminal investigative duties performed by criminal investigators for the federal government, from physically searching for evidence and interviewing subjects to drafting investigation reports and presenting cases to federal prosecutors. For example, I examined documents including invoices, books, records, computer printouts, contracts, financial instruments, and other data of consequence to the investigation. At times I conducted electronic monitoring and other covert surveillance and worked with confidential informants and undercover operatives. I executed search warrants and arrest warrants. I conducted

interviews of witnesses and subjects, obtained signed and sworn statements, prepared interview reports and comprehensive investigative case reports. I assisted Federal prosecutors in the drafting of indictments, criminal informations, grand jury and trial subpoenas which I was also required to serve. I regularly testified as a government witness before grand juries and at trials.

14. I have read Position Descriptions 804 for GS-12 criminal investigators and 805 for GS-13 criminal investigators that were attached to the Declaration of Alcine Pike in this case, and I have read the Declaration of Michael Little. While these old and generic Position Descriptions describe a range of functions that a criminal investigator may perform at that grade, they do not describe by any means the duties actually performed at any time let alone on a day to day basis. They do accurately state that, at the higher grades, agents generally handle more complex investigations and with less supervision. Some of the functions I performed regularly, such as complex investigations, some I performed only on occasion and some not at all. For example, I would estimate that I wrote approximately four Management Implication Reports (MIRs) over the course of a typical year, each of which would take roughly 3-4 hours to write.

15. During the relevant time period, I participated in several large investigations. For example, as part of a joint HHS OIG OI/FBI task force, I participated in the investigation of a national chain of psychiatric hospitals which admitted patients

for 30 days of care for alleged alcohol and/or drug abuse diagnoses and fraudulently billed HHS and the Federal Employee Health Benefit Plan. This case resulted in a $379 million settlement, at the time the largest health care fraud case in U.S. history. I also participated in a spin-off case involving a psychiatric hospital in Kansas which paid kickbacks to an employee assistance counselor with the Postal Service who made bogus referrals to the hospital. This case resulted in three criminal convictions, two of which involved significant prison time.

16. During my career as a criminal investigator with OI, I spent very little time investigating cases where the subject was an employee of HHS. I would estimate that I spent less than 10% of my time on such cases.

17. A copy of a memorandum dated May 17, 1985, by Larry D. Morey, Assistant Inspector General for Investigations, is attached to this Declaration as Exhibit A. This memorandum describes the reassignment of personnel from Office of Health Financing Integrity (OHFI) to OI and, in part, the mission of OI. A copy of a memorandum dated June 24, 1985, also by Mr. Morey and also describing that same reassignment of personnel, is attached to this Declaration as Exhibit B. The markings on these documents are my own.

Declaration Pursuant to 28 U.S.C. § 1746

I hereby declare under penalty of perjury that the foregoing is true and correct.

Date: February 14, 2007

Edward Mendicello

Edward Mendicello

# EXHIBIT A

DEPARTMENT OF HEALTH & HUMAN SERVICES

Office of Inspector General

# Memorandum

Date MAY 17 1985

From Larry D. Morey
Assistant Inspector General
for Investigations

Subject
OIG Reorganization - Questions and Answers

To
Distribution Schedule A

Many questions have arisen about the current reorganization and in an effort to be responsive to them, we have prepared a list of the most prevalent concerns together with appropriate answers. A copy of the list is attached.

Not every imaginable question can be answered and most of the reorganization activity will be apparent and understandable as it unfolds. If questions arise which need immediate attention, RIGIs may call my special assistant, Inspector Eugene Barnhardt, at FTS 472-3208 for assistance.

Attachment

RECEIVED
MAY 2 1985
OFFICE OF INVESTIGATIONS

Selection of Functions for Transfer to OI

Question

What OHFI work functions are designated for transfer to OI?

Answer

Those dealing with the detection, investigation, and sanctioning of wrongdoers. Namely, investigative case development; CMPL investigations; investigations regarding misconduct of HCFA employees; and the investigation and actual sanctioning process of health care providers who are subject to sanctions.

Question

How were these functions selected?

Answer

They were determined by the IG to be most nearly in line with OI's mission and responsibility for dealing with wrongdoers. Provider sanctions is the final chapter in what begins as essentially on investigative type case and so the entire sanctions process will henceforth be handled within OI.

Selection of Personnel for Transfer to OI

Question

How were the decisions be made as to who will transfer to OI?

Answer

The IG determined that only a portion of the OHFI employees who were involved in case development would be reassigned to OI. For the most part, whoever spent the preponderance of their time on investigative or sanctions-related activities can be expected to transfer with these functions to OI. But OI is not getting the entire number of OHFI employees who were involved in cases. Also, it was recognized that some employees engaged in case work might not want to be reassigned to OI.

Together, the OI RIGIs and OAI Regional Directors identified candidates for transfer and determined who would actually be reassigned to OI, based primarily on the needs of OIG. Selected individuals may not refuse the reassignment. Individual preferences were considered to a certain extent when making these determinations, but for the most part the people went with the function.

The target date for the reassignment of functions and personnel was to be by May 15, 1985; and was later set at May 12, for payroll purposes.

GS-1811 Job Classification

Question

How will former OHFI employees enter the GS-1811 criminal investigator series?

Answer

All OHFI professional employees detailed to OI will be given the choice of whether or not to request reassignment to a GS-1811 position. The RIGIs will provide each affected employee with information about the 1811 series and sufficient time will be allowed for employees to choose their option.

Employees who want to become 1811s will be asked to state this in writing on a form which will be provided and to submit a current Personal Qualifications Statement, Form SF-171. The Washington Personnel Servicing Center (WPSC) will use the 171s to assess the requestor's experience and to determine if the employee is fully qualified for reassignment to the GS 1811 series at their same grade level without further specialized experience or training. If qualified, the reassignment will be made as soon as practical. If an employee is not fully qualified, they will be reassigned to the 1811 series in a trainee capacity at their same grade level, pending completion of sufficient schooling and on the job training to enable them to be fully qualified, under the terms of the Department's Career Opportunities Training Agreement (COTA) with OPM. A cut-off date will be established after which reassignments to the 1811 series other than through competition will no longer be made pursuant to COTA.

It is anticipated that many of the OHFI GS-345 Program Analysts will immediately qualify for the 1811 series, based on their casework investigative experience, particularly if they acquired that experience during the time Medicare investigations were conducted exclusively by OHFI's predecessor organizations. Experience gained working jointly with OI or other criminal justice agencies should also be addressed in 171s, as it can be used by WPSC in calculating the total experience factor. At this time, there is no age limit on conversions to 1811 in OI.

Question

Do employees reassigned to OI have to convert to the 1811 series?

Answer

No. OHFI employees who do not wish to convert to the GS-1811 series will not be required to do so. These employees will remain on their current title, series, and grade until a new position description is prepared to reflect their duties and responsibilities in the new organization (OI). There will not be any changes in grade level as a result of the revisions.

Question

Will unconverted supervisory 345s remain supervisors?

Answer

OI does not have supervisory positions at the GS-13 level. Therefore any OHFI GS-13 employee will be reassigned to non-supervisory positions.

Supervisory GM-345-14 employees will be placed in supervisory positions if the organization and staffing structure will support a supervisory position which meets the criteria set forth in the Supervisory Grade Evaluation Guide for classifying positions as supervisory.

Question

What is the promotion potential for 345s who do not opt to become criminal investigators versus that of 1811s?

Answer

The full performance (journeyman) level for both Criminal Investigator and Program Analyst positions is GS-12. Employees in both series may be promoted to senior level GS-13 positions through the accretion of duties and responsibilities where senior positions are required and appropriate.

Under current staffing plans, future ARIGI and RIGI vacancies, and many other management positions at headquarters, will be 1811 positions.

Question

Is Glynco law enforcement training required?

Answer

Employees who are reassigned to the GS-1811 series will be required to attend and successfully complete the 7-week basic criminal investigators course at the Treasury Department's Federal Law Enforcement Training Center, Glynco, Georgia, if they have not already completed it or a similar, equivalent course (e.g., FBI Academy, Postal Inspection Service school, military criminal investigations school, etc.). The OI training unit will schedule the Glynco training. Employees who are unable to complete this training will be retained in OI and reassigned to a different series.

Additional training in investigations and white collar crime is provided to all OI investigators from time to time. OHFI employees who are reassigned to OI will receive such training as may be applicable to their positions and duties regardless of series.

Organization and Duties

Question

What distinctions will be made between the duties and work assignments of 345s vs. those of 1811s?

Answer

GS-1811s Criminal Investigators will perform investigative work with respect to the full range of HHS programs and operations. GS-345 Program Analysts will be conducting research, analyses, and other work supporting the investigative and sanctions functions. Where there appears to be a criminal violation, the cases will be referred to the criminal investigators, but program analysts will continue to work in close coordination with them.

In headquarters, program analysts currently performing work related to the sanctions function will continue to do so.

Question

Who will be responsible for the CMPL/Sanction function?

Answer

The functions concerned with CMPL and sanctions cases will be handled by the program analysts and may also be part of the criminal investigator positions, depending on the work load and staffing in the individual regions.

General

Question

Are OI GS-1811s required or allowed to make arrests and carry firearms?

Answer

Not at present. This matter has been studied by OIG, and a draft position paper has been prepared which presents OIG's arguments for such powers. When finalized and approved by the Secretary, OIG will request appropriate legislation from Congress. If such legislation passes, OI criminal investigators will be expected to carry firearms and make arrests in line with their duties.

At present, although OI investigators are empowered to request and obtain search warrants and to serve subpoenas, we must seek the assistance of agencies having broader authority to effect arrests and execute search warrants. OI investigators routinely accompany these officers and take the lead in seizing evidence and, where appropriate, interviewing subjects.