IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN ADAMS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 90-162C and consolidated cases (Judge Lynn J. Bush) |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT REGARDING HUD CRIMINAL INVESTIGATORS**

Pursuant to RCFC 56(h)(1), Plaintiffs submit these proposed findings of fact in support of their cross-motion for partial summary judgment:[1]

1. The mission of HUD is to provide safe and affordable housing. Def. HUD Statement of Fact ¶ 10; Pl. HUD App. at, e.g., 78, 87, 174, 192, 197 (With some variation, this definition appears in nearly every semi-annual HUD IG Report to Congress.) HUD is one of the largest financial institutions in the world, and a book that

1 Plaintiffs adopt the following convention to clarify and abbreviate the references:

(a) "Pl. HUD App." refers to the Appendix to Plaintiffs' Cross-Motion and Opposition To Defendant's Motion for Partial Summary Judgment for the HUD criminal investigators;
(b) "Pl. HUD Statement of Fact" refers to Plaintiffs' Proposed Finding of Uncontroverted Fact to support its Cross-Motion and Opposition To Defendant's Motion for Partial Summary Judgment for the HUD criminal investigators;
(c) "Def. HUD App." refers to the Appendix to Defendant's Motion for Partial Summary Judgment for the HUD criminal investigators; and
(d) "Def. HUD Statement of Fact" refers to Defendant's Proposed Findings of Uncontroverted Fact to support its Motion for Partial Summary Judgment for the HUD criminal investigators.

HUD has published regularly, The Programs of HUD (1989-1990 edition), lists the principal HUD programs that support its mission. Pl. HUD App. at 86.

2. Plaintiffs worked as GS-12 and GS-13 criminal investigators in the Office of Investigations ("OI") of the Office of the Inspector General ("OIG") at the Department of Housing and Urban Development ("HUD"). Pl. HUD App. at 81-82, 84.

3. Approximately 10 Plaintiffs worked as GS-12 and/or GS-13 criminal investigators in the OI at HUD during the relevant time period. Pl. HUD App. at157.

4. Criminal investigators at HUD were removed from coverage under the FLSA and converted to LEAP on October 30, 1994. Def. HUD Statement of Fact ¶ 29; Pl. HUD App. at, e.g., 192.

5. Criminal investigators at HUD worked overtime for which they were not paid according to the FLSA, because they were treated as FLSA exempt at Grades 9 through 13 pursuant to the "administrative exemption" to the FLSA. Defendant's Motion for Partial Summary Judgment for the HUD criminal investigators at 2; see Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

6. While the criminal investigators at HUD had and have primary jurisdiction over certain statutes peculiar to HUD, the choice of which statutes to enforce is made by the state and federal prosecutors and not by the criminal investigator. Pl. HUD App. at 10-11, 175, 193.

7. Federal prosecutors typically chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, false statements, false claims, and other criminal statutes of general applicability. Pl. HUD App. at, e.g., 175, 193.

8. According to Defendant, the role of IRS criminal investigators in the execution of IRS's policies is set forth in the Internal Revenue Manual:

> (1) The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness. To achieve that purpose, we will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . .
>
> (2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency . . . .

Pl. HUD App. at 23.

9. According to Defendant, IRS criminal investigators "determine the extent of compliance and the causes of noncompliance" and "detect fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HUD App. at 23-24.

10. Defendant asserted in 1992 that the role of IRS criminal investigator was to perform "supporting services," because "The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness." Defendant argued that the IRS criminal investigators were performing exempt "supporting services" by "determin[ing] the extent of compliance and the causes of noncompliance" and "detect[ing] fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the

United States Attorney in the preparation of the case during the trial." Pl. HUD App. at 21, 23-24.

11. The HUD OIG's Office of Field Investigations ("OI") was "primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to [HUD's] programs." Def. HUD Statement of Fact ¶ 3.

12. The HUD OIG has a headquarters office in Washington, D.C. and offices in 10 HUD regions. HUD IG consists of three Offices:

(a) The Office of Audit ("OA") is responsible for the development and implementation of the Department's audit activities. Pl. HUD App. at 80.

(b) The OI is responsible for:

(1) Coordinating with the appropriate United States Attorney, the FBI or other Federal enforcement agencies, information of alleged or proven criminal violations by persons or companies engaged in the Department's programs. Def. HUD App. at 82.

(2) Conducting investigations of alleged violations of laws or regulations in the administration of the Department's programs. Id.

(3) Writing reports about the results of all investigations. Id.

(c) The Office of Management and Policy ("OMAP") is responsible for serving as the focal point for the Department's efforts to minimize the opportunities for and occurrences of fraud, waste, and abuse in HUD programs, activities and functions. Pl. HUD App. at 83.

13. More than three-fourths of the staff of the OIG carry out administrative functions for the Department and for the OIG but none of these are criminal investigators.

For example, the accountants and others within the OA and OMAP consisted of approximately 375 employees in 1992, 441 in 1993, and 359 in 1994. Pl. HUD App. at 85

14. There were approximately 108 criminal investigators at all grades in 1992, 99 in 1993, and 108 in 1994**.** Id.

15. The criminal investigators at HUD's OI did the same investigative work as criminal investigators at other federal agencies. Pl. HUD App. at 7, e.g., 176, 211-12, 218.

16. Criminal investigators at HUD, however, most often work alone as the only HUD agent on a case, Pl. HUD App. at 14, 267, and they spent a majority of their time planning and conducting investigations. Id. at 267.

17. During the period February 1987 through approximately February 1994, approximately 98% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time was spent planning and conducting investigations into fraud upon HUD programs. Pl. HUD App. at 177, 194.

18. The other approximate 2% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time during the period February 1987 through approximately February 1994 was spent investigating misconduct by HUD employees. Def. HUD Statement of Fact ¶ 7.

19. Examples of the types of fraud GS-1811-12 and GS-1811-13 criminal investigators investigated are false statements, embezzlement, bribery and kickbacks. Def. HUD Statement of Fact ¶ 5. False statement cases consisted primarily of grantees making false statements in order to fraudulently obtain grant money from the various

HUD programs. Id. Embezzlement cases consisted mainly of grantees diverting HUD program money for a purpose other than what was authorized by the grant. Id. "Kickback" cases consisted largely of people accepting money in exchange for HUD funded loans or grants. Id.

20. There are several specific criminal statutes uniquely applicable to HUD programs. The first, 18 U.S.C. § 1010, "Department of Housing and Urban Development and Federal Housing Administration Transactions," prohibits the making of false statements or documents in connection with a loan, credit facility or mortgage insured by the Department. The second, 18 U.S.C. § 1012, "Department of Housing and Urban Development transaction," prohibits certain false representations or failure to disclose certain information to the Department. The third, 12 U.S.C. § 1715z-19, "Equity Skimming Penalty," provides a felony penalty for pocketing the funds from certain housing projects when the project is financially distressed or the mortgage in default. In addition, another equity skimming statute, 12 U.S.C. § 1709-2, for single family mortgages, provides criminal penalties for those who collect rents on properties with HUD insured mortgages and then do not use the money to pay the mortgage. The fourth statute, 12 U.S.C. § 2607, an anti-kickback statue, provides criminal penalties for those who pay or accept kickbacks in connection with HUD insured mortgages or any federally backed mortgage. Pl. HUD App. at, e.g., 174-75, 192-93.

21. Criminal investigators with HUD OI were also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws relating to the programs and operations of HUD. These statutes included, but were not limited to, 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting

And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit). Pl. HUD App. at, e.g., 198-99, 217.

22. The FBI has concurrent jurisdiction over HUD criminal investigations. Pl. HUD App. at, e.g., 175, 211, 224.

23. In February 1994, the national program of HUD known as Operation Safe Home was announced. Def. HUD Statement of Fact ¶ 8. Operation Safe Home focused upon three major types of wrongdoing that undermine HUD programs: (a) violent crime in public and assisted housing; (b) fraud in public housing administration; and (c) equity skimming in multifamily insured housing. Id.

24. While Operation Safe Home was a new project for some criminal investigators, Def. HUD Statement of Fact ¶ 9, a number of Plaintiffs in this case began working on the issue of violent crime in public housing projects in earlier years. Pl. HUD App. at 205, 224.

25. During the relevant time period of three years prior to a complaint being filed by a HUD criminal investigator, some GS-1811-12 or GS-1811-13 criminal investigators for HUD's OIG spent a majority of their time working on cases involving violent crime in public and assisted housing, while others continued to spend the majority of their time investigating fraud upon HUD programs. Def. HUD Statement of Fact ¶ 11; see Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

26. During the period from February 1987 through October 1994, the typical

day-to-day duties of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG varied depending upon what type of case they were working on. Def. HUD Statement of Fact ¶ 12. However, GS-1811-12 and GS-1811-13 investigators in HUD's OIG spent the majority of their time engaged in typical law enforcement duties such as planning and conducting investigations, collecting and reviewing evidence, conducting surveillance and interviewing witnesses. Id. at ¶ 12; Pl. HUD App. at 177, 194, 267.

27. For fraud investigations, collecting evidence consisted predominantly of reviewing paperwork. Def. HUD Statement of Fact ¶ 13. For violent crime investigations, evidence was usually collected through warrants or informants, surveillance and purchasing contraband. Id.

28. Other duties consisted of initiating contact with Federal, state and local officials, preparing investigative reports, providing advice and assistance to the Department of Justice and United States Attorneys in preparing cases to present before grand juries and at trial and testifying before grand juries and at trial. Id. ¶ 14.

29. During the relevant time period, criminal investigators with HUD were issued revolvers that were replaced in 1994 by a 9 mm semi-automatic pistol. Some agents were issued or had access to 12 gauge shotguns and an H & K machine gun. Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

Respectfully submitted,

/s/ Jules Bernstein

OF COUNSEL:
Linda Lipsett

Jules Bernstein

Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

/s/ Edgar James

Edgar James
Sean Bajkowski
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Of Counsel

Dated: March 28, 2007