**Field Offices**

**Casper Office**
4225 Federal Office Building
100 East B Street
Post Office Box 580
Casper, Wyoming 82602-1918
Commercial Number: (307) 261-5252
FTS Tel. 328-5252

**Fargo Office**
Federal Building
653 Second Avenue, North
Post Office Box 2483
Fargo, North Dakota 58108-2483
Commercial Number: (701) 237-5136
FTS Tel. 783-5136

**Helena Office**
Federal Office Building
Drawer 10095
301 South Park, Room 340
Helena, Montana 59626-0095
Commercial Number: (406) 449-5205
FTS Tel. 585-5205

**Salt Lake City Office**
324 South State Street, Suite 220
Salt Lake City, Utah 84111-2321
Commercial Number: (801) 524-5379
FTS Tel. 588-5237

**Sioux Falls Office**
Court House Plaza
300 North Dakota Avenue, Suite 116
Sioux Falls, South Dakota 57102-0311
Commercial Number: (605) 336-4223
FTS Tel. 782-4223

**Region IX (San Francisco)**

**San Francisco Regional Office**
Phillip Burton Federal Building
and U.S. Courthouse
450 Golden Gate Avenue
Post Office Box 36003
San Francisco, California 94102-3448
Commercial Number: (415) 556-4752
FTS Tel. 556-4752

**Indian Programs Office, Region IX**
One North First Street, Suite 400
Phoenix, Arizona 85004-2360
Commercial Number: (602) 261-4156
FTS Tel. 261-4156

**Field Offices**

**Fresno Office**
1630 East Shaw Avenue, Suite 138
Fresno, California 93710-8193
Commercial Number: (209) 487-5033
FTS Tel. 467-5036

**Honolulu Office**
300 Ala Moana Boulevard, Room 3318
Honolulu, Hawaii 96850-4991
Commercial Number: (808) 546-2136
FTS Tel. (808) 546-2136

**Las Vegas Office**
1500 East Tropicana Avenue, Second Floor
Las Vegas, Nevada 89119-6516
Commercial Number: (702) 388-6500
FTS Tel. 598-6500

**Los Angeles Office**
1615 W. Olympic Boulevard
Los Angeles, California 90015-3801
Commercial Number: (213) 251-7122
FTS Tel. 983-7122

**Phoenix Office**
One North First Street, Suite 300
Post Office Box 13468
Phoenix, Arizona 85002-3468
Commercial Number: (602) 261-4434
FTS Tel. 261-3985

**Reno Office**
1050 Bible Way
Post Office Box 4700
Reno, Nevada 89505-4700
Commercial Number: (702) 784-5356
FTS Tel. 470-5356

**Sacramento Office**
777 12th Street, Suite 200
Post Office Box 1978
Sacramento, California 95814-1977
Commercial Number: (916) 551-1351
FTS Tel. 460-1351

**San Diego Office**
Federal Office Building
880 Front Street, Room 5S3
Post Office Box 2648
San Diego, California 92188-0100
Commercial Number: (619) 557-5310
FTS Tel. 895-5310

**Santa Ana Office**
34 Civic Center Plaza
Box 12850
Santa Ana, California 92712-2850
Commercial Number: (714) 836-2451
FTS Tel. 799-2451

**Tucson Office**
100 North Stone Avenue, Suite 410
Tucson, Arizona 86701-1467
Commercial Number: (602) 629-6237
FTS Tel. 762-6237

**Region X (Seattle)**

**Seattle Regional Office**
Arcade Plaza Building
1321 Second Avenue
Seattle, Washington 98101-2058
Commercial Number: (206) 442-5414
FTS Tel. 399-5414

**Field Offices**

**Anchorage Office**
701 C Street, Box 64
Anchorage, Alaska 99513-0001
Commercial Number: (907) 271-4170
FTS Tel. (907) 271-4170

**Boise Office**
Federal Building/U.S. Courthouse
550 West Fort Street
Post Office Box 042
Boise, Idaho 83724-0420
Commercial Number: (208) 334-1990
FTS Tel. 554-1990

**Portland Office**
Cascade Building
520 Southwest Sixth Avenue
Portland, Oregon 97204-1596
Commercial Number: (503) 221-2561
FTS Tel. 423-2561

**Spokane Office**
Farm Credit Bank Building
Eighth Floor East
West 601 First Avenue
Spokane, Washington 99204-0317
Commercial Number: (509) 456-2624
FTS Tel. 439-2624

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Human Capital Leadership
and Merit System
Accountability Division

## Fair Labor Standards Act Decision
## Under section 4(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | [claimant's name] |
| **Agency classification:** | Investigator<br>GS-1810-12 |
| **Organization:** | [Field Office]<br><br>Defense Security Service<br>Department of Defense<br>[location] |
| **Claim:** | Back pay; Should Have Been Classified as Nonexempt |
| **OPM decision:** | Nonexempt. Due the difference between FLSA and title 5 overtime payment |
| **OPM decision number:** | F-1810-12-02 |

Kevin E. Mahoney
Deputy Associate Director
Center for Merit System Accountability

10-16-06
Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this decision is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the Office of Personnel Management administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, and ensure that they are treated in a manner consistent with this decision. There is no right of further administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708. The claimant has the right to bring action in the appropriate Federal court if dissatisfied with the decision. However, he may do so only if he does not accept back pay. All back pay recipients must sign a waiver of suit when they receive payment.

The agency is to compute the claimant's overtime pay in accordance with the instructions in this decision, and then pay the claimant the amount owed him. The agency must also submit a Standard Form 50 showing that the claimant's exemption status has been changed to comply with this decision. The SF 50 should be sent to this office within 15 workdays of receiving the decision. If the claimant believes that the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Decision sent to:**

[claimant's name and address]

Director for Human Resources
Defense Security Service
1340 Braddock Place
Alexandria, VA 22314-1651

Chief, Classification Appeals
Adjudication Section
Department of Defense
Civilian Personnel Management Service
1400 Key Boulevard, Suite B-200
Arlington, VA 22209-5144

**Introduction**

On June 2, 2006, the Office of Personnel Management (OPM), Division for Human Capital Leadership and Merit System Accountability, Center for Merit System Accountability, [location] Field Services Group, received an FLSA claim from [the claimant]. He currently occupies an Investigator, GS-1810-12, position with OPM's Federal Investigative Services Division, Center for Investigative Programs Operations, [a] Field Office, in [location]. The claimant seeks overtime pay under the FLSA for work he performed prior to March 20, 2005, when he was employed in an Investigator, GS-1810-12, position with the Defense Security Service (DSS), before he and his DSS component were transferred from DSS to OPM. He seeks "all back-pay overtime I am eligible for from DSS, going back as many years as possible." We received the agency administrative report (AAR) on July 26, 2006.

In reaching our FLSA decision, we have carefully reviewed all information furnished by the claimant and his former employing agency, including information developed during telephone interviews on August 4, 2006, with the claimant and his immediate supervisor during the period of the claim, and other information we developed during our fact-finding process.

**General Issues**

The claimant disputes DSS' designation of his position, and the work he performed, as exempt. He believes he performed the same work for DSS as he currently performs for OPM which recently changed his FLSA status from exempt to nonexempt.

In its AAR, DDS asserts it properly exempted the claimant's position based on its analysis of the duties of the position described in a "decision from the OPM FLSA Oversight Division in 2001 (June 26, 2001, Decision No. F-1810-12-1...." The agency indicates the change in FLSA exemption status by OPM has no bearing on this claim since the work assigned to the claimant "may or not be the same as the duties performed for the DSS."

We concur with DSS that we must make exemption determination decisions by comparing the actual duties performed by the claimant to criteria and guidance in FLSA regulations, laws, and guidelines. Therefore, our decision rests upon our analysis of the duties and responsibilities assigned to and performed by the claimant while he was employed by DSS.

**Position Information**

The claimant was assigned to a DSS standard position description (PD) [number]. The major duties are not annotated with percentages of time. Although the PD lists such duties as accompanying Industrial Security Representatives on security review and assistance visits to contractor facilities and participating on planning committees, focus groups, and/or process action teams engaged in developing and recommending new or more efficient methods and techniques for conducting investigations, the claimant performed these duties a small minority of the time. The claimant stated, and the former immediate supervisor confirmed, the claimant spent 95 percent or more of his time conducting personnel security investigations (PSIs). The investigative reports were used by adjudicators within the Department of Defense to make security clearance determinations.

The claimant was responsible for conducting background investigations that relate to varying levels of security clearances. Work typically was assigned geographically primarily based on where the claimant resided. He would review the case coversheet and attached papers to determine the aspects of the subject's life he needed to cover, e.g., residences, educational institutions, and employment. Based on the coverage requirements of the type of investigation, he would determine the functions he needed to perform to obtain necessary information, e.g., record reviews (e.g., police records, divorce records), subject interviews, and reference checks, determining the action necessary to develop the record sufficiently to meet investigative manual guidelines. The claimant then wrote reports of the information found. The reports identified the sources contacted, the type and extent of contact the source had with the subject, going into detail by exception. Information gathered was forwarded to the Personnel Investigations Center (PIC) at [location], and to other field offices for follow-up, e.g., derogatory information, unclaimed residences, unclaimed employment. Once the PIC received information from all investigators who were assigned pieces of a case and was satisfied coverage met established requirements, it forwarded the completed background investigation package to adjudicators who made the security clearance determination.

The work required applying investigative techniques, such as interview techniques, reading body language and facial expressions, various document research techniques, to establish case facts; i.e., "the who, what, where, when and how." He needed to determine whether answers provided were conflicting, and if there has been falsification on the security application. This might lead to a confrontational interview with the subject under investigation when the subject's claim of past, limited drug use was contradicted by other interviews indicating current drug use. If the subject deliberately withheld the information, this might leave him/her vulnerable to coercion and/or blackmail, which could pose a national security threat. Fully developing information was critical for the adjudicator to determine whether the subject could be appropriately placed in a position of public trust.

**Evaluation of FLSA Coverage**

Sections 551.201 and 551.202 of title 5, Code of Federal Regulations, require that an employing agency may designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles. Each employee is presumed to be FLSA nonexempt. Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption. The burden of proof rests with the agency that asserts the exemption. If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt. There are three exemption categories applicable to Federal employees: executive, administrative, and professional. Neither the claimant nor the agency assert the claimant's work is covered by the executive or professional exemptions and, based on careful review of the record, we concur. Therefore, our analysis is limited to the administrative exemption.

The agency asserts in its rationale for FLSA exemption that the:

> implementing regulations that govern OPM and DOL [Department of Labor] are completely different....The August 19, 2005, opinion letter [cited by OPM in its

> memorandum changing the claimant's FLSA status from exempt to nonexempt] cites the "revised final FLSA regulations under 29 C.F.R. [sic] § 541.203(j)" that specifically finds that public sector investigators do not meet the requirements for the administrative exemption, but the very abbreviated OPM regulation is silent on jobs or job types that should or should not be exempt....It is important to note that the DOL opinion letter is simply that: an opinion letter issued at the request of an unknown individual seeking an official DOL opinion, much like a non-binding private IRS ruling letter....In contrast, OPM's June 26, 2001 Decision No. F-1810-12-1 adjudicated a true case and/or controversy between the DSS and a GS-12 non-supervisory investigator. The duties...did not change in any important way as DSS between the time that the ...Oversight Division decision was issued and the date the employees transferred to OPM....
>
> The OPM June 26, 2001 Decision No. F-1810-12-1 is determinative regarding whether former DSS GS-1810-12 investigators should be re-classified as non-exempt based upon the administrative capacity exemption pursuant to 29 U.S.C. § 213(a)(1), unless OPM revises 5 C.F.R. [sic] § 551.206 by specifically declaring public sector investigators are not-exempt as DOL does with 29 C.F.R. [sic] § 541.203(j), or if OPM reconsiders and overrules Decision No. F-1810-12-1.

<u>Administrative Exemption Criteria</u>

Section 551.206 of 5 CFR contains criteria governing whether the claimant's position should be exempt from the FLSA under the administrative exemption criteria. The position is exempt if it meets administrative exemption criteria (a)(1), (2), or (3), known as the primary duty test, and (b) through (d). We note the agency's argument that OPM's FLSA implementing regulations are separate and distinct from those issued by DOL. We concur. As indicated in *Billings v. United States,* 332 F.3d 1328 (Fed. Cir. 2003):

> Because OPM administers the Fair Labor Standards Act with respect to employees of the federal government [sic], it is the OPM regulations, rather than the Labor Department regulations, that govern the application of the Fair Labor Standards Act to appellants. To be valid, however, the OPM regulation must be consistent with the Labor Department regulation.

Further, *Billings* states:

> Thus, we must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal [sic] and non-federal [sic] employees. *See, e.g., Zumerling v. Devine,* 769 F.2d 745, 750 (OPM's guidelines must "harmonize with the statute's 'origin and purpose,' ... as well as with the Secretary of Labor's regulations." (internal citations omitted)).

*Primary duty test*

The primary duty test is met if the work meets criterion (a)(1), (2), or (3).

Criterion (a)(1) deals with work that significantly affects the formulation or execution of management policies or programs.

Work that affects the formulation or execution of management programs and policies recognizes that management policies and programs range from broad national goals expressed in statutes or Executive Orders to specific objectives of a small field office. Employees may actually make policy decisions or participate indirectly, through developing proposals that others act on. Employees who significantly affect the execution of management policies or programs typically are those whose work involves obtaining compliance with such policies by individuals or organizations, both within or outside the Federal Government, or making significant determinations in furthering the operation of programs and accomplishing program objectives. Administrative employees engaged in such work typically perform one or more phases of program management; i.e., planning, developing, promoting, coordinating, controlling, or evaluating operating programs.

The administrative exemption applies to work directly related to assisting with the running or servicing of the agency or its customers. The DSS program functions covered by criterion (a)(1) were vested in other DSS employees engaged in such functions as developing and maintaining the investigator manual and evaluating field office program operations. The claimant was not engaged in formulation or execution of management policies or programs, e.g., evaluating operating programs of the organization. He was not engaged in obtaining compliance with program policies or determining the accomplishment of program objectives. Rather, he was responsible for conducting day-to-day investigative duties leading to the development of complete background investigations for DSS' customers. This work contributed to, but did not significantly affect security clearance and employment decisions since such decisions were made by the security and/or human resources staff of DoD components based on the factual information presented in the claimant's investigative reports which presented facts but did not draw conclusions or recommend actions. Therefore, we find that the claimant's work did not meet criterion (a)(1). Our previous decision cited by DSS failed to properly address the nature of DSS' investigations work and, therefore, must be set aside.

Criterion (a)(2) involves general management or business functions or supporting services of substantial importance to the organization serviced.

In addition to the difficult and complex analytical functions involved in general management, e.g., budgeting or financial management, general management or support services include services ranging from automated data processing to the procurement and distribution of supplies. Support may also entail providing expert advice in a specialized subject-matter field; assuming facets of the overall management function; or, representing management in business functions such as determining the acceptability of goods or services, or authorizing payments. The organizational location does not change service functions into non-exempt production functions. To warrant exemption from the FLSA, such work must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

Security functions are, in their broadest sense, staff support functions in that they assist management in making employment and security clearance decisions. However, just as clerical, technician, and blue collar work in a staff supply function fail to meet the administrative

exemption, not all work in other staff functions meet the administrative exemption. The claimant did not perform a support function of substantial importance to the organizations serviced as envisioned in the FLSA. While his work entailed the application of specialized subject-matter knowledge; i.e., a breadth and depth of investigative techniques, he did not perform support or other staff services as discussed under (a)(1). Rather than advising DSS management on program matters, representing DSS on management and/or program matters with customer agencies, he conducted fact-finding background investigations as discussed previously. Therefore, we find that the claimant's work does not meet criterion (a)(2).

Criterion (a)(3) involves substantial participation in the executive or administrative functions of a management official.

Work involving participation in the functions of a management official includes employees, such as secretaries and administrative assistants, who participate in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such assistants must have knowledge of the policies, plans, and views of the supervisor and must be delegated and exercise substantial authority to act for the supervisor. The claimant did not perform this type of work. Therefore, we find that the claimant's work did not meet criterion (a)(3).

Based on the preceding analysis, the claimant's work did not meet the primary duty test.

*Nonmanual duty test*

The nonmanual work test is met when the employee performs office or other predominantly nonmanual work which meets either criterion (b)(1) or (b)(2).

Criterion (b)(1) covers work that is intellectual and varied in nature.

Work of an intellectual nature requires general intellectual abilities, such as perceptiveness, analytical reasoning, perspective, and judgment applied to a variety of subject matter fields, or work involving mental processes which involve substantial judgment based on considering, selecting, adapting, and applying principles to numerous variables. The employee cannot rely on standardized procedures, or precedents, but must recognize and evaluate the effect of a continual variety of conditions or requirements in selecting, adapting or innovating techniques and procedures, interpreting findings, and selecting and recommending the best alternative from among a broad range of possible actions.

According to the claimant, and corroborated by his supervisor, most of the claimant's work was based on standardized procedures or precedents. For example, the investigation manual contained specific coverage requirements depending on the type of clearance, e.g., seven years' coverage for top secret. The manual provided a decision logic table for secret clearances to determine the scope of investigation necessary to respond to negative information, e.g., what action to take depending on the nature of the arrest or conviction. While the claimant was required to remain aware of changing conditions and interpreting findings, e.g., identifying leads and issues to explore by piecing together the information gathered, his selected courses of action were driven by established case coverage standards. The work was performed within the confines of well-established techniques and did not require or permit selecting, adapting, and

applying principles. While requiring the application of a high degree of skill and knowledge, the claimant had little discretion or opportunity to adapt or innovate techniques and procedures. The claimant's work does not meet criterion (b)(1).

Criterion (b)(2) covers work of a specialized or technical nature that requires considerable specialized training, experience, and knowledge.

Work meeting criterion (b)(2) requires specialized knowledge of a complex subject matter and of the principles, techniques, practices and procedures associated with that subject-matter field. This knowledge characteristically is acquired through considerable on-the-job training and experience in the specialized subject-matter field, as distinguished from professional knowledge characteristically acquired through specialized academic training.

The claimant's work required knowledge of personnel investigation and related laws, rules, and regulations; and knowledge of investigative techniques and procedures. This knowledge and skill was applied to the full range of PSIs, and highly sensitive special investigations. The in-depth practical knowledge required to perform the full range of work would typically come from several years of on-the-job training and experience. Accordingly, we find the position meets criterion (b)(2).

*Discretion and independent judgment test*

Work meeting this test (criterion (c)) requires the employee to frequently exercise discretion and independent judgment, under only general supervision, in performing the normal day-to-day work. Discretion and independent judgment means work that involves comparing and evaluating possible courses of conduct, interpreting results or implications, and independently taking action or making a decision after considering the various possibilities. However, firm commitments or final decisions are not necessary to support exemption. The "decisions" made as a result of the exercise of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and that on occasion the decisions are revised or reversed after review, does not mean that the employee is not exercising discretion and independent judgment of the level required for exemption.

Work reflective of discretion and independent judgment must meet the three following criteria: (1) The work must be sufficiently complex and varied so as to customarily and regularly require discretion and independent judgment in determining the approaches and techniques to be used, and in evaluating results. This precludes exempting an employee who performs work primarily requiring skill in applying standardized techniques or knowledge of established procedures, precedents, or other guidelines which specifically govern the employee's action; (2) The employee must have the authority to make such determinations during the course of assignments. This precludes exempting trainees who are in a line of work which requires discretion but who have not been given authority to decide discretionary matters independently; and (3) The decisions made independently must be significant. The term "significant" is not so restrictive as to include only the kinds of decisions made by employees who formulate policies or exercise broad commitment authority. However, the term does not extend to the kinds of decisions that affect only the procedural details of the employee's own work, or to such matters as deciding whether a situation does or does not conform to clearly applicable criteria. The exercise of discretion and independent judgment involves interpreting results or implications, and

independently taking action or making a decision after considering the various possibilities. Decisions made as the result of independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decisions are subject to review, and may be revised or reversed, does not mean an employee is not exercising discretion.

The claimant worked independently. However, he did not have the opportunity to exercise independent judgment in terms of analyzing and interpreting the situation, considering a variety of possibilities, and then deciding what should be done. Instead, he applied approved procedures and techniques and had limited discretion within those approved procedures, e.g., obtaining a sufficient number and quality of sources to meet coverage requirements, information sufficient for an adjudicator to reach a conclusion on derogatory and discrepant issues. The decisions he made were not significant within the meaning of the regulation in that they affected the procedural details of his work, e.g., how to balance work on the multiple investigations assigned at any time. As discussed previously, the work performed by the claimant involved the use of skills and the application of known standards or established procedures, as distinguished from work requiring the exercise of discretion and independent judgment. Therefore, the claimant's work fails to meet criterion (c).

*Criterion (d)*

In addition to the primary duty criterion, GS employees in positions classified at the GS-5 or GS-6 grade level must spend 80 percent or more of the work time in a representative work week on administrative functions and work that is an essential part of those functions. Because the claimant's position was classified above these grade levels, this criterion does not apply to the claimant's work.

The administrative exemption criteria are not met.

**Decision on FLSA Coverage**

Based on the above analysis, the claimant's position did not meet the criteria for executive, administrative, or professional exemption and is, therefore, properly covered by the overtime provisions of the FLSA.

*Willful violation*

The claimant asks that we determine whether his back pay should extend for two or three years. The latter is applicable to situations in which the employing agency willfully violated the FLSA. 5 CFR 551.104 defines "willful violation" specifically as follows:

> *Willful violation means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act. All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful.*

Clearly, not all violations of the FLSA are willful as this term is defined in the regulations. There is no question that the agency erred in the exempt status of the claimant. However, error alone does not reach the level of willful violation as defined in the regulations. A finding of

willful violation requires that either the agency knew that its conduct was prohibited or showed reckless disregard of the requirements of the FLSA. The regulation further instructs that the full circumstances surrounding the violation must be taken into account.

In the instant case, DSS' exemption determination was based on a decision issued by OPM as discussed previously. Therefore, we also find that the agency acted in good faith and did not recklessly disregard the requirements of the Act. Therefore, we find the agency's actions do not meet the criteria for willful violation as defined in 5 CFR 551.104.

**Decision**

The claimant's work is nonexempt; i.e., covered by the overtime provisions of the FLSA. Therefore, the claimant is entitled to compensation for all overtime hours worked at the FLSA overtime rate.

The agency states:

> If OPM overrules its decision or revises 5 C.F.R. [sic] 551.206, there should be no retroactive effect. *See generally Ackinclose v. Palm Beach County, Florida,* 845 F. 2d 931, 932-936 (11th Cir. 1988). (In the case of *Garcia v. San Antonio Metropolitan Authority* (1985) the US Supreme Court overruled its own decision, *National League of Cities v. Usery* (1976) (1976). For reasons analogous to this FLSA issue, the 11th Circuit refused to apply the *Garcia* decision retroactively).

Under 29 U.S.C. § 216, Federal courts have substantial discretion in fashioning remedies for violations of the FLSA. Unlike the courts, OPM's administrative claims process derives its remedy authority from the Back Pay Act, codified as 5 U.S.C. § 5596. It is well settled that "[t]he starting point for interpretation of a statute is the language of the statute itself," and "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S. Ct. 1570, 1575 (1990), *citing Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980). According to the plain language in 5 U.S.C. § 5596, there is no provision to modify or waive its retroactive effect.

The claim was received by OPM on June 2, 2006. The claimant can receive back pay only for two years prior to that date, less the back pay and interest from OPM received for FLSA overtime performed within the claim period. 5 CFR 550.806 also states that the claimant is owed interest on the back pay. The agency must follow the compliance requirements on page ii of this decision.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN ADAMS, et al.,<br>Plaintiffs,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | Case No. 90-162C<br>and consolidated cases<br>(Judge Lynn J. Bush) |

**DECLARATION OF EDGAR JAMES**

Edgar James, counsel for plaintiffs in this case, declares as follows:

1. Among the plaintiffs in this consolidated case are approximately 45 plaintiffs who were GS-12 and/or GS-13 criminal investigators who worked for the Criminal Investigative Division of the Office of Investigations at the Department of Health and Human Services ("HHS") during the time period dating from the three years prior to the particular plaintiff's filing of a claim in this case. In addition to these plaintiffs, some plaintiffs in this case worked as GS-9 and/or GS-11 grade level criminal investigators during the relevant time period and their claims for that time have not been litigated or settled.

2. Some of these HHS criminal investigators transferred to the newly created Social Security Administration ("SSA") on March 30, 1995.

3. In any event, both groups of criminal investigators were subject to the FLSA until September 17, 1995, when both HHS and SSA came under a new pay system for criminal investigators known as Law Enforcement Availability Pay ("LEAP"). By statute, the conversion of the criminal investigators to LEAP eliminated coverage under

the Fair Labor Standards Act.

4. Among the plaintiffs in this consolidated case are approximately 10 plaintiffs who were GS-12 and/or GS-13 criminal investigators who worked for the Office of Investigations at the Department of Housing and Urban Development ("HUD") during the time period dating from the thee years prior to the particular plaintiff's filing of a claim in this case until October 30, 1994, when they ceased to be covered by the Fair Labor Standards Act ("FLSA") and came under the pay system known as Law Enforcement Availability Pay ("LEAP").

5. A number of these plaintiffs have received or are about to receive back pay pursuant to the FLSA during the time that they were employed as GS-9 through GS-13 criminal investigators at the Internal Revenue Service, the United States Customs Service, the Drug Enforcement Administration, the United States Secret Service, and/or the Bureau of Alcohol, Tobacco and Firearms.

**DECLARATION PURSUANT TO 28 U.S.C. § 1746**

I declare that the foregoing is true and correct based on personal knowledge under penalty of perjury.

Date: 3/15/07

Edgar N. James

## STATUTORY AND REGULATORY INDEX

**Fair Labor Standards Act, 29 U.S.C. § 201 et seq.**

* * *

**§ 203. Definitions**

**As used in this chapter --**

* * *

(b) "Commerce" means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

(c) "State" means any State of the United States or the District of Columbia or any Territory or possession of the United States.

(d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

(e)(1) Except as provided in paragraphs (2), (3), and (4) the term "employee" means any individual employed by an employer.

(2) In the case of an individual employed by a public agency, such term means --

(A) any individual employed by the Government of the United States --

(i) as a civilian in the military departments (as defined in section 102 of Title 5),

(ii) in any executive agency (as defined in section 105 of such title),

* * *

(s) "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and which --

* * *

(6) is an activity of a public agency.

* * *

The employees or an enterprise which is a public agency shall for purposes of this subsection be deemed to be employees engaged in commerce, or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

* * *

(x) "Public agency" means the Government of the United States; the government of a State or political subdivision thereof; any agency of the United States (including the United States Postal Service and Postal Rate Commission), a State, or a political subdivision of a State; or any interstate governmental agency.

* * *

**§ 204. Administration**

* * *

**(f) Employees of Library of Congress; administration of provisions by Office of Personnel Management**

. . . Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States (other than an individual employed in the Library of Congress, United States Postal Service, Postal Rate Commission, or the Tennessee Valley Authority). Nothing in this subsection shall be construed to affect the right of an employee to bring an action for unpaid minimum wages, or unpaid overtime compensation, and liquidated damages under section 216(b) of this title.

* * *

**§ 207. Maximum Hours**

**(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.**

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

* * *

**(k) Employment by public agency engaged in fire protection or law enforcement activities.**

No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correction institutions) if --

(1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1) bears to 28 days, compensation at a rate not less than one and one-half times the regular rate at which he is employed.

* * *

**§ 213. Exemptions**

**(a) Minimum wage and maximum hour requirements**

The provisions of sections 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to --

(1) any employee employed in a bona fide executive, administrative, or professional capacity (including any employee employed in the capacity of academic administrative personnel or teacher in elementary or secondary schools), or in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary, subject to the provisions of subchapter II of chapter 5 of Title 5 . . .) . . . .

**(b) Maximum hour requirements**

The provisions of section 207 of this title shall not apply with respect to –

(30) a criminal investigator who is paid availability pay under section 5545a of Title 5.

* * *

**§ 216. Penalties**

* * *

**(b) Damages; right of action; attorney's fees and costs; termination of right of action**

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action . . . .

* * *

**§ 255. Statute of limitations.**

Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey act [41 U.S.C. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.] --

(a) if the cause of action accrues on or after May 14, 1947 -- may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued; . . .

* * *

**§ 259. Reliance in future on administrative rulings, etc.**

(a) In any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act [41 U.S.C.A. § 35 et seq.],

or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.], if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in subsection (b) of this section, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect.

(b) The agency referred to in subsection (a) of this section shall be --

(1) in the case of the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.] -- the Administrator of the Wage and Hour Division of the Department of Labor;

* * *

**§ 260. Liquidated damages.**

In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages under the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

**Law Enforcement Availability Pay of 1994, 5 U.S.C. § 5545a**

**§ 5545a. Availability pay for criminal investigators.**

(a) For purposes of this section –

(1) the term "available" refers to the availability of a criminal investigator and means that an investigator shall be considered generally and reasonably accessible by the agency employing such investigator to perform unscheduled duty based on the needs of an agency;

(2) the term "criminal investigator" means a law enforcement officer as defined under section 5541(3) (other than an officer occupying a position under title II of Public Law 99-399) who is required to –

(A) Possess a knowledge of investigative techniques, laws of evidence, rules of criminal procedure, and precedent court decisions concerning admissibility of evidence, constitutional rights, search and seizure, and related issues;

(B) recognize, develop, and present evidence that reconstructs events, sequences and time elements for presentation in various legal hearings and court proceedings;

(C) demonstrate skills in applying surveillance techniques, undercover work, and advising and assisting the United States Attorney in and out of court;

(D) demonstrate the ability to apply the full range of knowledge, skills, and abilities necessary for cases which are complex and unfold over a long period of time (as distinguished from certain other occupations that require the use of some investigative techniques in short-term situations that may end in arrest or detention);

(E) possess knowledge of criminal laws and Federal rules of procedure which apply to cases involving crimes against the United States, including –

(i) knowledge of the elements of a crime;

(ii) evidence required to prove the crime;

(iii) decisions involving arrest authority;

(iv) methods of criminal operations; and

(v) availability of detection devices; and

(F) possess the ability to follow leads that indicate a crime will be committed rather than initiate an investigation after a crime is committed;

(3) the term "unscheduled duty" means hours of duty a criminal investigator works, or is determined to be available for work, that are not –

(A) part of the 40 hours in the basic work week of the investigator; or

(B) overtime hours paid under section 5542; and

(4) the term "regular work day" means each day in the investigator's basic work week during which the investigator works at least 4 horus that are not overtime horus paid under section 5542 or hours considered part of section 5545a.

(b) The purpose of this section is to provide premium pay to criminal investigators to ensure the availability of criminal investigators for unscheduled duty in excess of a 40 hour work week based on the needs of the employing agency.

(c) Each criminal investigator shall be paid availability pay as provided under this section. Availability pay shall be paid to ensure the availability of the investigator for unscheduled duty. The investigator is generally responsible for recognizing, without supervision, circumstances

which require the investigator to be on duty or be available for unscheduled duty based on the needs of the agency. Availability pay provided to a criminal investigator for such unscheduled duty shall be paid instead of premium pay provided by other provisions of this subchapter, except premium pay for regularly scheduled overtime work as provided under section 5542, night duty, Sunday duty, and holiday duty.

(d)(1) A criminal investigator shall be paid availability pay, if the average of hours described under paragraph (2)(A) and (B) is equal to or greater than 2 hours.

(2) The hours referred to under paragraph (1) are –

(A) the annual average of unscheduled duty hours worked by the investigator in excess of each regular work day; and

(B) the annual average of unscheduled duty hours such investigator is available to work on each regular work day upon request of the employing agency.

(3) Unscheduled duty hours which are worked by an investigator on days that are not regular work days shall be considered in the calculation of the annual average of unscheduled duty hours worked or available for purposes of certification.

(4) An investigator shall be considered to be available when the investigator cannot reasonably and generally be accessible due to a status or assignment which is the result of an agency direction, order, or approval as provided under subsection (f)(1).

(e)(1) Each criminal investigator receiving availability pay under this section and the appropriate supervisory officer, to be designated by the head of the agency, shall make an annual certification to the head of the agency that the investigator has met, and is expected to meet, the requirements of subsection (d). The head of a law enforcement agency may prescribe regulations necessary to administer this subsection.

(2) Involuntary reduction in pay resulting from a denial of certification under paragraph (1) shall be a reduction in pay for purposes of section 7512(4) of this title.

(f)(1) A criminal investigator who is eligible for availability pay shall receive such pay during any period such investigator is –

(A) attending agency sanctioned training;

(B) on agency approved sick leave or annual leave;

(C) on agency ordered travel status; or

(D) on excused absence with pay for relocation purposes.

(2) Notwithstanding paragraph (1)(A), agencies or departments may provide availability pay to investigators during training which is considered initial, basic training usually provided in the first year of service.

(3) Agencies or departments may provide availability pay to investigators when on excused absence with pay, except as provided in paragraph (1)(D).

(g) Section 5545(c) shall not apply to any criminal investigator who is paid availability pay under this section.

(h) Availability pay under this section shall bee –

(1) 25 percent of the rate of basic pay for the position; and

(2) treated as part of the basic pay for purposes of –

(A) sections 5595(c), 8114(e), 8331(3), 8431, and 8704(c); and

(B) such other purposes as may be expressly provided for by law or as the Office of Personnel Management may by regulation prescribe.

(i) The provisions of subsections (a)-(h) providing for availability pay shall apply to a pilot employed by the United States Customs Service who is a law enforcement officer as defined under section 5541(3). For the purpose of this section, section 5542(d) of this title, and section 13(a)(16) and (b)(30) of the Fair Labor Standards Act of 1938 (29 U.S.C. 213(a)(16) and (b)(30)), such pilot shall be deemed to be a criminal investigator as defined in this section. The Office of Personnel Management may prescribe regulations to carry out this subsection.

(j) Notwithstanding any other provision of this section, any Office of Inspector General which employs fewer than 5 criminal investigators may elect not to cover such criminal investigators under this section.

**HISTORICAL AND STATUTORY NOTES**

**1994 Acts.** Section 633(e) of Pub.L. 103-329 provided that: "The amendments made by this section [enacting this section, amending sections 5542 and 5547 of this title and section 213 of Title 29, Labor, and enacting provisions set out as notes under this section and section 5541 of this title] shall take effect on the first day of the first applicable pay period which begins on or after the later of October 1, 1994, or the 30th day following the date of enactment of this Act [Sept. 30, 1994], except that:

"(1) Criminal investigators, employed in Offices of Inspectors General, who are not receiving administratively uncontrollable overtime compensation or who are receiving such premium pay at a rate less than 25 percent prior to the date of enactment of this Act [Sept. 30, 1994], may implement availability pay at any time prior to September 30, 1995, after which date availability pay as authorized under this section shall be provided to such criminal investigators.

"(2) Criminal investigators, employed by Offices of Inspectors General, who are receiving administratively uncontrollable overtime at a rate less than 25 percent, shall continue to receive this compensation at the same rate or higher until availability pay compensation is provided, which shall be no later than the last pay period ending on or before September 30, 1995."

**5 C.F.R. Ch. 1 (1-1-01 Edition)**

**Subpart A -- General Provisions**

**SOURCE: 62 FR 67244, Dec. 23, 1997, unless otherwise noted.**

**§ 551.101 General.**

(a) The Fair Labor Standards Act of 1938, as amended (referred to as "the Act" or "FLSA"), provides for minimum standards for both wages and overtime entitlement, and delineates administrative procedures by which covered worktime must be compensated. Included in the act are provisions related to child labor, equal pay, and portal-to-portal activities. In addition, the Act exempts specified employees or groups of employees from the application of certain of its provisions. It prescribes penalties for the commission of specifically prohibited acts.

(b) This part contains the regulations, criteria, and conditions that the Office of Personnel Management has prescribed for the administration of the Act. This part supplements and implements the Act, and must be read in conjunction with it.

* * *

**§ 551.102 Authority and administration.**

(a) *Office of Personnel Management.* Section 3(e)(2) of the Act authorizes the application of the provisions of the Act to any person employed by the Government of the United States, as specified in that section. Section 4(f) of the Act authorizes the Office of Personnel Management (OPM) to administer the provisions of the Act. OPM is the administrator of the provisions of the Act with respect to any person employed by an agency, except as specified in paragraphs (b), (c), and (d) of this section.

* * *

**§ 551.103 General principles governing exemptions.**

(a) *Covered.* Any employee of an agency who is not specifically excluded by another statute is covered by the Act. This includes any person who is --

(1) Defined as an employee in section 2105 of title 5, United States Code;

(2) A civilian employee appointed under other appropriate authority; or

(3) Suffered or permitted to work by an agency whether or not formally appointed. . . .

* * *

**§ 551.104 Definitions.**

In this part --

*Act* or *FLSA* means the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 201 *et seq*.).

*Administrative employee* means an employee who meets the criteria in § 551.206.

* * *

*Customarily and regularly* means a frequency which must be greater than occasional but which may be less than constant. For example, the requirement in § 551.205(a)(2) will be met by an employee who normally and recurrently exercises discretion and independent judgment in the day-to-day performance of duties.

* * *

*Management or general business function or supporting service*, as distinguished from production functions, means the work of employees who provide support to line managers.

(1) These employees furnish such support by --

(i) Providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts;

(ii) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;

(iii) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or

(iv) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.

(2) Neither the organizational location nor the number of employees performing identical or similar work changes management or general business functions or supporting services into production functions. The work, however, must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

* * *

*Participation in the executive or administrative functions of a management official* means the participation of employees, variously identified as secretaries, administrative or executive assistants, aides, etc., in portions of the managerial or administrative functions of a supervisor whose scope of responsibility precludes personally attending to all aspects of the work. To support exemption, such employees must be delegated and exercise substantial authority to act for the supervisory in the absence of specific instructions or procedures, and take actions which significantly affect the supervisor's effectiveness.

* * *

*Primary duty* typically means the duty that constitutes the major part (over 50 percent) of an employee's work. A duty constituting less than 50 percent of the work may be credited as the primary duty for exemption purposes provided that duty --

(1) Constitutes a substantial, regular part of a position;

(2) Governs the classification and qualification requirements of the position; and

(3) Is clearly exempt work in terms of the basic nature of the work, the frequency with which the employee must exercise discretion and independent judgment, and the significance of the decisions made.

* * *

*Reckless disregard of the requirements of the Act* means failure to make adequate inquire into whether conduct is in compliance with the Act.

* * *

*Statute of limitations* means the time frame within which an FLSA pay claim must be filed, starting from the date the right accrued. All FLSA pay claims filed on or after June 30, 1994, are subject to a 2-year statute of limitations, except in cases of willful violation where the statute of limitations is 3 years.

* * *

*Willful violation* means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act. All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful.

**Subpart B -- Exemptions and Exclusions**

**SOURCE: 62 FR 67247, Dec. 23, 1997, unless otherwise noted.**

**§ 551.201 Agency authority.**

The employing agency may designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria of this subpart and such supplemental interpretations or instructions issues by OPM.

**§ 551.202 General principles governing exemptions.**

In all exemption determinations, the agency must observe the following principles:

(a) Each employee is presumed to be FLSA nonexempt unless the employing agency correctly determines that the employee clearly meets one or more of the exemption criteria of this subpart and such supplemental interpretations or instructions issues by OPM.

(b) Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption.

(c) The burden of proof rests with the agency that asserts the exemption.

(d) An employee who clearly meets the criteria for exemption must be designated FLSA exempt. If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt.

* * *

**§ 551.206 Administrative exemption criteria.**

An *administrative employee* is an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service and meets all four of the following criteria:

(a) *Primary duty test.* The primary duty test is met if the employee's work --

(1) Significantly affects the formulation or execution of management policies or programs; or

(2) Involves management or general business functions or supporting services of substantial importance to the organization serviced; or

(3) Involves substantial participation in the executive or administrative functions of a management official.

(b) *Nonmanual work test.* The employee performs office of other predominantly nonmanual work which is --

(1) Intellectual and varied in nature; or

(2) Of a specialized or technical nature that requires considerable special training, experience, and knowledge.

(c) *Discretion and independent judgment test.* The employee frequently exercises discretion and independent judgment, under only general supervision, in performing the normal day-to-day work . . . .

* * *

**29 C.F.R. Part 541 (7-1-1994 Edition)**

**§ 541.205 Directly related to management policies or general business operations.**

(d) Under § 541.2 the "management policies or general business operations" may be those of the employer or the employer's customers. For example, many bona fide administrative employees perform important functions as advisers and consultants but are employed by a concern engaged in furnishing such services for a fee. Typical instances are tax experts, labor relations consultants, financial consultants, systems analysts, or resident buyers. Such employees, if they meet the other requirements of § 541.2, qualify for exemption regardless of whether the management policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer.

* * *

**29 C.F.R. Part 541 (7-1-2005 Edition)**

**§ 541.3 Scope of the section 13(a)(1) exemptions.**

* * *

(b)(1) The section 13(a)(1) exemptions and the regulations in this part also do not apply to police officers, detectives, deputy sheriffs, state troopers, highway patrol officers, investigators, inspectors, correctional officers, parole or probation officers, park rangers, fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers, hazardous materials workers and similar employees, regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims; preventing or detecting crimes; conducting investigations or inspections for violations of law; performing surveillance; pursuing, restraining and apprehending suspects; detaining or supervising suspected and convicted criminals, including those on probation or parole; interviewing witnesses; interrogating and fingerprinting suspects; preparing investigative reports; or other similar work.

(2) Such employees do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof as required under § 541.100. Thus, for example, a police officer or fire fighter whose primary duty is to investigate crimes or fight fires is not exempt under section 13(a)(1) of the Act merely because the police officer or fire fighter also directs the work of other employees in the conduct of an investigation or fighting a fire.

(3) Such employees do not qualify as exempt administrative employees because their primary duty is not the performance of work directly related to the management or general business operations of the employer or the employer's customers as required under § 541.200.

* * *

**§ 541.200 General rule for administrative employees.**

(a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

* * *

(b) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers . . . .