IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT REGARDING HHS CRIMINAL INVESTIGATORS

Pursuant to Rule 56(h)(2) of the Rules of this Court, defendant respectfully responds to plaintiffs' proposed findings of uncontroverted fact as follows:

1. Within the Office of Investigations ("OI") of the Office of the Inspector General ("OIG") at the Department of Health and Human Services ("HHS"), Plaintiffs worked directly for the Criminal Investigative Division ("CID") of the OI. Def. HHS App. at 46, 50, 58.

Response:

Defendant does not dispute this fact.

3.[1] The Social Security Administration ("SSA") was established as separate agency on March 30, 1995, and a number of these HHS CID OI criminal investigators were transferred to work under the SSA OIG. Def. HHS Statement of Fact ¶ 15.

Response:

Defendant does not dispute this fact.

[1] There was no paragraph 2 in plaintiffs' proposed findings of fact regarding HHS criminal investigators.

4. Criminal investigators at HHS and SSA were removed from coverage under the FLSA and converted to Law Enforcement Availability Pay ("LEAP") on September 17, 1995. Def. HHS Statement of Fact ¶ 40; Pl. HHS App. at, e.g., 270.

Response:

Defendant does not dispute this fact as to criminal investigators employed by HHS's OIG. For any other criminal investigators, this statement is irrelevant to the motions at issue.

5. Criminal investigators at HHS worked overtime for which they were not paid according to the FLSA, because they were treated as FLSA exempt at Grades 9 through 13 pursuant to the "administrative exemption" to the FLSA. Defendant's Motion for Partial Summary Judgment [with respect to HHS criminal investigators] at 2; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

Response:

Defendant does not dispute this fact except to the extent the paragraph could be construed to imply that all plaintiffs who worked as criminal investigators for HHS worked overtime for which they were not paid pursuant to the FLSA, because the evidence cited by plaintiff does not support this assertion.

6. While the criminal investigators at HHS had and have primary jurisdiction over certain statutes peculiar to their particular agency, the choice of which statutes to enforce is made by the state and federal prosecutors and not by the criminal investigator. Pl. HHS App. at 15-16; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

Response:

Defendant disputes this fact to the extent that it implies that prosecutors directed the investigations of GS-1811-12 and GS-1811-13 criminal investigators in HHS's OIG. Rather, GS-1811-12 and GS-1811-13 independently investigated fraud upon HHS and its programs and then presented their cases to prosecutors. E.g., Pl. HHS App. 249, 277, 301, 355 (various plaintiffs declaring, "[i]f I believed a case was worthy of prosecution, I would take it to the United States Attorney's Office ("USAO"). If the USAO was not interested, I would sometimes take it to a state or local prosecutor.") (emphasis added). Defendant does not dispute that the ultimate decision as to what a defendant would be charged with was made by prosecutors.

7. Federal prosecutors typically chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, false statements, false claims, and other criminal statutes of general applicability. Pl. HHS App. at, e.g., 212.

Response:

Defendant refers to its response to paragraph six, but does not otherwise dispute this fact.

8. According to Defendant, the role of IRS criminal investigators in the execution of IRS's policies is set forth in the Internal Revenue Manual:

> (1) The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness. To achieve that purpose, we will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . .
>
> (2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency . . . .

Pl. HHS App. at 103.

Response:

Defendant does not dispute that, as of February 24, 1992, this was a role of criminal investigators in the execution of IRS's policies as set forth in the Internal Revenue Manual. However, this fact is not material, as IRS criminal investigators are not at issue in the instant motion.

9. According to Defendant, IRS criminal investigators "determine the extent of compliance and the causes of noncompliance" and "detect fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HHS App. at 103-104.

Response:

Defendant does not dispute that, as of February 24, 1992, IRS criminal investigators performed these duties. However, this fact is not material, as IRS criminal investigators are not at issue in the instant motion.

10. Defendant argued in 1992 in this consolidated case that the role of IRS criminal investigator was to perform "supporting services," because "The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness." According to Defendant, IRS criminal investigators were performing exempt "supporting services" by "determin[ing] the extent of compliance and the causes of noncompliance" and "detect[ing] fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal

tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HHS App. at 101-104.

Response:

Defendant objects to this paragraph upon the ground that it is not a proposed finding of fact, but a characterization of an argument by defendant earlier in this case. Additionally, this paragraph is not material, as IRS criminal investigators are not at issue in the instant motion.

11. HHS runs over 300 programs to protect and promote the health and well being of all Americans through various health benefit and transfer payment programs. Pl. HHS App. at 170. HHS's mission to provide health benefits has not changed materially from its mission in the 1987-1995 time period. Def. HHS Statement of Fact ¶ 1. It is, and was, the nation's largest provider of health benefits, and, prior to the creation of the separate SSA in March 1995, was the largest provider of social security benefits to, principally, the disabled and the elderly. Pl. HHS App. at 173, 175.

Response:

Defendant does not dispute these facts.

12. HHS spent over one-third of the entire budget of the United States on these and related programs. The programs of HHS affect virtually every American citizen. Pl. HHS App. at 170.

Response:

Defendant does not dispute this fact, regarding the time period prior to the separation of SSA from HHS on March 30, 1995. Although it is not material, after March 30, 1995, HHS was closer to one-fifth of the budget of the United States. Budgetary Highlights (1 of 3), available at: http://www.hhs.gov/of/reports/account/acct96/I/b.highlights.1.html

13. The Office of the Inspector General ("OIG") promotes "high quality, cost-effective health care and human services, improved access to health care for all Americans, and the integrity of the Social Security and Medicare trust funds." See, e.g., Pl. HHS App. at 166.

Response:

Defendant does not dispute this fact, except to provide a more complete quotation from the foreword to the September 1992 Semi-Annual Report quoted by plaintiffs:

> In recognition of [HHS's] responsibility to meet the important social goals and pressing health needs of the American public, the Secretary has set specific objectives and established program directions for the operating divisions designed to achieve those objectives. The OIG's activities support those goals by promoting high quality, cost-effective health care and human services, improved access to health care for all Americans, and the integrity of the Social Security and Medicare trust funds.

Pl. HHS App. 166 (emphasis added).

14. The HHS OIG consisted of five organizational units:

(a) The Office of the Inspector General, which consists of the Inspector General and his administrative staff. Pl. HHS App. at 157.

(b) The Office of the Principal Deputy Inspector General, which is responsible for "the reporting and legislative and regulatory review functions required in

the law; for formulating and executing the OIG budget, for managing external affairs; for establishing functional policies for the general management of the OIG. In support of [OIG's] mission, the [Office of the Principal Deputy Inspector General] carried out and maintains an internal quality assurance system." Pl. HHS App. at 157-58. The Office of Management Policy ("OMP") is under the supervision of this office. Id. at 158.

(c) The Office of Audit Services ("OA") "provides policy direction for and conducts and oversees comprehensive audits of HHS programs, operations, grantees and contractors." Pl. HHS App. at 158-59. Most employees within the OIG work as administrative personnel within the OA. Pl. HHS App. at 32-33, 42-53.

(d) The Office of Evaluation and Inspections ("OEI") "is responsible for conducting inspections of HHS programs, operations and processes to identify vulnerabilities, to prevent and detect misconduct, and to promote economy, efficiency and effectiveness in HHS programs and operations." Pl. HHS App. at 163.

(e) The Office of Investigations and Enforcement ("OI") "is responsible to the Inspector General for carrying out the investigative mission of the OIG and for leading and providing general supervision to the OIG investigative component." Pl. HHS App. at 160-61. Under the OI is the Criminal Investigative Division ("CID") which is responsible for "conduct[ing] and direct[ing] criminal investigations of alleged or suspected violations of the criminal laws of the United States relating to the programs and operations of the Department." Def. HHS App. at 58.

Response:

Defendant does not dispute these facts.

15. The GS-12 and GS-13 criminal investigator Plaintiffs at HHS work for the CID. Def. HHS App. at 46, 50, 58. There are approximately 45 of these Plaintiffs in this case. Pl. HHS App. at 177.

Response:

Defendant does not dispute these facts.

16. More than three-fourths of the staff of the OIG carry out administrative functions for HHS and for the OIG but none of these are criminal investigators. For example, the accountants, auditors and program analysts within the OA and OEI consisted of approximately 926 employees in 1992, 876 in 1993, and 837 in 1994. Pl. HHS App. at 42-53, 136-143.

Response:

Defendant does not dispute that more than three-fourths of the staff of HHS's OIG carry out administrative functions, nor does defendant dispute the breakdown of accountants, auditors and program analysts within the OA and OEI set forth in this paragraph. Defendant objects to the remainder of this paragraph to the extent that it may be construed to assert that criminal investigators are not among the OIG staff who are employed in an administrative capacity within the meaning of 29 U.S.C. § 213, upon the ground that the paragraph states a conclusion of law concerning the ultimate issue of the instant cross motions. To the extent that this paragraph may be deemed to be a statement of fact, defendant disputes any contention that criminal investigators at HHS's OIG were not employed in an administrative capacity within the meaning of 29 U.S.C. § 213, based upon all of the facts established in our moving brief and appendix.

17. Approximately 263 criminal investigators worked for the CID in 1992, 254 in 1993, and 245 in 1994. Pl. HHS App. at 42-53.

Response:

Defendant does not dispute these facts.

18. The criminal investigators at HHS CID did the same investigative work as criminal investigators at other federal agencies and often work side by side with criminal investigators from a variety of state and federal agencies. Pl. HHS App. at 8-9; Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

Response:

Defendant disputes the proposed fact that criminal investigators in HHS's OIG "did the same work as criminal investigators at other federal agencies." While criminal investigators in HHS's OIG performed many of the same general duties as criminal investigators in other Federal agencies, such as interviewing witnesses, reviewing evidence and conducting surveillance, Pl. HHS App. 8-9, the types of violations of law investigated by criminal investigators in various Federal agencies varied significantly. Criminal investigators in HHS's OIG spent the vast majority of their time investigating fraud on HHS programs, Pl. Resp. to Def. HHS PFUF 3-4, which was not the case for criminal investigators in other Federal agencies. Plaintiffs have cited no evidence that criminal investigators in "other federal agencies" spent any time investigating fraud upon their own agencies. Defendant does not dispute that criminal investigators in HHS's OIG often worked with criminal investigators from other state and Federal agencies.

19. The range of functions that an HHS CID criminal investigator might perform is set forth in the Position Description; however, the Position Description does not provide information about what particular criminal investigators did every day, occasionally or not at all. Pl. HHS App. at 6-8, 213.

Response:

Defendant does not dispute this fact.

20. The FBI has concurrent jurisdiction over the criminal investigations at HHS. Pl. HHS App. at 10, 118-125

Response:

Defendant does not dispute this fact.

21. During the relevant time period, HHS CID criminal investigators were given a Digest of Applicable Statutes, Department of Health and Human Services, Office of Inspector General, Office of Investigations, which explained the principal criminal statutes that HHS criminal investigators were charged with enforcing. Pl. HHS App. at 15-16, 59-99, 211.

Response:

Defendant does not dispute this fact.

22. Criminal investigators within the HHS CID were also give a booklet on Social Security fraud that was issued in September 1992, SSA Fraud Awareness Guide, Office of Inspector General, Office of Investigations, U.S. Department of Health and Human Services. Pl. HHS App. at 211.

Response:

Defendant does not dispute this fact.

23. HHS CID criminal investigators had primary responsibility for certain criminal and civil penalty statutes of HHS. Pl. HHS App. at 11-12, 144-45.

Response:

Defendant does not dispute this fact.

24. These statutes included 42 U.S.C. § 408, covering Social Security fraud, 42 U.S.C. § 1320a-7a, a civil monetary penalties provision for certain other kinds of fraud, 42 U.S.C. § 1320a-7b, Medicare and Medicaid fraud rules including the anti-kickback provisions, and 42 U.S.C. § 1383a, Supplemental Security Income fraud. Pl. HHS App. at 15-16, 59-99, 144

Response:

Defendant does not dispute these facts.

25. Criminal investigators within the HHS CID enforced other criminal and civil statutes. Pl. HHS App. at 165, 169.

Response:

Defendant disputes this proposed finding. Criminal investigators within HHS's OIG investigated violations of other statutes, but did not otherwise "enforce" these statutes. Criminal investigators in HHS's OIG primarily investigated fraud against HHS's programs. HHS's OIG did not have the authority to "enforce laws," but rather, to protect the agency and its programs from waste, fraud and abuse. Inspector General Authority to Conduct Regulatory Investigations, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70,

at *2 n.1 (March 9, 1989) (the scope of an OIG's authority does not extend to "regulatory investigations," i.e., investigations that have the objective of "regulatory compliance by private parties," but rather, "investigations properly within the ambit of the Inspector General generally have as their objective the elimination of waste and fraud in governmental departments, including waste and fraud among its employees, contractors, grantees and other recipients of federal funds.").

26. Criminal investigators with HHS CID were also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws relating to the programs and operations of HHS. These statutes included, but were not limited to, 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit). Pl. HHS App. at, e.g., 212.

Response:

Defendant does not dispute this fact.

27. A typical GS-1811-12 or GS-1811-13 criminal investigator who worked for HHS CID during the period from February 16, 1987 through September 30, 1995 spent over 50 percent of his or her time investigating fraud involving HHS programs. Def. HHS Statement of Fact ¶ 5.

Response:

Defendant does not dispute this fact.

28. During the period from February 16, 1987 through September 30, 1995, the type of work and duties performed by typical GS-1811-12 or GS-1811-13 criminal investigators within HHS's CID did not vary significantly in the aggregate from year to year, except that, with limited exceptions, after March 30, 1995, GS-1811-12 or GS-1811-13 certain criminal investigators no longer investigated Social Security fraud. Def. HHS Statement of Fact ¶ 6; Def. HHS App. at 66.

Response:

Defendant does not dispute this fact, except to note that the word "certain" appears to be misplaced in this paragraph.

29. During the period from February 16, 1987 through March 30, 1995, a typical GS 1811-12 or GS 1811-13 criminal investigator in HHS CID spent at least 40-45 percent of his or her time investigating Medicare or Medicaid fraud. Def. HHS Statement of Fact ¶ 7; Def. HHS App. at 66.

Response:

Defendant does not dispute this fact.

30. The vast majority of Medicare and Medicaid fraud consisted of doctors, hospitals or others in the medical field falsely obtaining or misappropriating Medicare benefits. Def. HHS Statement of Fact ¶ 8; Def. HHS App. at 66-67, 84, 107-110.

Response:

Defendant does not dispute this fact.

31. Medicare and Medicaid fraud also consisted of health care companies and professionals paying kickbacks to other professionals and companies for Medicare and Medicaid referrals. Def. HHS Statement of Facts ¶ 9; Def. HHS App. at 67, 85, 111-12.

Response:

Defendant does not dispute this fact.

32. Another common type of Medicare or Medicaid fraud HHS's CID investigated was fraudulent schemes in which Medicare or Medicaid was billed for durable medical equipment that was never delivered, higher cost equipment than was actually delivered, totally unnecessary equipment or supplies or equipment delivered in a different state than billed in order to obtain higher reimbursement. Def. HHS Statement of Fact ¶ 10; Def. HHS App. at 91-92, 113-15.

Response:

Defendant does not dispute this fact.

33. During the period from February 16, 1987 through March 30, 1995, many GS 1811-12 or GS 1811-13 criminal investigators in HHS's CID spent approximately 40-45 percent of his or her time investigating Social Security fraud. About half of this time was spent investigating people fraudulently obtaining Social Security and Supplemental Security Income benefits. Def. HHS Statement of Fact 11; see also Def. HHS App. at 80-83, 116-21. The other half of this time was spent assisting other agencies and law enforcement authorities in investigating crimes involving the fraudulent use of Social Security numbers. Def. HHS Statement of Fact ¶ 11; Def. HHS App. at 67, 79-83, 116-23.

Response:

Defendant does not dispute this fact.

34. During the period from February 16, 1987 through March 30, 1995, a typical GS 1811-12 or GS 1811-13 criminal investigator in HHS's OIG spent approximately 5-15 percent of his or her time investigating other types of crimes involving HHS programs. Some examples include people fraudulently obtaining welfare payments or misusing HHS program grants. Def. HHS Statement of HHS Fact ¶ 13; Def. HHS App. at 67, 86-87, 93, 124-26.

Response:

Defendant does not dispute this fact.

35. During the period from February 16, 1987 through March 30, 1995, a typical GS 1811-12 or GS 1811-13 criminal investigator in HHS's OIG spent no more than 5 percent of his or her time investigating HHS employee misconduct. Def. HHS Statement of Fact ¶ 14; Def. HHS App. at 67, 86-87, 93, 124-26; see also Def. HHS App. at 78, 127.

Response:

Defendant does not dispute this fact.

36. On or about March 31, 1995, the SSA became an independent agency with its own OIG. Therefore, with limited exceptions for certain cases in progress, after March 30, 1995, criminal investigators in HHS's CID did not investigate Social Security fraud. As such, during the period from March 31, 1995 through September 30, 1995, a typical GS-1811-12 or GS 1811 13 criminal investigator in HHS's OIG spent approximately

80-85 percent of his or her time investigating Medicare and Medicaid fraud and approximately 10-15 percent of his or her time investigating other types of crimes involving at HHS programs. Def. HHS Statement of Fact ¶ 15; Def. HHS App. at 67-68, 106.

Response:

Defendant does not dispute this fact.

37. HHS CID criminal investigators were issued a variety of weapons, most commonly a revolver and later a 9 mm semi-automatic pistol. Declarations of Plaintiffs, Volume II of Pl. HHS App. at 193-411.

Response:

Defendant does not dispute this fact.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ Jeanne E. Davidson

JEANNE E. DAVIDSON
Director

/s/ Shalom Brilliant

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7561

Attorneys for Defendant

OF COUNSEL:
Michael J. Dierberg
William P. Rayel
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

May 14, 2007