IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 90-162C |
| | ) | and consolidated cases |
| THE UNITED STATES, | ) | (Judge Bush) |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT REGARDING HUD CRIMINAL INVESTIGATORS

Pursuant to Rule 56(h)(2) of the Rules of this Court, defendant responds to plaintiffs' proposed findings of uncontroverted fact as follows:

1. The mission of HUD is to provide safe and affordable housing. Def. HUD Statement of Fact ¶ 10; Pl. HUD App. at, e.g., 78, 87, 174, 192, 197 (With some variation, this definition appears in nearly every semi-annual HUD IG Report to Congress.) HUD is one of the largest financial institutions in the world, and a book that HUD has published regularly, The Programs of HUD (1989-1990 edition), lists the principal HUD programs that support its mission. Pl. HUD App. at 86.

Response:

Defendant does not dispute this fact, except that it would be more accurate to say that The Programs of HUD lists the principal HUD programs through which HUD's mission is fulfilled.

2. Plaintiffs worked as GS-12 and GS-13 criminal investigators in the Office of Investigations ("OI") of the Office of the Inspector General ("OIG") at the Department of Housing and Urban Development ("HUD"). Pl. HUD App. at 81-82, 84.

Response:

Defendant does not dispute this fact.

3. Approximately 10 Plaintiffs worked as GS-12 and/or GS-13 criminal investigators in the OI at HUD during the relevant time period. Pl. HUD App. at157.

Response:

Defendant does not dispute this fact

4. Criminal investigators at HUD were removed from coverage under the FLSA and converted to LEAP on October 30, 1994. Def. HUD Statement of Fact 29; Pl. HUD App. at, e.g., 192.

Response:

Defendant does not dispute this fact.

5. Criminal investigators at HUD worked overtime for which they were not paid according to the FLSA, because they were treated as FLSA exempt at Grades 9 through 13 pursuant to the "administrative exemption" to the FLSA. Defendant's Motion for Partial Summary Judgment for the HUD criminal investigators at 2; see Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

Response:

Defendant does not dispute this fact except to the extent the paragraph could be construed to imply that all plaintiffs who worked as criminal investigators for HUD worked overtime for which they were not paid pursuant to the FLSA, because the evidence cited by plaintiff does not support this assertion.

6. While the criminal investigators at HUD had and have primary jurisdiction over certain statutes peculiar to HUD, the choice of which statutes to enforce is made by the state and federal prosecutors and not by the criminal investigator. Pl. HUD App. at 10-11, 175, 193.

Response:

Defendant disputes this fact to the extent that it implies that prosecutors directed the investigations of GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG. Although criminal investigators coordinated with prosecutors at "a point" in their investigations, Pl. HUD App. 10, GS-1811-12 and GS-1811-13 criminal investigators had almost complete discretion to follow a case wherever the evidence led them. Def. HUD App. 49, 61. GS-1811-12 and GS-1811-13 criminal investigators in HUD's OIG often generated their own cases through various contacts, see, e.g., Pl. HUD App. 174, 198, 210, 223, and recommended prosecution when they believed a case was worthy of prosecution. See Pl. HUD App. 255 (Katherine E. Tackas "researched the matter and interviewed HUD attorneys and program officials and was able to convince the Assistant United States Attorney ("AUSA") to prosecute."). Defendant does not dispute that the ultimate decision as to what a defendant would be charged with was made by prosecutors.

7. Federal prosecutors typically chose to apply the general federal statutes criminalizing mail and wire fraud, conspiracy, false statements, false claims, and other criminal statutes of general applicability. Pl. HUD App. at, e.g., 175, 193.

Response:

Defendant does not dispute this fact.

8. According to Defendant, the role of IRS criminal investigators in the execution of IRS's policies is set forth in the Internal Revenue Manual:

> (1) The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness. To achieve that purpose, we will: . . . determine the extent of compliance and the causes of noncompliance; do all things needed for the proper administration and enforcement of the tax laws . . .
>
> (2) In order to fulfill this mission, the Service must establish programs and facilities for receiving and processing returns, for detecting fraud and delinquency . . .

Pl. HUD App. at 23.

Response:

Defendant does not dispute that, as of February 24, 1992, this was a role of criminal investigators in the execution of IRS's policies as set forth in the Internal Revenue Manual. However, this fact is not material, as IRS criminal investigators are not at issue in the instant motion.

9. According to Defendant, IRS criminal investigators "determine the extent of compliance and the causes of noncompliance" and "detect fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HUD App. at 23-24.

Response:

Defendant does not dispute that, as of February 24, 1992, IRS criminal investigators performed these duties. However, this fact is not material, as IRS criminal investigators are not at issue in the instant motion.

10. Defendant asserted in 1992 that the role of IRS criminal investigator was to perform "supporting services," because "The purpose of the IRS is to collect the proper amount of tax revenues at least cost to the public, and in a manner that warrants the highest degree of public confidence in integrity, efficiency and fairness." Defendant argued that the IRS criminal investigators were performing exempt "supporting services" by "determin[ing] the extent of compliance and the causes of noncompliance" and "detect[ing] fraud and delinquency" by "conduct[ing] investigations of alleged criminal violations of Federal tax law . . .; mak[ing] recommendations with respect to criminal prosecutions and the assertion of Civil penalties against taxpayers . . . ; and assist[ing] the United States Attorney in the preparation of the case during the trial." Pl. HUD App. at 21, 23-24.

Response:

Defendant objects to this paragraph upon the ground that it is not a proposed finding of fact but a characterization of an argument by defendant earlier in this case. Additionally, this paragraph is not material, as IRS criminal investigators are not at issue in the instant motion.

11. The HUD OIG's Office of Field Investigations ("OI") was "primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to [HUD's] programs." Def. HUD Statement of Fact ¶ 3.

Response:

Defendant does not dispute this fact.

12. The HUD OIG has a headquarters office in Washington, D.C. and offices in 10 HUD regions. HUD IG consists of three Offices:

(a) The Office of Audit ("OA") is responsible for the development and implementation of the Department's audit activities. Pl. HUD App. at 80.

(b) The OI is responsible for:

(1) Coordinating with the appropriate United States Attorney, the FBI or other Federal enforcement agencies, information of alleged or proven criminal violations by persons or companies engaged in the Department's programs. Def. HUD App. at 82.

(2) Conducting investigations of alleged violations of laws or regulations in the administration of the Department's programs. Id.

(3) Writing reports about the results of all investigations. Id.

(c) The Office of Management and Policy ("OMAP") is responsible for serving as the focal point for the Department's efforts to minimize the opportunities for and occurrences of fraud, waste, and abuse in HUD programs, activities and functions. Pl. HUD App. at 83.

Response:

Defendant does not dispute these facts.

13. More than three-fourths of the staff of the OIG carry out administrative functions for the Department and for the OIG but none of these are criminal investigators. For example, the accountants and others within the OA and OMAP consisted of approximately 375 employees in 1992, 441 in 1993, and 359 in 1994. Pl. HUD App. at 85

Response:

Defendant does not dispute that more than three-fourths of the staff of HUD's OIG carry out administrative functions, nor does defendant dispute the breakdown of accountants, auditors and program analysts within the OA and OMAP set forth in this paragraph. Defendant objects to the remainder of this paragraph to the extent that it may be construed to assert that criminal investigators are not among the OIG staff who are employed in an administrative capacity within the meaning of 29 U.S.C. § 213, upon the ground that the paragraph states a conclusion of law concerning the ultimate issue of the instant cross motions. To the extent that this paragraph may be deemed to be a statement of fact, defendant disputes any contention that criminal investigators at HUD's OIG were not employed in an administrative capacity within the meaning of 29 U.S.C. § 213, based upon all of the facts established in our moving brief and appendix.

14. There were approximately 108 criminal investigators at all grades in 1992, 99 in 1993, and 108 in 1994. Id.

Response:

Defendant does not dispute this fact.

15. The criminal investigators at HUD's OI did the same investigative work as criminal investigators at other federal agencies. Pl. HUD App. at 7, e.g., 176, 211-12, 218.

Response:

Defendant disputes the proposed fact that criminal investigators in HUD's OIG "did the same work as criminal investigators at other federal agencies." While criminal investigators in HUD's OIG performed many of the same general duties as criminal investigators in other Federal agencies, such as interviewing witnesses, reviewing evidence and conducting

surveillance, Pl. HUD App. 8-9, the types of violations of law investigated by criminal investigators in various federal agencies varied significantly. Criminal investigators in HUD's OIG spent the vast majority of their time investigating fraud on HUD programs or investigating violent crime in public and assisted housing, Pl. Resp. to Def. HUD PFUF 3, 5, which was not the case for criminal investigators in other Federal agencies. Plaintiffs have cited no evidence that criminal investigators in "other federal agencies" spent any time investigating fraud upon their own agencies.

16. Criminal investigators at HUD, however, most often work alone as the only HUD agent on a case, Pl. HUD App. at 14, 267, and they spent a majority of their time planning and conducting investigations. Id. at 267.

Response:

Defendant does not dispute these facts.

17. During the period February 1987 through approximately February 1994, approximately 98% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time was spent planning and conducting investigations into fraud upon HUD programs. Pl. HUD App. at 177, 194.

Response:

Defendant does not dispute this fact.

18. The other approximate 2% of a typical GS-1811-12 or GS-1811-13 criminal investigator's time during the period February 1987 through approximately February 1994 was spent investigating misconduct by HUD employees. Def. HUD Statement of Fact ¶ 7.

Response:

Defendant does not dispute this fact.

19. Examples of the types of fraud GS-1811-12 and GS-1811-13 criminal investigators investigated are false statements, embezzlement, bribery and kickbacks. Def. HUD Statement of Fact ¶ 5. False statement cases consisted primarily of grantees making false statements in order to fraudulently obtain grant money from the various HUD programs. Id. Embezzlement cases consisted mainly of grantees diverting HUD program money for a purpose other than what was authorized by the grant. Id. “Kickback” cases consisted largely of people accepting money in exchange for HUD funded loans or grants. Id.

Response:

Defendant does not dispute these facts.

20. There are several specific criminal statutes uniquely applicable to HUD programs. The first, 18 U.S.C. § 1010, “Department of Housing and Urban Development and Federal Housing Administration Transactions,” prohibits the making of false statements or documents in connection with a loan, credit facility or mortgage insured by the Department. The second, 18 U.S.C. § 1012, “Department of Housing and Urban Development transaction,” prohibits certain false representations or failure to disclose certain information to the Department. The third, 12 U.S.C. § 1715z-19, “Equity Skimming Penalty,” provides a felony penalty for pocketing the funds from certain housing projects when the project is financially distressed or the mortgage in default. In addition, another equity skimming statute, 12 U.S.C. § 1709-2, for single family mortgages, provides criminal penalties for those who collect rents on properties with HUD insured mortgages and then do not use the money to pay the mortgage. The fourth statute, 12 U.S.C. § 2607, an anti-kickback statue, provides criminal penalties for those who pay or accept

kickbacks in connection with HUD insured mortgages or any federally backed mortgage. Pl. HUD App. at, e.g., 174-75, 192-93.

Response:

Defendant does not dispute these facts.

21. Criminal investigators with HUD OI were also responsible for conducting criminal investigations of alleged or suspected criminal violations of the general criminal laws relating to the programs and operations of HUD. These statutes included, but were not limited to, 18 U.S.C. §§ 287 (False Claims), 371 (Conspiracy), 495 (Counterfeiting And Forgery), 641 (Theft Of Public Money Or Property), 666 (Theft Of Federal Funds), 1001 (False Statements), 1028 (Fraudulent Identification Documents), 1341 (Mail Fraud), 1505 (Obstruction Of Agency Proceeding), 1510 (Obstruction Of Criminal Investigation), and 1516 (Obstruction Of A Federal Audit). Pl. HUD App. at, e.g., 198-99, 217.

Response:

Defendant does not dispute these facts.

22. The FBI has concurrent jurisdiction over HUD criminal investigations. Pl. HUD App. at, e.g., 175, 211, 224.

Response:

Defendant does not dispute this fact.

23. In February 1994, the national program of HUD known as Operation Safe Home was announced. Def. HUD Statement of Fact ¶ 8. Operation Safe Home focused upon three major types of wrongdoing that undermine HUD programs: (a) violent crime in public and

assisted housing; (b) fraud in public housing administration; and (c) equity skimming in multifamily insured housing. Id.

Response:

Defendant does not dispute these facts.

24. While Operation Safe Home was a new project for some criminal investigators, Def. HUD Statement of Fact ¶ 9, a number of Plaintiffs in this case began working on the issue of violent crime in public housing projects in earlier years. Pl. HUD App. at 205, 224.

Response:

Defendant does not dispute this fact, except to note that the “number” of plaintiffs in this case that began working on the issue of violent crime in public housing projects before February 1994 is two. Pl. HUD App. 205, 224.

25. During the relevant time period of three years prior to a complaint being filed by a HUD criminal investigator, some GS-1811-12 or GS-1811-13 criminal investigators for HUD’s OIG spent a majority of their time working on cases involving violent crime in public and assisted housing, while others continued to spend the majority of their time investigating fraud upon HUD programs. Def. HUD Statement of Fact ¶ 11; see Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

Response:

Defendant does not dispute these facts.

26. During the period from February 1987 through October 1994, the typical day-to-day duties of GS-1811-12 and GS-1811-13 criminal investigators in HUD’s OIG varied depending upon what type of case they were working on. Def. HUD Statement of Fact ¶ 12.

However, GS-1811-12 and GS-1811-13 investigators in HUD's OIG spent the majority of their time engaged in typical law enforcement duties such as planning and conducting investigations, collecting and reviewing evidence, conducting surveillance and interviewing witnesses. Id. at ¶ 12; Pl. HUD App. at 177, 194, 267.

Response:

Defendant does not dispute these facts.

27. For fraud investigations, collecting evidence consisted predominantly of reviewing paperwork. Def. HUD Statement of Fact ¶ 13. For violent crime investigations, evidence was usually collected through warrants or informants, surveillance and purchasing contraband. Id.

Response:

Defendant does not dispute these facts.

28. Other duties consisted of initiating contact with Federal, state and local officials, preparing investigative reports, providing advice and assistance to the Department of Justice and United States Attorneys in preparing cases to present before grand juries and at trial and testifying before grand juries and at trial. Id. ¶ 14.

Response:

Defendant does not dispute this fact.

29. During the relevant time period, criminal investigators with HUD were issued revolvers that were replaced in 1994 by a 9 mm semi-automatic pistol. Some agents were issued or had access to 12 gauge shotguns and an H & K machine gun. Declarations of Plaintiffs, Volume II of Pl. HUD App. at 172-269.

Response:

Defendant does not dispute these facts.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ Jeanne E. Davidson

JEANNE E. DAVIDSON
Director

/s/ Shalom Brilliant

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305-7561

Attorneys for Defendant

OF COUNSEL:
Michael J. Dierberg
William P. Rayel
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

May 14, 2007