No. 90-162C
(Judge Bush)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN S. ADAMS, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO CRIMINAL INVESTIGATORS EMPLOYED BY THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

Edgar James
Sean Bajkowski
Of Counsel
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Jules Bernstein
Counsel of Record
Linda Lipsett
Of Counsel
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

ARGUMENT.........................................................................................................4

A. The Fact That Most Of Plaintiffs' Criminal Investigations Involved Fraud Against HUD Is Irrelevant To Their Exemption Status..........................................4

B. The Administration/Production Dichotomy Does Not Control The Primary Duty Test.........................................................................................................7

C. Plaintiffs' Primary Duty Is Not A "Supporting Service".......................................13

CONCLUSION......................................................................................................20

**TABLE OF AUTHORITIES**
**CASES**

Adam v. United States, 26 Cl. Ct. 782 (1992) ....................12, 14

Adams v. United States, 27 Fed. Cl. 5 (1992), rev'd in part and remanded, 178 F.3d 1306, 1998 WL 804552 (Fed. Cir. Sept. 23, 1998) .................... passim

Adams v. United States, No. 90-162C and Consolidated Cases (Fed. Cl. Dec. 1, 2004) ...............2

Adams v. United States, 65 Fed. Cl. 195 (2005) ....................2, 5, 9

Amshey v. United States, 26 Cl. Ct. 582 (1992)....................19

Auer v. Robbins, 65 F.3d 702 (8th Cir. 1995) ....................15, 16

Berg v. United States, 49 Fed. Cl. 459 (2001) ....................4, 14, 17, 18, 19

Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002) .................... passim

Campbell v. U.S. Air Force, 775 F. Supp. 893 (E.D. Cal. 1990) ....................18, 19

Dymond v. United States Postal Service, 670 F.2d 93 (8th Cir. 1982) ....................12

Ferrell v. Gwinnett County Bd. of Ed., 481 F. Supp. 2d 1338 (N.D. Ga 2007) ...............11, 12, 13

In re Lueders, 111 F.3d 1569 (Fed. Cir. 1997) ....................15

Locker v. Bolger, 644 F.2d 39 (D.C. Cir. 1981) ....................12

Martin v. Indiana Michigan Power Co., 381 F.3d 574 (6th Cir. 2004) ....................7, 8, 9, 10, 12

Mulverhill v. New York, No. 87-CV-853, 1994 WL 263594 (N.D.N.Y. May 19, 1994) ....................4, 17, 19

Raper v. Iowa, 688 N.W.2d 29 (Iowa 2004)....................15, 16

Roney v. United States, 790 F. Supp. 23 (D.D.C. 1992) ....................12, 18

Schaefer v. Indiana Michigan Power Co., 358 F.3d 394 (6th Cir. 2004) ....................9

Shaw v. Prentice Hall Computer Publishing, Inc., 151 F.3d 640 (7th Cir. 1998) ....................9

Shockley v. City of Newport News, 997 F.2d 18 (4th Cir. 1993) ....................15, 16

Smith v. Wynfield Dev. Co., 451 F. Supp. 2d 1327 (N.D. Ga. 2006) ....................12

Sports Graphics, Inc. v. United States, 24 F.3d 1390 (Fed. Cir. 1994) ....................................13

Sprague v. United States, 677 F.2d 865 (Ct. Cl. 1982)..........................................................12

Statham v. United States, No. 00-699C, 2002 WL 31292278
(Fed. Cl. Sept. 11, 2002)..................................................................10, 11, 12, 14

**REGULATIONS**

Title 5 C.F.R. (2001 edition)

5 C.F.R. § 551.104..............................................................................................8, 10, 15

5 C.F.R. § 551.104(1)(iv)...........................................................................................2, 13

5 C.F.R. § 551.206(a)(2)..............................................................................................1, 7

Title 29 C.F.R. (1994 edition)

29 C.F.R. § 541.2(a)(1).....................................................................................................1

29 C.F.R. § 541.205(b) .................................................................................................14, 15

29 C.F.R. § 541.205(c)(1)..................................................................................................8

Title 29 C.F.R. (2005 edition)

29 C.F.R. § 541.201(a).....................................................................................................16

29 C.F.R. § 541.3(b) ........................................................................................................15

Federal Register (April 23, 2004)

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 et seq. (DOL Apr. 23, 2004) ..................................................................................... passim

**ADMINISTRATIVE DECISIONS**

OPM Decision Number F-1810-12-02 (Oct. 16, 2006)...............................................10, 11

Inspector General Authority to Conduct Regulatory Investigations, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70 (March 9, 1989) .............................................................6

**PLAINTIFFS' REPLY REGARDING HUD CRIMINAL INVESTIGATORS**

Plaintiffs, approximately 10 non-supervisory OPM Series 1811 GS-12 and GS-13 criminal investigators employed by the Department of Housing and Urban Development ("HUD"), submit this Reply to Defendant's Response ("Def. HUD Resp.") to Plaintiffs' Cross-Motion For Partial Summary Judgment ("Pl. HUD Mem.") and to Defendant's Reply to Plaintiffs' Proposed Findings of Fact ("Def. HUD Fact Reply"). Plaintiffs submit that Defendant has failed to successfully rebut Plaintiffs' arguments and has not met its heavy burden of establishing that Plaintiffs were subject to the administrative exemption to the Fair Labor Standards Act ("FLSA"). Accordingly, Plaintiffs respectfully request that this Court issue summary judgment in their favor.

**INTRODUCTION**

This case turns on a narrow legal issue: whether Plaintiffs' primary duty constituted "supporting services" to HUD for purposes of 5 C.F.R. § 551.206(a)(2). [1] Def. HUD Resp. at 3. There is no disagreement between the parties the GS-1811-12 and GS-1811-13 criminal investigators "primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to [HUD's] programs." Def. HUD Fact Reply at ¶ 11. Nor is there any dispute that in performing this primary function, Plaintiffs' day-to-day work activities primarily consisted of traditional investigatory tasks "such as interviewing witnesses, reviewing evidence, and conducting surveillance." Def. HUD Fact Reply at ¶ 15.

[1] Or, in the parlance of the Department of Labor ("DOL"), the performance of "work directly related to management policies or general business operations of his employer[.]" 29 C.F.R. § 541.2(a)(1).

Plaintiffs argue that these duties are not exempt supporting services. "Supporting service" is clearly defined in the controlling OPM regulation as "services such as automated data processing, communications, or procurement and distribution of supplies." 5 C.F.R. § 551.104(1)(iv). Defendant does not argue, nor could it plausibly argue, that investigating crimes is similar to any of the tasks listed in that regulatory definition. Moreover, Defendant candidly admits that Plaintiffs' work is essentially the same as work engaged in by other criminal investigators. Pl. HUD App. at 7 (Testimony of HUD Assistant Inspector General for Investigations); Def. HUD Statement of Fact ¶¶ 12-13. This includes the work performed by those criminal investigators who have already been determined to be non-exempt by this Court.[2] Def. HUD Mem. at 17 ("The duties performed by [Plaintiffs] are similar to the duties performed by GS-1811-12 and GS-1811-13 criminal investigators in the agencies at issue in Adams I[.]"). Relying on the regulatory definition, this Court's prior decisions, and numerous other authorities considering the exemption status of employees whose primary duty was to conduct criminal investigations, Plaintiffs argue that they do not satisfy the primary duty test and are therefore not exempt from the FLSA.

Defendant, which bears the heavy burden of proving the exemption, attempts to avoid this conclusion by arguing that Plaintiffs' actual day-to-day duties are essentially irrelevant to the primary duty test. It does so on two grounds. Bringing a new argument to the fore in its Response, Defendant attempts to distinguish Plaintiffs from non-exempt criminal investigators at other federal agencies by asserting that they conducted their

---

[2] Adams v. U.S., 27 Fed. Cl. 5 (1992) ("Adams I"), rev'd in part, 178 F.2d 1306 (Fed. Cir. 1998) ("Adams II"); Adams v. U.S., No. 90-162C and Consolidated Cases (Fed. Cl. Dec. 1, 2004) (Unpublished Opinion) ("Adams III"); Adams v. U.S., 65 Fed. Cl. 195 (2005) ("Adams IV").

investigations for the purpose of "preventing fraud upon HUD and its programs or protecting HUD's public and assisted housing from violent crime" which was allegedly "not the case for criminal investigators in other agencies." Def. HUD Resp. at 9; Def. HUD Fact Reply at ¶ 15. This argument fails because its factual predicate is demonstrably false. As Defendant itself admitted in its briefs in Adams I, non-exempt criminal investigators with IRS "determine the extent of compliance and non-compliance" with the IRS mission of collecting taxes by "detect[ing] fraud and delinquency" while non-exempt criminal investigators with Customs "conduct investigations relative to the prevention and detection of fraud affecting Customs revenue through under-evaluation of merchandise; smuggling of merchandise and contraband." Pl. HUD App. at 23-24.

The Government also defends the theory it primarily relied upon in its brief-in-chief – that a rigidly formalistic conception of the administration/production dichotomy controls this case. This argument is doubly flawed. First, the assumption that the dichotomy controls the primary duty test is incorrect as a matter of law. See, e.g., Bothell v. Phase Metrics, 299 F.3d 1120, 1127 (9th Cir. 2002) ("the [dichotomy] should only be employed as a tool toward answering the ultimate question, whether work is directly related to management policies or general business operations, not as an end in itself.").[3] Second, the notion that the dichotomy is a rigidly formalistic sorting device which demands an extremely tight nexus between an employee's work and their employer's

[3] Bothell was explicitly adopted as authoritative by DOL in its extensive commentary on the white-collar exemptions, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 et seq. (DOL Apr. 23, 2004) ("2004 Commentary"), reproduced in relevant part in Pl. HUD App. at 28-38.

primary product or mission cannot be squared with the precedents of this and other courts, which clearly indicate that it is a flexible analytical tool. See, e.g., Berg v. U.S., 49 Fed. Cl. 459, 471-72 (2001); Mulverhill v. New York, No. 87-CV-853, 1994 WL 263594, *1 (N.D.N.Y. May 19, 1994).

In sum, Defendant's attempts to turn the focus of the primary duty inquiry away from Plaintiffs' actual primary duties simply cannot be squared with the law. Any fair comparison of those duties with the regulatory definition of "support service" and the caselaw considering the exemption status of employees doing similar work can support only one conclusion: Plaintiffs are not exempt from the FLSA.

## ARGUMENT

### A. The Fact That Most Of Plaintiffs' Criminal Investigations Involved Fraud Against HUD Is Irrelevant To Their Exemption Status

Defendant attempts to distinguish Plaintiffs from other, non-exempt, federal criminal investigators by asserting that Plaintiffs spent the majority of their time investigating fraud against their own agency while other federal criminal investigators did not. Indeed, Defendant makes this distinction central to its argument. See, e.g., Def. HUD Resp. at 12. This argument depends entirely on a single factual premise: that this "was not the case for criminal investigators at other agencies" which is in turn supported by the claim that "Plaintiffs have cited no evidence that criminal investigators 'in other federal agencies' spent any time investigating fraud upon their own agencies." Def. HUD Fact Reply at ¶ 15.

Setting aside the question of whether this purported distinction, if true, would support Defendant's case, it can be easily disposed of because it is, in fact, simply false. Plaintiffs have cited evidence that other criminal investigators investigated fraud against

their own agencies – admissions in Defendant's own brief in Adams I. See Pl. HUD Mem. at 22-23.[4] Therein, Defendant argued that IRS criminal investigators performed "supporting services" because they "determine the extent of compliance and non-compliance" with the IRS mission of collecting taxes by "detect[ing] fraud and delinquency." Pl. HUD App. at 23-24 (emphasis added).[5] Similarly, Defendant claimed that Customs criminal investigators "conduct investigations relative to the prevention and detection of fraud affecting Customs revenue through under-evaluation of merchandise; smuggling of merchandise and contraband" and other misconduct. Id. at 24 (emphasis added). This argument was rejected with respect to criminal investigators with IRS and Customs. Adams I, 27 Fed. Ct. at 15-16; see also Adams IV, 65 Fed. Cl. at 205-06, 209. The same should be done here.

There is no relevant distinction between the criminal fraud-fighting undertaken by OPM Series 1811 GS-12-13 criminal investigators with IRS and Customs and the criminal fraud-fighting undertaken by Plaintiffs, who were OPM Series 1811 GS-12-13 criminal investigators with HUD.[6] They performed the same traditional investigative

---

[4] Even if Plaintiffs had not cited these admissions, the fact that IRS criminal investigators investigate tax fraud and Customs criminal investigators investigate customs fraud is simply undeniable.

[5] According to an excerpt from the Internal Revenue Manual attached to Defendant's Adams I brief, "The purpose of the IRS is to collect the proper amount of tax revenues at the least cost to the public[.]" Pl. HUD App. at 27; Pl. HUD Facts ¶¶ 8-10. "In order to fulfill this mission, the [IRS] must establish program and facilities for receiving and processing returns, for detecting fraud and delinquency[.]" Id. ¶ 9.

[6] Defendant largely ignores Plaintiffs' investigations of violent crime in HUD public and assisted housing, which is impossible to characterize as anything other than traditional law enforcement work. This has no impact on the outcome of this case, however, because Plaintiffs would be non-exempt even if they spent all their time fighting fraud rather than violent criminals. See Pl. HUD Mem. at 15 n.13.

duties on a day-to-day basis. Further, because Defendant concedes that Plaintiffs "had and have primary jurisdiction over certain statutes peculiar to their particular agency," Def. HUD Fact Reply at ¶ 6, any argument it could make that IRS agents enforce IRS statutes while HUD agents enforce only generic federal law is doomed from the start. Id. ¶ 20 (listing statutes).[7]

The only apparent difference is that non-exempt IRS and Customs criminal investigators generally investigated fraud by individuals who did not pay monies owed to Treasury (the executive department for which they worked) while Plaintiffs generally investigated fraud by individuals who obtained monies to which they were not entitled from HUD. This is a distinction without a difference. The criminal acts being investigated (e.g. fraudulently filling out a HUD grant or loan application to receive an unearned $1,000 from HUD or fraudulently filling out a tax return to avoid paying $1,000 owed to Treasury) are essentially identical, as is the impact on the employing agency (which is left with $1,000 less than it should have).[8] Exemption status does not and should not turn on such an ephemeral distinction.[9]

---

7 The "Kmiec Letter," which notes that "the Inspector General has criminal investigative authority," including the power to "investigate regulatory compliance by recipients of federal funds" and takes pains to point out that it "should not be understood as suggesting that the Inspector General does not have authority to conduct investigations that are external to the Department" is simply irrelevant to the question of whether Plaintiffs' primary duty is "administrative" for purposes of the FLSA. Inspector General Authority to Conduct Regulatory Investigation, 13 Op. O.L.C. 54, 1989 OLC LEXIS 70 at n.7, n.13, n.20 (March 9, 1989) (emphasis added).

8 This also forecloses any argument that Plaintiffs' duties are "of substantial importance" in a way that the duties of non-exempt IRS and Customs investigators are not. See Pl. HUD Mem. at 31 n.24.

9 Moreover, relying on the distinction between monies flowing out of an agency and those flowing into it would create anomalous results. For example, it is certainly

**B. The Administration/Production Dichotomy Does Not Control The Primary Duty Test**

Defendant's primary argument is that the administration/production dichotomy compels the conclusion that any employee who is not producing their employer's primary product or central mission is necessarily performing "management or general business functions or supporting services of substantial importance" for purposes of 5 C.F.R. § 551.206(a)(2). Def. HUD Mem. at 3, 11, 13.

This view that the administration/production dichotomy controls – indeed, is synonymous with – the primary duty test has been explicitly rejected by DOL and the overwhelming majority of courts which have considered the issue. See, e.g. DOL 2004 Commentary, Pl. HUD App. at 32 ("[T]he dichotomy is but one analytical tool, to be used only to the extent that it clarifies the analysis. Only when work falls 'squarely on the production side of the line' has the administrative/production dichotomy been determinative.") (quoting Bothell, 299 F.3d at 1127); Martin v. Indiana Michigan Power Co., 381 F.3d 574, 582 (6th Cir. 2004) ("[The employer's] error is in concluding that all work is either related to 'the administrative operations of the business' or production work. The regulations do not set up an absolute dichotomy under which all work must

---

possible to fraudulently fill out a tax form (by improperly claiming tax credits, for example) with the intent not of avoiding paying a debt to Treasury, but to obtain monies to which you are not entitled from Treasury. Is an IRS investigator a non-exempt worker whenever she investigates a fraudulent tax underpayment case and an "administrative" worker whenever she investigates a fraudulent tax credit case? What of someone who owes $500 in taxes but fraudulently fills out his return in such a way as to claim a $500 credit – is the investigation a hybrid of administrative and non-exempt work? These bizarre consequences point clearly to the conclusion that any purported distinction between fraud regarding debts and fraud regarding payments – and therefore Defendant's purported distinction between Plaintiffs and non-exempt criminal investigators with IRS and Customs – is without merit.

either be classified as production or administrative.") (emphasis added); see generally Pl. HUD Mem. at 28-36. As its name suggests, the primary duty test ultimately turns on the nature of an employee's actual primary work duties, rather than the relation of those duties to some abstract conceptual model or the motive of their employer in ordering the work.[10] The touchstone of the primary duty test is not where, why, or for whom an employee works, but what an employee actually does.[11]

In a futile attempt to side-step these authorities, Defendant blatantly mischaracterizes them, suggesting that the plaintiffs in Bothell and Martin satisfied the primary duty test but were declared non-exempt based on the discretion and independent judgment or non-manual work tests. Def. HUD Resp. at 19-20.[12] The most cursory look at Bothell and Martin gives lie to Defendant's argument. Both cases address the applicability of the administration/production dichotomy to the primary duty test rather than the exemption as a whole. Martin, 381 F.3d at 581-82 (dichotomy does not control

---

10 As DOL noted in its 2004 Commentary, "the dichotomy is still a relevant and useful tool in appropriate cases to identify employees who should be *excluded* from the exemption." Pl. HUD App. at 33 (emphasis added). As they did in their brief-in-chief, Plaintiffs urge the Court to utilize the dichotomy – correctly formulated as a flexible, functional tool – as an interpretive aid in this matter, because Plaintiffs' primary duty is clearly non-exempt "production" work. See Pl. HUD Mem. at 19-28; infra at § C.

11 For example, OPM's regulations clarify that "the organizational location" of an employee cannot transform "management or business functions" into non-exempt work. 5 C.F.R. § 551.104. See also Pl. HUD Mem. at 35-36 n.27 (discussing id. and 29 C.F.R. § 541.205(c)(1)).

12 Tellingly, Defendant does not respond by citing a case where two employees who perform identical work, often side-by-side on the same projects, receiving the same pay and having identical job designations are found to have differing exemption statuses because they work for employers with different missions or products. Nor has Plaintiffs' research located such a decision. Yet this counter-intuitive result is exactly what Defendant seeks here. See Pl. HUD Mem. at 20.

the inquiry into whether Martin's work was "directly related to management policies or general business operations" of his employer); Bothell, 299 F.3d at 1126 (treating dichotomy as relevant only to the "primary duty" test). The same is true of the DOL's 2004 Commentary, which adopted Bothell's interpretation of the dichotomy in a section devoted to the meaning of "Directly Related to Management or General Business Operations" – i.e. the primary duty test. Pl. HUD App. at 32-33. Bothell and Martin do not, as Defendant suggests, hold that their respective plaintiffs meet the primary duty test but are nevertheless not FLSA-exempt because they fail to satisfy some other prong of the administrative exemption.[13] To the contrary, they explicitly hold that those plaintiffs do not satisfy the primary duty test despite the fact that they do not perform "production" work. This reasoning completely undermines Defendant's view of the primary duty test.[14]

---

[13] Defendant simply ignores several other cases cited in Plaintiffs' principal memorandum which similarly undermine Defendant's view that the dichotomy controls the primary duty test. See, e.g., Schaeffer v. Ind. Mich. Power Co., 358 F.3d 394, 402-03 (6th Cir. 2004) (dichotomy "is only useful . . . to the extent it elucidates the phrase 'work directly related to the management policies or general business operations'"); Shaw v. Prentice Hall Computer Publ'g, Inc., 151 F.3d 640, 644 (7th Cir. 1998) (the dichotomy is "to be used only to the extent [it is a] helpful analog[y] to the case at hand").

[14] Nothing in this Court's prior rulings, which treat the administration/production dichotomy as a tool which is sometimes helpful in analyzing whether or not a particular primary duty is administrative in nature rather than a substitute for the careful analysis of an employee's actual work duties, compels a contrary conclusion. See, e.g., Adams IV, 65 Fed. Cl. at 204 (dichotomy is a "helpful distinction" but is "not simple to apply"). Moreover, the Court has recognized that "[w]here the legal analysis of Adams I [which was decided in 1992] has been further elucidated by other cases pertinent to the primary work duties here, the caselaw will also be applied to the evidence presented by the parties." Id. The cases primarily relied on by Plaintiffs in rejecting Defendant's claim that the dichotomy exhausts the primary duty test – including, among others, Bothell (2002), Martin (2004) and Statham (2002) – were decided well after Adams I. The same is true of DOL's endorsement and adoption of the Bothell court's analysis of this issue.

Defendant's attempts to distinguish Statham v. U.S., No. 00-699C, 2002 WL 31292278 (Fed. Cl. Sept. 11, 2002), and OPM Decision No. F-1810-12-02 actively undermine its own argument. The plaintiff in Statham was employed by the Department of Energy ("DOE") to provide protective services to the Secretary of Energy and other officials. Statham at *1-2. The primary mission of the DOE is not to protect its Secretary; to the contrary, there would be no Secretary to protect if the DOE had not been created for some other purpose.[15] Id. at *7. As it does here, Defendant argued that the question of whether Statham's work was a "supporting service" could be definitively resolved by considering the dichotomy. Id. at *8. Judge Futey disagreed, ruling that the "supporting services" question should be resolved not by the dichotomy, but by comparing Statham's actual work to the definition of "supporting service" provided by 5 C.F.R. § 551.104. Id. at *8. Statham's holding, that a plaintiff who does not do "production" work can still fail to satisfy the primary duty test, is flatly inconsistent with Defendant's legal theory.[16]

Defendant does not, as one might expect, argue that Statham was wrongly decided in ruling that an employee who does not do "production" work can nevertheless fail to

---

See Pl. HUD App. at 33 (DOL 2004 Commentary) and OPM's application of a similar analysis in OPM Decision F-1810-12-02 (2002).

[15] Defendant makes a similar argument in its Response, arguing that "protecting the integrity and efficiency of HUD" cannot possibly be part of HUD's mission "regardless of how broadly the mission is defined." Def. HUD Resp. at 9-10 n.7. That argument failed in Statham, and it fails here.

[16] That Statham's holding rests on the primary duty test rather than any other prong of the Administrative Exemption is clear from the text. See Statham at *9 ("Because defendant has failed to prove that plaintiff's duties are exempt under the primary duty test, it is not necessary for the court to analyze the non-manual work test or the discretion and independent judgment test.").

satisfy the primary duty test. Instead, it attempts to distinguish Statham on the ground that Plaintiffs' primary duty is "much more of a management or business function than standing next to a cabinet minister." Def. HUD Resp. at 21. In so doing, Defendant abandons its central legal premise and embraces the correct analytic model – that the primary duty test requires a comparison of Plaintiffs' actual day-to-day work duties with the regulatory definition of "supporting services" and cases applying that definition to similar employees.[17] Def. HUD Resp. at 20-21. Similarly, Defendant attempts to distinguish OPM Decision No. F-1810-12-02 (Oct. 16, 2006), not by arguing that OPM was wrong to rule that an employee whose primary duty was admittedly a "staff support function" did not satisfy the primary duty test, but by pointing to alleged distinctions between the actual work performed by Plaintiffs and the Defense Department GS-1810-12 investigator at issue in that decision. Def. HUD Resp. at 20 n.11. In the end, even Defendant is forced to abandon the misguided notion that the administration/production dichotomy controls the primary duty test.

Defendant does cite one recent district court decision, Ferrell v. Gwinnett County Bd. of Ed., 481 F. Supp. 2d 1338 (N.D. Ga. 2007), in support of its position. Def. HUD Resp. at 17-19. Ferrell, which found that certain School Resource Officers ("SROs") were exempt administrative employees, does appear to rely almost exclusively on the dichotomy in applying the primary duty test. Id. at 1347 ("the School System is in the business of educating students, not providing law enforcement. Thus, rather than producing the School System's end product of education, Plaintiffs are servicing the

[17] When this proper formulation of the primary duty test is applied, however, it is undeniable that Plaintiffs perform non-exempt work. See § C, infra.

School's Systems business of education."). If Ferrell truly stands for this proposition, it stands in direct opposition to DOL's 2004 Commentary, Bothell, Martin, Statham and other authorities discussed in this section. Ferrell does not even cite – much less distinguish – any of these authorities in its application of the primary duty test and does not independently discuss the relationship between the dichotomy and the primary duty test in any significant detail.[18] Moreover, Ferrell appears to be inconsistent with an earlier decision in its own district. See Smith v. Wynfield Dev. Co., 451 F. Supp. 2d 1327, 1335-36 (N.D. Ga. 2006) (resolving primary duty question without recourse to the dichotomy and explicitly relying on Martin). In short, Ferrell's persuasive power is negligible.[19]

---

[18] In applying the dichotomy Ferrell relies primarily on Dymond v. USPS, 670 F.2d 93 (8th Cir. 1982) and Sprague v. U.S., 677 F.2d 865 (Cl. Ct. 1982), which address the exemption status of postal inspectors. As pointed out in Plaintiffs' brief-in-chief, these cases have been acknowledged to contain no substantive reasoning or analysis which could allow them to be applied to other factual situations. Pl. HUD Mem. at 39-40 and n.31 (citing Judge Bruggink in Adam v. U.S., 26 Cl. Ct. 782, 790-91 (1992)); accord Roney v. U.S., 790 F. Supp. 23, 28 (D.D.C. 1992). The third postal inspector case cited in Ferrell, Locker v. Bolger, 644 F.2d 39 (D.C. Cir. 1981), is identical to Sprague and Dymond in this respect.

[19] Ferrell may also be distinguishable on its facts. Defendant makes much of the fact that the SROs in Ferrell claimed that they "spent 85-90% of their time performing 'patrol officer' or 'crime prevention' duties'" and that their duties were "primarily law enforcement [in] nature[.]" Def. HUD Resp. at 17. However, the Ferrell court, which expressed doubts as to the accuracy of these claims, appears to have applied the equivalent of the alternate primary duty test to the SROs, concluding that their primary duty was not patrol or "beat cop" work even if those duties occupied the majority of their time. Ferrell, 481 F. Supp.2d at 1344 ("Plaintiffs participated in school security surveys; assisted with safety checklists; answered questions regarding safety and crime prevention; taught classes to students on issues such as safety, drugs, and gangs; and participated in staff orientation. Although Plaintiffs may not have spent a majority of their time on such matters, these duties are not typically performed by rank and file police officers, and illustrate the unique value and function Plaintiffs provided[.]"). In the instant case, in contrast, Defendant makes no argument based on the alternate primary duty test, and it is undisputed that Plaintiffs' primary duty is criminal investigation. Pl. HUD Mem. at 7 n.7.

**C. Plaintiffs' Primary Duty Is Not A "Supporting Service"**

As demonstrated above, whether Plaintiffs' primary duty was an administrative "supporting service" is not ultimately determined by the dichotomy or any other theoretical or relational construct, but rather by comparing Plaintiffs' actual primary duty to the definition of "supporting services" in the controlling OPM regulation (services "such as automated data processing, communications, or procurement and distribution of supplies") and to caselaw and administrative authorities applying the primary duty test to other employees with similar job duties. 5 C.F.R. § 551.104(1)(iv). Defendant correctly points out that "supporting services" are not limited to only the three examples given in the regulatory definition. Def. HUD Resp. at 21 n.12. This does not imply, however, that any type of work can be considered a "supporting service." To the contrary, basic principles of construction inform us that § 551.104(1)(iv) necessarily limits the application of "supporting services" to duties which are substantially similar to these examples. See Sports Graphics, Inc. v. U.S., 24 F.3d 1390, 1392 (Fed. Cir. 1994) (*ejusdem generis* rule of construction applies to regulatory texts). Despite claiming that when "the plain language of OPM's regulations is applied, it becomes evident that . . . [Plaintiffs] perform a support service[,]" Defendant does not even attempt to argue that Plaintiffs' law enforcement duties are substantially similar to automated data processing,

---

The Ferrell court also makes much of the fact that SROs were paid substantially higher salaries than other police officers with similar levels of experience, strongly suggesting that the SROs duties are substantially different than those of the typical "beat cops" they claimed to resemble. Id. at 1340, 1344. Plaintiffs, on the other hand, were paid the same wages as the non-exempt employees they resemble – similarly-situated non-exempt federal criminal investigators of the same grade and step who performed the same work on a day-to-day basis that Plaintiffs performed. Def. HUD Mem. at 17; Pl. HUD. App. at 7. Thus, Ferrell is inapposite.

communications, or supply management. Def. HUD Resp. at 4. It does not appear that they could plausibly do so in any event. Plaintiffs' primary duty is therefore not a "supporting service" and they are accordingly non-exempt.

This consequence of the regulatory definition of "supporting service" is fully consistent with the prevailing view that "the obvious intent" of the primary duty test "is to identify persons performing management or business functions" because the listed activities "all have a managerial flavor, including the examples of support services." Adam, 26 Cl. Ct. at 789, quoted in Statham, 2002 WL 31292278 at *8; accord Berg, 49 Fed. Cl. at 472-73. It also harmonizes with DOL's regulations on the subject, which define "'servicing' a business" as "for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." 29 C.F.R. § 541.205(b). The law enforcement duties Plaintiffs performed for HUD are simply not managerial or business "support services" under either OPM's or DOL's definition of the term. See generally Pl. HUD Mem. at 19-28.

In its Response, Defendant offers no new arguments, still attempting to rely on decisions discussing the exemption status of internal affairs officers and insurance investigators – who perform duties substantially different than Plaintiffs' primary duty – to support the notion that Plaintiffs' criminal investigations were an administrative support function despite being identical to the work performed by non-exempt criminal investigators employed by other federal agencies.[20] Defendant adds another case finding

[20] Defendant argues that the "various differences between the other activities of insurance adjusters and HUD OIG criminal investigators . . . are not material to the point for which we cite these cases here." Def. HUD Resp. at 14 n.9. "The point" appears to be "that investigations need not focus upon internal affairs to constitute support services[.]" Id. at 14. To the extent Defendant means only that activities directed outside

one particular internal affairs lieutenant to be exempt. Shockley v. City of Newport News, 997 F.2d 18 (4th Cir. 1993), cited in Def. HUD Resp. at passim.[21] However, adding another decision identical to the decisions Defendant has already cited, Auer v. Robbins, 65 F.3d 702 (8th Cir. 1995) and Raper v. Iowa, 688 N.W.2d 29 (Iowa 2004),

---

the employing organization may be administrative in some instances, Plaintiffs do not disagree. To the extent, however, that Defendant argues that the insurance adjuster cases prove that investigations of the type performed by Plaintiffs are exempt support functions, Defendant misreads these cases and the relevant administrative authorities. Insurance adjusters are often found to be exempt because DOL's regulations specify that their activities are frequently administrative and because they usually perform administrative functions such as representing their employer, settling claims, and negotiating settlements – none of which is Plaintiffs' primary duty. See Pl. HUD Mem. at 37-38.

[21] As pointed out in Plaintiffs' primary brief, DOL, in its 2004 Commentary, has determined that most law enforcement officers, including those working as internal affairs investigators, are non-exempt. Pl. HUD Mem. at 37 n.28; Pl. HUD App. at 31. Defendant's rejoinder, that DOL's commentary "is silent on internal affairs officers who perform the investigations," is technically true but substantively disingenuous. Def. HUD Resp. at 17 n.10. The commentary in question begins with a general rule, now codified at 29 C.F.R. § 541.3(b), that law enforcement officers (including "detectives," investigators," "inspectors," "and similar employees . . . who perform such work as . . . preventing and detecting crimes [or] conducting investigations or inspections for violations of law") are not administratively exempt because they do not satisfy the primary duty test. Pl. HUD App. at 29-30. DOL then identifies an exception to that general rule – that "high-level" officials may be administratively exempt if their primary duty includes, among other things, "handling community complaints, including whether to refer such complaints to internal affairs for further investigation." Id. at 31.

The clear implication of listing only one specific internal affairs-related duty as exempt work is that internal affairs work, like all other criminal investigatory work, is generally non-exempt. See In re Lueders, 111 F.3d 1569, 1577 n.12 (Fed. Cir. 1997) ("The doctrine *inclusio unis est exclusio alterius* instructs that where a law expressly describes a particular situation to which it shall apply, an irrefutable inference must be drawn that what was omitted or excluded was intended to be omitted or excluded."). This is reinforced by the fact that the primary duty of the "high level . . . community liaison officer" in question would appear to involve "communications" and "representing" the employer, both of which are often administrative in character. See 5 C.F.R. § 551.104; 29 C.F.R. § 541.205(b). Because Plaintiffs' primary duty is not internal affairs work, the tension, if any, between Auer, Raper, and Shockley and DOL's subsequent commentary need not be resolved in this case. These authorities are simply irrelevant.

does nothing to make those decisions any more relevant to the instant case. Like those cases, Shockley might have been a relevant consideration if Plaintiffs' primary duty had been to perform "internal affairs" work, i.e., to conduct investigations of HUD personnel suspected of wrongdoing. See Pl. HUD Mem. at 36-37 and n.28. Because Defendant itself admits that Plaintiffs spent no more than 2% of their time investigating internal affairs-like cases, that work cannot be Plaintiffs' primary duty, and is therefore not relevant to the pending motions. Def HUD Statement of Fact ¶ 7.[22] Shockley also suffers from all the other defects which undermine Defendant's reliance on Raper and Auer.[23] There is simply no reason to believe that Plaintiffs' actual day-to-day duties,

---

[22] Because Defendant makes no attempt to argue that the alternate primary duty test applies, that Plaintiffs spent 2% of their time working "internal affairs" cases is irrelevant. See Pl. HUD Mem. at 7 n.7. The same is true of the "small amount of time" Plaintiffs spent writing System Implication Reports. Def. HUD Resp. at 16.

[23] See Pl. HUD Mem. at 36-38 and n.28. Shockley, like Raper and Auer, involved many categories of plaintiffs, and consequently provides very little detail about the day-to-day duties of the Ethics and Standards Lieutenant at issue beyond noting that she investigated "complaints against other officers[,]" "interpreted department policy" and made "recommendations" on guilt or innocence, which were followed "about ninety percent of the time." Shockley, 997 F.2d at 28. It appears that these investigations were not criminal investigations, but matters of "internal discipline" which were ultimately decided by the Chief of Police, not a judge or jury. Id.

DOL's regulations note that employees working in the "human resources" and "personnel management" fields frequently perform administrative work. See New 29 C.F.R. § 541.201(a). If Auer, Raper, and Shockley survive DOL's subsequent interpretation that nearly all law enforcement personnel are non-exempt, see n.21, supra, it is most likely because internal affairs work is similar to human resources and personnel management work. Criminal investigators – including Plaintiffs – whose primary duty is not internal affairs, but rather enforcing laws against criminals outside their department, are simply not at all analogous to human resource managers. Nor is this distinction a merely technical or formal one – there are real, qualitative differences in the nature of the day-to-day work of an internal affairs officer and other criminal investigators. See Auer, 65 F.3d at 720-21 (internal affairs sergeants specially selected based on "superior skills" and enjoy "more discretion than other sergeants").

which are identical to the duties performed by non-exempt criminal investigators in similar grades, is "administrative" work by any plausible definition of the term.

Much more relevant than cases involving internal affairs officers or insurance adjusters are cases involving GS-1811-12 and GS-1811-13 criminal investigators in other agencies who, by Defendant's admission, performed work "similar to the duties performed by" Plaintiffs. Def. HUD Mem. at 17. These criminal investigators, who were declared non-exempt in this Court's prior rulings, have the same primary duties as Plaintiffs. Accordingly, Plaintiffs are entitled to the same non-exempt designation.

While it may seem unnecessary given the regulatory definition of "support services" and the fact that criminal investigators in the same grades at other federal agencies doing identical work are non-exempt, Plaintiffs encourage the Court to consider the administration/production dichotomy as an additional interpretive aid to further support the conclusion that Plaintiffs' work is non-exempt. See DOL 2004 Commentary, Pl. HUD App. at 33 ("the dichotomy is still a relevant and useful tool . . . to identify employees who should be excluded from the exemption"). The dichotomy is not a rigidly formalistic sorting device, but an analogy which is employed judiciously and flexibly. See Pl. HUD Mem. at 19-28 (citing, inter alia, Berg, 49 Fed. Cl. at 471 (employees who do not perform employer's mission but perform work necessary for others to do so are "production" workers); Mulverhill 1994 WL 263594 at *4 (criminal investigators who enforce laws not directly related to agency's mission statement are "production" workers); and Adams I, 27 Fed. Cl. at 20 (criminal investigator who performs duties "closely related to" employer's "major functions" is "production" worker)).

Defendant is rightly concerned with the Berg case, where an argument essentially identical to the one it brings here – that electronics technicians for an Air Force base were not "production" workers because they did not perform the base's central mission of testing aircraft – was flatly rejected by the Court of Federal Claims. Pl. HUD Mem. at 25-26; Berg, 49 Fed. Cl. at 461, 468. Instead, the court ruled in favor of the plaintiffs because they did not engage in any "management" functions but rather were "integral" to the base's production mission. Berg, 49 Fed. Cl. at 471-72.[24] Defendant engages in much hand-waving about Berg, suggesting that the court was "clearly influenced by the manual 'blue collar' nature of the technician's jobs and their lack of discretion." Def. HUD Resp. at 22. To the contrary, Judge Horn was well aware of the fact that the non-manual work test, the discretion and independent judgment test, and the primary duty test are separate and distinct elements of the administrative exemption. Berg, 49 Fed. Cl. at 468.[25] The Berg decision is simply inconsistent with Defendant's understanding of the dichotomy.[26]

---

[24] This reasoning is in accord with the Court's recognition in Adams I that duties "closely related to" an agency's "major function" themselves constitute production work. Adams I, 27 Fed. Cl. at 20.

[25] Defendant's effort to distinguish Roney on the ground that it is really a case about the non-manual work test is unavailing for the same reason. Compare Def. HUD Resp. at 10 n.8 (the Roney plaintiff's functions "were more oriented towards the manual labor of courthouse security") and 23 (Roney decision based on plaintiff's lack of discretion and manual nature of his work) with Roney, 790 F. Supp. at 27 ("The test is whether the employee's activities are directly related to management policies or general business operations.")(quotation omitted).

[26] Defendant relies on Campbell v. U.S. Air Force, 755 F. Supp. 893 (E.D. Cal. 1990), for the proposition that the primary duty analysis of Berg and Roney only applies to "manual 'blue collar'" workers. Def. HUD Resp. at 22. This makes little analytical sense because the manual labor test is an entirely separate prong of the administrative exemption analysis from the primary duty test. Even if Campbell does stand for this

Defendant's attempted refutation of Mulverhill fares little better. Defendant argues that the mission of the employer in that case, a New York environmental agency, was in fact much broader than the articulation of that mission that the New York Constitution provided, suggesting that the agency was "in the business" of enforcing agency-specific toxic waste disposal laws because it in fact enforced those laws. Def. HUD Resp. at 11-12. This reasoning does not appear to help Defendant because HUD was similarly "in the business" of enforcing agency-specific (as well as general criminal) fraud laws. See Pl. HUD Mem. at 21 n.17 (listing the specific criminal and civil statutes of HUD over which Plaintiffs had "primary jurisdiction."). Nor can it be said that HUD's mission did not include ensuring that housing grants and loans were awarded to those who were entitled to them and not to those who were not, an interest directly furthered by Plaintiffs' efforts. See Pl. HUD Mem. at 19-22 and n.20.[27] In short, Defendant has simply failed to demonstrate that Plaintiffs' actual day-to-day duties were an FLSA-exempt "supporting service" whether the question is addressed with reference to the

---

dubious proposition, it was vacated by the Federal Circuit in 1992, 972 F.2d 1352, is a decision of the Eastern District of California rather than the Court of Federal Claims, and appears to be inconsistent with the Ninth Circuit's subsequent decision in Bothell. Campbell is of dubious persuasive value.

[27] Furthermore, Defendant's argument that the dichotomy must be applied with reference to the overall mission of HUD, rather than the mission of HUD OIG, flies in the face of many authorities including Amshey v. U.S., 26 Cl. Ct. 582, 603 (1992) (applying dichotomy with respect to mission of USSS, not Treasury); Adams I, 27 Fed. Cl. at 21 (applying dichotomy with respect to mission of IRS, not Treasury); and Berg, 49 Fed. Cl. at 468 (applying dichotomy with respect to mission of a particular USAF base, not USAF itself). Defendant's rejoinder is to claim that USSS (and presumably IRS), was a "distinct subdivision" of Treasury. Given the great degree of independence from HUD enjoyed by OIG, it is difficult to fathom why it, too, is not a "distinct subdivision."

regulatory definition, the decisions of this and other courts, or the administration/production dichotomy.

**CONCLUSION**

For all the aforementioned reasons, as well as those laid out in their principal Memorandum, Plaintiffs respectfully request that their cross-motion for summary judgment be granted.

June 19, 2007

Respectfully submitted,

/s/ Jules Bernstein
Counsel of Record

/s/ Edgar James

Linda Lipsett
Of Counsel
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Edgar James
Sean Bajkowski
Of Counsel
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile