# In the United States Court of Federal Claims

No. 90-162C
and Consolidated Cases

(Filed September 21, 2007)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * | * | |
| STEPHEN ADAMS, *et al.*, | * | Overtime Pay; Administrative |
| | * | Exemption, Fair Labor |
| *Plaintiffs*, | * | Standards Act, 29 U.S.C. |
| | * | § 213(a)(1) (2000); Primary |
| v. | * | Duty Test, 5 C.F.R. §§ 551.104, |
| | * | 551.206(a)(2) (2007); |
| THE UNITED STATES, | * | Administration/Production |
| | * | Dichotomy. |
| *Defendant*. | * | |
| * * * * * * * * * * * * * * * * * | * | |

*Jules Bernstein* and *Edgar James*, Washington, D.C., for plaintiffs. *Linda Lipsett* and *Sean Bajkowski*, Washington, D.C., of counsel.

*Shalom Brilliant*, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Acting Director, United States Department of Justice, Washington, D.C., for defendant.[1] *Michael J. Dierberg* and *William P. Rayel*, of counsel.

---

**OPINION**

---

**BUSH**, *Judge*

This case is before the court on Defendant's Motion for Partial Summary

---

[1]/ As of May 14, 2007 and the filing of defendant's reply brief, Jeanne E. Davidson was Director of the Commercial Litigation Branch, National Courts/International Trade Section, United States Department of Justice.

Judgment Concerning Plaintiffs Employed by the Office of Inspector General (OIG) in the Department of Housing and Urban Development (HUD), and plaintiffs' cross-motion for partial summary judgment.[2] The parties' motions have been fully briefed, and oral argument was neither requested by the parties nor required by the court. For the reasons stated below, defendant's motion for partial summary judgment is denied, and plaintiffs' cross-motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

As a group, these consolidated cases concern the overtime pay claims of several thousand plaintiffs, most of whom work or worked as criminal investigators for federal agencies. This matter has a long history, much of which has been set forth in *Adams v. United States*, 27 Fed. Cl. 5 (1992) (*Adams I*), *rev'd and remanded*, 178 F.3d 1306, 1998 WL 804552 (Fed. Cir. 1998) (Table and Unpublished Opinion) (*Adams II*), *Adams v. United States*, No. 90-162C and Consolidated Cases (Fed. Cl. Dec. 1, 2004) (*Adams III*) and *Adams v. United States*, 65 Fed. Cl. 195 (2005) (*Adams IV*). Only the facts and procedural history relevant to the motions at hand are recounted here. Further reference to "plaintiffs" in this opinion is to approximately ten OIG employees at HUD. Pls.' Mot. at 2. These plaintiffs were classified as Series 1811 Criminal Investigators in grades GS-12 and GS-13 and worked in the Office of Investigations within HUD's OIG. *Id.* The relevant time period for the overtime pay claims here began at the earliest on February 16, 1987 and ended no later than October 30, 1994. Def.'s Mot. at 8; Pls.' Facts ¶ 4.

The material facts of plaintiffs' employment are undisputed. *See, e.g.*, Def.'s Reply at 2 n.2. It is also undisputed that there is only one narrow legal issue in the parties' cross-motions before the court. Thus, this dispute is well-suited to resolution by summary judgment.

## DISCUSSION

---

[2]/ On this date, the court also issues an opinion resolving a similar motion by defendant concerning plaintiffs employed by the Office of Inspector General in the Department of Health and Human Services.

## I. Standard of Review

This action is before the court on the parties' cross-motions for partial summary judgment. The availability of summary judgment helps a federal court "'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 56 of the Rules of the United States Court of Federal Claims (RCFC); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material if it might affect the outcome of the suit. *Anderson*, 477 U.S. at 248.

## II. Statutory and Regulatory Overview

The Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219 (2000), which requires time and a half pay for hours worked beyond certain limits, in 29 U.S.C. § 213 exempts certain employees from FLSA's overtime pay requirements. Section 213(a)(1) provides that FLSA's overtime pay requirements do not apply to any employee who is "employed in a bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1). Only the administrative exemption is at issue in the case of these plaintiffs.

Employees are presumed to benefit from FLSA's overtime pay requirements, although the employer may overcome this presumption by proving that the employee is subject to one of the statute's exemptions. *Adams I*, 27 Fed. Cl. at 10 (citation omitted). The Federal Circuit has recognized that the government has the burden of demonstrating that an employee is exempt from FLSA's overtime provisions. *Berg v. Newman*, 982 F.2d 500, 503 (Fed. Cir. 1992) (*Berg II*) (citation omitted). "If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt." 5 C.F.R. § 551.202(d) (2007). Although there are several criteria governing FLSA's administrative exemption, including, among others, what is known as the "primary duty test," the parties agree that only one aspect of

the primary duty test is at issue in these motions.[3]

The primary duty test offers three types of employment categories which may qualify as "administrative" so as to justify an administrative exemption:

> (a) *Primary duty test*. The primary duty test is met if the employee's work--
> (1) Significantly affects the formulation or execution of management programs or policies; or
> (2) Involves management or general business functions or supporting services of substantial importance to the organization serviced; or
> (3) Involves substantial participation in the executive or administrative functions of a management official.

5 C.F.R. § 551.206(a) (2007). Defendant solely relies on § 551.206(a)(2) for its overtime pay exemption argument, narrowing the court's analysis. Because defendant bears the burden of proving the exemption and has relied on one specific type of administrative work defined by the relevant regulation, the court must determine whether plaintiffs' employment meets this definition:

> An *administrative employee* is an advisor or assistant to management, a representative of management, or a specialist in a management or general business function or supporting service and . . . the employee's work . . . [i]nvolves management or general business functions or supporting services of substantial importance to the organization serviced . . . ."

5 C.F.R. § 551.206.

---

[3]/ Because *Adams I*, 27 Fed. Cl. at 11-17, provided a thorough analysis of the administrative exemption's regulatory scheme, an analysis which was not disturbed by the Federal Circuit's reversal in *Adams II*, the court will not reiterate that analysis here. Similarly, the court narrows its discussion of the administrative exemption criteria to the part of the primary duty test in dispute here. Further explanation of the four criteria required to establish an administrative exemption from overtime pay otherwise due federal workers may be found in *Adams IV*, 65 Fed. Cl. at 199-200, 203-04.

The parties have also cited another regulation with gives further specificity to the definition of administrative work relied upon by defendant:

> *Management or general business function or supporting service*, as distinguished from production functions, means the work of employees who provide support to line managers.
> (1) These employees furnish such support by--
> (i) Providing expert advice in specialized subject matter fields, such as that provided by management consultants or systems analysts;
> (ii) Assuming facets of the overall management function, such as safety management, personnel management, or budgeting and financial management;
> (iii) Representing management in such business functions as negotiating and administering contracts, determining acceptability of goods or services, or authorizing payments; or
> (iv) Providing supporting services, such as automated data processing, communications, or procurement and distribution of supplies.
> (2) Neither the organizational location nor the number of employees performing identical or similar work changes management or general business functions or supporting services into production functions. The work, however, must involve substantial discretion on matters of enough importance that the employee's actions and decisions have a noticeable impact on the effectiveness of the organization advised, represented, or serviced.

5 C.F.R. § 551.104 (2007). It is undisputed that these Office of Personnel Management (OPM) regulations are the primary and direct authority which governs the application of the administrative exemption with regard to these plaintiffs. It is important to note, however, that another set of regulations, those promulgated by the United States Department of Labor (DOL) interpreting FLSA as it is applied to non-federal employees, is of strongly persuasive authority as to the scope of the administrative exemption. *See, e.g.*, *Billings v. United States*, 322 F.3d 1328, 1334 (Fed. Cir. 2003) (citing *Zumerling v. Devine*, 769 F.2d 745, 750

(Fed. Cir. 1985), for the proposition that OPM regulations regarding overtime exemptions must harmonize with DOL regulations on the same topic); *Aamold v. United States*, 39 Fed. Cl. 735, 739 n.4 (1997) ("OPM's regulations and interpretations must be consistent with the FLSA itself and with the standards set by DOL for the private sector. While OPM regulations are controlling and are entitled to great deference, the court also can consider DOL's regulations.") (citations omitted).

The regulations cited by the parties and the court have been evolving over time and are no longer in precisely the same format, codification or terms, as they were during the time period circumscribing plaintiffs' claims. This evolution, in general, does not complicate the analysis, because the essential nature of FLSA's administrative exemption and the regulatory explanation of how to apply the administrative exemption have changed very little. *See* Def.'s Mot. at 4 (noting that the primary duty test found in 5 C.F.R. § 551.206(a) had "substantially the same form" before 1998 as it has today); *id.* at 6 (noting that the current version of 5 C.F.R. § 551.104 carries forward former administrative exemption guidelines); Pls.' Mot. at 9-10 (noting that current DOL regulations concerning the nature of the administrative exemption are functionally the same as those in place during the years at issue in this case). For ease of reference, the court will refer primarily to the current version of OPM regulations, where those provisions reflect the regulatory scheme in place from 1987 through 1994. For DOL regulations, however, the court prefers to reference the 1994 version, because enough changes have occurred in the text of DOL regulations to introduce some uncertainty as to whether the current version presents the same guidance as former versions.[4]

---

[4]/ The current version of 29 C.F.R. § 541.3(b) (2006) is a good example of a significant change in DOL's regulatory pronouncements concerning FLSA. This provision now categorically excludes criminal investigators from FLSA's administrative exemption in non-federal employment. *See id*. This guidance was not contained in the DOL regulations in force from 1987 through 1994, and was not and is not part of OPM regulations. There are at least two reasons to find a post-2004 DOL regulatory interpretation of FLSA to be of lesser relevance in this instance.

First, the court presumes that regulations do not apply retroactively, unless certain conditions are met. *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (stating that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result"); *Princess Cruises, Inc. v. United*

(continued...)

*Compare, e.g.*, 29 C.F.R. § 541.201(b) (2006) ("Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.") *with* 29 C.F.R. § 541.205(b) (1994) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.").

Although the parties have very little, if any, disagreement as to the OPM

---

[4](...continued)
*States*, 397 F.3d 1358, 1362-63 (Fed. Cir. 2005) (citing *Landraf v. USI Film Products*, 511 U.S. 244, 269-70 (1994) for the factors to be used in determining whether or not the retroactive application of an agency interpretation of a statue is permissible). *But see Motorola, Inc. v. United States*, 436 F.3d 1357, 1366 (Fed. Cir. 2006) (stating that "deference is due even if the adoption of the agency's interpretation postdates the events to which the interpretation is applied") (citing *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 741 (1996)). Neither party here suggests that post-2004 DOL regulations should be applied retroactively to the facts of plaintiffs' employment. The United States Court of Appeals for the Seventh Circuit has ruled that the 2004 DOL revisions of FLSA regulations should not be applied retroactively, and this court sees no reason to revisit that ruling *sua sponte* here. *See Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 369 (7th Cir. 2005) ("Although the [DOL's] interpretive hiatus ended while this appeal was pending, the new [2004] definitions do not apply retroactively . . . .") (citing *Bowen*, 488 U.S. at 208).

Second, although OPM and DOL regulations must generally harmonize, some variance is allowable. *See Billings v. United States*, 322 F.3d 1328, 1334 (Fed. Cir. 2003) (acknowledging that some variance between OPM and DOL regulations is acceptable if that variance reflects conditions specific to federal employment). Federal law enforcement employees were specifically excluded from FLSA coverage in the mid-1990s. *See* Law Enforcement Availability Pay Act of 1994, Pub. L. No. 103-329, § 633, 108 Stat. 2382, 2425 (1994); 5 U.S.C. § 5545a (2000); 29 U.S.C. § 213(b)(30) (2000). Thus, if OPM regulations and DOL regulations now contain different guidance concerning FLSA as it relates to criminal investigators after 1994, that variance might in part be due to the exclusion from FLSA coverage expressed in 29 U.S.C. § 213(b)(30). Therefore, the court will not view the guidance of 29 C.F.R. § 541.3(b) (2006) as especially relevant to plaintiffs' claims.

regulatory scheme that governs the administrative exemption, the parties vigorously dispute how the regulatory definition of administrative work should be interpreted by this court. Defendant suggests that the correct view is to focus on the "administration/production dichotomy," Def.'s Reply at 25, and find that plaintiffs are exempt because they provided a supporting service to management rather than production work for HUD.[5] Def.'s Mot. at 9. Plaintiffs argue, on the other hand, that "the primary duty test ultimately focuses on the character of an employee's actual primary duties rather than [on] some abstruse conceptual model" such as the administration/production dichotomy. Pls.' Mot. at 14. The court must, in conducting its analysis of the administrative exemption at issue here, first decide which conceptual framework to use, and then apply the correct framework to the undisputed facts describing plaintiffs' work.

## III. Applying the Administrative Exemption in 5 C.F.R. § 551.206(a)(2)

Although the parties have delineated a narrow issue for this court's consideration in their cross-motions, the range of authority cited by the parties is extremely broad. Extensive reference has been made to FLSA's statutory provisions, legislative history, regulatory elaboration by both the Office of Personnel Management and the Department of Labor, agency administrative decisions and opinion letters. In addition, eleven of the United States Circuit Courts of Appeal have been cited, and the remaining circuits are represented by

---

[5]/ The term "administration/production dichotomy" bears some explanation. Courts use this term to describe the distinction drawn in regulations interpreting FLSA, where administrative workers are distinguished from production workers. *See, e.g., Shaw v. Prentice Hall Computer Pub., Inc.*, 151 F.3d 640, 644 (7th Cir. 1998) (stating that DOL "regulations suggest a dichotomy between 'production' and 'administrative' jobs"); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997) (noting that "the administrative-production dichotomy is not as simple as drawing the line between white-collar and blue-collar workers"). The term "administration/production dichotomy" describes two different categories of employees, where the administrative category is exempt from overtime pay, and the production category is nonexempt from overtime pay. *See Casas v. Conseco Fin. Corp.*, No. Civ.00-1512 (JRT/SRN), 2002 WL 507059, at *6 (D. Minn. Mar. 31, 2002) ("According to 29 C.F.R. § 541.205(b) [(2001)], which delineates the 'administrative/production dichotomy,' administrative work includes 'work performed by so-called white collar employees engaged in "servicing" a business as, for[] example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.' Conversely, employees whose primary duty is to produce the commodity that the enterprise exists to produce or market are engaged in 'production' activity and are not exempt.") (citation and footnote omitted).

citation to district court opinions. Nonetheless, the parties have not cited binding precedent as to the correct conceptional framework for determining whether criminal investigators working for a federal agency whose business is not, primarily, law enforcement, are exempt from overtime pay pursuant to FLSA's administrative exemption. *See* 29 U.S.C. § 213(a)(1).

Notwithstanding this abundance of conflicting authority, the court must still decide whether the term "bona fide administrative employee" accurately describes criminal investigators working for HUD. *See id*. As an initial matter, the court will describe defendant's proposed analytical framework for deciding whether FLSA's administrative exemption from overtime pay was correctly applied here.[6] Then, the court will outline the conceptual framework that appears to be best supported by the statute, agency regulations, caselaw, and the parties' arguments.

### A. Defendant's Emphasis on the Administration/Production Dichotomy

An important factor in determining whether a criminal investigator is an administrative employee, according to defendant, is the mission of the federal agency for which that investigator works. Def.'s Mot. at 2-3 (distinguishing federal agencies employing criminal investigators on the basis of whether the agency's mission is law enforcement or some other purpose, and suggesting that the availability of the administrative exemption for criminal investigators hinges on this factor). HUD's mission is to "'increase homeownership, support community development and increase access to affordable housing free from discrimination,'" according to defendant. *Id.* at 3 (citation omitted). Plaintiffs here conducted criminal investigations that helped "prevent[] waste, fraud and abuse in [HUD] programs." *Id.* Defendant sees the production work of HUD as the sponsoring of federally-funded housing and community development programs, not the investigation of abuses in the delivery of those programs. *See id.* at 2-3 ("HUD is not a law enforcement agency and its mission does not include the performance of criminal investigations.").

---

[6]/ The court omits a detailed discussion of plaintiffs' position regarding the proper analytical framework to be used in reviewing an administrative exemption, because the court adopts and describes in detail an analytical framework which resembles plaintiffs' in many respects.

Defendant argues that performing criminal investigations cannot be part of the production work of HUD. Def.'s Reply at 9 n.7 ("Criminal investigators in HUD's OIG investigated crimes for the purpose of protecting the integrity and efficiency of HUD and its programs, which cannot reasonably be said to fall within HUD's mission, regardless of how broadly the mission is defined."). Instead, defendant asserts, plaintiffs must have provided a supporting service to the management of HUD. *See id.* at 21 ("[T]he work of criminal investigators in HUD's OIG was much more of a management or business function . . . ."). Defendant concludes that plaintiffs were exempt administrative employees of HUD during the relevant time period. Def.'s Mot. at 3 ("Because [plaintiffs] are not performing the mission of the agency, but rather, are performing an important support service to the agency–promoting the efficiency of HUD's programs by preventing waste, fraud and abuse in such programs–the criminal investigators meet the primary duty test of the administrative exemption.").

While the term "mission," *id.*, is one way of describing the fundamental function of the employing entity, other common phrases used in the administration/production dichotomy discussion are the "basic task" of the agency, *Adams I*, 27 Fed. Cl. at 15 (citation omitted), the "line function" of the agency, *Adam v. United States*, 26 Cl. Ct. 782, 788 (1992) ("Prosecuting violators of the immigration laws directly involves performance of an INS mission and thus is a line function of INS."), the "primary function" of the agency, *Adams I*, 27 Fed. Cl. at 15 (commenting that the administrative exemption applied to "those employees whose position provided a service ancillary to the primary function of the agency or organization") (citation omitted), the "major functions" of the agency, *id.* at 20 (internal quotation omitted), or, simply, the employer's "business," Def.'s Mot. at 10 (adopting the term "business" to refer to an agency's mission) (citing *Auer v. Robbins*, 65 F.3d 702, 720-21 (8th Cir. 1995), *aff'd on other grounds*, 519 U.S. 452 (1997)). The court notes that neither the statutory provision providing the administrative exemption, nor the OPM or DOL regulations implementing FLSA, discuss agency mission, or synonymous terms, as a factor in deciding who qualifies for the exemption. Defendant relies on a series of decisions, not binding on this court, for support of its contention that agency mission may be determinative for exempting criminal investigators from overtime pay. *See* Def.'s Mot. at 9-11; Def.'s Reply at 2-5, 12-19. The cases relied upon by defendant tend to base their analyses of the administrative exemption on the administration/production (also known as the production/staff) dichotomy. *See, e.g.*, *Ferrell v. Gwinnett County. Bd. Of Educ.*, 481 F. Supp. 2d 1338, 1346 (N.D. Ga. 2007) (holding that because

"the School System is in the business of educating students, not providing law enforcement . . . [, school-based police officers] are servicing the School System's business of education" and therefore qualify for the administrative exemption from overtime pay because they provide a supporting service). Although the court agrees that the administration/production dichotomy may sometimes aid the administrative exemption analysis, the court believes defendant's emphasis on the administration/production dichotomy is excessive.

The application of the administration/production dichotomy to the administrative exemption stems from the language of OPM and DOL regulations, which established a distinction between production work and administrative work. The OPM version reads: "*Management or general business function or supporting service*, as distinguished from production functions, means the work of employees who provide support to line managers." 5 C.F.R. § 551.104. The DOL version in 1995 read: "The phrase 'directly related to management policies or general business operations of his employer or his employer's customers' describes *those types of activities relating to the administrative operations of a business as distinguished from 'production'* or, in a retail or service establishment, 'sales' work." 29 C.F.R. § 541.205(a) (1994) (emphasis added). The current DOL regulation has rephrased its reference to, and seemingly de-emphasized, the administration/production dichotomy: "The phrase 'directly related to the management or general business operations' refers to the *type of work performed by the employee*. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a) (2006) (emphasis added). Although the language permits a variety of interpretations, it is clear that both OPM and DOL have identified *bona fide* administrative work, 29 U.S.C. § 213(a)(1), at least in some instances, by distinguishing administrative tasks from production work.

### B. Courts Relying on the Administration/Production Dichotomy

Several courts, including this one, have found the administration/production dichotomy helpful in ruling on FLSA's administrative exemption. *See, e.g.*, *Adams I*, 27 Fed. Cl. at 15 (endorsing the view that administrative employees "provide a service which permits the agency to pursue its basic task, while not directly engaging in that task, and [a]re thus exempt from FLSA overtime provisions")

(citation omitted). Defendant has cited cases which are somewhat analogous to the situation here, that of law enforcement employees working in a non-law enforcement agency. The analogous cases relied upon most heavily by defendant, however, do not unequivocally support the use of the administration/production dichotomy as the determinative test for the administrative exemption. Defendant's cases fall mostly into two categories: claims adjusters within the insurance industry and law enforcement officers performing somewhat atypical duties.[7] The court will discuss a representative sampling of these decisions cited by defendant, none of which are binding on this court.

### 1. Insurance Claims Adjusters

In one of defendant's insurance claims adjuster cases, *Jastremski v. Safeco Insurance Cos.*, 243 F. Supp. 2d 743 (N.D. Ohio 2003), the court found an insurance claims adjuster to be exempt from overtime pay because, in part, his duties did "not involve producing the [insurance] company's products or services." *Id.* at 753 (citing *Palacio v. Progressive Ins. Co.*, 244 F. Supp. 2d 1040, 1044-45 (C.D. Cal. 2002)). In other words, the court found that an insurance company's basic task is to produce insurance policies, not to settle claims. *Id.* (citations omitted). The plaintiff was servicing the company and was therefore an administrative employee. *Id.* (citations omitted).

It is important to note that the court in *Jastremski* did not rely solely upon the administration/production dichotomy, but rather used the

---

[7]/ Defendant makes glancing reference to a postal inspector overtime pay exemption case, *Sprague v. United States*, 677 F.2d 865 (Ct. Cl. 1982), but does so only by citing commentary of other courts discussing *Sprague*'s facts and result. Def.'s Mot. at 10; Def.'s Reply at 19. Because defendant does not rely on the holding of *Sprague*, and because *Sprague* seems of no relevance to the issue at hand, the court refrains from discussing *Sprague* here. *See* 677 F.2d at 868-69 (deferring to a DOL letter extending the administrative exemption to similarly situated postal inspectors and containing no analysis of the supporting service to management issue). Defendant, in a footnote, also briefly refers to cases discussing the administrative exemption for compliance or safety inspectors, Def.'s Mot. at 11 n.5, but these cases, too, add little of relevance and will not be discussed here. *See O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1454 (9th Cir. 1988) (devoid of discussion on the supporting service to management issue); *Baker v. Cal. Shipbuilding Corp.*, 73 F. Supp. 322, 327 (S.D. Cal. 1947) (concluding that the safety inspectors' work was "directly related to management policies or general business operations" but providing at most a cursory recitation of the court's reasoning).

administration/production dichotomy as part of its analysis of the administrative exemption. First, the court relied on a DOL regulation, 29 C.F.R. § 541.205(b) (2002), for its description of administrative work: "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." *Jastremski*, 243 F. Supp. 2d at 751 (quoting 29 C.F.R. § 541.205(b) (2002)). The court noted that "[b]ased on this definition alone, [the plaintiff's] duties appear to be administrative in nature." *Id.* The court then cited another DOL regulation which specifically described claims adjusters as meeting at least some of the criteria for the administrative exemption. *Id.* at 751-52 (deferring to the DOL regulation, 29 C.F.R. § 541.205(c)(5) (2002), as persuasive authority for exempting the plaintiff from overtime pay).

The court also relied on a DOL opinion letter regarding other insurance claims adjusters whom DOL had determined to be exempt. *See id.* at 752 (deferring to the DOL opinion letter). Finally, the court examined caselaw and followed *Palacio* for its suggestion that the administration/production dichotomy indicates that claims adjusters are administrative employees. *Id.* at 753. The court in *Jastremski* thus relied on several arguments to uphold the administrative exemption in that case, not just the administration/production dichotomy.

In light of the foregoing, it is difficult to extend the reasoning of *Jastremski* to plaintiffs here. Contemporaneous DOL and OPM regulations did not specifically exempt criminal investigators from overtime pay, to any degree. Nor have the parties reported any contemporaneous DOL or OPM opinion letters exempting criminal investigators. Thus, two of the cited reasons for the *Jastremski* decision are absent in the present case and, as stated, that court did not exclusively rely upon the administration/production dichotomy in reaching its decision.

*Palacio*, the other insurance claims adjuster case cited by defendant, applied the administration/production dichotomy as part of its analysis of the plaintiff's claim to overtime pay under FLSA. 244 F. Supp. 2d at 1046-47. The *Palacio* court noted that the employer, an insurance company, "is not in the business of claims handling[,] [r]ather, it is in the business of writing and selling automobile insurance." *Id.* at 1047. Because the plaintiff "did not produce the very goods or services that [the insurance company] offered to the public," the court found support for its holding that the plaintiff was an administrative employee and exempt from overtime pay. *Id.*

Again, it is important to note that the court there relied on other reasons for its holding, in addition to the administration/production dichotomy. The *Palacio* court observed that some courts relied on 29 C.F.R. § 541.205(c)(5) (2002) to exempt insurance claims adjusters. *Palacio*, 244 F. Supp. 2d at 1045 (citing cases). The court, largely rejecting the approach used in those cases, turned to the administration/production dichotomy but expressed several reservations about using that dichotomy as the determinative analysis for deciding whether an employee fits into the administrative category of employees. *Id.* at 1046-47. The court was bound by controlling precedent which states that "[u]nless an employee falls squarely on the production side of the line, the administrative/production dichotomy constitutes 'but one analytical tool, to be used only to the extent it clarifies the analysis.'" *Id.* at 1046 (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1126 (9th Cir. 2002)). Hence, the court concluded its analysis of the supporting service to management issue by stating that "we need not rely upon such a technical application of the administrative/production dichotomy [which focuses on the business of the employer and whether the employee's tasks are part of that primary function] [, because] [t]he evidence establishes that Palacio was 'advising the management, planning, negotiating, [and] representing' [the insurance company] throughout her employment and generally 'servicing' the business." *Id.* at 1047 (citations omitted). Ultimately, the court relied on the character of the plaintiff's tasks as a claims adjuster, not on the administration/production dichotomy, for upholding her exemption from overtime pay. *See id.* (referencing *Bothell*, 299 F.3d at 1126, for its prohibitions against relying too heavily on the administration/production dichotomy).

### 2. Law Enforcement Officers with Atypical Duties

In *Auer v. Robbins*, 65 F.3d 702, 720-21 (8th Cir. 1995), *aff'd on other grounds*, 519 U.S. 452 (1997), the United States Court of Appeals for the Eighth Circuit examined whether police internal affairs department sergeants (IAD sergeants) were administrative employees. Although these sergeants conducted criminal investigations, the Eighth Circuit distinguished criminal investigations in internal affairs from "typical law enforcement activities" of other police officers. *Id.* at 721. These sergeants were found to be exempt administrative employees. *Id.*

Defendant cites *Auer* for the proposition that the *purpose* of the investigative work is important, and concludes that criminal investigators whose work is not part of the "business" of the agency are administrative employees and exempt from

overtime pay under FLSA. Def.'s Mot. at 10; Def.'s Reply at 12-13. Defendant, perhaps, reads too much into the brief discussion of the administrative nature of the IAD sergeants' work in *Auer*. The Eighth Circuit's decision upholding a ruling that the IAD sergeants were exempt employees appears to be as much based on the character of the work performed, as the fact that internal affairs investigations are not within the primary function of the police department. The court stated that these "sergeants are not involved in typical law enforcement activities . . . [; these] sergeants spend all of their time accumulating and analyzing data and making recommendations that shape the department's policy with respect to internal discipline. Under these circumstances, the district court correctly determined that the IAD sergeants were exempt administrators." *Auer*, 65 F.3d at 721. Like the court in *Palacio*, the Eighth Circuit relied on the essential character of the duties performed by the internal affairs sergeants to uphold their administrative exemption, as well as on the administration/production dichotomy.

Defendant's strongest case for its proposition that the administration/production dichotomy is determinative is *Ferrell v. Gwinnett County Board of Education*, 481 F. Supp. 2d 1338 (N.D. Ga. 2007). The issue before that court was whether School Resource Officers (SROs), highly educated and experienced police officers paid salaries exceeding those of comparably-qualified law enforcement officers, each assigned to and solely responsible for the safety of a cluster of five to seven schools within the school district, were exempt administrative employees. *Id.* at 1339-41. The court found no reported cases touching on whether SROs are exempt employees under FLSA. *Id.* at 1343 n.5.

In its analysis, the *Ferrell* court first identified the SROs' primary duty, and described their function as "provid[ing] for the safety and security of the people and property in their clusters[;] . . . perform[ing] the hybrid function of an in-house law enforcement officer with certain quasi-administrative responsibilities." *Id.* at 1344. Next, the court reviewed DOL regulations pertinent to law enforcement positions and acknowledged that "police officers ordinarily do not satisfy [the directly related to management or general business operations] element of the administrative exemption." *Id.* at 1346 (citing 29 C.F.R. §§ 541.3(b)(1), (3), 541.201 (2006)). The court also cited language from these regulations which placed work in the functional areas of "safety and health" within the scope of the administrative exemption. *Id.* (citing 29 C.F.R. § 541.201(b) (2006)).

The court then launched into a discussion of the administration/production

dichotomy and embraced the dichotomy as a useful analytical tool. *Id.* at 1346-47 & n.7 (endorsing the value of the administration/production dichotomy and commenting that "[a]lthough the 'production/staff' dichotomy is no longer specifically included in the regulations, the DOL has stated that it continues to be a useful analytical tool") (citation omitted). Applying the dichotomy to the case at hand, the court found that "the School System is in the business of educating students, not providing law enforcement. Thus, rather than producing the School System's end product of education, Plaintiffs are servicing the School System's business of education." *Id.* at 1347. After reviewing caselaw, the court restated its finding that the SROs were not engaged in the production of the school system, rather, they were "affecting and implementing the School System's safety policies and procedures, a function that is contemplated by the regulations as an administrative duty." *Id.* (citing 29 C.F.R. § 541.201(b) (2006)). Echoing the language of the DOL regulation describing the administrative exemption, *see* 29 C.F.R. § 541.201(a) (2006), the court concluded that "Plaintiffs' work directly affected the School System's safety policies, thereby satisfying the requirement of performing work that is directly related to the management or general business operations of one's employer." *Ferrell*, 481 F. Supp. 2d at 1347 (citations omitted). Although defendant cites this case repeatedly for its reliance on the administration/production dichotomy, its finding that the SROs provide a supporting service to the school system, and its holding that the SROs are exempt from overtime pay, Def.'s Reply at 2-3, 17-19, 25, *Ferrell* does not rely entirely on the administration/production dichotomy but provides, instead, a more nuanced analytical framework.

### C. Support for a Character-Based Analysis of the Primary Duty of Plaintiffs, with Recourse to the Administration/Production Dichotomy If Needed

*Ferrell* models a review of a FLSA administrative exemption that depends, in essence, on three steps. First, the court must identify the primary duty of the plaintiff. Second, if the character of the employment is described as exempt or nonexempt in the regulations that govern the administrative exemption, that regulatory guidance will carry much weight. *See Ferrell*, 481 F. Supp. 2d at 1345 (emphasizing that the plaintiffs' "overarching primary duty [was] to provide safety and security for their clusters"); *id.* at 1346-47 (noting that safety managers are exempt employees under the DOL regulations). Third, if there is mixed authority

regarding the type of work and the applicability of the administrative exemption, or perhaps if the work is of a unique nature, the administration/production dichotomy is a useful analytical tool for resolving the question of the exemption. *See id.* at 1346 (turning to the administration/production dichotomy only after noting authority generally excluding police officers from the administrative exemption).

Although this court does not adopt the *Ferrell* court's parsing of the administration/production dichotomy and the caselaw and regulations addressing this issue, the three step process utilized by the *Ferrell* court is a useful model. To summarize and adapt, then, the analytical framework that *Ferrell* has modeled: first, the court must identify the primary duty of the plaintiff; second, the court must review the regulatory scheme of OPM and DOL for guidance as to whether the identified type of work is exempt or nonexempt; and third, if these steps do not produce conclusive results, the court must apply the administration/production dichotomy to further clarify whether the plaintiff provides a supporting service to management or participates in the production work of the organization. There is substantial support for this analytical model.

It is clear that the character of the primary duty performed by the employee determines, in large part, whether or not an employee is exempt from overtime pay under FLSA. As one court has described the analysis:

> In determining whether the [FLSA overtime pay] exemption applies or not, courts have focused on whether the employee's activities are directly related to the management polices or general business operations of the business or enterprise. *Roney v. United States*, 790 F. Supp. 23, 27 (D.D.C. 1992). The case law has made clear the nature of an employer's business does not determine whether employees act in an executive, administrative, or professional capacity, within the meaning of [29 U.S.C. §] 213. Rather, the character, type, and extent of activities and duties performed by employees play[] the primary role in any decision regarding the applicability of the exemption. *Martin v. Penn Line Service, Inc.*, 416 F. Supp. 1387, 1389-90 (W.D. Pa. 1976). To put it more succinctly, the function performed by the employee determines his or her status.

*Anderson v. City of Cleveland, Tenn.*, 90 F. Supp. 2d 906, 916-17 (E.D. Tenn. 2000). The first step in determining whether an administrative exemption is justified is identifying the employee's primary duty so that its character and type may be understood. *See, e.g., Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 538 (7th Cir. 1999) (stating that ruling on the administrative exemption requires close examination of the plaintiff's duties); *Adams II*, 1998 WL 804552, at *5 (remanding to this court so that "evidence about the actual duties performed" or "evidence . . . about the duties the[] employees typically performed" could be introduced in order to resolve the dispute over the administrative exemption); *Berg v. Newman*, 982 F.2d 500, 502 (Fed. Cir. 1992) (*Berg II*) (remanding to the trial court for "an examination of the day-to-day work of [the] employee[s]").

In the second step, the court must compare the character of the employee's primary duty to the criteria and models for the administrative exemption provided by the regulations interpreting FLSA, most particularly the guidance found in OPM regulations. *See, e.g., Berg II*, 982 F.2d at 502-03 (describing the administrative category of employees as including "technical employees whose primary duties include specialized management consultation, overall management functions, contract negotiation and administration, and the like" (citing OPM guidance now set forth in 5 C.F.R. § 551.104)); *Berg v. United States*, 49 Fed. Cl. 459, 469-70 (2001) (*Berg III*) (noting first that the plaintiffs' primary duty did not fall within either of the enumerated models in 5 C.F.R. § 551.104 cited by the defendant, and then turning to the administration/production dichotomy to continue its analysis); *see also Statham v. United States*, No. 00-699C, 2002 WL 31292278, at *8 (Fed. Cl. Sept. 11, 2002) (stating that "the plaintiff's primary duty cannot be characterized as meeting any one of the enumerated definitions for supporting service . . . [,] find[ing] that the regulation provides a sufficient definition of a supporting service," and then turning to the defendant's administration/production dichotomy argument) (citing 5 C.F.R. § 551.104 and *Berg III*, 49 Fed. Cl. at 470).

The court may also consider DOL regulations, *see, e.g., Grandits v. United States*, 66 Fed. Cl. 519, 531 (2005) (citing DOL regulation for its clarification of the criteria governing the administrative exemption); *Aamold*, 39 Fed. Cl. at 739 n.4 (stating that "the court also can consider DOL's regulations") (citation omitted); *Adam*, 26 Cl. Ct. at 786 (stating that "we believe the Labor Department materials [including DOL regulations] provide guidance helpful to our construction of not only the FLSA, but also the OPM regulations"), and caselaw interpreting DOL regulations, *see, e.g., Grandits*, 66 Fed. Cl. at 531-32 (citing caselaw

construing DOL regulations concerning the administrative exemption); *Adam*, 26 Cl. Ct. at 789 (favorably citing *Roney*, 790 F. Supp. at 24-25, 28, a case construing FLSA's administrative exemption by applying both DOL and OPM regulations), for further guidance on the types of work which fit within the administrative exemption. The court must consider, for example, whether the allegedly administrative work is of "substantial importance," 5 C.F.R. § 551.206(a)(2), in light of guidance given by OPM and DOL regulations. *See* 5 C.F.R. § 551.104 (stating that the work must be of "enough importance that the employee's actions and decisions *have a noticeable impact on the effectiveness of the organization* advised, represented, or serviced") (emphasis added); 29 C.F.R. § 541.205(a) (1994) ("The phrase 'directly related to management policies or general business operations of his employer or his employer's customers' . . . limits the exemption to persons who perform *work of substantial importance to the management or operation of the business of his employer or his employer's customers*.") (emphasis added).

Not every type of work claimed to be administrative in nature, however, is easily classified, even after exhaustive review of OPM and DOL regulations, and for these cases the administration/production dichotomy can be quite helpful. *Cf. Berg III*, 49 Fed. Cl. at 471-72 (acknowledging that the court in *Hickman v. United States*, 10 Cl. Ct. 550 (1986) reached an opposite conclusion concerning FLSA's administrative exemption, notwithstanding the fact that a plaintiff in *Hickman* and the plaintiffs in *Berg III* had identical job titles, and relying in part on the administration/production dichotomy to distinguish the two cases). Thus, in the third step, the court may turn to the administration/production dichotomy to clarify whether a plaintiff's work falls on the production work side of the line, and is thus nonexempt, or, on the other hand, the work offers support to line managers and is administrative in nature. *See* 5 C.F.R. § 551.104 ("*Management or general business function or supporting service*, as distinguished from production functions, means the work of employees who provide support to line managers.").

It is important to note, however, that the application of the administration/production dichotomy should not be employed to expand the general meaning of "administrative employee" beyond the confines conveyed by OPM and DOL regulations and persuasive caselaw interpreting FLSA. *Cf. Palacio*, 244 F. Supp. 2d at 1047 (declining to overmuch "rely upon such a technical application of the administrative/production dichotomy") (citing *Bothell*, 299 F.3d at 1128); *Roney*, 790 F. Supp. at 27-28 (cautioning that the defendant's

expansive view of the administrative exemption, so as to encompass the work of a courtroom marshal, would distort the definition of administrative employee to the extent that "the exemption would swallow the rule"). Perhaps one of the most thorough explanations of how to apply the administration/production dichotomy has been provided by the United States Court of Appeals for the Ninth Circuit:

> [T]he administration/production dichotomy [i]s but one piece of the larger inquiry, recognizing that a court must constru[e] the statutes and applicable regulations as a whole. Indeed, some cases analyze the primary duty test without referencing the [29 C.F.R.] § 541.205(a) [pre-2004] dichotomy at all. This approach is sometimes appropriate because, as we have said, the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis. Only when work falls squarely on the production side of the line, has the administration/production dichotomy been determinative.
>
> The administration/production distinction thus distinguishes between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself. . . . [T]he distinction should only be employed as a tool towards answering the ultimate question, whether work is directly related to management policies or general business operations, not as an end in itself.

*Bothell*, 299 F.3d at 1127 (internal quotations, citations and footnotes omitted). In other words, even if a plaintiff's primary duty appears to be ancillary to the line function of the employer, the court must still ascertain whether or not the nature of that work fits within the bounds of administrative work and is thus exempt under FLSA. *See Bothell*, 299 F.3d at 1127-28 (noting that because some ancillary work is administrative and other ancillary work is not, "[d]efining [the plaintiff's] work as 'ancillary customer service' does not end the analysis"); *cf. Adams I*, 27 Fed. Cl. at 20 (including among nonexempt primary duties not only those which are within the "major functions" of the agency, but also those which are "closely related to" the agency's major functions).

It is significant to note that the use of the administration/production dichotomy as the determinative test for the administrative exemption, as defendant appears to argue here, Def.'s Mot. at 2-3, has lately been rejected by DOL, which in 2004 revised its regulations governing FLSA's application in the private sector. DOL endorses a view of the administration/production dichotomy that is significantly different from, if not counter to, defendant's view:

> Commenters, thus, have very different perspectives about how the Department [of Labor] should approach the "production versus staff" [or administration/production] dichotomy and apply it to the modern workplace. Except as stated above, we have not adopted any of the commenters' suggestions for substantial changes to the primary duty standard in section [29 C.F.R. §] 541.201(a). The Department believes that our proposal struck the proper balance on the "production versus staff" dichotomy. We do not believe that it is appropriate to eliminate the concept entirely from the administrative exemption, but *neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption*. The Department believes that the dichotomy is still a relevant and useful tool *in appropriate cases to identify employees who should be excluded from the exemption*. As the Department recognized in [1949], this exemption is intended to be limited to those employees whose duties relate "to the administrative as distinguished from the 'production' operations of a business." Thus, it relates to employees whose work involves servicing the business itself–employees who "can be described as staff rather than line employees, or as functional rather than departmental heads." [A 1940 report] further described the exemption as being limited to employees who have "miscellaneous policy-making or policy-executing responsibilities" but who do not give orders to other employees. Based on these principles, the Department provided in proposed section 541.201(a) that the administrative exemption covers only employees performing a particular type of work–work related to

assisting with the running or servicing of the business. The examples the Department provided in proposed section 541.201(b) were intended to identify departments or subdivisions that generally fit this rule.
The Department's view that the "production versus staff" dichotomy has always been illustrative–but not dispositive–of exempt status is supported by federal case law. In *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002), for example, the Ninth Circuit found the dichotomy "useful only to the extent that it helps clarify the phrase 'work directly related to the management policies or general business operations.'" *Id.* at 1126 (citation omitted). The court further stated:

> The other pertinent cases from our sister circuits similarly regard the administration/production dichotomy as but one piece of the larger inquiry, recognizing that a court must 'construe the statutes and applicable regulations as a whole.' Indeed, some cases analyze the primary duty test without referencing the § 541.205(a) dichotomy at all. This approach is sometimes appropriate because, as we have said, the dichotomy is but one analytical tool, to be used only to the extent that it clarifies the analysis. Only when work falls 'squarely on the production side of the line,' has the administration/production dichotomy been determinative.
> * * * * *
> Moreover, the distinction should only be employed as a tool toward answering the ultimate question, whether work is 'directly related to management policies or general business operations,' not as an end in itself.

*Id.* at 1127 (citations omitted). *See, e.g., Piscione v.*

> *Ernst & Young, L.L.P.*, 171 F.3d 527, 538-39 (7th Cir. 1999) (even though the employee "produced" some reports and filings, and such work might be viewed as production work, the work was directly related to the management or general business operations); *Spinden v. GS Roofing Products Co.*, 94 F.3d 421, 428 (8th Cir. 1996) (employee held administratively exempt despite the fact that he "produced" certain specific outputs), *cert. denied*, 520 U.S. 1120 (1997).
>
> The final regulation is consistent with the Ninth Circuit's approach in *Phase Metrics*: the "production versus staff" dichotomy is "one analytical tool" that should be used "toward answering the ultimate question," and is only determinative if the work "falls squarely on the production side of the line."
>
> As noted above, proposed section 541.201(b) provided an illustrative list of the types of functional areas or departments, including accounting, auditing, marketing, human resources and public relations, typically administrative in nature.

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 541) (emphasis added). Because DOL's long-standing view of the administration/production dichotomy mirrors that of the *Bothell* court, the court believes this persuasive authority should not be ignored.[8]

---

[8]/ In *Adams I,* the court embraced both regulatory guidance and the administration/production dichotomy as tools for reviewing administrative exemptions governed by what is now 5 C.F.R. § 551.206(a)(2). 27 Fed. Cl. at 14-16. The court's discussion of this issue in *Adams I* did not consider the relative emphasis to be placed on the dichotomy in cases where criminal investigators work for non-law enforcement agencies. To the extent, if any, the court's analysis of the administrative exemption embodied in 5 C.F.R. § 551.206(a)(2) and the relative weight to be accorded to the administration/production dichotomy here differs from the analysis in *Adams I,* the court now adopts the nuanced approach described in this opinion.

The law of the case doctrine does not bind this court to prior statements of law. *Munro v. Post*, 102 F.2d 686, 688 (2nd Cir. 1939) (stating that the law of the case doctrine "does not bind

(continued...)

The *Bothell* court and DOL describe the administration/production dichotomy as a tool that may be used to clarify the analysis of a plaintiff's administrative exemption, but one that should not be used at the outset as a dispositive test. This approach is consistent with the three-step review of an administrative exemption which the court has elucidated here, where the third step uses the administration/production dichotomy to clarify the nature of a plaintiff's primary duty essentially on an 'as needed' basis. If a plaintiff's primary duty eludes classification by this court, despite consideration of its character in light of the examples and guidance provided by OPM and DOL regulations and relevant caselaw, the court should then look to and include the administration/production dichotomy in its analysis to try to resolve the issue of whether or not the administrative exemption was justified.

## IV. Plaintiffs' Primary Duty

The parties do not dispute the character of plaintiffs' primary duty. For most of the relevant period, plaintiffs "spent the vast majority of [their] time investigating or leading investigations into fraud upon HUD's programs." Def.'s Mot. at 15. From February 1994 through October 1994, some plaintiffs spent most of their time working on investigations into violent crimes in public and assisted housing, while the remaining plaintiffs continued to focus on fraud investigations.[9] *Id.* Because more than half of plaintiffs' time was spent on fraud investigations or violent crime investigations, and no argument has been made that any other tasks defined plaintiffs' primary duty, the court finds that plaintiffs' primary duty was investigating fraud or violent crimes affecting HUD programs. *See* 5 C.F.R. § 551.104 (defining primary duty); *Adams I*, 27 Fed. Cl. at 13 (noting that the

---

[8](...continued)
a judge to follow the reasons given by an earlier judge") (citations omitted); *see also Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991) (stating that the law of the case doctrine "has long been held not to require the trial court to adhere to its own previous rulings if they have not been adopted, explicitly or implicitly, by the appellate court's judgment") (citing *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979)). No mention of the administration/production dichotomy was made in *Adams II*, where the Federal Circuit reversed and remanded *Adams I*. *See* 1998 WL 804552. Thus, *Adams II* does not bind this court to the particular description of the administration/production dichotomy in *Adams I*. *See Exxon*, 931 F.2d at 877.

[9]/ There is a nonmaterial dispute as to when violent crime investigations began to be the primary duty for at least one plaintiff. *See* Pls.' Resp. To Def.'s Facts ¶ 9.

primary duty for FLSA purposes may be the duty which occupies greater than fifty percent of the employee's time); Pls.' Reply at 16 n.22 (noting that defendant has not relied on any test other than the greater than fifty percent test for identifying plaintiffs' primary duty).

More specifically, plaintiffs' fraud investigations focused on "false statements, embezzlement, bribery and kickbacks." Def.'s Facts ¶ 5. Plaintiffs' violent crime investigations involved "work[ing] with Federal, state and local law enforcement officers to investigate gangs and other drug and gun rings in an effort to prosecute their leaders." *Id.* ¶ 9. These tasks took up most of plaintiffs' work time. Def.'s Mot. at 14-15. Undisputedly, these tasks required and were composed of "typical law enforcement duties" such as planning and conducting investigations, collecting and reviewing evidence, conducting surveillance and interviewing witnesses. Def.'s Facts ¶ 12; Pls.' App. at 267.

## V. Whether Plaintiffs Qualify for the Administrative Exemption

### A. Substantial Importance

To qualify for the administrative exemption, plaintiffs' primary duty must be of substantial importance to HUD. *See* 5 C.F.R. § 551.206(a)(2). The term substantial importance is further defined by both OPM and DOL regulations. According to OPM, substantially important work is of "enough importance that the employee's actions and decisions *have a noticeable impact on the effectiveness of the organization* advised, represented, or serviced." 5 C.F.R. § 551.104 (emphasis added). Similarly, DOL's administrative exemption "limits the exemption to persons who perform *work of substantial importance to the management or operation of the business of his employer or his employer's customers*." 29 C.F.R. § 541.205(a) (1994) (emphasis added).

Defendant highlights the financial and deterrence impact of plaintiffs' work to show that their primary duty was of substantial importance to HUD. Defendant cites data showing that during the relevant claims period OIG criminal investigators produced "$200 million dollars in savings, recoveries, fines and cost efficiencies" as the result of their efforts. Def.'s Mot. at 16. Specific plaintiffs participated in investigations which recovered millions of dollars for HUD and deterred other crimes. Def.'s Reply at 7. Plaintiffs do not dispute that OIG criminal investigators performed work of substantial importance to HUD, as those

terms might be commonly understood, but question whether plaintiffs' work meets the standard for substantial importance provided by DOL regulations.

The court agrees with defendant that plaintiffs' work was of substantial importance to HUD, under both OPM and DOL regulations. HUD could not help being more efficient if fraud were rooted out and deterred in its programs, and the recovered funds were utilized to help HUD stretch its budget. Similarly, violent crime deterrence would enable community development and housing programs to function more efficiently. Thus, plaintiffs' work would have a "noticeable impact on the effectiveness" of HUD. 5 C.F.R. § 551.104. Similarly, millions of dollars of recovered funds would be "of substantial importance to the management or operation of" HUD, as would safer public and assisted housing. 29 C.F.R. § 541.205(a) (1994). Thus, plaintiffs' work meets the substantial importance test of the regulatory definition of supporting service, as required for the administrative exemption alleged by defendant.

### B. The Exempt or Nonexempt Character of Plaintiffs' Primary Duty

The more difficult question is whether plantiffs' primary duty qualifies as a supporting service under FLSA's administrative exemption. The OPM regulation describing the primary duty test relied upon by defendant requires that administrative employees work as supporting service specialists. 5 C.F.R. § 551.206. These terms are further defined by 5 C.F.R. § 551.104, which requires, first, that administrative employees "provide support to line managers." *Id.* This regulation goes on to provide three examples of supporting service: "automated data processing, communications, or procurement and distribution of supplies." *Id.* The typical law enforcement duties of plaintiffs, such as collecting evidence and interviewing witnesses, are not among these listed examples.

Defendant points out that these plaintiffs worked on investigations that addressed fraud and violent crime *within* HUD programs, rather than investigations into violations of more general criminal laws in matters external to HUD. Def.'s Mot. at 12-13; Def.'s Reply at 11-12. For this reason, defendant distinguishes cases where criminal investigators working for law enforcement agencies, whose jobs entailed investigations of violations of more general laws, were found to be ineligible for FLSA's administrative exemption. Def.'s Reply at 9-19. Crime detection and prevention within HUD programs, defendant argues, is an "administrative function," *id.* at 19, because of its focus on the integrity of the

operations of HUD, *id.* at 16-17.

Defendant's most colorable argument is that this focus on internal operations and organizational integrity is similar to the focus of an auditor, whose work is largely recognized to be administrative in nature and exempt. *Id.* at 21; *see* 29 C.F.R. § 541.205(b) (1994) ("The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for[] example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and *business research and control*.") (emphasis added); *see also* 29 C.F.R. § 541.201(b) (2006) ("Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; *auditing*; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.") (emphasis added). Although defendant's comparison of fraud investigators to auditors has some initial appeal, a closer examination of plaintiffs' primary duty suggests that their criminal fraud investigations and violent crime investigations were indeed typical law enforcement work, and not at all comparable to the audits conducted by auditors. *See, e.g.*, Pls.' Facts ¶ 29 ("[C]riminal investigators with HUD were issued revolvers that were replaced in 1994 by a 9 mm semi-automatic pistol. Some agents were issued or had access to 12 gauge shotguns and an H 7 K machine gun."); Def.'s Facts ¶ 3 (stating that "HUD's OIG was primarily responsible for investigating alleged violations of Federal criminal statutes involving fraud and corruption relative to [HUD's] programs") (internal quotations omitted).

Plaintiffs argue, for their part, that OPM and DOL regulations, and the caselaw interpreting them, command a determination that typical law enforcement tasks, such as collecting evidence and interviewing witnesses, are nonexempt work under FLSA.[10] *See* Pls.' Mot. at 3 ("This Court, numerous other courts, [DOL],

---

[10]/ Plaintiffs also argue that because criminal fraud investigations at other federal agencies were found to be nonexempt work, the court should find these plaintiffs' fraud investigations nonexempt as well. *See* Pls.' Mot. at 22-23 & n.21; Pls.' Reply at 4-7. The citations for plaintiffs' contentions, *Adams I*, 27 Fed Cl. at 15-16 (reversed by *Adams II*) and

(continued...)

and [OPM] have been of one voice in holding that criminal investigators whose primary duty is to perform traditional criminal investigative work such as making arrests, serving subpoenas and warrants, conducting surveillance, collecting and reviewing evidence, interviewing witnesses, and interrogating suspects are not exempt from the FLSA as administrative employees."). Plaintiffs rely in part on DOL's current regulation which specifically removes criminal investigators from the administrative exemption.[11] *Id.* at 10-11 (citing 29 C.F.R. § 541.3(b) (2006)). Additionally, plaintiffs rely on a plethora of cases holding that criminal investigative duties, such as those performed by plaintiffs here, are not administrative work.[12] *Id.* at 16-18. These cases are not that helpful, however.

As defendant points out, many of plaintiffs' criminal investigator cases rely, at least in part, on the administration/production dichotomy for their findings that law enforcement activities within a law enforcement agency are production work and not administrative work. Def.'s Reply at 9-12. Because much of the language in these cases could be used to support either party's position, and because none of these decisions are precedential, the court determines that they are inapposite and declines to either rely upon or to discuss these cases. Instead, the court will limit its discussion to three decisions that demonstrate how the character of a plaintiff's primary duty may be tested against the regulatory guidance describing the administrative exemption. These three decisions will suffice to guide the court here.

This court is bound by the interpretation of the administrative exemption announced by the Federal Circuit in *Berg II*. *See* 982 F.2d at 501-03 (citing OPM

---

[10](...continued)
*Adams IV*, 65 Fed. Cl. at 205-06, 209 (not discussing this issue), were either inapposite or inadequate to support further consideration of this argument.

[11]/ See note 4, *supra*, for a discussion of the court's decision to accord relatively little weight to 29 C.F.R. § 541.3(b) (2006).

[12]/ OPM administrative decisions, such as those cited by plaintiffs, are not considered applicable beyond the facts of those cases and will not be considered by the court. *See* http://www.opm.gov/flsa/about.asp (last visited August 17, 2007) ("The FLSA claim decisions posted on these pages do not substitute for application of our FLSA regulations and are not 'case law.' These decisions should not be used as the basis for other FLSA claims because these decisions do not provide enough information for direct application in other FLSA claims.").

regulations and guidance to establish a test for determining whether an administrative exemption is justified). Three statements within that opinion are of relevance here. First, the Federal Circuit required an administrative employee's primary duty to be among those which "primarily involve or affect significant management responsibilities." *Id.* at 502. Second, the Federal Circuit described administrative employees as "technical employees whose primary duties include specialized management consultation, overall management functions, contract negotiation and administration, and the like." *Id.* at 502-03. Third, the court stated that administrative employees have duties "such as significant managerial functions." *Id.* at 503.

The lesson that *Berg II* teaches is that OPM regulations define administrative work not simply as work that is any work but production work, but work of a certain type which is closely tied to the management of the agency. This court has discerned the same requirement in OPM regulations, and has stated that administrative employees "perform[] management or business functions. The listed [administrative] activities all have a managerial flavor, including the examples of support services." *Adam*, 26 Cl. Ct. at 789. The court does not find that plaintiffs here performed work of a managerial flavor, performed significant managerial functions, affected significant management responsibilities, or were otherwise involved in work similar to the listed examples of administrative work provided in OPM regulations. *See* 5 C.F.R. § 551.104 (listing examples such as "automated data processing, communications, or procurement and distribution of supplies"); *cf.* 29 C.F.R. § 541.205(b) (1994) (listing DOL supporting services examples such as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control"); 29 C.F.R. § 541.201(b) (2006) (listing DOL supporting service examples such as "work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities").

The analysis in *Berg III* offers more support for this interpretation of OPM regulations. 49 Fed. Cl. at 469-70, 472. Following the guidance of *Berg II*, the court identified the plaintiffs' primary duty, which was maintaining and repairing radar and communications equipment, and distinguished this work from the

examples of administrative work provided by OPM regulations. *See* 49 Fed. Cl. at 468-70 (ruling that the plaintiffs' primary duty was not in the areas of procurement of parts or providing technical advice to management, as had been argued by the government). The court later specifically listed all of the categories of administrative work that were alien to the plaintiffs' primary duty: "Tracking the OPM definition of managerial function and supporting services, the plaintiffs, in their primary duty, do not act as management consultants or systems analysts; do not engage in overall management functions, such as safety management, personnel management, or financial management; do not serve as representatives of management, such as in negotiating or administering contracts; and do not provide management or administrative supporting services." 49 Fed. Cl. at 472 (citing 5 C.F.R. § 551.104). Similarly, the court finds here that none of the listed examples in 5 C.F.R. § 551.104 describe plaintiffs' primary duty, nor do any of those examples describe work that is similar to plaintiffs' primary duty.

In another decision from this court invalidating a FLSA administrative exemption classification by the federal government, the court first reviewed the evidence which described the primary duty of a Physical Security specialist who protected high level officials at the Department of Energy. *Statham*, 2002 WL 31292278, at *1-*3. At least seventy percent of the plaintiff's time was spent "performing day-to-day physical executive protection for the Secretary [of DOE]." *Id.* at *2. DOE nonetheless classified this work as administrative work exempt from overtime pay. *Id.* at *4.

Before the court, the government asserted that the plaintiff's work was a "supporting service" under 5 C.F.R. § 551.206(a)(2). *Statham*, 2002 WL 31292278, at *8. The court disagreed, holding that OPM regulations provide a working definition for administrative work by giving examples, and that the plaintiff's primary duty "cannot be characterized as meeting any one of the enumerated definitions for supporting service." *Id.* The *Statham* court then elaborated on its view of the nature of administrative work, stating that administrative work includes "managerial type functions," and that administrative employees have "a certain level of managerial responsibility." *Id.* at *8-*9. Thus, the *Statham* court rejected the government's argument that the administration/production dichotomy compelled a different result, and held that the plaintiff did not fit within the supporting service exemption to overtime pay under FLSA. *Id.*

Defendant reasonably argues against construing the decision in *Statham* too broadly. Def.'s Reply at 21-22 nn.12-13. The court agrees with defendant that the term "supporting service" is not confined strictly to "automated data processing, communications, or procurement and distribution of supplies." 5 C.F.R. § 551.104. But the court also agrees with plaintiffs that those examples contain regulatory guidance as to the nature of administrative work and cast the mold into which other non-enumerated examples must fit. *See* Pls.' Reply at 13 (stating that "basic principles of construction inform us that § 551.104[] necessarily limits the application of 'supporting services' to duties which are substantially similar to these examples") (citation omitted). As to the characterization of supporting services as having a "managerial flavor," *Statham*, 2002 WL 31292278, at *8 (citing *Adam*, 26 Cl. Ct. at 789), the court notes that both the relevant OPM regulation and *Berg II* require supporting services to be closely tied to the management of the agency. *See* 5 C.F.R. § 551.104 (requiring all administrative work to "provide support to line managers"); *Berg II*, 982 F.2d at 502 (requiring administrative work to "primarily involve or affect significant management responsibilities"). Thus, the court in *Statham* required administrative work to be similar to the examples given in OPM regulations, and to be closely tied to the overall management functions of the government agency. This court does not disagree with that interpretation.

Comparing plaintiffs' work here with the OPM regulations, the criminal investigations conducted into fraud and violent crime within HUD programs did not resemble the examples of supporting service given by 5 C.F.R. § 551.104. There is also no reason to see the activities of the criminal investigators as closely tied to the management of HUD programs. Although these investigations provided substantially important funds for the furtherance of HUD's mission, there is no evidence that line managers in HUD programs used those criminal investigations in the same way they used computer networks or purchasing systems to support their management functions. For all of the reasons discussed above, the court finds that defendant has not shown that plaintiffs' primary duty qualified for the administrative exemption in 29 U.S.C. § 213(a)(1).

Because OPM regulations do not support an administrative exemption for these plaintiffs, and because the duties described here have failed to signal any ambiguous circumstances or conflicting authority warranting an incursion beyond the first two analytical steps supplied by *Ferrell* and other court decisions discussed here, the court need not consider the administration/production

dichotomy, which in this case would add more confusion than clarity. *See Bothell*, 299 F.3d at 1127 (stating that "the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis"). Accordingly, defendant has failed to overcome the presumption that plaintiffs are entitled to benefit from FLSA's overtime requirements by proving that plaintiffs were subject to the administrative exemption.

## VI. Scope of Liability Determination

Although plaintiffs have requested summary judgment concerning their FLSA claims for three years prior to the individual filing of each HUD plaintiff's claims, Pls.' Mot. at 1, the statute of limitations for these actions, absent a willful violation of the statute, limits recovery to a claims period beginning two years before the filing of the claim, 29 U.S.C. § 255(a) (2000). Neither party has briefed the issue of whether defendant willfully violated FLSA in classifying these plaintiffs as exempt employees. The burden is on plaintiffs to show willfulness. *See Bull v. United States*, 479 F.3d 1365, 1379 (Fed. Cir. 2007) (placing burden on plaintiffs to show willfulness) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Because plaintiffs have not met this burden, the court limits recovery to the claims period beginning two years before each HUD plaintiff filed suit in this court, and ending no later than October 30, 1994.

On the other hand, defendant bore the burden, 29 U.S.C. 260 (2000), of disproving plaintiffs' right to the liquidated damages provided by 29 U.S.C. 216(b) (2000). *Bull*, 479 F.3d at 1379-80 ("'The burden rests on the government to establish its good faith and the reasonable grounds for its decision.'" (quoting *Adams v. United States*, 350 F.3d 1216, 1226 (Fed. Cir. 2003))). Had the government shown that it acted in good faith when it classified plaintiffs as exempt, plaintiffs would not necessarily receive liquidated damages. *See* 29 U.S.C. § 260 (stating that the court may decline to award liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a [FLSA] violation"). The government did not address the good faith issue in its briefing on the cross-motions, or point out any evidence that would have met its burden. Because defendant bore the burden of showing good faith in its actions denying plaintiffs overtime pay, plaintiffs are entitled to liquidated damages for the overtime for which they were not paid. *See Angelo v. United States*, 57 Fed. Cl. 100, 107 (2003) (describing the

government's burden as necessary "to obviate the otherwise mandatory award of liquidated damages"). Thus, plaintiffs are entitled to any overtime pay that should have been paid had they properly been classified as nonexempt, and an amount equal to that amount in liquidated damages, for the claims period discussed above.[13]

The court has found, based on the evidence before it concerning plaintiffs' primary duty and the OPM regulations governing the administrative exemption, that plaintiffs were nonexempt from overtime pay under FLSA. This finding does not depart from the court's previous rulings in the subject matter. In particular, the court does not rule here that criminal investigative work is *per se* exempt or nonexempt. *See Adams IV*, 65 Fed. Cl. at 204 (commenting that no ruling in this matter had yet "held that criminal investigative work is not administrative work").

The position title "criminal investigator," or the fact that an employee spends most of his or her time working on criminal investigations, does not necessarily prevent an employee from qualifying for the administrative exemption. It is only after the primary duty of the employee has been established that a reviewing court may determine whether or not that primary duty constitutes administrative work. If the employee works in the context of criminal investigations, that fact may be important to the analysis but is not necessarily dispositive.

## CONCLUSION

Defendant has not met its burden of overcoming the presumption that plaintiffs were nonexempt employees, because the undisputed evidence submitted by the parties shows that plaintiffs were not administrative employees pursuant to 29 U.S.C. § 213(a)(1), as explicated by 5 C.F.R. § 551.206(a)(2). Recovery is

---

[13]/ Although plaintiffs did not explicitly reference liquidated damages in their cross-motion, plaintiffs referenced and relied upon the sections of the United States Code which provide, among other relief, liquidated damages, Pls.' Mot. at 1, and requested "FLSA compensation" in their moving brief, *id.* at 2. In addition, liquidated damages are specifically requested by the complaints of these plaintiffs. Given the litigation history of these consolidated cases, defendant was on notice that plaintiffs' cross-motion requested liquidated damages. *See* Def.'s Mot. at 8 (noting that 29 U.S.C. § 216(b) provides "double damages," *i.e.*, unpaid overtime pay in addition to liquidated damages in an equal amount).

limited to the claims period beginning two years before each HUD plaintiff filed suit in this court, and ending no later than October 30, 1994. For this period of time, plaintiffs are entitled to any overtime pay that should have been paid had they properly been classified as nonexempt, and an amount equal to that amount in liquidated damages. The parties are encouraged to reach agreement as to the quantum of damages owed.

Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion for Partial Summary Judgment Concerning Plaintiffs Employed by the Office of Inspector General in the Department of Housing and Urban Development, filed February 26, 2007, is **DENIED**;

(2) Plaintiffs' Cross-Motion for Partial Summary Judgment and Opposition to Defendant's Motion for Partial Summary Judgment With Respect to Criminal Investigators Employed by the Department of Housing and Urban Development, filed March 29, 2007, is **GRANTED in part**, as to liability for overtime pay and liquidated damages, and **DENIED in part**, as to any willfulness of defendant's violation of FLSA;

(3) Pursuant to RCFC 54(b), insofar as there is no just reason for delay, the Clerk's Office is directed to **ENTER** judgment for plaintiffs as to the government's liability for overtime pay and liquidated damages, and judgment for defendant as to the inapplicability of the three year statute of limitations for willful violations of FLSA;

(4) The parties shall **FILE** a **Joint Status Report**, on or before **October 26, 2007**, proposing further proceedings regarding damages; and

(5) Each party shall bear its own costs.

/s/Lynn J. Bush
LYNN J. BUSH
Judge