IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN ADAMS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 90-162-C<br>and Consolidated Cases<br>(Judge Lynn J. Bush) |

**PLAINTIFFS' REQUESTS FOR ADMISSIONS**

Now come the plaintiffs in the above-consolidated civil actions who are the subject of the "Defendant's Motion for Summary Judgment Regarding Remaining 'Driving Time' Claims" filed on April 11, 2008, other than those plaintiffs who have been employed as Diversion Investigators by the Drug Enforcement Administration, and under RCFC 36 propound the following Requests for Admissions of the truth of the following matters that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of a document described in this request.

Pursuant to RCFC 36 defendant United States of America ("defendant"), is obligated to respond to Plaintiffs' Requests for Admissions on or before May 28, 2008.

1. Commencing February, 1988, and thereafter ("relevant time period"), plaintiffs, while employed by defendant in the positions that are the subjects of these consolidated actions and defendant's instant motion were provided with vehicles ("GOVs") for the purpose of performing their duties as employees of defendant.

2. Plaintiffs commonly were required by defendant to drive their GOVs between their homes or abodes and their offices or other places of their employment ("home/work driving") on working days.

3. Plaintiffs were on duty while engaged in such home/work driving.

4. Plaintiffs driving of their GOVs was among the duties of their employment by defendant.

5. The above-described home/work driving performed by plaintiffs was required by defendant and was performed for the benefit of defendant.

6. Pursuant to the terms of Federal Personnel Manual Letter 551-10 issued by the Civil Service Commission on April 30, 1976, plaintiffs who were treated by defendant as non-exempt under the provisions of the Fair Labor Standards Act were entitled to be compensated for time spent driving a GOV between their homes and places of employment.

7. Federal Personnel Manual Letter 551-10, entitled "Travel Time as 'Hours of Work' Under FLSA," provided in part as follows (at Table 1):

HOME TO WORK TRAVEL AS "HOURS OF WORK" UNDER FLSA

| Kind of Travel Involved: | Is travel time "hours of work"? |
|---|---|
| A. Home to Work - Normal Situation | |
| Normal home to work (work to home) travel | No |
| Employee drives a Government vehicle home (as a requirement of the employing agency) to respond to emergency calls immediately from his/her home. | Yes1/ |

. . . .

1/ All time spent driving the vehicle home to work (work to home) is hours worked.

8. Such driving between home and place of employment by plaintiffs facilitated the accomplishment of defendant's agencies' law enforcement missions, since the GOVs were provided to the plaintiffs for rapid response to emergency calls at any time, whether plaintiffs were at home or proceeding between home and their office or other work location.

9. Defendant's GOVs were driven by plaintiffs to their homes on working days so they would be able to respond to emergencies from home and elsewhere at any time.

10. The plaintiffs were required to have their firearms, ammunition and other law enforcement-related equipment with them while engaged in home/work driving.

11. The plaintiffs have been required to monitor their vehicles' communications equipment while driving their GOVs.

12. Plaintiffs were not permitted by defendant to run personal errands with their GOVs, or transport non-official persons, such as friends or family members, in their GOVs.

13. While driving between home and their places of employment, plaintiffs were under the control of defendant pursuant to law and defendant's rules and regulations and they were subject to the exercise of supervisory authority by agents of defendant.

14. Defendant issued firearms, including handguns, and ammunition, to plaintiffs as equipment needed to perform their duties.

15. Such firearms and ammunition were required to be kept with, or on the person of, plaintiffs while they drove GOVs between home and their places of employment.

16. When plaintiffs arrived home at the end of their workdays they were required to remove their firearms and ammunition from their GOVs and persons, unload their firearms, and store

both firearms and ammunition in secure places in their homes, including safes provided by defendant.

17. Before the plaintiffs entered their GOVs at the beginning of each workday they were required to remove their firearms and ammunition from their homes, load them, and place them in holsters or other containers on their persons or in their GOVs.

18. The process of plaintiffs taking their firearms and ammunition out of their GOVs, storing and unloading their firearms and ammunition in their homes at the end of the workday took each plaintiff approximately 5 minutes each workday.

19. The process of removing plaintiffs' firearms and ammunition from their homes, loading them, and placing them on their persons and in their GOVs took each plaintiff approximately 5 minutes each workday.

20. In each of plaintiffs' two-week pay periods, approximately 1 hour and 40 minutes was spent in the activities described in paragraphs 18 and 19 above by each plaintiff.

21. A reason that defendant required that plaintiffs' firearms not be left in their GOVs overnight outside of their homes was defendant's concern that a break-in into the GOVs might occur in which case the firearms and ammunition might be stolen and misused.

22. A reason that defendant provided plaintiffs with safes to store their firearms in their homes was to avoid accidents involving other individuals who might obtain access to such firearms.

23. Among other job related equipment transported from time to time between home and work by plaintiffs in their GOVs were body armor, handcuffs, walkie talkies, portable radios and cameras, leg irons and other restraints, night vision equipment, pagers, mace, oc spray and pepper spray, kel recorders, maps, binoculars, evidence bags and evidence tape, sledgehammers and

crowbars, log books, drug testing equipment, flashlights, first aid kits, and electronic testing equipment.

24. Plaintiffs' GOVs have also been equipped with special emergency lights, road flares, fire extinguishers, sirens and public address systems, and jumper cables, shovels and electric tools and hand tools.

25. Work gear and clothing carried between home and work by plaintiffs in their GOVs have included raid jackets, helmets and hats, pants and shirts, kevlar and latex gloves, and boots.

26. There are two-way radios in plaintiffs' GOVs so that they may communicate with individuals outside of the GOV. The radios are required to be turned on and remain on from the time plaintiffs leave home until they return home while they are in their GOVs.

27. The purpose of leaving the radios turned on while plaintiffs are driving between home and work is to communicate with other GOVs, offices, supervisors, or anyone else needing to reach plaintiffs.

28. The car radios are tools used to perform plaintiffs' jobs. There is radio contact between plaintiffs and other law enforcement officers while plaintiffs are driving between home and work.

29. 42 U.S.C. § 3796 ("§ 3796"), is the Public Safety Officer's Death Benefit Act. It provides a death benefit to survivors if a plaintiff were to be killed in the line of duty. Such "line of duty" deaths includes those occurring while plaintiffs are traveling between home and places of employment in GOVs.

30. If a plaintiff suffers an injury while driving to and from home in a GOV, the plaintiff may be entitled to receive workers' compensation under 5 U.S.C. § 8102.

31. Under the Internal Revenue Code, unlike the situation of federal employees who are issued GOVs for home/work travel who must pay federal income tax on a portion of the GOV's value because it provides some personal benefit to them, in the case of plaintiffs the Internal Revenue Service considers no personal benefit to have been received by them and no federal income tax is owed by them for their home/work driving.

32. Under 31 U.S.C. § 1344 ("§ 1344"), "[f]unds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. . . ." Section 1344(a)(2) declares that "transportation between the residence of an officer or employee [of a Federal agency] and various locations that is . . . essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties, is transportation for an official purpose, when approved in writing by the head of the Federal agency."

33. To be an "official purpose" such transportation must be essential for the safe and efficient performance of intelligence, counter-intelligence, protective services, or criminal law enforcement duties.

34. Home/work driving by plaintiffs in GOVs is "transportation for an official purpose" within the meaning of 31 U.S.C. § 1344.

35. Under 31 U.S.C. § 1349 ("§ 1349"), plaintiffs are subject to discipline for misusing GOVs assigned to them.

36. Such misuse may involve deviating from the normal home to work path on the way home, going somewhere else on the way to work or making a stop for personal reasons.

37. § 1349 requires at least a one month suspension from work for misuse. A more severe penalty may include demotion and/or discharge. Transporting a relative or friend on other than government business would constitute misuse. Using a GOV for personal business, such as leaving a duty station or residence to cash paychecks, pay bills, drop off or pick up mail, pick up dry cleaning, grocery shopping or transporting children to and from school, would constitute misuse.

38. Defendant compensated FLSA non-exempt plaintiffs for driving to and from work in a GOV under FPM Letter 551-10.

39. During such period of compensation described in paragraph 28 above, defendant employed a system for recording the time during which FLSA non-exempt employees spent driving GOVs between home and work and paid wages to such employees for time spent while engaged in home/work driving of a GOV.

40. The Transcript of the Oral Argument in the United States Court of Appeals for the Federal Circuit conducted on November 8, 2006, in the case of Adams v. United States, Case Nos. 06-5040, 06-5041, attached hereto is a true, correct and genuine transcript of such argument.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798

Counsel of Record

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500

Attorneys for Plaintiffs

Dated: April 28, 2008

Before the
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
Washington, D.C.

In the Matter of:

STEPHEN S. ADAMS, et al.,

Plaintiffs-Appellants

v.

UNITED STATES,

Defendant-Appellee.

Case Nos.
06-5040,
06-5041

Courtroom 203
Panel K
United States Court of Appeals
717 Madison Place, NW
Washington, D.C. 20439

Wednesday,
November 8, 2006

The above-entitled matter came on for oral argument, pursuant to notice, at 10:00 a.m.

BEFORE:
JUDGE ALAN D. LOURIE
JUDGE ALVIN A. SCHALL
JUDGE ARTHUR J. GAJARSA

This transcript produced from an audio cassette tape provided by Bernstein & Lipsett, P.C.

APPEARANCES:

On Behalf of the Plaintiffs-Appellants:

JULES BERNSTEIN, Esq.
LINDA LIPSETT, Esq.
Bernstein & Lipsett, P.C.
Suite 303
1920 L Street, N.W.
Washington, D.C. 20036-5004
(202) 296-1798
(202) 296-7220 (fax)

EDWARD JAMES, Esq.
James & Hoffman, P.C.
1101 17th Street, N.W.
Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 (fax)

On Behalf of the Defendant-Appellee:

SHALOM BRILLIANT, Esq.
Senior Trial Counsel
Commercial Litigation Branch, Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

P-R-O-C-E-E-D-I-N-G-S

THE COURT: Good afternoon. Good morning, rather. We are sometimes sitting in the afternoon these days, but good morning.

We have five cases on the calendar today. A claims case, a veteran's appeal and three government employee cases. The last three are being submitted on the briefs and not argued.

So our first case is Adams, et al. v. United States, 06-5040.

Mr. Bernstein.

MR. BERNSTEIN: Good morning, Your Honors. My name is Jules Bernstein. I am accompanied by my co-counsel, Linda Lipsett and Edgar James at counsel table.

We are here actually on appeal for consolidated cases 5040 and 5041, and it is the position of the Appellants in these cases...

THE COURT: Let me just interrupt you.

MR. BERNSTEIN: Surely.

THE COURT: Before you begin on substance. You say Appellants. Do you have one Appellant or a long list of Appellants so that we know what the issue is?

MR. BERNSTEIN: There are some 6,000 Appellants, Your Honor.

THE COURT: They weren't all named?

MR. BERNSTEIN: They were named, Your Honor, and the government raised the issue in its brief of our requirement to put all 6,000 names in. We said that Rule 3 had been amended and that we were permitted to state that we were representing all Appellants, and we listed them in the attachment to my Notice of Appearance.

THE COURT: Well, aren't you going to certify as a class?

MR. BERNSTEIN: This is a Fair Labor Standards Act case, Your Honor, and the certification is not required under Rule 23 or

otherwise.

THE COURT: Doesn't it make it easier?

MR. BERNSTEIN: Pardon?

THE COURT: Doesn't it make it easier if it's certified as a class?

MR. BERNSTEIN: Well, Your Honor, that's a moot question because there is no provision generally for certification of Fair Labor Standards Act cases. Each plaintiff must file in court a consent form to be represented by counsel, and we did, indeed, file such in the Claims Court, a consent form on behalf of these Plaintiffs.

Our position here is that the Claims Court's decision contained several clear procedural and substantive conflicts with square holdings of the decisions of the United States Supreme Court, this Court, the unambiguous language of Section 254(b) of the Portal to Portal Act, as well as the rules and regulations of those agencies entrusted by

Congress to administer the Fair Labor Standards Act and the Portal to Portal Act.

Now, the first error here is that the government's summary judgment motions were utterly unaccompanied by any showing under Rule 56 and the appropriate cases, such as Celotex, Berg versus Newman, and, indeed, in the first appeal in this case to this court, the case was sent back because there were no facts.

THE COURT: Pardon me. Why isn't this case governed by our BOBO decision?

MR. BERNSTEIN: Your Honor, for a variety of reasons, and let me, if Your Honor so desires, let me get precisely to those, and that is that these cases are decided on their facts, and in this case, the facts are very different from those in BOBO, and one of the problems with the Court's decision where the government -- and here the government put in no facts. So you have to begin with the idea that in order to win under BOBO, there are

certain facts that have to be proven, namely, that the work was required in order to -- that it was not required; that it was not in the interest of the employer; and that it was in the interest of the employees.

The government put in no facts. And you don't, really get past Celotex or Berg or Rule 56 because the government didn't put in a case. It thought that it could use as a silver bullet, if you will, BOBO, but there are a number of distinguishing facts here that did not appear in BOBO.

So, for example, Section 31 USC Sec 1344(a)(2) declares that the government can only expend funds for cause for --

THE COURT: Mr. Bernstein, let me ask you. The issue here is driving, correct?

MR. BERNSTEIN: Yes.

THE COURT: Between home and office and office to home.

MR. BERNSTEIN: Yes.

THE COURT: And nobody disputes

that it was an agreed fact; it's undisputed, isn't it that these individuals, your clients, were using the government vehicles for that purpose?

MR. BERNSTEIN: That is true.

THE COURT: And as I read the decision of the Court of Federal Claims, the court decided it agreeing to that fact.

MR. BERNSTEIN: There's no dispute that these employees drove to and from work in a government vehicle.

THE COURT: Well, what other facts do you need to decide the case?

MR. BERNSTEIN: Well, the other facts you need are to prove under even BOBO that the work was required; that it was not in the interest of the employees as a matter of fact; and that it was for the purpose of achieving a purpose that the government needed to perform the work of the agency.

Now, here under 1344, the statute says that such driving is essential for the

safe and efficient performance of intelligence, counterintelligence, protective services or criminal law enforcement duties, and constitutes an official purpose.

THE COURT: Well, doesn't that provision simply authorize the expenditure of funds for these purposes? Isn't the Portal to Portal Act what governs here?

And that states that certain activities are not compensable, and that, and that includes traveling to and from the place of work.

MR. BERNSTEIN: Not so, Your Honor. The Portal to Portal --

THE COURT: Which is not so?

MR. BERNSTEIN: Well, all of the above.

THE COURT: Oh? All right.

MR. BERNSTEIN: First the Portal to Portal Act says that what must be postliminary or preliminary to the work of the employees to be exempt. The burden to prove the exemption under the Portal Act is on the employer.

Exemptions are to be read narrowly. Inclusions are to be read broadly.

The government did not prove that -- the government proved nothing -- that it was postliminary or preliminary. We proved that under the statute that was integral and indispensable to performance of the duties of these employees.

Now, if these cars had been driven every day to the homes of these employees so they could respond to emergencies from home, which was the purposes of their driving these cars home, there's no question that the employees who drove those cars to the homes of the employees would be entitled to be paid. There is no reason why these employees would not similarly be entitled to be paid.

And indeed, Your Honors, for 20 years the Office of Personnel Management under FPM Letter 551-10 and 5 CFR 401 held and took the position that this kind of driving was compensable. There was a custom and practice

to pay for this for non-exempt federal criminal investigators.

The difference with these employees is that the government wrongfully treated them as exempt. That's the reason they weren't paid for their driving, but we have a stipulation in our settlement of the non-driving aspects of the case that they were non-exempt during the relevant time period.

THE COURT: No, no. I'm having a hard time following where there's a fact issue. Leaving aside for a moment the legal argument, I have a hard time understanding where there's a fact issue. I mean I would think the argument here is that the judge either got it right or got it wrong based on facts that don't seem to be in dispute.

MR. BERNSTEIN: No, the facts aren't even in the record, Your Honor. That is to say the burden is on the government; the burden is on the government to prove that this was postliminary and preliminary.

The government didn't submit what it was required to --

THE COURT: But it's clear if you're driving to your office --

MR. BERNSTEIN: But, Your Honor --

THE COURT: -- and you're driving home, it's pre and post.

MR. BERNSTEIN: No, it isn't, Your Honor.

THE COURT: It may be compensated.

MR. BERNSTEIN: At the --

THE COURT: Excuse me.

MR. BERNSTEIN: Sure.

THE COURT: Didn't the judge say that they would be compensated if they got emergency calls on the way?

MR. BERNSTEIN: The judge did say that, and frankly, the judge didn't say that, but there's no question that we settled that part of the case.

But OPM said that mere driving was compensable regardless of whether it was in

connection with an emergency. For 20 years this was the position of both OPM –

THE COURT: Wasn't that contrary to BOBO?

MR. BERNSTEIN: That is not contrary to BOBO, and indeed, the employees involved in BOBO did not drive their cars to and from work in order to respond to emergencies. They were hauling dogs, and 551-10 only applied to employees who brought their cars home so they could respond to emergencies from home.

Indeed, beyond that, if you are commuting, Your Honor, you may take your child or your spouse to work or do anything else. These employees were restricted as to their movements. They couldn't stop anywhere on a personal matter. So they were utterly in the employ of the United States while they were in those cars. They were not free like the ordinary commuter to stop and engage in personal business, cash a check, go to the

cleaner, do all of the other things that ordinary commuters do.

So there is no question but that they were in the employ of the government. Indeed we cite a case where some DEA agent was in an accident and the court said, look, obviously this in the course of the employee's employment going back and forth to work. This person was driving his car at the government's behest, and this was work.

Now, there's another point. The court below -- I beg your pardon -- the Claims Court, said that there was no exertion involved. That was one of the decisions, one of the bases for the decision: no exertion in driving.

We all know there was exertion in driving. And the Supreme Court says that exertion is not required for there to be work. You may pay for -- not "may" -- but you must pay for idle time or time spent waiting.

So I think that's another basis

for a direct conflict with the Supreme Court's decision in the FLSA area.

But let me say --

THE COURT: Mr. Bernstein.

MR. BERNSTEIN: Yes, sir.

THE COURT: With respect to the 551-10 letter, does that apply to both cases or just one? There seems to be an implication that it only applies, to one of the two cases.

MR. BERNSTEIN: Frankly, the government didn't put in any facts. We said it was there, that it was present, and that it was a fact which demonstrated that such work would be compensable, that traveling was --

THE COURT: But is that applicable to both cases or just one?

MR. BERNSTEIN: No, it is -- well, when you say "applicable," we do not contend that the employees in the non-criminal investigator case were expressly covered by that provision.

THE COURT: So only the –

MR. BERNSTEIN: Only the criminal investigators, and indeed, as I say, for 20 years FLSA non-exempt criminal investigators, who were GS-5s and 7s were paid.

Now, the second string to our bow is that there was a --

THE COURT: Mr. Bernstein, let me point out to you you wanted to save five minutes rebuttal. You are well into that time. You can use it now or save it, as you wish.

MR. BERNSTEIN: I will reserve, Your Honor.

THE COURT: All right.

MR. BERNSTEIN: Thank you.

THE COURT: Mr. Brilliant.

MR. BRILLIANT: May it please the Court --

THE COURT: Mr. Brilliant, who has the burden of proof in this particular case?

MR. BRILLIANT: The plaintiffs do. This is not an exemption issue. This is a

question simply of whether certain time was spent by the Plaintiffs doing what constitutes work under the FLSA, and the law is clear that the employees have the burden of proving that they work and that they worked overtime.

The question here is whether the home to work driving that they undisputedly did, constituted work or not.

THE COURT: So if it was a case of exemption then the burden would be on the government to prove the exemption.

MR. BRILLIANT: That's right. That's the substantive issue of, for example, whether the category of the employees are employed and whether they're covered by the administrative exemption, for example, and therefore not covered by the FLSA at all. That would be the employee's burden to prove, that they meet the requirements of that exemption.

But the burden of proving how much work was done is the employee's work, and here

it's not really a burden of proof. In this case I think it's not a burden of proof issue anyway in that the factual issues were all assumed by the trial court below essentially in favor of the Plaintiffs.

Mr. Bernstein mentioned it among the things that had to be proved were issues concerning whether the time spent was the activity engaged in, in this case driving, was required by the employer, whether it was in a government vehicle, whether it was for the good of the employer.

But those are all things that are prerequisites to the employee's recovery. It's only if those things are established that the driving can be considered work.

In this case the court below assumed and we didn't dispute those things, and the court decided as a matter of law that this driving did not rise to the level of compensable work.

THE COURT: What about –

THE COURT: Was this more of a Rule 12(b) instead of 56 - failure to state a claim?

MR. BRILLIANT: Essentially, yes. If it weren't for the fact that this issue arose as the kind of an appendage of some of the substantive issues, if the suit was only to begin with about home-to-work driving, it would have been a Rule 12(b) motion or it probably would have been.

I think that the BOBO case arose in that way and, of course, the BOBO case was decided on summary judgement, and I guess there wasn't the same kind of legal precedent, clear legal precedent, before BOBO as there is now, BOBO being that precedent. So failure to state a claim would have been an appropriate (inaudible) in this case.

THE COURT: What about the assertion that there's been a 20 year custom or practice in effect?

MR. BRILLIANT: Our contention is

that, well, first of all this is not a custom and practice in our view. First of all, it reflected agency's compliance with guidelines given by originally the Civil Service Commission and then OPM in FPM Letter 551-10 based on what that agency understood the FLSA to require.

The reasoning underlying that interpretation is simply inconsistent with the reasoning underlying BOBO, and OPM no longer gives those guidelines.

THE COURT: You're saying BOBO changed the law in effect.

MR. BRILLIANT: No, I would say that BOBO interpreted what the law was, but it was what the law was all the time.

THE COURT: It changed the understanding of what the law was.

MR. BRILLIANT: Well, yes. I mean in the sense that when the FPM letter was issued, the people that issued it didn't know this court was going to decide BOBO as it did.

As between the interpretation in the FPM letter and the interpretation of this court, I think there's no dispute that the interpretation of this court is the one to be followed. OPM doesn't disagree with that, and I don't think anyone does.

THE COURT: Does the difference in facts make a difference between this case and BOBO? BOBO dealt with dogs. They had to take the dog home.

MR. BRILLIANT: That's a distinction without a difference. In both cases, this case and that case, the employees were required to drive government vehicles, and it serves a government interest for the employees to do that.

The particular reason is not identical, but there would be no sense in saying, well, if the reason is because you're caring for the dogs, then we won't call it work, but if the reason is so you'll have the car available to respond to an emergency later

on, we will call it work.

I mean if anything, I think the argument for treating it as work, treating driving as work is somewhat weaker in this case because the driving itself in the case of the dog handlers, the employees were handling dogs, taking care of dogs, and they were doing so during their drive.

THE COURT: One question. It's not in -- who pays for the gas.

MR. BRILLIANT: I'm not sure. I think the employees get reimbursed for the gas.

THE COURT: In the government vehicle.

MR. BRILLIANT: In the case of the government vehicle. I believe that's the case.

THE COURT: Aren't these all government vehicles that were being driven? I mean, they're not personal vehicles.

MR. BRILLIANT: That's right.

That's true in BOBO. That's true here.

THE COURT: The government would have to pay for the gas because they can't use the vehicle outside of driving to and from home or for work purposes.

MR. BRILLIANT: That's right.

THE COURT: It makes no sense for them to be buying gas for the government vehicle.

MR. BRILLIANT: That sounds right. Now, the --

THE COURT: Why would this claim be de minimis even under the requirements of BOBO and the previous case, Lindow v. U.S.?

MR. BRILLIANT: Why would it be de minimis or not?

THE COURT: Why would it be de minimis?

MR. BRILLIANT: The principal reason is that, as Mr. Bernstein correctly noted, there was a settlement in this case that covered both the overtime over work that

the plaintiffs performed, except time solely spent driving home to work in a government vehicle.

So the whole point of reserving that was while we agreed that work after hours was to be compensated under the settlement, the parties disagreed as to whether merely driving between home and work was to be compensated.

So the only thing that this appeal covers is driving time per se. But in addition, the kinds of things that the Appellants described that they have to do during the driving are essentially the same as those described in BOBO.

They have to remain in radio contact. They are subject to certain restrictions, and so on. There is really no distinction.

THE COURT: But they are for the benefit of the government, not for the benefit of the employee.

MR. BRILLIANT: That's right. But no more so here than BOBO.

THE COURT: Well, in BOBO the rationale that was used is the fact that they were taking the dogs back and forth, right? But here there's no dog involved. They are just riding back and forth to their homes, but being on call at any time during that time period.

So if they get a call when they go from Point A to Point B, B being their home, and they have to go to Point C during that time period, are they compensated?

MR. BRILLIANT: Well, then they would be compensated.

THE COURT: They would be available for call during that time period. They would be compensated from the time they left Point A?

MR. BRILLIANT: Well, they're available for call 24 hours a day, and whether they're compensated or not, I mean, again,

there are rules.

If you look back at the --

THE COURT: No, no. Answer my question. Would they be compensated for going from Point A to Point C at that point?

MR. BRILLIANT: The driving time, that would depend. In fact, the same FPM Letter that we're talking about in giving examples of what kind of driving is compensable or not says that if you do respond to an emergency in the middle of the night, the time it takes to drive to the place of the emergency may or may not be compensated depending on whether it's closer than or further from your home than the regular place of business.

THE COURT: No, but that was not my question. My question was driving from Point A from their office to their home, Point B, they're called to go to Point C during that drive. Will they be compensated going to Point C?

MR. BRILLIANT: I believe --

THE COURT: Relating back to the time they left Point A.

MR. BRILLIANT: I believe that it would depend on where the point is. But if they just got home or almost home and then they had to go to a point ten minutes away, which is less than to their work place, I believe they would not be compensated, whereas if it's under the regulations, whereas if it is a longer distance, further than back to the work place, they would be compensated.

THE COURT: Are they compensated for the time spent at the emergency call –

MR. BRILLIANT: At the emergency call they'd be compensated. What I'm doing, I'm not hedging. I'm just trying to say the question, the less simple question is whether they'd be compensated for the time driving from Point A to Point B. It might depend on where Point A and Point B are.

THE COURT: But if they have to

spend two hours at the emergency call, they are compensated for that.

MR. BRILLIANT: Yes.

THE COURT: Mr. Brilliant, do you think there's any problem with the naming of the various Plaintiffs?

MR. BRILLIANT: There is a problem because you can't -- when you look at the notice of appeal, and maybe it's a technical problem, but when you look at the notice of appeal other than, I guess, Stephen Adams and, one other Plaintiff not named, you can't tell who's in and who's out. It wouldn't be a problem if Plaintiffs had said they were appealing on behalf of Stephen Adams and all other plaintiffs. They wouldn't have to name all of the plaintiffs.

The problem is they're saying they're appealing on behalf of 6,000 some odd Plaintiffs out of 14,000, and you can't look at any given name on the list of 14,000 Plaintiffs and tell whether they're Appellants

or whether they're not.

THE COURT: I understood there was a list that's been submitted.

MR. BRILLIANT: Subsequently I think with the docketing statements it was submitted, but the appealing Plaintiffs were not identified in a notice of appeal, and that is the problem that we see with the notice of appeal.

Is there a remedy, technical remedy for this technical problem that you see?

MR. BRILLIANT: It's jurisdictional, and I think that if a timely notice of appeal is defective, then it's defective.

THE COURT: But you would say whatever we decide should pertain to Mr. Adams and/or one other person.

MR. BRILLIANT: I think that's the way it comes out based on the defect in the notice of appeal. The legal issue would be

the same either way.

I really don't have much to add. I just wanted to address a couple of points that Mr. Bernstein made, well one of them I actually addressed already, and I want to focus on this custom and practice issue because that really is the only hook that Appellants even colorably have for distinguishing this case from BOBO.

As I already indicated, I think the reason underlying the FPM Letter 551 is inconsistent with the reasoning in this case, and the so-called custom and practice was nothing more than some agencies adhering to the guidance in that FPM letter.

Even assuming you call that a custom and practice within the meaning of the Portal to Portal Act, that would constitute a distinction here.

First of all, it's not a -- the custom or practice exception isn't really applicable here anyway because what that's an

exemption to is a provision in the Portal to Portal Act that essentially says if you're engaged in preliminary or postliminary activities, that customarily had been, or that in the past had been considered by the Department of Labor, by certain Supreme Court decisions as constituting work. That will be excluded from work.

THE COURT: How would you concisely state the holding of BOBO?

MR. BRILLIANT: I would say the holding in BOBO is that home to work driving in a government vehicle as a requirement of the employer does not constitute work unless it's accompanied by more than de minimis activities beyond mere driving that would fall under the definition of work.

THE COURT: And if transporting the dogs was not more than de minimis activity, then transporting yourself and being on call isn't either.

MR. BRILLIANT: That's right.

THE COURT: Is that because of the potential of failing to be able to keep administrative records on something like that?

MR. BRILLIANT: I'm --

THE COURT: Was that because of the failure of being able to maintain administrative records?

Because there were three elements for the de minimis: the practical administrative difficulty recording the additional time, the aggregate amount of compensable time, and the regularity of the additional work. That's the de minimis rule.

MR. BRILLIANT: Well, yes, that would go to -- those would be factors in determining whether you know the additional activities we're looking at are de minimis or more than de minimis.

In this case, as I indicated, I think that because of the scope of the settlement and what was reserved for appeal, we're really not looking at additional

activities. We're looking at the driving itself.

But even if you were looking at additional activities, I don't see any activities that the Appellants described that are different from the activities involved in BOBO.

THE COURT: What if Mr. Adams had hypothetically have said to his agency, I don't want to drive the car home. I want to drive my own car. I want to be able to be free to pick up the laundry, pick up my children at school and otherwise without being in violation of the regulations. Could he do that?

MR. BRILLIANT: No. We agreed that we're talking about cases where using the vehicle for commuting is required.

THE COURT: It's mandatory.

MR. BRILLIANT: The use of the vehicle. Going home and back. I mean, that's not what's required.

THE COURT: So why is that? What's the underlying rationale for that?

MR. BRILLIANT: So that in the case of criminal investigators it's so that if at any time of the day or night the agency needs to call this agent to respond to an emergency, the agent won't have to come back to the office, pick up a car and then go, to be able to go, straight there.

THE COURT: Couldn't he drive his own car to the investigative site?

MR. BRILLIANT: In theory he could, but if he uses the government vehicle on the job, if he uses it, in some respects the government vehicle is more suitable to the job.

THE COURT: So this is for the sole and unique benefit of the government.

MR. BRILLIANT: The fact that the government vehicle is used rather than his own vehicle, I don't know if that's a sole and unique benefit. It's for the benefit of the

government. It may benefit the employee, too. He doesn't have to use his own car. He may not have a car. It may benefit the employee in a lot of ways, but we don't dispute that the reason it's required is because the government gets enough of a benefit from it that the government chooses to require it, as in the case of BOBO.

THE COURT: Thank you, Mr. Brilliant.

MR. BRILLIANT: Thank you.

THE COURT: Mr. Bernstein has two and a half minutes left, but since Mr. Brilliant went over, we'll give you four minutes rebuttal.

MR. BERNSTEIN: Your Honor, I reserved five.

THE COURT: Yes, but you used more than half that.

MR. BERNSTEIN: In any event --

THE COURT: I'm giving you more than you had remaining.

MR. BERNSTEIN: I was not aware of that, Your Honor.

But let me first begin, Your Honor, by saying that on page 1 of our reply brief, there was this terrible problem of naming all of the Plaintiffs, and the rule was changed as a result of the Supreme Court's decision in Torres in 1988. So you will see at Footnote 3 an Advisory Committee note saying you can do exactly what we did. We responded directly to Mr. Brilliant's point about naming all of the Plaintiffs.

And it's quite clear in our papers.

For Judge Gajarsa, let me say as to the de minimis point you were asking about, in BOBO they were talking about the de minimis time that they took the dogs outside of the cars. In this case for 20 years, the record is replete with forms that were filed by criminal investigators recording their driving time. So there was no question but that

driving was compensable, was compensated, and was simply, if you look at the record, a matter that was recorded and paid. So its not de minimus.

THE COURT: Mr. Brilliant's response to the 20 years point is that BOBO overrode that interpretation.

MR. BERNSTEIN: The issue, Your Honor, are 254(b) of the Portal Act was not in BOBO. The issue of 254(b) relates to the fact that under the Portal to Portal Act enacted in 1947, Congress reserved the right of employees to be paid for work which constituted work prior to the enactment of the Portal to Portal Act and as to which there was a custom and practice.

If you look at our briefs, the point of the Portal to Portal Act was to take away compensation for work where the employer did not anticipate he would have to pay. That was the whole point of the Portal to Portal Act.

And since the employer knew that there was custom and practice to pay, Congress carved out an exception and said that continued to be compensable.

And indeed, the flat language of 254(b) says the employer shall not be relieved of liability under the Portal Act if such activity is compensable by a custom or practice in effect at the time of such activity at the place where such employee is employed covering such activity in effect at the time of such activity.

That means that if it was compensable, you're entitled to be paid if there was a custom and practice.

Here there was a custom and practice. This point was not in BOBO at all because there was no custom and practice to pay those employees in BOBO, ever.

And so here we have a perfect illustration of the application of 254(b), and indeed, that's what the Labor Department

regulations say, and that's 29 CFR 790.2.

Now, in addition to that Mr. Brilliant says that the exemptions are not -- the burden to prove the exemptions are not the employer's. However, if you look at Corning Glassworks v. Brennan, at 417 US 188, at 196, and cases cited in our brief at pages 36 to 38, the general rule is that the application of exemption under FLSA is a matter of affirmative defense, which the employer has the burden of proof, and that was the law in 1974, and it's the law today.

It's the employer's burden, but it wasn't proved here. So that goes to the issue of exemptions and the burden of proof.

There is another important point raised -- it will be my last point, Your Honor.

THE COURT: Mr. Bernstein, this argument has come portal to portal, and I think we understand the case.

Do you have one question?

THE COURT: Do you think all of the Appellants will be bound by this decision?

MR. BERNSTEIN: When you say all of the --

THE COURT: All of the Appellants that are listed are bound by this decision?

MR. BERNSTEIN: No question about it, Your Honor.

THE COURT: Thank you.

THE COURT: Thank you, Mr. Bernstein.

This case will be taken under advisement.

(Whereupon, the oral argument in the above-entitled matter was concluded.)

# C E R T I F I C A T E

This is to certify that the foregoing transcript in the matter of: Stephen S. Adams, et al. v. United States before the United States Court of Appeals for the Federal Circuit, Case Nos. 06-5040 and 06-5041

Before: Judge Alan D. Lourie
Judge Alvin A. Schall
Judge Arthur J. Gajarsa

Date: November 8, 2006

Place: Courtroom 203
Panel K
United States Court of Appeals
717 Madison Place, N.W.
Washington, D.C. 20439

represents the full and complete proceedings of the aforementioned matter, as reported and reduced to typewriting.

Art Torikka 1/10/07

Art Torikka, transcriber

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2008, I caused two copies of Plaintiffs' Requests for Admissions to be served by hand, on the following counsel of record:

Shalom Brilliant, Esquire
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Room 7036
Washington, D.C. 20530

Jules Bernstein