IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN ADAMS, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 90-162-C |
| | ) | and Consolidated Cases |
| UNITED STATES OF AMERICA, | ) | (Judge Lynn J. Bush) |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS**

OF COUNSEL:
Linda Lipsett

Jules Bernstein
Bernstein & Lipsett
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile
Counsel of Record

**Filed electronically**

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Counsel for Plaintiffs

May 12, 2008

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. THE "LAW OF THE CASE" DOCTRINE IS INAPPLICABLE . . . . . . . . . . . . . 2

2. STARE DECISIS DOES NOT APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

3. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4. THE GS-13 PLAINTIFFS, HAVING BEEN JUDICIALLY DECLARED NON-EXEMPT BY THIS COURT, ARE ENTITLED TO BE PAID FOR THEIR DRIVING UNDER 29 U.S.C. § 254(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5. THE LAW APPLICABLE TO DETERMINATIONS OF "TIME WORKED" UNDER FLSA HAS CHANGED SIGNIFICANTLY SINCE ADAMS . . . . . . . 8

6. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH DRIVING IS FLSA COMPENSABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

7. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED SINCE IT FAILS TO MEET THE THRESHOLD REQUIREMENTS UNDER CELOTEX CORP. V. CATRETT, 477 U.S. 317 (1986), FOR SUCH MOTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**PAGE**

### CASES

Adams v. United States, 65 Fed. Cl. 217 (2005), aff'd, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) . . . . . . . . . . passim

Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761 (D.C. Cir. 1987) . . . . . . . . . . 17

Angelo, et al. v. United States, 57 Fed. Cl. 100 (2003) . . . . . . . . . . 15, 16

Armour & Co. v. Wantock, 323 U.S. 126 (1944) . . . . . . . . . . 12

Avenues in Leather v. United States, 423 F.3d 1326 (Fed. Cir. 2005) . . . . . . . . . . 3, 4

Berg v. Newman, 982 F.2d 500 (Fed. Cir. 1992) . . . . . . . . . . 18

Billings, et al. v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied sub nom . . . . . . . . . . 13, 14, 15, 16

Brown v. Allen, 344 U.S. 443 (1953) . . . . . . . . . . 5

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . 17, 18

Chessman v. Teets, 354 U.S. 156 (1957) . . . . . . . . . . 5

Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837 (1984) . . . . . . . . . . 9

Christianson v. Colt Indus. Operating Corp., 486 U.S. 800 (1988) . . . . . . . . . . 3

Doe v. United States,
372 F.2d 1347 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hudson v. Principi,
260 F.3d 1357 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IBP, Inc. v. Alvarez,
546 U.S. 21 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Intergraph Corp. v. Intel Corp.,
253 F.3d 695 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Long Island Care At Home, Ltd. v. Coke,
127 S. Ct. 2339 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Lotz v. United States,
540 U.S. 982 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Martin v. Texas,
382 U.S. 928 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Mendenhall v. Cedar Rapids, Inc.,
5 F.3d 1557 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

NLRB v. Rutter-Rex Mfg. Co.,
396 U.S. 258 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reich v. New York City Transit Authority,
45 F.3d 646 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Singh, et al., v. City of New York, No. 06-2969, 2008 WL 1885327
(2nd Cir. Apr. 29, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Smith Int'l, Inc. v. Hughes Tool Co.,
759 F.2d 1572 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Carver,
260 U.S. 482 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wicker v. Hoppock,
73 U.S. 94 (1867) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Zumerling v. Devine,
769 F.2d 745 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

29 U.S.C. § 204(f) (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. § 254(b)(2) (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 8

31 U.S.C. § 1349 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## REGULATIONS

5 C.F.R. § 551.401 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 C.F.R. § 551.401(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 C.F.R. § 551.401(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5 C.F.R. § 551.422(a)(2) (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

## MISCELLANEOUS

Dept. of Labor, Wage and Hour Div.,
F.O.H. § 31d00(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Federal Pay Administration Under the Fair Labor Standards Act,
45 Fed. Reg. 85659 (Dec. 30, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

FPM Letter 551-10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

Proposed Rules of the Office of Personnel Management, Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 49580 (July 25, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 14

RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

RCFC 56(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN ADAMS, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 90-162-C |
| | ) | and Consolidated Cases |
| UNITED STATES OF AMERICA, | ) | (Judge Lynn J. Bush) |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS**

On April 11, 2008, defendant filed a motion seeking summary judgment regarding the "home/work" driving ("driving") claims of over 6,400 unidentified plaintiffs of the more than 14,000 plaintiffs in this case. Plaintiffs estimate that these plaintiffs, (who perform varying duties for defendant) occupy approximately 17 separate occupations at approximately 11 federal agencies. Defendant's "wholesale" motion is based solely upon the Federal Circuit's 2005 decision in this case denying the driving claims of GS-12 federal criminal investigators employed at the Bureau of Alcohol, Tobacco and Firearms ("BATF"), the Drug Enforcement Administration ("DEA"), the Internal Revenue Service ("IRS"), the United States Customs Service ("USCS") and the United States Secret Service ("USSS"). See Adams v. United States, 65 Fed. Cl. 217 (2005), aff'd, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) ("Adams").

In addition to its failure to identify the plaintiffs whose driving claims are the subjects of defendant's summary judgment motion, defendant has not submitted any facts by way of affidavits or declarations in support of its motion. Instead all factual representations are based upon unverified statements by defendant's counsel which are set forth in its motion.

Plaintiffs submit that for several reasons, including two intervening decisions of the United States Supreme Court in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), ("Coke"), and IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), ("Alvarez"), and distinguishing facts and law, including this Court's December 1, 2004 decision declaring GS-13 criminal investigators at the five above-named agencies to be FLSA non-exempt so that they are entitled to recover under 29 U.S.C. § 254(b)(2) (2000), defendant is not entitled to summary judgment, and that in any event, under RCFC 56(f), plaintiffs are entitled to continue and complete discovery that they initiated herein on April 28, 2008, prior to a ruling on defendant's motion and such cross-motions as plaintiffs may file. See Plaintiffs' Motion Under RCFC 56(f), for a Continuance to Permit Them to Conduct Discovery for the Purpose of Opposing Defendant's Motion for Summary Judgment Regarding Remaining "Driving Time" Claims,[1/] being filed simultaneously with this Opposition.

Further, plaintiffs submit that the doctrines of law of the case and stare decisis, which defendant relies upon in support of its motion, are inapplicable in light of, inter alia, intervening changes in controlling legal authority and distinguishing facts.

**1. THE "LAW OF THE CASE" DOCTRINE IS INAPPLICABLE.**

This Court's December 1, 2004 unpublished opinion holding the GS-13 criminal investigators FLSA non-exempt, declared as follows regarding the law of the case doctrine:

> [I]t is well-established that there are exceptions to the law of the case doctrine, as in instances where "the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority, or when the prior decision is clearly incorrect and its preservation would work a manifest injustice." Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001) (citing Smith Int'l, Inc. v. Hughes Tool Co., 759

---

[1/] ("Pl. RCFC 56(f) Motion," hereinafter).

> F.2d 1572, 1576 (Fed. Cir. 1985)); see also Hudson v. Principi, 260 F.3d 1357, 1364 (Fed. Cir. 2001) (stating the above proposition and citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988), among other cases). . . .

Adams, No. 90-162C, slip. op. at 17-18 (Fed. Cl. Dec. 1, 2004).

Plaintiffs submit that based upon the circumstances presented herein, the law of the case doctrine does not apply. Plaintiffs contend that there is "new and different material evidence that was not presented in the prior action," correspondingly that "intervening [changes] in controlling legal authority" have occurred as a result of the Supreme Court's decisions in Coke and Alvarez, (see section 5, infra at 8), that defendant has failed to satisfy the requirements of RCFC 56, (see section 7, infra at 17) and that application of the Federal Circuit's decision in Adams would work a "manifest injustice" if it were continued to be applied in light of the Supreme Court's decisions in Coke and Alvarez, as well as this Court's decision declaring the GS-13 criminal investigators FLSA non-exempt.

Accordingly, plaintiffs submit that defendant's assertion that the Federal Circuit's Adams decision is dispositive of all of the more than 6,400 plaintiffs' driving claims is mistaken, and that defendant's motion should be denied.

**2. STARE DECISIS DOES NOT APPLY.**

Defendant also appears to contend that under the doctrine of stare decisis the Federal Circuit's Adams decision is fully dispositive. However, it is well-settled that at best "the doctrine of stare decisis applies to only legal issues and not issues of fact." Avenues in Leather v. United States, 423 F.3d 1326, 1331 (Fed. Cir. 2005). Thus, while stare decisis "makes each judgment a statement of the law, or precedent, binding in future cases, . . . [i]t deals only with law, as the facts of each case must be determined by the evidence adduced at trial. . . ." Mendenhall v. Cedar Rapids,

Inc., 5 F.3d 1557, 1570 (Fed. Cir. 1993) (internal citation omitted). Thus plaintiffs are fully entitled to conduct discovery so that they can present their factual and legal cases to this Court as well as be able to distinguish this case from Adams on both facts and law.

That the application of stare decisis is limited is reflected in a "Panel Discussion on Intra-Circuit Conflicts," which occurred in 2001 at the Third Bench and Bar Conference of the Federal Circuit Bar Association in which Federal Circuit Chief Judge Michel participated as a panelist. In the course of responding to a question, Chief Judge Michel stated the following:

> **Judge Michel** . . . We have a case, a predominant case about stare decisis and later panels being bound as Null, so sometimes people talk about the Rule of Null and en gros in the sort of first cut, a crude analysis, the Rule of Null is that later panels are bound by every decision of every earlier panel and that's right but it's not the end of the analysis. I would suggest to you that there are some subtler variations. So, let's call that Null 1 and I'm going to give you my personal version of Null 2, 3, and 4. These aren't real decisions but if you search around, I think you can find this in our precedent. Null 2 would be, if the later panel distinguishes, let's assume fairly, the apparently conflicting earlier decision, then the Rule of Null 1 does not apply. That is the second panel's decision can be different and it's legitimate. Null 3 would be where a Supreme Court case controls; it would trump the earlier panel so the later panel would be free to do what it did and it would be legitimate assuming that the analysis is fair and then Null 4, and this is the most controversial, and these are just my own ideas of course. Null 4 would be, if the earlier decision had no analysis, cited no authority, but just made a statement, a single sentence just declaring some proposition of law. The later panel has a lot more flexibility in that circumstance where it can provide principled reasons and can cite authority to go on a divergent path. So there are a lot more subtleties than just the iron law that the first case always trumps every later case. It's not that simple.

See 11 Fed. Cir. B.J. 623, 648-649 (2001) (emphasis in the original).

In this case plaintiffs submit that the law has changed since Adams on the basis of the Supreme Court's Coke and Alvarez decisions so that Judge Michel's "Rule of Null 3" is applicable.

Plaintiffs also contend that Adams does not "trump . . . every later case," and that it is inapplicable based upon the unique and distinct facts presented in this case. See, e.g. section 4, infra at 6. Thus plaintiffs submit that defendant's summary judgment motion must be denied, or in the alternative stayed, pending the conclusion of plaintiffs' discovery.

**3. THE DENIAL OF PETITIONERS' PETITION FOR WRIT OF CERTIORARI AND PETITION FOR REHEARING EN BANC IN ADAMS DO NOT CONSTITUTE AFFIRMANCE OF THE FEDERAL CIRCUIT PANEL'S DECISION IN ADAMS.**

That the denial of a petition for writ of certiorari provides no indication of the Supreme Court's views upon the merits of a case does not need explication. As the Supreme Court has consistently declared, "[t]he denial of a writ of certiorari imports no expression upon the merits of the case, as the bar has been told many times." United States v. Carver, 260 U.S. 482, 490 (1923). See Martin v. Texas, 382 U.S. 928, 929 (1965); Chessman v. Teets, 354 U.S. 156, 164 n. 13 (1957); Brown v. Allen, 344 U.S. 443, 491-492 (1953) (opinion of Frankfurter, J.).

Likewise, this is true of the Federal Circuit's denial of the Adams plaintiffs' Petition for Rehearing En Banc. Rule 35(a) of the Federal Rules of Appellate Procedure declares:

> (a) When Hearing or Rehearing En Banc May Be Ordered. A majority of the circuit judges who are in regular active service and who are not disqualified may order that an appeal or other proceeding be heard or reheard by the court of appeals en banc. An en banc hearing or rehearing is not favored and ordinarily will not be ordered unless:
>
> (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or
>
> (2) the proceeding involves a question of exceptional importance.

Accordingly, the denial of the Appellants' Petition for Rehearing En Banc in Adams may not be read as reflecting approval of the panel's decision in Adams by the entire Federal Circuit.

**4. THE GS-13 PLAINTIFFS, HAVING BEEN JUDICIALLY DECLARED NON-EXEMPT BY THIS COURT, ARE ENTITLED TO BE PAID FOR THEIR DRIVING UNDER 29 U.S.C. § 254(b)(2).**

In addition to their claim that their driving constituted "time worked" under FLSA, the GS-12 plaintiffs at BATF, DEA, IRS, USCS, and USSS sought judgment in this Court for their driving on the alternative ground that under 29 U.S.C. § 254 (b)(2), activities which their employer treated as compensable by "custom or practice in effect, at the time of such activity, at the establishment or other place where such employee is employed," was FLSA compensable.

The Federal Circuit held, however, that those plaintiffs' unrefuted evidence that at all relevant times their agencies paid FLSA-covered employees for driving Government vehicles between home and work when such driving was mandated to facilitate emergency response from home was insufficient to establish their entitlement under 29 U.S.C. § 254(b)(2), even though it was based upon a stipulation of the parties expressly adopted for the purpose of deciding the driving issue, declaring that the GS-12s would be treated as having been FLSA non-exempt during the relevant time period.

The Federal Circuit rejected the plaintiff GS-12s "custom or practice" claim as follows:

> Prior to this litigation . . .the plaintiffs and other officers in the positions and grades at issue were classified as *exempt* from FLSA and were therefore not paid for their commutes. That exemption status has been changed by the settlement agreement, in which the government stipulated for the purpose of this case that the plaintiffs were non-exempt. Plaintiffs seize on this provision of the settlement to argue that, had the government not wrongly classified them as exempt, it would have applied Letter 551-10 and thus a "custom or practice" of compensation would have existed. However, hypothetical customs or practices do not suffice. In reality, the

> government did not compensate the plaintiffs for their commuting time; the plaintiffs cannot now rely on the settlement to rewrite history.

Adams 471 F.3d at 1347 (emphasis added).

Plaintiffs believe that notwithstanding this conclusion, the circumstances of the GS-13 criminal investigators involved in this case are qualitatively different from those of the GS-12s since the GS-13s were expressly adjudicated by this Court to have been FLSA non-exempt during the relevant time period. See Adams, No. 90-162C, slip. op. (Fed. Cl. Dec. 1, 2004). As such, the GS-13s' entitlement to be treated and paid as FLSA non-exempt criminal investigators for their driving was judicially established, constitutes the law of the case, and is res judicata herein. Indeed, this Court's ruling was the basis for the GS-13s' entitlement to recover back pay for their non-driving time under FLSA in this case, whereas for the GS-12s their FLSA back pay recovery was entirely dependent upon a settlement. Indeed, the GS-12s' FLSA status was never adjudicated by this Court.[2/] Hence, while the Federal Circuit panel's conclusion that "the [GS-12] plaintiffs [could not] rely on the settlement to rewrite history," the GS-13s are duly entitled to rely on the judgment of this Court which declared them FLSA non-exempt to establish their entitlement to be paid for their driving during the relevant time period. As distinct from the parties stipulation, the process of adjudication, such as occurred here, placed the GS-13s "as near as may be, in the situation [they] would have occupied if the wrong had not been committed." Wicker v. Hoppock, 73 U.S. 94, 99 (1867); NLRB v. Rutter-Rex Mfg. Co., 396 U.S. 258, 263 (1969) (remedies aim to "restor[e] the economic status quo that would have obtained but for the company's wrongful [act]"). Hence, if

[2/] The exceptions were the GS-12s at Customs who were held non-exempt herein by Judge Tidwell. These GS-12s were paid for their driving in 1994 pursuant to a settlement in which Judge Tidwell served as ADR judge.

the GS-13s had been treated as FLSA non-exempt by defendant, just as this Court held they were entitled to have been, they would have been paid for their driving.

And clearly, the Federal Circuit panel's decision in Adams, limited as it was to the parties' stipulation, is inapplicable to the GS-13s' claims under 29 U.S.C. § 254(b)(2), which are supported by this Court's judgment.

**5. THE LAW APPLICABLE TO DETERMINATIONS OF "TIME WORKED" UNDER FLSA HAS CHANGED SIGNIFICANTLY SINCE ADAMS.**

Defendant's suggestion that the decision of the Federal Circuit in Adams requires immediate dismissal of all of the plaintiffs' driving claims in this case is mistaken for additional reasons.

In Adams a panel of the Federal Circuit held that occupational code 1811 GS-12 Federal criminal investigators who were issued government vehicles by defendant and were required by defendant to drive these vehicles between home and work each day so they might be able to respond to emergencies at any time were not entitled to be compensated for such driving under FLSA. In so holding, the panel concluded that to entitle the plaintiffs to FLSA compensation for "merely commuting in a government-owned vehicle is insufficient, the plaintiffs must perform additional legally cognizable work while driving to their workplace in order to compel compensation for the time spent driving." 471 F.3d at 1325. The panel declared further that "[t]he question in this appeal is whether the requirements and restrictions placed on plaintiffs' commutes rise to that level." Id.

Plaintiffs submit that whatever may be said regarding the panel's conclusion in Adams that the driving involved there was not FLSA compensable, Adams has been severely undercut if not overruled by the Supreme Court's decisions in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), ("Coke"), and IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), ("Alvarez").

In Coke, the Supreme Court ruled that the Second Circuit's twice-stated conclusion that home healthcare workers were covered by FLSA was contrary to the United States Department of Labor's ("DOL") position set forth in its regulations and interpretations declaring home healthcare workers not covered by FLSA. The Supreme Court held in Coke that courts are obligated to defer to regulations and interpretations of agencies entrusted to administer statutes and formulate policy and make rules "to fill any gap left, implicitly or explicitly, by Congress." 127 S. Ct. at 2345 (citing Chevron U.S.A. Inc. v. NRDC, 467 U.S. 837, 843 (1984)).

As stated by the Supreme Court in Coke:

> When an agency fills such a "gap" reasonably, and in accordance with other applicable (e.g., procedural) requirements, the courts accept the result as legally binding.

Id. at 2345-46 (internal citations omitted).

In reaching its conclusion that DOL's regulations and interpretations declare as FLSA exempt home healthcare workers employed by parties other than the individual recipients of their services, the Court stated:

> [T]he ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of "gap-filling" authority. Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination.

Id. at 2350-51 (emphasis in the original) (internal citations omitted).

In the instant case, OPM's relevant regulations were adopted after notice and comment on December 30, 1980, 45 F.R. 85659, and became effective on January 29, 1981.

Under 5 C.F.R. § 551.401 of these long-standing OPM FLSA Regulations,“Hours of Work” for FLSA purposes are defined in relevant part as follows:

> **§ 551.401 Basic principles.**
>
> (a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
>
> (1) Time during which an employee is required to be on duty;
>
> (2) Time during which an employee is suffered or permitted to work; and
>
> (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of any agency.

5 C.F.R. § 551.401 (2008).

First, under § 551.401(a)(1), plaintiffs believe that discovery will establish that they were "on duty" while driving their government vehicles between home and work; and alternatively that under § 551.401(a)(2) they were being "suffered or permitted" to work when driving. See Doe v. United States, 372 F.2d 1347, 1360-61 & nn.6-7 (Fed. Cir. 2004). And, even if plaintiffs' driving was viewed as merely constituting "waiting time or idle time," it is equally FLSA compensable since it is under their agency's control and for its benefit.

Further, OPM's regulations at 5 C.F.R. § 551.422(a)(2) (2008), declare that "[t]ime spent traveling shall be considered hours of work if . . . (2) [a]n employee is required to drive a vehicle or perform other work while traveling." (emphasis added). Thus, such required driving expressly is declared by OPM to be FLSA compensable "hours of work," without requiring that "the plaintiffs must perform additional legally cognizable work while driving . . . to compel compensation for the time spent driving," as the Federal Circuit held. 471 F.3d at 1325.

On this basis plaintiffs submit that just as was the case in Coke, this Court is now obligated to defer to OPM's regulations, and that on their face they require it to declare plaintiffs' driving compensable under FLSA.

Thus, as to the Federal Circuit's decision in Adams, it stands on the same footing as the Second Circuit's two decisions in Coke. Those decisions were reversed and repudiated by the Supreme Court for their failure to defer to the regulations and interpretations of DOL. In this case the agency charged with administering the FLSA in the federal sector is OPM, see 29 U.S.C. § 204(f) (2000),[3/] and its regulations clearly support plaintiffs' position.[4/]

Similarly, in Alvarez, the Supreme Court held that under DOL's "continuous workday" doctrine, all work performed by employees from the commencement of their workday to its conclusion is FLSA compensable. Alvarez, 546 U.S. at 37. Plaintiffs submit that they will establish through discovery and otherwise, that when they remove their firearms and ammunition from government provided safes in their homes each working day, or when they enter their government vehicles at the beginning of their workday, they are "on duty" and commence working, and that all time spent thereafter driving to and from their assigned work locations, to and from home, constitutes "time worked" for FLSA purposes under OPM's regulations, and under Alvarez.

In this connection, a highly instructive decision on a major issue presented here was rendered by the Second Circuit on April 29, 2008, in Singh, et al., v. City of New York, No. 06-2969, 2008

---

[3/] "Notwithstanding any other provision of this chapter, or any other law, the Director of the Office of Personnel Management is authorized to administer the provisions of this chapter with respect to any individual employed by the United States. . ."

[4/] In Adams the Federal Circuit's panel did not defer to, nor even consider, the provisions of OPM's regulations relating to time worked referred to above.

WL 1885327 (2nd Cir. Apr. 29, 2008), ("Singh"), relating to compensation under FLSA for time spent by employees commuting between home and work. In Singh, the plaintiffs were New York City fire alarm inspectors who were "required by their employer to carry and keep safe necessary inspection documents during their commutes." Id. at 1. Plaintiffs carried their work related documents to work in briefcases, and they commuted to their assigned work locations by subway and bus.

The Second Circuit defined the ultimate issue in the case as being whether the time involved "'is spent predominantly for the employer's benefit or for the employee's [which] is a question dependent upon all the circumstances of the case.'" Id. at 3 (quoting Armour & Co. v. Wantock, 323 U.S. 126, 133 (1944)). In reaching the conclusion that plaintiffs' commuting time was not compensable, the Court declared:

> Carrying a briefcase during a commute presents only a minimal burden on the inspectors, permitting them freely to use their commuting time as they otherwise would have without the briefcase. Whether it be reading, listening to music, eating, running errands, or whatever else the plaintiffs choose to do, their use of the commuting time is materially unaltered. While the City certainly benefits from the plaintiffs' carrying these materials, it cannot be said that the City is the predominant beneficiary of this time.

Id. at 5.

Plaintiffs submit that the foregoing analysis distinguishes the instant case from Singh, and it places the plaintiffs' driving in the category of FLSA compensable work.[5/] Here discovery will

---

[5/] In Reich v. New York City Transit Authority, 45 F.3d 646 (2nd Cir. 1995), the Second Circuit held home/work driving by New York City Transit Authority dog handlers of their own cars while transporting their assigned dogs not FLSA compensable. The court noted that "no rule require[d] that the handler be the one who drives or that he use his own car." Id. at 648, n. 2. Nor was there evidence that the dog handlers were not free to make personal stops while commuting. (continued...)

demonstrate that the plaintiffs' driving is completely restricted by defendant and exclusively for its benefit. Hence, personal activities that might benefit the plaintiffs are expressly prohibited. Indeed, for plaintiffs to engage in such personal activities is prohibited, and punishable under federal law by suspension and discharge. See 31 U.S.C. § 1349 (2000).

**6. THE FEDERAL CIRCUIT'S DECISION IN BILLINGS OBLIGATES THIS COURT TO DEFER TO DOL'S FLSA REGULATIONS UNDER WHICH DRIVING IS FLSA COMPENSABLE.**

The relevant OPM regulations were adopted on the basis of being consistent with those of the United States Department of Labor ("DOL"). Hence, on December 30, 1980, after notice and comment regarding its proposed FLSA regulations, 45 Fed. Reg. 49580 (July 25, 1980), OPM issued its final FLSA regulations. In doing so, it commented as follows:

> Time Spent Traveling
>
> Numerous comments questioned the specific rules for compensable travel time under the Act. These rules are presently contained in FPM Letters 551-10 and 11. The letters also include in depth instructions, with examples, on how the rules are to be applied under

---

[5](...continued)
In ruling such driving non-compensable, the court declared:

> While no clear standards emerge, certain generalizations can be drawn from these authorities. The more the preliminary (or postliminary) activity is undertaken for the employer's benefit, the more indispensable it is to the primary goal of the employee's work, and the less choice the employee has in the matter, the more likely such work will be found to be compensable.

Id. at 650 (emphasis added).

Thus the Reich case is clearly consistent with Singh and contrary to Adams in which the driving was for defendant's benefit. See Transcript of oral argument in Adams in the Federal Circuit on November 8, 2006, which is attached to Plaintiffs' Request for Admissions at pp. 33-35, attached to the Declaration of Jules Bernstein filed herein.

> the Act. The rules are consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. We recognize that the rules for compensable travel time under title 5, United States Code, differ considerably from those under FLSA. This area is one of the most difficult in premium pay administration because of the dual administrations of title 5 and the FLSA. The rules for compensable travel time must be applied separately under each law, title 5 and FLSA, and nonexempt employees are to be paid under whichever law provides them the greater overtime pay benefit.

Federal Pay Administration Under the Fair Labor Standards Act, 45 Fed. Reg. 85659, 85661 (Dec. 30, 1980) (emphasis added).

As for the regulations as adopted, they are identical to those presently set forth at 5 C.F.R. § 551.401 and 5 C.F.R. § 551.422 set forth supra at 10 above. And OPM expressly declared that these regulations and the rules contained in FPM Letter 551-10 were "consistent with the rulings, interpretations, and opinions of the Department of Labor and the courts in the private sector. . . ." 45 Fed. Reg. at 85661.

The most recent pronouncement by the Federal Circuit regarding the requirement that OPM "harmonize" its administration of the FLSA with that of DOL was rendered in Billings, et al. v. United States, 322 F.3d 1328 (Fed. Cir. 2003), cert. denied sub nom, Lotz v. United States, 540 U.S. 982 (2003).

In Billings, the plaintiffs contended that the FLSA regulation of OPM defining the executive exemption from FLSA coverage was invalid because it conflicted with DOL's regulations on the ground that DOL imposed a salary-basis test in determining FLSA non-exempt status while OPM did not. In concluding that the differences between DOL's and OPM's regulations relating to the salary test were appropriate, the Federal Circuit declared:

> [W]e must first determine whether the OPM interpretation of the statute is reasonable, as well as whether any difference between

> OPM's interpretation and the Labor Department standard is required to effectuate the consistency of application of the provision to both federal and non-federal employees. See, e.g., Zumerling v. Devine, 769 F.2d 745, 750 (OPM's guidelines must "harmonize with the statute's 'origin and purpose,' . . . as well as with the Secretary of Labor's regulations." (internal citations omitted)).
>
> We conclude that the OPM definition of an "executive" employee is a reasonable interpretation of the Fair Labor Standards Act. As noted above, federal employees are subject to suspensions under Title V that are not applicable in the private sector. Under the interpretation urged by appellants, nearly every federal employee would be considered non-exempt because Title V applies to a vast majority of all federal employees. Because of the peculiar nature of the statutory framework surrounding federal employment, it is reasonable for OPM's regulation to vary from the Labor Department Standard. Moreover, in reviewing the OPM and Labor Department definitions, the regulations are nearly identical, but for the salary-basis test. Thus, the variance in OPM's regulation is no more than needed to accommodate the difference between private and public sector employment. We see no error in the determination by the Court of Federal Claims that the OPM regulation is a reasonable application of the Fair Labor Standards Act to the federal sector.

322 F.3d at 1334.

The principles announced in Billings were subsequently applied by Chief Judge Damich in Aaron Angelo, Jr., et al. v. United States, 57 Fed. Cl. 100 (2003). There the Court concluded that a greater executive authority in the area of hiring or discharge is a required component of the test under DOL's regulations for the executive exemption whereas the Federal Government's construction of the relevant OPM regulation "would have the Court find an employee exempt based merely on authority to promote or advance in pay." Id. at 114. The Court concluded that, "[t]hus, in the context of executive employees, the OPM standard clearly sets out a broader opportunity for exemption (or, from Plaintiffs' perspective, a looser threshold) than the DOL regulations." Id.

The Court then concluded that "there is no apparent justification for why a federal employee should be considered an executive exempt from FLSA overtime requirements because of authority to recommend mere advancement in pay or promotion of subordinates, while a comparable private sector employee is required to demonstrate additional authority to recommend the more significant action of hiring or firing such subordinates." Id. The Court concluded that the OPM regulation had to comply with DOL's regulation and that the Court would hear the parties' evidence regarding this component "as construed herein . . . at trial."[6/]

The incompatibility of the Federal Circuit's rule in Adams with DOL's construction of the FLSA is clear. DOL's current Field Operations Handbook contains a rule (albeit addressing ambulances, rather than law enforcement vehicles), that is strikingly similar to the one in FPM Letter 551-10:

> In the ordinary case where an employer permits an employee to drive an ambulance to and from his home for the employee's own convenience, the time so spent is not hours worked. If the employee is required to take the ambulance home in order to respond to calls immediately, all the time spent in driving would be hours worked.

Wage and Hour Div., F.O.H. § 31d00(a)(5) (internal citation omitted).

Plaintiffs submit that consistency with DOL's position requires this Court to declare plaintiffs' driving FLSA compensable. See Am. Fed'n of Gov't Employees v. Office of Personnel Management, 821 F.2d 761, 769-772 (D.C. Cir. 1987).

**7. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT MUST BE DENIED SINCE IT FAILS TO MEET THE THRESHOLD REQUIREMENTS**

---

[6/] "In short, a demonstration of authority regarding hiring or firing is required. The Court will thus hear the parties' evidence regarding this component as construed herein, as well as the remaining component of the primary duty test, at trial." 57 Fed. Cl. at 114-15.

**UNDER CELOTEX CORP. V. CATRETT, 477 U.S. 317 (1986), FOR SUCH MOTIONS.**

In the instant case defendant has proffered no proof by way of affidavits or declarations regarding the facts relating to the driving of the thousands of plaintiffs whose claims it seeks to have this Court dismiss en masse. All that is presented by defendant are the unsupported representations of counsel for defendant that "[t]he activity in question – driving between home and work in a Government vehicle – is the same. The job duties are the same or nearly the same." (Defendant's Motion, at 3.) But no verified evidence has been proffered by defendant in support of these assertions.

Accordingly, defendant's motion must be denied since in no respect does it satisfy the threshold requirements for such motions established under Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In Celotex, the Supreme Court declared regarding the initial burden of a party seeking summary judgment:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.

The Court further stated in Celotex:

> [T]he burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.

Id. at 325.[7/]

Here, however, defendant has made no"showing" whatsoever. Nor has it done anything to "demonstrate the absence of a genuine issue of material fact." Indeed, it has submitted no facts, material or otherwise, in support of its motion. Rather, defendant has treated this case as if it involves an abstract issue of law entirely unimpeded by actual facts. But such a course is unauthorized under RCFC 56. In order to obtain summary judgment thereunder a party must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. As stated by the Federal Circuit in Berg v. Newman, 982 F.2d 500, 503 (Fed. Cir. 1992) (internal citation omitted), an FLSA case, "[a]s movant for summary judgment the Government must . . . show the absence of a genuine dispute about any material fact."

The only "facts" submitted by defendant in its Statement of Uncontroverted Facts are that in several settlement agreements attached to its motion and referred to in its Statement, the parties reserved the driving issue for future litigation. Plaintiffs submit, however, that these facts are immaterial, as well as insufficient to entitle defendant to summary judgment. Indeed, if anything, they support plaintiffs' entitlement to litigate their driving claims herein notwithstanding Adams.

**CONCLUSION**

For the reason set forth herein, Defendant's Motion for Summary Judgment must be denied.

---

[7/] Justice White concurred in Celotex, id. at 328, providing the plurality with its fifth vote. He stated that "the movant must discharge the burden the Rules place upon him: It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case." Id. at 328 (emphasis added).

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiffs

Dated: May 12, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 12th day of May 2008, a copy of the foregoing "PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.