IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STEPHEN ADAMS, et al.,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

Case No. 90-162-C
and Consolidated Cases
(Judge Lynn J. Bush)

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION UNDER RCFC 56(f), FOR A CONTINUANCE TO PERMIT THEM TO CONDUCT DISCOVERY FOR THE PURPOSE OF OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS**

Defendant's grudging responses to plaintiffs' requests for admissions make patently clear why plaintiffs are entitled to the continuance they seek under RCFC 56(f). A copy of defendant's responses is attached as Plaintiffs' Exhibit 1. Defendant objects therein "to plaintiffs' requests for admissions to the extent that they seek admissions concerning time solely spent driving between home and work in a Government vehicle, upon the ground that plaintiffs' claims for such time fail as a matter of law, for the reasons stated in defendant's defendant's (sic) pending motion for summary judgment." Def. Resp. 1. Defendant has thus put into issue in this RCFC 56(f) proceeding its assertion that it is entitled to dismissal of plaintiffs' claims on the merits notwithstanding that the Court ordered further briefing of that issue stayed. See Adams v. United States, No. 90-162-C (Fed. Cl. May 16, 2008) (order staying briefing).

The basis for defendant's objection to plaintiffs' discovery is its contention that the Federal Circuit's decision in Adams v. United States, 471 F.3d 1321 (Fed. Cir. 2006), reh'g and reh'g en banc denied, 219 Fed. Appx. 993 (Fed. Cir. 2007), cert. denied, 128 S.Ct. 866 (2008) ("Adams"),

is dispositive of plaintiffs' driving claims herein. See Def. Mot. for Summ. J. But as plaintiffs demonstrate in Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, at 8-13, as a result of the Supreme Court's recent decisions in Long Island Care At Home, Ltd. v. Coke, 127 S. Ct. 2339 (2007), ("Coke"), and IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), ("Alvarez"), Adams has ceased to be good law.

Defendant is therefore correct in citing Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006), cert. denied, 127 S. Ct. 1261 (2007), for the proposition that "the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims." See Def. Mot. for Summ. J. 8. For here, it is "the precedent of the Supreme Court" as set forth in Coke that this Court must follow since Coke holds that by failing to defer to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (2000), ("FLSA"), regulations and interpretations of the United States Department of Labor ("DOL"), (the agency directed by Congress to administer the FLSA in the non-federal sector), the Second Circuit twice mistakenly declared plaintiffs therein to be covered by FLSA.[1/] In accordance with Coke, plaintiffs submit that deference to the FLSA regulations of the Office of Personnel Management ("OPM"), which was directed by Congress to administer the FLSA in the Federal sector, 29 U.S.C. § 204(f) (2000), requires this Court to declare plaintiffs' home/work driving FLSA compensable.

This Court's earlier "driving" decision in this case serves to demonstrate why the Supreme Court's decision in Coke is not merely relevant but is dispositive. This Court declared as follows in Adams with regard to the Second Circuit's decision in Reich v. New York City Transit Authority,

[1/] See Coke v. Long Island Care at Home Ltd., 376 F.3d 118 (2nd Cir. 2004) and Coke v. Long Island Care at Home, Ltd., 462 F.3d 48 (2nd Cir. 2006).

45 F.3d 646 (2nd Cir. 1995) ("Reich"), as well as the Federal Circuit's decision in Bobo v. United States, 136 F.3d 1465 (Fed. Cir. 1998) ("Bobo"), upon which it relied:

> The Second Circuit in Reich stated that "to resolve the[se commuting time claims], it is necessary to return to the basic principle that underlies the FLSA: Employees are entitled to compensation only for 'work.'" 45 F.3d at 651. Quoting Tennessee Coal, 321 U.S. at 598, 64 S. Ct. 698, the Reich court defined work as "an activity . . . ([that is] compensable under the FLSA) if it involves 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" 45 F.3d at 651. Applying this principle to canine unit officers and their commutes in that case, the Second Circuit decided that "[h]ere, however, the activity of commuting involved neither exertion nor loss of time." Id. For these commutes which demanded no extra exertion or extra time because of employer requirements, the Reich court stated that "[w]e therefore conclude that the time spent by handlers driving to and from work with their dogs, except to the extent that actual duties of care, feeding, training, walking or cleaning up occur during such commute, is not compensable work." Id. at 652.
>
> This conclusion in Reich is in direct conflict with FPM Letter No. 551-10.[2/] The FPM Letter suggested that the simple act of driving a government vehicle from home to work and work to home, with no extra effort or extra time affecting the commute, if done for the purpose of facilitating potential emergency response from employees' homes, was compensable under FLSA. The Federal Circuit would not have lightly decided to reject the conclusion of a sister circuit in favor of the guidance in FPM Letter No. 551-10.

Adams v. United States, 65 Fed. Cl. 217, 238-39 (2005) (emphasis added).

This Court declared further that "[a]lthough the question of the level of deference that should be given an FPM letter such as the one at issue here is an interesting one, this court is precluded

[2/] Under OPM's FPM Letter No. 551-10 (April 30, 1976), Federal employees who were required to drive defendant's vehicles home "to respond to emergency calls immediately from his/her home," were entitled to be paid for home/work driving since OPM considered it to be "hours worked."

from that inquiry because FPM Letter 551-10 is at odds with the controlling law in this circuit." Id. at 239 (footnote omitted) (emphasis added).

In fact however, the Supreme Court's decision in Coke served to nullify both this Court's and the Federal Circuit's conclusions, and places OPM's FLSA regulations and FPM Letter 551-10 in the position of being entitled to judicial deference notwithstanding conflicting court decisions of this or other circuits. Plaintiffs submit that a reading of the Supreme Court's decision in Coke makes it abundantly clear that agency regulations and interpretations, such as 5 C.F.R. § § 551.401 and 551.422 and FPM Letter 551-10, are reasonable and entitled to deference and that the Federal Circuit's decision in this case and in Bobo were mistaken because of their failure to defer to OPM's FLSA regulations.

A recent Supreme Court decision whose holding is precisely to the same effect as Coke, and which closely parallels the circumstances presented herein, is National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967 (2005) ("National Cable"). There the Ninth Circuit, see 345 F.3d 1120, 1130-1131 (9th Cir. 2003), reversed the conclusion of the Federal Communications Commission ("FCC"), that under the 1996 amendments to the Communications Act, 47 U.S.C. 151, et seq. (2000), as amended, cable companies providing cable modem services were exempt from mandatory regulation, relying upon "the stare decisis effect of its decision in AT&T Corp. v. Portland, 216 F.3d 871 (9th Cir. 2000) . . ." ("Portland"), which had "held that cable modem service was a 'telecommunications service,' . . ." 545 U.S. at 979.[3/] The

[3/] The Court noted that the court in Portland "was not reviewing an administrative proceeding." Id. at 980. This is the case herein as well.

Ninth Circuit reasoned that Portland's holding "overrode the contrary interpretation reached by the Commission . . ." Id. at 980.

On certiorari, the Supreme Court reversed, declaring as follows:

> The Court of Appeals declined to apply Chevron [U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984)] because it thought the Commission's interpretation of the Communications Act foreclosed by the conflicting construction of the Act it had adopted in Portland. See 345 F.3d, at 1127-1132. It based that holding on the assumption that Portland's construction overrode the Commission's, regardless of whether Portland had held the statute to be unambiguous. 345 F.3d, at 1131. That reasoning was incorrect.
>
> A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion. This principle follows from Chevron itself. Chevron established a "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." Smiley, supra, at 740-741, 135 L. Ed. 25, 116 S. Ct. 1730. Yet allowing a judicial precedent to foreclose an agency from interpreting an ambiguous statute, as the Court of Appeals assumed it could, would allow a court's interpretation to override an agency's. Chevron's premise is that it is for agencies, not courts to fill statutory gaps. See 467 U.S., at 843-844, and n. 11, 81 L. Ed. 2d 694, 104 S. Ct. 2778. The better rule is to hold judicial interpretations contained in precedents to the same demanding Chevron step one standard that applies if the court is reviewing the agency's construction on a blank slate: Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction.

Id. at 982-83.

In this case the identical situation obtains. In Adams, the Federal Circuit, in reliance upon its prior decision in Bobo,[4] held that the plaintiffs' home/work driving was non-compensable even though under OPM's regulations and interpretations such driving is declared compensable. 471 F.3d at 1327. Indeed, FLSA non-exempt criminal investigators were paid by defendant under OPM's FLSA regulations for such driving for more than twenty years. "[U]nder [FPM Letter No. 551-10] FLSA non exempt officers were indeed compensated for their commute time." Id. (emphasis in the original).

Thus, under both Coke and National Cable, it is the agency's regulations and interpretations to which courts must defer absent a finding by the court of "unambiguous terms of the statute" that "leaves no room for agency discretion. . . ." 545 U.S. at 982.

Under these circumstances the Supreme Court's decisions in Coke and National Cable must be applied in the instant litigation by this Court, and defendant's suggestion that the law has not changed since Adams is unsupportable. Thus, the question before this Court is whether in conformity with Coke and National Cable, this Court must now defer to the relevant, reasonable and longstanding OPM regulations and interpretations declaring home/work driving in defendant's vehicle to be FLSA compensable. Plaintiffs submit that the answer must be unequivocally "yes."

The foregoing principles were recently acknowledged and applied by this Court in Aeolus Systems, LLC v. United States, 79 Fed. Cl. 1 (2007):

> The parties agree that, in this case, "the SBA is interpreting its own regulations, promulgated for the purpose of implementing 15 U.S.C.A. §§ 632(p)(3)(A) and (p)(5)(A)(i)(I)(aa) . . . under the

---

[4] "Bobo still teaches that commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is de minimus. That is the case here." 471 F.3d at 1328.

> HUBZone Act." Pl.'s Mot. at 9. Indeed, there is no question that the SBA promulgated 13 C.F.R. § 126.103 "through the notice-and-comment rule making procedures of the Administrative Procedure Act," pursuant to its congressionally mandated authority to administer the provisions of the Small Business Act. See Pl.'s Mot. at 12. This is critical because, "[a]s a general rule, [the court] must defer to an agency's interpretation of the regulations it promulgates, as long as the regulation is ambiguous and the agency's interpretation is neither plainly erroneous nor inconsistent with the regulation." Gose v. United States Postal Serv., 451 F.3d 831, 836 (Fed. Cir. 2006) (citations omitted). In fact, the court must "defer even more broadly to an agency's interpretations of its own regulations than to its interpretation of statutes, because the agency, as the promulgator of the regulation, is particularly well suited to speak to its original intent in adopting the regulation." Id. at 837 (citing Cathedral Candle Co. v. United States Int'l Trade Comm'n, 400 F.3d 1352, 1363-64 (Fed. Cir. 2005) and Am. Express Co. v. United States, 262 F.3d 1376, 1382-83 (Fed. Cir. 2001)). Accordingly, "an agency's interpretation of its own regulation is 'controlling' unless 'plainly erroneous or inconsistent with' the regulations being interpreted." Long Island Care at Home, Ltd. v. Coke, 127 S. Ct. 2339, 2349, 168 L. Ed. 2d 54 (2007) (quoting Auer v. Robbins, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)) (internal quotations omitted). Deference is required even if an alternative interpretation of the regulation might comport with the regulatory language more closely than does the interpretation of the agency. Gose, 451 F.3d at 837 (citation omitted); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) ("The Secretary's interpretation . . . is far more consistent with the regulation's unqualified language than the interpretation advanced by petitioner. But even if this were not so, the Secretary's construction is, at the very least, a reasonable one, and we are required to afford it 'controlling weight.'" (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945))).

79 Fed. Cl. at 9-10.

Plaintiffs submit that OPM's "construction is . . . a reasonable one," and this Court "is required to afford it" controlling weight.

Defendant argues nevertheless that plaintiffs' RCFC 56(f) motion seeking a continuance fails because plaintiffs' contention "presents a legal issue, not a factual one."[5/] Def. Opp. 3. Defendant is mistaken. In order for plaintiffs to demonstrate that they are entitled to judgment under Coke, Alvarez, and OPM's regulations, they must present facts which bring them within these authorities. Hence, for example, in Alvarez, 546 U.S. at 37, the Supreme Court held that where employees engage in work at the commencement and end of their working day, all time in between constitutes time worked (with the exception of a thirty minute lunch break). In this case, plaintiffs require further discovery to prove that they are engaged in FLSA compensable work when they comply with defendant's requirement that they store their firearms and ammunition in their homes at the end of each day, and when they load them into defendant's vehicles upon leaving their homes for work in the morning.

In this connection, however, on May 28, 2008, in defendant's responses 16-22, defendant declared as follows:

> 16. When plaintiffs arrived home at the end of their workdays they were required to remove their firearms and ammunition from their GOVs and persons, unload their firearms, and store both firearms and ammunition in secure places in their homes, including safes provided by defendant.
>
> RESPONSE:
>
> Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that when certain plaintiffs arrived home after the end of their workdays they were required to remove their firearms and ammunition from

[5/] Defendant's Opposition to Plaintiffs' Motion under RCFC 56(f) for a Continuance to Permit Them to Conduct Discovery for the Purpose of Opposing Motion for Summary Judgment Regarding Remaining "Driving Time" Claims, 3 ("Def. Opp. __", hereinafter).

their GOVs and persons, unload their firearms, and store both firearms and ammunition in secure places in their homes, including safes provided by defendant. Defendant denies that plaintiffs arrived home at the end of their workdays.

17. Before the plaintiffs entered their GOVs at the beginning of each workday they were required to remove their firearms and ammunition from their homes, load them, and place them in holsters or other containers on their persons or in their GOVs.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that before certain plaintiffs entered their GOVs prior to the beginning of each workday they were required to remove their firearms and ammunition from their homes, load them, and place them in holsters or other containers on their persons or in their GOVs. Defendant denies that plaintiffs' workday began when they left their homes to drive to work.

18. The process of plaintiffs taking their firearms and ammunition out of their GOVs, storing and unloading their firearms and ammunition in their homes at the end of the workday took each plaintiff approximately 5 minutes each workday.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.

19. The process of removing plaintiffs' firearms and ammunition from their homes, loading them, and placing them on their persons and in their GOVs took each plaintiff approximately 5 minutes each workday.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.

> 20. In each of plaintiffs' two-week pay periods, approximately 1 hour and 40 minutes was spent in the activities described in paragraphs 18 and 19 above by each plaintiff.
>
> RESPONSE:
>
> Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.
>
> 21. A reason that defendant required that plaintiffs' firearms not be left in their GOVs overnight outside of their homes was defendant's concern that a break-in into the GOVs might occur in which case the firearms and ammunition might be stolen and misused.
>
> RESPONSE:
>
> Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant.
>
> 22. A reason that defendant provided plaintiffs with safes to store their firearms in their homes was to avoid accidents involving other individuals who might obtain access to such firearms.
>
> RESPONSE:
>
> Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant.

Def. Resp. 7-10.

In its Response to Plaintiffs' Requests for Admissions defendant clearly cannot argue that plaintiffs are not entitled to obtain and establish facts to support their claims. See RCFC 36 and 56. Indeed, in light of defendant's equivocal responses to Plaintiffs' Requests for Admissions 16-22, plaintiffs clearly are entitled to further discovery with regard to these points, including the conduct of RCFC 30(b)(6) depositions, and requests for the production of documents relating to the requirement of storage of firearms and ammunition in plaintiffs' homes upon arrival there, and their

removal from their homes at the beginning of each workday, in order to establish their claims under Alvarez, and otherwise. Accordingly, on May 30, 2008, plaintiffs served defendant with a production request seeking documents relating to such facts. A copy of their production request is attached as Plaintiffs' Exhibit 2. And under both RCFC 36 and 37, plaintiffs are also entitled to an order requiring defendant to respond candidly to their requests for admissions. Indeed, defendant's responses to plaintiffs' requests for admissions demonstrate why plaintiffs are entitled to the RCFC 56(f) continuance they seek.

As stated earlier, under the Supreme Court's decisions in Coke and National Cable, courts are obligated to defer to the regulations of agencies authorized and designated by Congress to issue regulations implementing statutory provisions. In this case, the agency so designated is OPM, see 29 U.S.C. § 204 (f). Under 5 C.F.R. § 551.401 of OPM's long-standing FLSA Regulations,"Hours of Work" for FLSA purposes are defined in relevant part as follows:

> **§ 551.401 Basic principles.**
>
> (a) All time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency is "hours of work." Such time includes:
>
> (1) Time during which an employee is required to be on duty;
>
> (2) Time during which an employee is suffered or permitted to work; and
>
> (3) Waiting time or idle time which is under the control of an agency and which is for the benefit of any agency.

5 C.F.R. § 551.401 (2008).

First, under § 551.401(a)(1), plaintiffs believe that they will be able to establish factually that they were "on duty" while driving their government vehicles between home and work; and

alternatively, that under § 551.401(a)(2), they were being "suffered or permitted" to work when engaged in such driving. See Doe v. United States, 372 F.2d 1347, 1360-61 & nn.6-7 (Fed. Cir. 2004). And, even if plaintiffs' driving is viewed as merely constituting "waiting time or idle time," it is FLSA compensable under § 551.401(a)(3), since it is under their employing agency's control and for its benefit.

Further, OPM's regulations at 5 C.F.R. § 551.422(a)(2), declare that "[t]ime spent traveling shall be considered hours of work if . . . (2) [a]n employee is required to drive a vehicle or perform other work while traveling." (emphasis added). Thus, such employer required driving is declared by OPM to be FLSA compensable "hours of work," notwithstanding its not meeting the Federal Circuit's additional requirement imposed in Adams that "the plaintiffs must perform additional legally cognizable work while driving ." 471 F.3d at 1325. Indeed, it is clear that the Federal Circuit impermissibly substituted an "and" for OPM's regulation's "or."

On this basis, plaintiffs submit that just as is required by Coke and National Cable, this Court is now obligated to defer to OPM's regulations, and that on their face they will require it to declare plaintiffs' driving compensable under FLSA.

In order to demonstrate that the home/work driving engaged in by plaintiffs meets the requirements of the foregoing regulatory provisions, admissions such as plaintiffs requested in their numbered Requests for Admissions 1-39 were sought. Indeed, straightforward responses to the foregoing requests for admissions were required to establish that the plaintiffs' driving between home and work, as well as their handling and storing of their firearms and ammunition at home, fell within the provisions of the foregoing OPM regulations. Yet defendant has objected to most of plaintiffs' requests for admissions on such grounds as that they are "vague, overbroad, and unduly

burdensome," or that they "call . . . for a conclusion of law rather than an admission fact." See generally Def. Resp. Such objections are improper under RCFC 36.

Defendant's response to Plaintiffs' Request for Admission No. 8 is both illustrative and particularly revealing:[6/]

> 8. Such driving between home and place of employment by plaintiffs facilitated the accomplishment of defendant's agencies' law enforcement missions, since the GOVs were provided to the plaintiffs for rapid response to emergency calls at any time, whether plaintiffs were at home or proceeding between home and their office or other work location.
>
> RESPONSE:
>
> Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome.

Def. Resp. 5.

Plaintiffs are at a loss to understand how the foregoing request can be characterized as being "vague, overbroad, and unduly burdensome," as claimed in defendant's response. The same is true with respect to defendant's response to plaintiffs' Request for Admission No. 9:

---

[6/] Defendant's responses appear on their face to be in violation of RCFC 36(a) which provides in relevant part as follows:

> The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

> 9. Defendant's GOVs were driven by plaintiffs to their homes on working days so they would be able to respond to emergencies from home and elsewhere at any time.
>
> RESPONSE:
>
> Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome.

Def. Resp. 5-6.

Defendant provided similar responses to plaintiffs' requests for Admissions Nos. 11-13 and 34-38. See Def. Resp. 6-7; 14-15.

The foregoing recitation of defendant's responses to plaintiffs' requests for admissions demonstrate that further discovery is required since plaintiffs have already demonstrated that under both Coke, National Cable, and Alvarez, the process of defining "time worked" under FLSA has changed, and that plaintiffs are entitled to develop a factual record to support their claims insofar as they are based upon the law as enunciated therein. Nevertheless, defendant argues that

> [i]n this Court, plaintiffs can attempt to distinguish the Federal Circuit's prior decisions here and in Bobo, but plaintiffs cannot ask this Court to contravene those decisions. The only conceivable factual issue plaintiffs can raise in response to our motion is whether the home-to-work driving that they perform is materially different from the driving involved in Adams and Bobo. If there is such a difference, however, plaintiffs must know what it is; plaintiffs can hardly claim that they lack knowledge of the nature and purpose of their own activities, and that they require discovery concerning these activities.

Def. Opp. 4.

Plaintiffs agree that insofar as the criminal investigator plaintiffs in this case are concerned, the home/work driving that they perform is not "materially different from the driving involved in Adams . . ." However, those plaintiffs submit that since the work they perform in storing their

firearms at home and placing or removing them from their vehicles at the beginning and end of each day constitutes "time worked," all time between those events, including plaintiffs' home/work driving in defendant's vehicles constitutes "principal activity" within the meaning of the Supreme Court's decision in Alvarez. 546 U.S. at 37. There the Supreme Court held that time spent walking inside a plant after employees had donned their protective gear and before they doffed their protective gear at the end of the day was time worked. Applying that principle to this case, plaintiffs' driving should be declared compensable time worked since it occurred within those plaintiffs' continuous workdays while they were driving defendant's vehicles.[7/]

As to defendant's requirements concerning the storage of firearms and ammunition by plaintiffs in their homes, which plaintiffs seek to establish through their requests for admissions, defendant responds that "we note only that each plaintiff is, necessarily, fully aware of his or her own conduct with respect to firearms, and is fully able to submit a declaration describing this conduct, without discovery. Likewise, each plaintiff is, necessarily, fully aware of the nature of his or her own conduct in driving between home and work, and is fully able to submit a declaration describing this conduct, without discovery." Def. Opp. 8.

Plaintiffs recognize that the more than 6000 plaintiffs involved possess relevant information, but it is clear that in order to expedite these proceedings the Court should insist that defendant be candid with regard to the admissions sought. And defendant may not seek to impose upon plaintiffs and the Court the necessity that each and every plaintiff submit and file a declaration with regard to his or her own driving situation, or his or her conduct with regard to the storage of weapons at

[7/] This claim is in addition to plaintiffs' claims arising under OPM's regulations discussed supra at 11-12.

home. Instead the discovery plaintiffs seek will serve to short-circuit the lengthy and wasteful processes defendant proposes. In any event, such showings by each individual plaintiff are not required in cases involving massive FLSA violations by an employer such have been proven to exist in this case.[8/]

Next, as to the Diversion Investigators involved in this case, their claims were not litigated at all in Adams. These employees drove and drive between home and work performing "field work" pursuant to the provisions of 31 U.S.C. § 1344 (2000), which declare in relevant part:

> § 1344. Passenger carrier use
>
> (a)
>
> (1) Funds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. Notwithstanding any other provision of law, transporting any individual other than the individuals listed in subsections (b) and (c) of this section between such individual's residence and such individual's place of employment is not transportation for an official purpose.
>
> (2) For purposes of paragraph (1), transportation between the residence of an officer or employee and various locations that is—
>
> > (A) required for the performance of field work, in accordance with regulations prescribed pursuant to subsection (e) of this section . . .
>
> * * *

[8/] Under Fed. R. Evid 403 a court has broad discretion to prevent the "needless presentation of cumulative evidence." And under FLSA, reliance upon "representative testimony" is commonly accepted. See e.g., Summers v. Howard Univ., 374 F.3d 1188, 1195 (D.C. Cir. 2004); Reich v. S. New England Telecomm. Corp., 121 F.3d 58 (2nd Cir. 1997); Donovan v. Bel-Loc Diner, Inc., 780 F.2d 1113 (4th Cir. 1985).

> is transportation for an official purpose, when approved in writing by the head of the Federal agency.

* * *

The regulations regarding "Home-To-Work Transportation" referred to in 31 U.S.C. § 1344(a)(2)(A), are set forth at 41 C.F.R. § 102-5 (1007). A copy of those regulations are attached as Plaintiffs' Exhibit 3. Among the relevant provisions which plaintiffs believe support the compensability of home/work driving by Diversion Investigators engaged in "field work" are the following:

§ 102-5.30 provides the following definitions:

> *Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work. (Multiple stops (itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

(emphasis added).

* * *

§ 102-5.70 provides as follows in sub-section (b):

> The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

(emphasis added).

* * *

§ 102-5.95 provides as follows:

> Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation?
> No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

* * *

§ 102-5.120 provides as follows:

> What are [agencies'] responsibilities for documenting use of home-to-work transportation?
>
> Your responsibilities for documenting use of home-to-work transportation are that you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes. Each agency may decide the organizational level at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:
>
> (a) Name and title of employee (or other identification, if confidential) using the passenger carrier;
>
> (b) Name and title of person authorizing use;
>
> (c) Passenger carrier identification;
>
> (d) Date(s) home-to-work transportation is authorized;
>
> (e) Location of residence;
>
> (f) Duration; and
>
> (g) Circumstances requiring home-to-work transportation.

(emphasis added).

Thus the applicable regulations of both OPM set forth supra at 11, and of the Government Services Administration ("GSA"), attached hereto as Plaintiffs' Exhibit 3, support the conclusion that home-work driving by Diversion Investigators for the purposes of conducting "field work" is FLSA compensable since they demonstrate that such driving meets OPM's regulatory requirements for defining FLSA "hours of work."

Next, defendant declares that plaintiffs seek to distinguish "several recent cases involving similar claims by Diversion Investigators in which the Court has held that plaintiff could engage in discovery. None of those cases, however, involved a pending summary judgment motion or a Rule 56(f) motion . . . ." Def. Opp. 7, n. 2.

As to defendant's assertion, (Def. Opp. 7, n. 2), that the foregoing discovery orders did not involve a RCFC 56(f) motion or summary judgment motion, this fact is clearly of no consequence. Indeed, Judge Emily C. Hewitt of this Court, recently directed the parties to conduct further discovery in Gonzalez v. United States, No. 07-790C (Fed. Cl. May 20, 2008) (order granting discovery), involving the FLSA driving claims of two Diversion Investigator plaintiffs. See Pls. Ex. 4. There, Judge Hewitt authorized the conduct by plaintiffs of a RCFC 30(b)(6) deposition in anticipation of a summary judgment motion to be filed by plaintiffs.

Next, defendant argues that plaintiffs are not "entitled to a continuance under Rule 56(f), but that, with respect to Diversion Investigators, they have already obtained much if not all of the discovery sought here." Def. Opp. 7, n. 2. While plaintiffs acknowledge that in other Diversion Investigator FLSA cases pending in this Court the plaintiffs there have been provided with certain documents by defendant, plaintiffs have not yet conducted the RCFC 30(b)(6) deposition ordered by Judge Hewitt, and such a deposition may be required in this case as well.

Finally, defendant claims that plaintiffs should have commenced discovery with regard to the driving issue in January 2008, after the denial of certiorari in Adams on January 7, 2008, rather than in April, 2008, so that plaintiffs should not be entitled to additional time for discovery as requested in their RCFC 56(f) motion. Def. Opp. 8-9.

In fact, plaintiffs' discovery requests were served on April 28, 2008, which was 17 days after the filing of Defendant's Motion for Summary Judgment. As the Court knows, the parties have long been engaged in settlement negotiations concerning various aspects of this case seeking to achieve their prompt resolution. See Joint Status Report (filed on March 31, 2008). And plaintiffs have been litigating various aspects of this case vigorously in this and other courts since February, 1990. Plaintiffs believe that they have been, and continue to be, diligent in seeking discovery regarding the current phase of this protracted litigation, and they further believe that in order to expedite the resolution of this matter, granting their motion under RCFC 56(f) would be appropriate.

In conclusion, plaintiffs submit that what is "illusory" here, (see Def. Opp. at 5), is defendant's suggestion that plaintiffs' reliance upon Coke, National Cable and Alvarez represent "an attempt to support an illusory need for discovery with an illusory change in the legal landscape." Id. In fact, plaintiffs have the right to engage in discovery to make a factual record upon which they will be able to demonstrate to this Court their entitlement to compensation under the FLSA for their driving pursuant to the principles enunciated by the Supreme Court in Coke, National Cable and Alvarez as well as OPM's FLSA regulations.

**CONCLUSION**

Plaintiffs believe they are entitled to have the Court grant their motion for a continuance under RCFC 56(f).

Plaintiffs request oral argument on this motion.

Respectfully submitted,

OF COUNSEL:
Linda Lipsett

**s/Jules Bernstein**
Jules Bernstein (Counsel of Record)
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798
(202) 296-7220 facsimile

Counsel of Record

**s/Edgar James**
James & Hoffman, P.C.
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500
(202) 496-0555 facsimile

Attorneys for Plaintiffs

Dated: June 16, 2008

**CERTIFICATE OF FILING**

I hereby certify under penalty of perjury that on this 16th day of June 2008, a copy of the foregoing "PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION UNDER RCFC 56(f), FOR A CONTINUANCE TO PERMIT THEM TO CONDUCT DISCOVERY FOR THE PURPOSE OF OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING REMAINING "DRIVING TIME" CLAIMS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**s/Jules Bernstein**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

REC'D MAY 28 2008

| | | |
|---|---|---|
| STEPHEN S. ADAMS, et al., Plaintiffs, v. THE UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 90-162C and consolidated cases (Judge Bush) |

DEFENDANT'S RESPONSE TO PLAINTIFFS' REQUESTS FOR ADMISSIONS

In accordance with Rule 36 of the United States Court of Federal Claims, defendant responds to Plaintiffs' Requests for Admissions with the answers and objection set forth below.

GENERAL OBJECTIONS

Defendant objects to plaintiffs' requests for admissions to the extent that they seek admissions concerning matters other than time solely spent driving between home and work in a Government vehicle, upon the ground that the claims of the plaintiffs to whom the requests pertain (defined in plaintiffs' requests as the plaintiffs who are the subject of defendant's pending motion for summary judgment) have been settled with respect to all time other than time solely spent driving between home and work in a Government vehicle.

Defendant objects to plaintiffs' requests for admissions to the extent that they seek admissions concerning time solely spent driving between home and work in a Government vehicle, upon the ground that plaintiffs' claims for such time fail as a matter of law, for the reasons stated in defendant's defendant's pending motion for summary judgment.

PLAINTIFFS' EXHIBIT 1

ANSWERS TO NUMBERED REQUESTS

1. Commencing February, 1988, and thereafter ("relevant time period"), plaintiffs, while employed by defendant in the positions that are the subjects of these consolidated actions and defendant's instant motion were provided with vehicles ("GOVs") for the purpose of performing their duties as employees of defendant.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome. As an accommodation to plaintiffs, and without waiving any objection, defendant denies this requested admission, except to admit that, during certain times within the referenced period, some plaintiffs were provided with vehicles for the purpose of performing their duties as employees of defendant.

2. Plaintiffs commonly were required by defendant to drive their GOVs between their homes or abodes and their offices or other places of their employment ("home/work driving") on working days.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome. As an accommodation to plaintiffs, and without waiving any objection, defendant denies this requested admission, except to admit that at various times some plaintiffs were required, when commuting between their homes and their places of employment on working days, to do so by driving a GOV.

3. Plaintiffs were on duty while engaged in such home/work driving.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague and calls for a conclusion of law rather than an admission of fact. As an accommodation to plaintiffs, and without waiving any objection, defendant denies that plaintiffs were performing work within the meaning of the Fair Labor Standards Act ("FLSA") while engaged in such home/work driving, and denies that the time spent by plaintiffs in such home/work driving was part of plaintiffs' work day under the FLSA.

4. Plaintiffs driving of their GOVs was among the duties of their employment by defendant.

RESPONSE:

Defendant objects to this request upon the ground that it is vague. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that the performance of the duties of some plaintiffs' employment sometimes involved driving their GOVs, but denies that plaintiffs' commuting between home and work was among the duties of their employment, whether or not that commuting was accomplished by driving a GOV.

5. The above-described home/work driving performed by plaintiffs was required by defendant and was performed for the benefit of defendant.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome. As an accommodation to plaintiffs, and without waiving any objection, defendant denies this requested admission, except to admit that various plaintiffs at various times were

required by defendant, when commuting between home and work, to do so by driving a GOV, and that this requirement was for the benefit of defendant.

6. Pursuant to the terms of Federal Personnel Manual Letter 551-10 issued by the Civil Service Commission on April 30, 1976, plaintiffs who were treated by defendant as non-exempt under the provisions of the Fair Labor Standards Act were entitled to be compensated for time spent driving a GOV between their homes and places of employment.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague and calls for a conclusion of law rather than an admission of fact. To the extent that the requested admission may be deemed to call for an admission of fact, it is denied, except to admit that, with respect to employees who were classified as non-exempt under the provisions of the Fair Labor Standards Act, Federal Personnel Manual Letter 551-10 contained the language quoted in Request No. 7, below.

7. Federal Personnel Manual Letter 551-10, entitled "Travel Time as 'Hours of Work' Under FLSA," provided in part as follows (at Table 1):

HOME TO WORK TRAVEL AS "HOURS OF WORK" UNDER FLSA

| Kind of Travel Involved: | Is travel time "hours of work"? |
|---|---|
| A. Home to Work - Normal Situation | |
| Normal home to work (work to home) travel | No |
| Employee drives a Government vehicle home (as a requirement of the employing agency) to respond to emergency calls immediately from his/her home. | Yes1/ |

. . . .

---

1/ All time spent driving the vehicle home to work (work to home) is hours worked.

RESPONSE:

Admits.

8. Such driving between home and place of employment by plaintiffs facilitated the accomplishment of defendant's agencies' law enforcement missions, since the GOVs were provided to the plaintiffs for rapid response to emergency calls at any time, whether plaintiffs were at home or proceeding between home and their office or other work location.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome.

9. Defendant's GOVs were driven by plaintiffs to their homes on working days so they would be able to respond to emergencies from home and elsewhere at any time.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, overbroad, and unduly burdensome.

10. The plaintiffs were required to have their firearms, ammunition and other law enforcement-related equipment with them while engaged in home/work driving

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, and that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

11. The plaintiffs have been required to monitor their vehicles' communications equipment while driving their GOVs.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, and that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

12. Plaintiffs were not permitted by defendant to run personal errands with their GOVs, or transport non-official persons, such as friends or family members, in their GOVs.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague, and that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

13. While driving between home and their places of employment, plaintiffs were under the control of defendant pursuant to law and defendant's rules and regulations and they were subject to the exercise of supervisory authority by agents of defendant.

RESPONSE:

Defendant objects to this request upon the grounds that it is vague and calls for a conclusion of law rather than an admission of fact.

14. Defendant issued firearms, including handguns, and ammunition, to plaintiffs as equipment needed to perform their duties.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

15. Such firearms and ammunition were required to be kept with, or on the person of, plaintiffs while they drove GOVs between home and their places of employment.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

16. When plaintiffs arrived home at the end of their workdays they were required to remove their firearms and ammunition from their GOVs and persons, unload their firearms, and store both firearms and ammunition in secure places in their homes, including safes provided by defendant.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that when certain plaintiffs arrived home after the end of their workdays they were required to remove their firearms and ammunition from their GOVs and persons, unload their firearms, and store both firearms and ammunition in secure places in their homes, including safes provided by defendant. Defendant denies that plaintiffs arrived home at the end of their workdays.

17. Before the plaintiffs entered their GOVs at the beginning of each workday they were required to remove their firearms and ammunition from their homes, load them, and place them in holsters or other containers on their persons or in their GOVs.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that before certain plaintiffs entered their GOVs prior to the beginning of each workday they were required to remove their firearms and ammunition from their homes, load them, and place them in holsters or other containers on their persons or in their GOVs. Defendant denies that plaintiffs' workday began when they left their homes to drive to work.

18. The process of plaintiffs taking their firearms and ammunition out of their GOVs, storing and unloading their firearms and ammunition in their homes at the end of the workday took each plaintiff approximately 5 minutes each workday.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.

19. The process of removing plaintiffs' firearms and ammunition from their homes, loading them, and placing them on their persons and in their GOVs took each plaintiff approximately 5 minutes each workday.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.

20. In each of plaintiffs' two-week pay periods, approximately 1 hour and 40 minutes was spent in the activities described in paragraphs 18 and 19 above by each plaintiff.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. To the extent that the requested admission may be deemed relevant, it is denied.

21. A reason that defendant required that plaintiffs' firearms not be left in their GOVs overnight outside of their homes was defendant's concern that a break-in into the GOVs might occur in which case the firearms and ammunition might be stolen and misused.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant.

22. reason that defendant provided plaintiffs with safes to store their firearms in their homes was to avoid accidents involving other individuals who might obtain access to such firearms.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant.

23. Among other job related equipment transported from time to time between home and work by plaintiffs in their GOVs were body armor, handcuffs, walkie talkies, portable radios and cameras, leg irons and other restraints, night vision equipment, pagers, mace, oc spray and pepper spray, kel recorders, maps, binoculars, evidence bags and evidence tape, sledgehammers and crowbars, log books, drug testing equipment, flashlights, first aid kits, and electronic testing equipment.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that from time to time various plaintiffs transported one or more of the referenced items of equipment while traveling between home and work in their GOVs, and that some of these items of equipment were job related.

24. Plaintiffs' GOVs have also been equipped with special emergency lights, road flares, fire extinguishers, sirens and public address systems, and jumper cables, shovels and electric tools and hand tools.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs' GOVs at certain times.

25. Work gear and clothing carried between home and work by plaintiffs in their GOVs have included raid jackets, helmets and hats, pants and shirts, kevlar and latex gloves, and boots.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that this statement has been true of certain plaintiffs at certain times.

26. There are two-way radios in plaintiffs' GOVs so that they may communicate with individuals outside of the GOV. The radios are required to be turned on and remain on from the time plaintiffs leave home until they return home while they are in their GOVs.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that the first sentence of this statement has been true of certain plaintiffs at certain times. Defendant denies that the radios are required to be turned on and remain on from the time plaintiffs leave home until they return home.

27. The purpose of leaving the radios turned on while plaintiffs are driving between home and work is to communicate with other GOVs, offices, supervisors, or anyone else needing to reach plaintiffs.

RESPONSE:

Admits.

28. The car radios are tools used to perform plaintiffs' jobs. There is radio contact between plaintiffs and other law enforcement officers while plaintiffs are driving between home and work.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that the first sentence of this statement is true, and that the second sentence of this statement has been true of certain plaintiffs at certain times. To the extent that the second sentence of this statement may be construed to mean that plaintiffs communicate with other law enforcement officers whenever they drive between home and work. It is denied.

29. U.S.C. § 3796 ("§ 3796"), is the Public Safety Officer's Death Benefit Act. It provides a death benefit to survivors if a plaintiff were to be killed in the line of duty. Such "line of duty" deaths includes those occurring while plaintiffs are traveling between home and places of employment in GOVs.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

30. If a plaintiff suffers an injury while driving to and from home in a GOV, the plaintiff may be entitled to receive workers' compensation under 5 U.S.C. § 8102.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

31. Under the Internal Revenue Code, unlike the situation of federal employees who are issued GOVs for home/work travel who must pay federal income tax on a portion of the GOV's value because it provides some personal benefit to them, in the case of plaintiffs the Internal Revenue Service considers no personal benefit to have been received by them and no federal income tax is owed by them for their home/work driving.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

32. Under 31 U.S.C. § 1344 ("§ 1344"), "[f]unds available to a Federal agency, by appropriation or otherwise, may be expended by the Federal agency for the maintenance, operation, or repair of any passenger carrier only to the extent that such carrier is used to provide transportation for official purposes. . . ." Section 1344(a)(2) declares that "transportation between the residence of an officer or employee [of a Federal agency] and various locations that is . . . essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties, is transportation for an official purpose, when approved in writing by the head of the Federal agency."

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

33. be an "official purpose" such transportation must be essential for the safe and efficient performance of intelligence, counter-intelligence, protective services, or criminal law enforcement duties.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

34. Home/work driving by plaintiffs in GOVs is "transportation for an official purpose" within the meaning of 31 U.S.C. § 1344.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

35. Under 31 U.S.C. § 1349 ("§ 1349"), plaintiffs are subject to discipline for misusing GOVs assigned to them.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

36. Such misuse may involve deviating from the normal home to work path on the way home, going somewhere else on the way to work or making a stop for personal reasons.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

37. § 1349 requires at least a one month suspension from work for misuse. A more severe penalty may include demotion and/or discharge. Transporting a relative or friend on other than government business would constitute misuse. Using a GOV for personal business, such as leaving a duty station or residence to cash paychecks, pay bills, drop off or pick up mail, pick up dry cleaning, grocery shopping or transporting children to and from school, would constitute misuse.

RESPONSE:

Defendant objects to this request upon the grounds that it calls for a conclusion of law rather than an admission of fact, and that, under the law of the case, it is irrelevant.

38. Defendant compensated FLSA non-exempt plaintiffs for driving to and from work in a GOV under FPM Letter 551-10.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that at certain times, certain agencies compensated plaintiffs who were employed by these agencies in positions that were classified as FLSA non-exempt for time spent driving to and from work in a GOV, and that this compensation was paid based upon the guidance contained in FPM Letter 551-10.

39. During such period of compensation described in paragraph 28 above, defendant employed a system for recording the time during which FLSA non-exempt employees spent driving GOVs between home and work and paid wages to such employees for time spent while engaged in home/work driving of a GOV.

RESPONSE:

Defendant objects to this request upon the ground that, under the law of the case, it is irrelevant. As an accommodation to plaintiffs, and without waiving any objection, defendant admits that at times when agencies paid employees occupying positions that were classified as FLSA non-exempt for time spent driving to and from work in a GOV, these agencies employed a system for recording that time.

40. The Transcript of the Oral Argument in the United States Court of Appeals for the Federal Circuit conducted on November 8, 2006, in the case of Adams v. United States, Case Nos.06-5040, 06-5041, attached hereto is a true, correct and genuine transcript of such argument.

RESPONSE:

Admits.

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TODD M. HUGHES
Deputy Director

SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Telephone: (202) 616-8275
Facsimile: (202) 305-7643

OF COUNSEL:
Michael J. Dierberg
William P. Rayel
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice

May 28, 2008

**CERTIFICATE OF SERVICE**

I hereby certify, under penalty of perjury, that on May 28, 2008, by means of

- ☐ electronic mail
- ☐ facsimile
- ☒ hand delivery
- ☐ overnight mail
- ☒ United States mail

copies of "DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS" were served upon the following person(s):

Jules Bernstein
BERNSTEIN & LIPSETT, P.C.
1920 L Street, N.W.
Suite 303
Washington, D.C. 20036

Edgar N. James
JAMES & HOFFMAN, P.C.
1101 17th Street, N.W.
Suite 510
Washington, D.C. 20036

Attorneys for Plaintiffs

______________________________

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| STEPHEN ADAMS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | Case No. 90-162-C and Consolidated Cases (Judge Lynn J. Bush) |

**PLAINTIFFS' FORTY-SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the United States Court of Federal Claims (RCFC), plaintiff GS-13 1811 criminal investigators through undersigned counsel, request that defendant respond to the following Requests for Production of Documents and sign under oath on or before June 30, 2008. All production requests shall be deemed to be addressed to all agents and employees of defendant having knowledge of the subject matter, and all responses shall reflect the cumulative knowledge of all such agents and employees of defendant. In answering the Requests for Production of Documents, defendant is requested to identify, specifically and in a form suitable for use in a production request, all documents as defined herein containing, setting forth, or pertaining to the information provided in answering; or in the alternative, to attach copies of such documents to its responses.

## I. INSTRUCTIONS

A. These production requests are continuing in character and require defendant to file supplementary answers in accordance with RUSCFC 26(e) if it obtains further, additional or different information after its initial answers and before trial.

PLAINTIFFS' EXHIBIT 2

B. In producing the requested documents, please identify the request number to which each document is responsive.

C. If any document or part thereof is withheld pursuant to a claim of privilege, please identify each such document for which privilege is claimed by (i) the type of document (e.g., letter, memorandum, etc.), its date, author and addressee or recipient; (ii) the number of pages in the document; (iii) a general description of the subject matter of the document, and (iv) the privilege being claimed and the basis for withholding the document under claim of privilege.

D. If any document responsive to any request made herein was, but no longer is in defendant's possession, custody or control, state what disposition was made of that document and the date on which such disposition was made.

E. If defendant maintains that any document or record requested herein has been destroyed, describe the contents of said document, the location of any copies of said document, the date of such destruction and the name of the person who ordered or authorized such destruction.

F. As used herein, all words used in their singular shall be deemed to include the words in their plural form and vice versa.

G. These document requests relate to the period commencing March, 1988, to date. The defendant is reminded of its duty under RCFC 26(e) to supplement its responses.

## II. DEFINITIONS

A. "Document" means all original documents, and any and all nonidentical copies thereof, of any kind of written or graphic matter, however produced or reproduced, of any kind or description, and any attachments thereto including but not limited to correspondence, memoranda,

handwritten notes, work papers, drafts, recordings, computer disks or printouts, e-mails, ledgers, reports, studies, transcripts, contracts, questionnaires, telegrams, teletypes, summaries, instructions, notices, desk calendars, appointment books, diaries, telephone logs, films, videotapes, photographs, lists, calendars, tabulations, charts, graphs, data compilations, rules, regulations, manuals, handbooks and instructions, in effect and/or existence, and/or created or generated during the time period set forth in the Instructions.

B. The term "communication" means and refers to any oral statement, discussion, conversation or conference (whether face-to-face or by telephone), and any documents by, to, between or among one or more persons conducted on or after the time period set forth in Instruction G above, except as otherwise indicated.

C. A document or communication "referring or relating to" any given subject means any document or communication that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent or relevant to that subject, including without limitation documents concerning the preparation of other documents.

D. The term "identify," when used in reference to a document, means to state the date, author and type of document (e.g., letter, memorandum, telegram, chart, etc.), or to provide some other means of identifying it, and to disclose its present location and custodian.

E. "Identify" with reference to a person means to state his/her full name, business address and telephone number -- or if not known, his/her home address and telephone number -- job title as of the time inquired into and as of the present. Once a person has been so identified in an answer or response, he/she may thereafter be identified simply by name.

F. "Identify" with reference to a governmental agency means to set forth the full name of the agency or any of its offices, divisions, branches, sections, operating components, or any other identifiable sub-part; its address or principal place of business. If the agency has delegated a function or task to another agency, the agency shall still answer the question on the basis of the information available to it.

G. "Describe" and/or "state" means to set forth fully, completely, unambiguously and in detail every fact relating to the answer called for about which defendant has knowledge. These terms also mean to specify in detail and to particularize the content of a document, communication, act or event, or series of documents, communications, acts, or events and not to summarize or outline the documents, communications, acts, events, or series of events.

H. "Relating to" or "relate to" means constitutes, comprises, contains, consists, consists of, sets forth, proposes, shows, discloses, describes, discusses, explains, summarizes, concerns, reflects, authorizes, or refers to, directly or indirectly.

I. The present tense includes the past and future tenses. The singular includes the plural and the plural includes the singular. "All" means "any and all"; "any" means "any and all"; "including" means "including but not limited to"; "each" means "each and every".

J. The conjunctions "and" and "or" shall be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any document otherwise within the scope of any request. Whenever necessary to bring within the scope of a request all documents that might otherwise be construed to be outside its scope, (i) the use of a verb in any tense shall be construed as the use of the verb in all other tenses, and (ii) "any" includes "all," and "all" includes "any".

K. The term "agency" refers to the national offices of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE"), and its predecessor, the Bureau of Alcohol, Tobacco and Firearms ("BATF"), the Drug Enforcement Administration ("DEA"), the Internal Revenue Service ("IRS"), the United States Customs Service ("USCS"), and the United States Secret Service ("USSS"), and their divisions, branches, sections, operating components, regional offices or any other identifiable sub-parts, as well as their successors, if any.

## III. DOCUMENTS REQUESTED

1. All agency documents or communications relating to, reflecting and/or indicating the regulations, rules, instructions, methods and/or requirements whereby GS-13 1811 criminal investigators employed by defendant, including plaintiffs, have been directed to remove from their government provided vehicles upon returning home each work day firearms, ammunition and/or other equipment provided to them by defendant and to store such items in their homes, garages or other places, including safes.

2. All agency documents or communications relating to, reflecting and/or indicating the regulations, rules, instructions, and/or requirements whereby GS-13 1811 criminal investigators employed by defendant, including plaintiffs, have been directed to remove from overnight or weekend storage in their homes, garages or other places, including safes, firearms, ammunition and other equipment and place such items in their government provided vehicles before entering and driving such vehicles each work day.

Respectfully submitted,

Jules Bernstein
Bernstein & Lipsett, P.C.
1920 L Street, N.W., Suite 303
Washington, D.C. 20036
(202) 296-1798

Counsel of Record

OF COUNSEL:
Linda Lipsett

Edgar James
James & Hoffman
1101 17th Street, N.W., Suite 510
Washington, D.C. 20036
(202) 496-0500

Attorneys for Plaintiffs

Dated: May 30, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2008, I caused two copies of Plaintiffs' Forty-Second Request for Production of Documents to be served by hand, on the following counsel of record:

Shalom Brilliant, Esquire
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Room 7036
Washington, D.C. 20530

Jules Bernstein

| Key points and principles | Section(s) | Question(s) | Guidance |
|---|---|---|---|
| II. Section 15 of the Act allows agencies to enter into funding agreements with NAS and NAPA without the academies' committees being "managed" or "controlled" | 102-3.185(c) | 1. Can an agency enter into a funding agreement with an academy which provides for the preparation of one or more academy reports containing advice or recommendations to the agency, to be developed by the academy by use of a committee created by the academy, without subjecting an academy to "actual management or control" by the agency? | A. Yes, if the members of the committee are selected by the academy and if the committee's meetings, deliberations, and the preparation of reports are all controlled by the academy. Under these circumstances, neither the existence of the funding agreement nor the fact that it contemplates use by the academy of an academy committee would constitute actual management or control of the committee by the agency. |

# PART 102-4—NONDISCRIMINATION IN FEDERAL FINANCIAL ASSISTANCE PROGRAMS [RESERVED]

# PART 102-5—HOME-TO-WORK TRANSPORTATION

## Subpart A—General

Sec.
102-5.5 Preamble.
102-5.10 What does this part cover?
102-5.15 Who is covered by this part?
102-5.20 Who is not covered by this part?
102-5.25 What additional guidance concerning home-to-work transportation should Federal agencies issue?
102-5.30 What definitions apply to this part?

## Subpart B—Authorizing Home-to-Work Transportation

102-5.35 Who is authorized home-to-work transportation?
102-5.40 May the agency head delegate the authority to make home-to-work determinations?
102-5.45 Should determinations be completed before an employee is provided with home-to-work transportation?
102-5.50 May determinations be made in advance for employees who respond to unusual circumstances when they arise?
102-5.55 How do we prepare determinations?
102-5.60 How long are initial determinations effective?
102-5.65 What procedures apply when the need for home-to-work transportation exceeds the initial period?
102-5.70 What considerations apply in making a determination to authorize home-to-work transportation for field work?
102-5.75 What circumstances do not establish a basis for authorizing home-to-work transportation for field work?
102-5.80 What are some examples of positions that may involve field work?
102-5.85 What information should our determination for field work include if positions are identified rather than named individuals?
102-5.90 Should an agency consider whether to base a Government passenger carrier at a Government facility near the employee's home or work rather than authorize the employee home-to-work transportation?
102-5.95 Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation?
102-5.100 May we use home-to-work transportation for other than official purposes?
102-5.105 May others accompany an employee using home-to-work transportation?

## Subpart C—Documenting and Reporting Determinations

102-5.110 Must we report our determinations outside of our agency?
102-5.115 When must we report our determinations?
102-5.120 What are our responsibilities for documenting use of home-to-work transportation?

AUTHORITY: Sec. 205(c), 63 Stat. 390; 40 U.S.C. 486(c); 31 U.S.C. 1344(e)(1).

SOURCE: 65 FR 54966, Sept. 12, 2000, unless otherwise noted.

## Subpart A—General

**§ 102-5.5 Preamble.**

(a) The questions and associated answers in this part are regulatory in effect. Thus compliance with the written text of this part is required by all to whom it applies.

(b) The terms "we," "I," "our," "you," and "your," when used in this part, mean you as a Federal agency, an agency head, or an employee, as appropriate.



PLAINTIFFS' EXHIBIT 3

### § 102-5.10 What does this part cover?

This part covers the use of Government passenger carriers to transport employees between their homes and places of work.

### § 102-5.15 Who is covered by this part?

This part covers Federal agency employees in the executive, judicial, and legislative branches of the Government, with the exception of employees of the Senate, House of Representatives, Architect of the Capitol, and government of the District of Columbia.

### § 102-5.20 Who is not covered by this part?

This part does not cover:

(a) Employees who are on official travel (TDY); or

(b) Employees who are on permanent change of station (PCS) travel; or

(c) Employees who are essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties when designated in writing as such by their agency head.

### § 102-5.25 What additional guidance concerning home-to-work transportation should Federal agencies issue?

Each Federal agency using Government passenger carriers to provide home-to-work transportation for employees who are essential for the safe and efficient performance of intelligence, counterintelligence, protective services, or criminal law enforcement duties should issue guidance concerning such use.

### § 102-5.30 What definitions apply to this part?

The following definitions apply to this part:

*Agency head* means the highest official of a Federal agency.

*Clear and present danger* means highly unusual circumstances that present a threat to the physical safety of the employee or their property when the danger is:

(1) Real; and

(2) Immediate or imminent, not merely potential; and

(3) The use of a Government passenger carrier would provide protection not otherwise available.

*Compelling operational considerations* means those circumstances where home-to-work transportation is essential to the conduct of official business or would substantially increase a Federal agency's efficiency and economy.

*Emergency* means circumstances that exist whenever there is an immediate, unforeseeable, temporary need to provide home-to-work transportation for those employees necessary to the uninterrupted performance of the agency's mission. (An emergency may occur where there is a major disruption of available means of transportation to or from a work site, an essential Government service must be provided, and there is no other way to transport those employees.)

*Employee* means a Federal officer or employee of a Federal agency, including an officer or enlisted member of the Armed Forces.

*Federal agency* means:

(1) A department (as defined in section 18 of the Act of August 2, 1946 (41 U.S.C. 5a));

(2) An executive department (as defined in 5 U.S.C. 101);

(3) A military department (as defined in 5 U.S.C. 102);

(4) A Government corporation (as defined in 5 U.S.C. 103(1));

(5) A Government controlled corporation (as defined in 5 U.S.C. 103(2));

(6) A mixed-ownership Government corporation (as defined in 31 U.S.C. 9101(2));

(7) Any establishment in the executive branch of the Government (including the Executive Office of the President);

(8) Any independent regulatory agency (including an independent regulatory agency specified in 44 U.S.C. 3502(10));

(9) The Smithsonian Institution;

(10) Any nonappropriated fund instrumentality of the United States; and

(11) The United States Postal Service.

*Field work* means official work requiring the employee's presence at various locations other than his/her regular place of work. (Multiple stops

(itinerant-type travel) within the accepted local commuting area, limited use beyond the local commuting area, or transportation to remote locations that are only accessible by Government-provided transportation are examples of field work.)

*Home* means the primary place where an employee resides and from which the employee commutes to his/her place of work.

*Home-to-work transportation* means the use of a Government passenger carrier to transport an employee between his/her home and place of work.

*Passenger carrier* means a motor vehicle, aircraft, boat, ship, or other similar means of transportation that is owned (including those that have come into the possession of the Government by forfeiture or donation), leased, or rented (non-TDY) by the United States Government.

*Work* means any place within the accepted commuting area, as determined by the Federal agency for the locality involved, where an employee performs his/her official duties.

## Subpart B—Authorizing Home-to-Work Transportation

### § 102-5.35 Who is authorized home-to-work transportation?

By statute, certain Federal officials are authorized home-to-work transportation, as are employees who meet certain statutory criteria as determined by their agency head. The Federal officials authorized by statute are the President, the Vice-President, and other principal Federal officials and their designees, as provided in 31 U.S.C. 1344(b)(1) through (b)(7). Those employees engaged in field work, or faced with a clear and present danger, an emergency, or a compelling operational consideration may be authorized home-to-work transportation as determined by their agency head. No other employees are authorized home-to-work transportation.

### § 102-5.40 May the agency head delegate the authority to make home-to-work determinations?

No, the agency head may not delegate the authority to make home-to-work determinations.

### § 102-5.45 Should determinations be completed before an employee is provided with home-to-work transportation?

Yes, determinations should be completed before an employee is provided with home-to-work transportation unless it is impracticable to do so.

### § 102-5.50 May determinations be made in advance for employees who respond to unusual circumstances when they arise?

Yes, determinations may be made in advance when the Federal agency wants to have employees ready to respond to:

(a) A clear and present danger;

(b) An emergency; or

(c) A compelling operational consideration.

NOTE TO § 102-5.50: Implementation of these determinations is contingent upon one of the three circumstances occurring. Thus, these may be referred to as "contingency determinations."

### § 102-5.55 How do we prepare determinations?

Determinations must be in writing and include the:

(a) Name and title of the employee (or other identification, if confidential);

(b) Reason for authorizing home-to-work transportation; and

(c) Anticipated duration of the authorization.

### § 102-5.60 How long are initial determinations effective?

Initial determinations are effective for no longer than:

(a) Two years for field work, updated as necessary; and

(b) Fifteen days for other circumstances.

### § 102-5.65 What procedures apply when the need for home-to-work transportation exceeds the initial period?

The agency head may approve unlimited subsequent determinations, when the need for home-to-work transportation exceeds the initial period, for no longer than:

(a) Two years each for field work, updated as necessary; and

(b) Ninety calendar days each for other circumstances.

**§102-5.70 What considerations apply in making a determination to authorize home-to-work transportation for field work?**

Agencies should consider the following when making a determination to authorize home-to-work transportation for field work:

(a) The location of the employee's home in proximity to his/her work and to the locations where non-TDY travel is required; and

(b) The use of home-to-work transportation for field work should be authorized only to the extent that such transportation will substantially increase the efficiency and economy of the Government.

**§102-5.75 What circumstances do not establish a basis for authorizing home-to-work transportation for field work?**

The following circumstances do not establish a basis for authorizing home-to-work transportation for field work:

(a) When an employee assigned to field work is not actually performing field work.

(b) When the employee's workday begins at his/her work; or

(c) When the employee normally commutes to a fixed location, however far removed from his/her official duty station (for example, auditors or investigators assigned to a defense contractor plant).

NOTE TO §102-5.75: For instances where an employee is authorized home-to-work transportation under the field work provision, but performs field work only on an intermittent basis, the agency shall establish procedures to ensure that a Government passenger carrier is used only when field work is actually being performed. Although some employees' daily work station is not located in a Government office, these employees are not performing field work. Like all Government employees, employees working in a "field office" are responsible for their own commuting costs.

**§102-5.80 What are some examples of positions that may involve field work?**

Examples of positions that may involve field work include, but are not limited to:

(a) Quality assurance inspectors;

(b) Construction inspectors;

(c) Dairy inspectors;

(d) Mine inspectors;

(e) Meat inspectors; and

(f) Medical officers on outpatient service.

NOTE TO §102-5.80: The assignment of an employee to such a position does not, of itself, entitle an employee to receive daily home-to-work transportation.

**§102-5.85 What information should our determination for field work include if positions are identified rather than named individuals?**

If positions are identified rather than named individuals, your determination for field work should include sufficient information to satisfy an audit, if necessary. This information should include the job title, number, and operational level where the work is to be performed (e.g., five recruiter personnel or, positions at the Detroit Army Recruiting Battalion).

NOTE TO §102-5.85: An agency head may elect to designate positions rather than individual names, especially in positions where rapid turnover occurs.

**§102-5.90 Should an agency consider whether to base a Government passenger carrier at a Government facility near the employee's home or work rather than authorize the employee home-to-work transportation?**

Yes, situations may arise where, for cost or other reasons, it is in the Government's interest to base a Government passenger carrier at a Government facility located near the employee's home or work rather than authorize the employee home-to-work transportation.

**§102-5.95 Is the comfort and/or convenience of an employee considered sufficient justification to authorize home-to-work transportation?**

No, the comfort and/or convenience of an employee is not considered sufficient justification to authorize home-to-work transportation.

**§ 102-5.100 May we use home-to-work transportation for other than official purposes?**

No, you may not use home-to-work transportation for other than official purposes. However, if your agency has prescribed rules for the incidental use of Government vehicles (as provided in 31 U.S.C. note), you may use the vehicle in accordance with those rules in connection with an existing home-to-work authorization.

**§ 102-5.105 May others accompany an employee using home-to-work transportation?**

Yes, an employee authorized home-to-work transportation may share space in a Government passenger carrier with other individuals, provided that the passenger carrier does not travel additional distances as a result and such sharing is consistent with his/her Federal agency's policy. When a Federal agency establishes its space sharing policy, the Federal agency should consider its potential liability for and to those individuals. Home-to-work transportation does not extend to the employee's spouse, other relatives, or friends unless they travel with the employee from the same point of departure to the same destination, and this use is consistent with the Federal agency's policy.

## Subpart C—Documenting and Reporting Determinations

**§ 102-5.110 Must we report our determinations outside of our agency?**

Yes, you must submit your determinations to the following Congressional Committees:

(a) Chairman, Committee on Governmental Affairs, United States Senate, Suite SD-340, Dirksen Senate Office Building, Washington, DC 20510-6250; and

(b) Chairman, Committee on Governmental Reform, United States House of Representatives, Suite 2157, Rayburn House Office Building, Washington, DC 20515-6143.

**§ 102-5.115 When must we report our determinations?**

You must report your determinations to Congress no later than 60 calendar days after approval. You may consolidate any subsequent determinations into a single report and submit them quarterly.

**§ 102-5.120 What are our responsibilities for documenting use of home-to-work transportation?**

Your responsibilities for documenting use of home-to-work transportation are that you must maintain logs or other records necessary to verify that any home-to-work transportation was for official purposes. Each agency may decide the organizational level at which the logs should be maintained and kept. The logs or other records should be easily accessible for audit and should contain:

(a) Name and title of employee (or other identification, if confidential) using the passenger carrier;

(b) Name and title of person authorizing use;

(c) Passenger carrier identification;

(d) Date(s) home-to-work transportation is authorized;

(e) Location of residence;

(f) Duration; and

(g) Circumstances requiring home-to-work transportation.

## PARTS 102-6—102-30 [RESERVED]

# In the United States Court of Federal Claims

No. 07-790 C

(E-Filed: May 20, 2008)

ZORAIDA GONZALEZ, ET AL.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

ORDER

On May 20, 2008, the court held a telephonic status conference (TSC) with the parties. Pursuant to the TSC, the court orders the following:

1. On or before June 10, 2008, in order to facilitate the location of Forms DEA-349c that plaintiffs completed during the relevant time period of their employment, plaintiffs' counsel shall provide to defendant, based upon information reasonably available to plaintiffs, the locations of the duty stations, the dates within which plaintiffs served at such duty stations, and the names and titles of the supervisors to whom the forms were submitted;

2. On or before July 1, 2008, defendant shall respond to plaintiffs' request by providing copies of the Forms DEA-349c that plaintiffs had submitted during the relevant time period;

3. On or before July 22, 2008, defendant shall make available, pursuant to Rules of the Court of Federal Claims (RCFC) 30(b)(6) and in response to the notice of deposition to be provided by plaintiffs as soon as practicable, a representative to respond to questions regarding plaintiffs' driving alleged

by plaintiffs to be compensable, including, without limitation, Forms DEA-349c;

4. On or before August 1, 2008, plaintiffs shall file a motion under RCFC 56 with regard to defendant's alleged liability regarding plaintiffs' back pay and liquidated damages under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., for the time plaintiffs spent and continue to spend driving government vehicles between their homes and various work sites. Subsequent briefing shall be filed in accordance with RCFC 7.2(c).

The parties are urged to contact the court at any time when they believe the involvement of the court will help to secure the just, speedy, and inexpensive determination of this action. See RCFC 1.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge